IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DYNAMIC 3D GEOSOLUTIONS LLC, | CASE NO.: 1:14-CV-00112-LY |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| SCHLUMBERGER LIMITED (SCHLUMBERGER N.V.); SCHLUMBERGER HOLDINGS CORPORATION; AND SCHLUMBERGER TECHNOLOGY CORPORATION, | |
| Defendants. | |

## DEFENDANTS' MOTION TO DISQUALIFY COUNSEL AND TO DISMISS WITHOUT PREJUDICE

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 2

II.   BACKGROUND .............................................................................................. 4

III.  SUMMARY OF ARGUMENT ....................................................................... 6

IV.   FACTUAL BACKGROUND ........................................................................... 8

    A.   Rutherford's Background and Employment at Schlumberger. .............................. 8

        1.   Rutherford Directed a Twelve-Person Team Charged with
            Performing a Comprehensive Legal and Technical
            Assessment of Schlumberger's Petrel Product, the Product
            That Is at the Center of Plaintiff's Claims in This Case. ........................... 9

        2.   Rutherford Represented Schlumberger In Its Efforts to
            Enforce, Monetize, and Strengthen Schlumberger's Patent
            Portfolio, Including Patents on the Alleged-Infringing
            Petrel Product. ........................................................................................... 10

    B.   Rutherford Left Schlumberger and Immediately Began Work at
       Acacia On Intellectual Property Matters Concerning
       Schlumberger, the Accused Petrel Product, and the '319 Patent. ......................... 12

        1.   Rutherford Met With the Founders of Austin Geo (the
            Named Inventors of the '319 Patent) and Participated in
            Acacia's Decision to Acquire the '319 Patent Knowing
            That Schlumberger's Petrel Product Was a Potential Target
            of Suit. ......................................................................................................... 13

        2.   Rutherford Participated In and Approved Acacia's Decision
            to Acquire the '319 Patent and File Suit Against
            Schlumberger's Petrel Product. ................................................................. 13

        3.   Rutherford Admits to Working on Related '319 Patent
            Litigation Against Halliburton – and That Work Appears to
            Be Ongoing. ............................................................................................... 14

V.    DISCUSSION .................................................................................................. 15

    A.   All Members of Acacia's In-House Legal Department Are Subject
       to the Court's Jurisdiction By Virtue of Their Substantial and
       Ongoing Participation In This Matter. ................................................................. 16

B.   Rutherford Suffers From An Incurable Conflict of Interest Based on Her Prior Representation of Schlumberger in Matters Substantially Related to Her Representation of Acacia In This Case.....................................................................................................17

1.   Rutherford Admits That Schlumberger Is Her Former Client to Whom She Owes A Fiduciary Duty and the Duties of Candor and Loyalty....................................................17

2.   Rutherford's Representation of Acacia In Its Acquisition and Litigation of the '319 Patent Against Schlumberger Is Substantially Related to Rutherford's Prior Representation of Schlumberger.....................................................................18

C.   All Lawyers in Acacia's In-House Legal Department Suffer From Incurable Conflicts of Interest Pursuant to the Rule of Irrebuttable Imputed Disqualification. ..................................................23

1.   Rutherford's Conflict Must Be Imputed to All Counsel In Acacia's In-House Legal Department......................................24

2.   Acacia's Other Lawyers Cannot Avoid The Irrebuttable Imputation of Rutherford's Conflict By Its Claimed Effort to Erect an "Ethics Screen".....................................................25

D.   The Collins Edmonds Firm Should Be Disqualified Both Under the Presumption of Shared Confidences and Because of the Implied Sharing of Schlumberger's Confidences By Rutherford. ...................................27

VI.   BECAUSE THIS ACTION HAS BEEN INFECTED BY RUTHERFORD'S CONFLICT OF INTEREST FROM ITS INCEPTION DISMISSAL WITHOUT PREJUDICE IS WARRANTED.............................................29

VII.   CONCLUSION...........................................................................................31

# TABLE OF AUTHORITIES

**Page**

## CASES

Ackerman v. Nat'l Prop. Analysts, Inc.,
887 F. Supp. 510 (S.D.N.Y. 1993), aff'd, 60 F.3d 810 (2d Cir. 1995) ......................... 16, 31

Brennan's Inc. v. Brennan's Restaurants, Inc.,
590 F.2d 168 (5th Cir. 1979) ........................................................................................ 18, 19

Dean Witter Reynolds, Inc. v. Clements, O'Neill, Pierce & Nickens, L.L.P.,
No. H-99-1882, 2000 WL 36098499 (S.D. Tex. Sept. 8, 2000) ..................................... 19, 23

Doe v. A Corp.,
709 F.2d 1043 (5th Cir. 1983) ................................................................................. 23, 30, 31

E.F. Hutton & Co. v. Brown,
305 F. Supp. 371 (S.D. Tex. 1969) ........................................................................................ 16

FDIC v. U.S. Fire Ins. Co.,
50 F.3d 1304 (5th Cir. 1995) ................................................................................................. 15

Fractus, S.A. v. Samsung Electronics Co.,
876 F. Supp. 2d 802 (E.D. Tex. 2012) ................................................................................... 20

Galderma Labs., L.P. v. Actavis Mid Atl. LLC,
927 F. Supp. 2d 390 (N.D. Tex. 2013) .................................................................................. 16

Georgia–Pacific Corp. v. U.S. Plywood Corp.,
318 F. Supp. 1116 (S.D.N.Y. 1970) ...................................................................................... 21

Gibbs v. Paluk,
742 F.2d 181 (5th Cir. 1984) ................................................................................................. 19

Honeywell International, Inc. v. Philips Lumileds Lighting Company,
No. 2:07-CV-463-CE, 2009 WL 256831 (E.D. Tex. Jan. 6, 2009) ....................................... 25

In re Am. Airlines, Inc.,
972 F.2d 605 (5th Cir. 1992) ........................................................................................ passim

In re Am. Home Prods. Corp., 985 S.W.2d 68 (Tex. 1998) ................................................. 27, 28

In re Corrugated Container Antitrust Litig.,
659 F.2d 1341 (5th Cir. 1981) ............................................................................................... 19

In re Dresser Indus., Inc., 972 F.2d 540 (5th Cir. 1992) ......................................................... 16

In re Guar. Ins. Servs., Inc.,
    343 S.W.3d 130 (Tex. 2011) ............................................................................ 23, 26

In re ProEducation Int'l., Inc.,
    587 F.3d 296 (5th Cir. 2009) ................................................................................ 15

In re Riles,
    No. 620, 2000 WL 1062086 (Fed. Cir. 2000) ........................................... 19, 21, 22

Innovation Ventures, Inc. v. N2 Distrib., Inc.,
    No. 08-10983, 2009 WL 2381836 (E.D. Mich. July 31, 2009) ........................... 22

Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.,
    No. 10-1067-LPS, 2011 WL 2692968 (D. Del. June 22, 2011) ........................... 22

John Crane Prod. Solutions, Inc. v. R2R & D, LLC,
    No. 3:11-CV-3237-D, 2012 WL 3453696 (N.D. Tex. Aug. 14, 2012) ................ 19

JuxtaComm-Texas Software, LLC v. Axway, Inc.,
    No. 6:10-CV-2011, 2010 WL 4920909 (E.D. Tex. Nov. 29, 2010) .................... 16

Markman v. Westview Instruments, Inc.,
    52 F.3d 967 (Fed. Cir. 1995) ................................................................................ 21

Millburn Mktg. Assocs. v. Parker Labs., Inc.,
    No. 93-3540 (HLS), 1994 WL 228531 (D.N.J. May 17, 1994) ........................... 22

MPL, Inc. v. Cook,
    498 F. Supp. 148 (N.D. Ill. 1980) ......................................................................... 19

Musicus v. Westinghouse Elec. Corp.,
    621 F.2d 742 (5th Cir. 1980) ................................................................................ 15

National Med. Enters., Inc. v. Godbey,
    924 S.W.2d 123 (Tex. 1996) ................................................................................. 23

OneBeacon Ins. Co. v. T. Wade Welch & Assocs.,
    No. H-11-3061, 2012 WL 393309 (S.D. Tex. Feb. 6, 2012) ....................... 2, 7, 23

Original Appalachian Artworks, Inc. v. May Dep't Stores Co.,
    640 F. Supp. 751 (N.D. Ill. 1986) ......................................................................... 18

Powell v. Home Depot U.S.A., Inc.,
    663 F.3d 1221 (Fed. Cir. 2011) ............................................................................ 21

Read Corp. v. Portec, Inc.,
    970 F.2d 816 (Fed. Cir. 1992) .............................................................................. 20

Rembrandt Techs., LP v. Comcast Corp.,
    No. 2:05-CV-443, 2007 WL 470631 (E.D. Tex. Feb. 8, 2007)............................................ 16

Stratagene v. Invitrogen Corp.,
    225 F. Supp. 2d 608 (D. Md. 2002) ......................................................................... 22

T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.,
    113 F. Supp. 265 (S.D.N.Y. 1953) ........................................................................... 18

Talon Research, LLC v. Toshiba Am. Elec. Components, Inc.,
    No. C 11-04819 WHA, 2012 WL 601811 (N.D. Cal. Feb. 23, 2012)................................. 22

Tendeka, Inc. v. Glover,
    No. H-13-1764, 2014 WL 2002260 (S.D. Tex. May 15, 2014)............................................ 19

United States ex rel. Fair Laboratory Practices Associates v. Quest Diagnostics
    Inc.,
    No. 05-5393, 2011 WL 1330542 (S.D.N.Y. Apr. 5, 2011) .................................................. 31

United States v. Basham,
    918 F. Supp. 2d 787 (C.D. Ill. 2013) ......................................................................... 19

United States v. Quest Diagnostics Inc.,
    734 F.3d 154 (2d Cir. 2013).................................................................................... 31

## RULES

Local Court Rules, AT-7(a) ...................................................................................... 15

Model Rules of Prof'l Conduct R. 1.10 cmt. 2 (2014) ........................................................ 23, 29

Model Rules of Prof'l Conduct R. 1.10(a)(2)..................................................................... 26

Model Rules of Prof'l Conduct R. 1.6(a) cmt. 4 (2014) ....................................................... 29

Tex. Disciplinary R. of Prof'l Conduct R. 1.09(a)................................................................ 22

Tex. Disciplinary R. of Prof'l Conduct R. 1.09(b) ............................................................... 22

Tex. Disciplinary R. of Prof'l Conduct, Terminology............................................................ 23

Defendants      SCHLUMBERGER      LIMITED      ("SCHLUMBERGER      N.V."),
SCHLUMBERGER HOLDINGS CORPORATION, and SCHLUMBERGER TECHNOLOGY
CORPORATION (collectively, "Schlumberger") hereby move for an Order disqualifying:
(1) Charlotte H. Rutherford, Esq. ("Rutherford")[1] based on her prior representation of
Schlumberger in matters that are substantially related to this case; (2) all in-house counsel of
Acacia Research Corporation ("Acacia") and its subsidiaries, including DYNAMIC 3D
GEOSOLUTIONS LLC ("Plaintiff"), based on the irrebuttable imputation of Rutherford's
conflict to her fellow Acacia attorneys; and (3) Plaintiff's outside counsel in this matter, Collins,
Edmonds & Pogorzelski ("Collins Edmonds"), based on its communications with Rutherford
and/or other Acacia-affiliated attorneys subject to disqualification.  Schlumberger also moves to
dismiss this case without prejudice based on the conflicts of interest that infected the inception of
this case.

The Motion is based on: (1) the Memorandum of Points and Authorities set forth below;
and (2) an Appendix that, pursuant to Local Rule CV-7(d)(1), sets forth all declarations,
deposition transcripts,[2] and other documents[3] supporting the Motion's relied upon facts.

---

[1]   Rutherford was previously known as Charlotte H. Copperthite.  For clarity, the Motion uses
her current surname, "Rutherford."

[2]   Prior to August 12, 2014, the Court had stayed discovery in this case, pending claim
construction.  However, Schlumberger took a deposition of Rutherford in Schlumberger Ltd.
v. Rutherford (Tex. Dist. Ct.—Harris Cnty. [127th Dist.] 2014) (No. 2014-13621).  True and
correct copies of the cited portions of Rutherford's deposition transcripts are attached as
Exhibits 1 and 2.

[3]   Some relevant facts are derived from a privilege-log level description of documents in
Schlumberger's possession that are subject to the attorney-client privilege and/or attorney
work product doctrine.  Ex. 3, SLB Log.  The privilege-log level descriptions of those
documents reflect Rutherford's work on, and receipt of confidential information regarding,
matters that are substantially related to this litigation.  Schlumberger believes that these
motion papers, including the privilege log level description of documents, demonstrate its
right to the requested relief without the need for further disclosure.  If, however, the Court

MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The disqualification issue regarding Rutherford's unethical representation of Acacia, adverse to her former client Schlumberger, is very serious.  The facts here are not as the Court was led to believe at the initial status conference on April 22, 2014.  At that hearing, Plaintiff's counsel, Michael Collins, represented to the Court:

> **Ms. Rutherford has been screened from any discussion with anyone at my** [Collins] **firm that involves Schlumberger** or any of its products or technology; and that **no one at my firm has ever had a conversation with Ms. Rutherford about anything related to Schlumberger** or its technology **other than the fact that we had to be screened**, much less any kind of substantive conversation."

Ex. 4, 1st Pretrial Hr'g Tr. 8:17-23 (emphasis added).  That representation was false.  Rutherford testified under oath[4] as follows:

Q.    Can you describe for me your involvement in the decision to acquire the '319 Patent by Acacia?
       MR. COLLINS: Objection, calls for information protected by the attorney/client privilege and attorney work product doctrine.
       [objection withdrawn]
A.    So, my involvement was to concur with the recommendation to acquire the '319 Patent.
Q.    (BY MR. GRANT)  Whose recommendation?
A.    **Outside Counsel** and Gary Fischman, my Licensing Executive IP Counsel, along with the engineer, Phil Mitchell.
Q.    Okay.  **So, you -- you received recommendations from the Collins Edmonds firm, from Mr. Fischman and from Mr. Mitchell to acquire the patent, correct**?
A.    Yes. Mr. Mitchell was working at the direction of Counsel.
Q.    Which Counsel?
A.    He was working at the direction of both outside Counsel and in-house Counsel.

---

wishes to review additional details, the cited documents are available for in camera review.  See OneBeacon Ins. Co. v. T. Wade Welch & Assocs., No. H-11-3061, 2012 WL 393309, at *8 n.3 (S.D. Tex. Feb. 6, 2012) (court requested "unredacted copies [of exhibits], for in camera review" in order to assess the existence of a substantial relationship).

[4]    Plaintiff's counsel attended the deposition, representing Acacia, and made objections and issued instructions not to answer at various points in Rutherford's testimony.

* * * * *

Q.    (BY MR. GRANT)  **Did they make a presentation, any one of those three, to you**?

A.    **Presentation was made by outside Counsel**.

Q.    Okay. Again, was that PowerPoint?

A.    Yes.

Q.    Okay. **How long did that presentation last**?

A.    **As best I recall, it was about an hour**.

Q.    Okay. **Was Schlumberger referenced in that presentation**?

A.    **Yes**.

Ex. 1, Rutherford Dep. vol. 1 (hereinafter "CR Dep. vol. 1"), 79:17-81:1, 82:8-17 (most objections omitted).

Rutherford went on to testify that she "**concurr[ed] with the recommendation from outside counsel** [Plaintiff's counsel, Collins] **and in-house counsel** [Gary Fischman, the Acacia executive who attended the April 22 hearing, as well as the recent status conference on August 12] **to acquire the 319 Patent and to sue Schlumberger**."  Ex. 2, Rutherford Dep. vol. 2 (hereinafter "CR Dep. vol. 2"), 31:11-18; see also id. at 27:10-12 ("I concurred with the decision by the company to acquire the 319 Patent and to enforce the patent through litigation"); 27:2-4 (Rutherford made a "communication [which] was the concurrence to acquire and file the litigation against Schlumberger by [Plaintiff] Dynamic 3D").  Rutherford specifically testified that she communicated with Plaintiff's counsel on this subject:

Q.    **Did you tell anyone outside of Acacia about your decision to concur in the acquisition of the 319** [Patent] **or the filing of the lawsuit against Schlumberger**?

A.    **So if you consider outside counsel to be outside of Acacia and outside counsel was on -- in that meeting or a conversation about whether or not to acquire and litigate, then I would say, yes, but it was only outside counsel**.

Id. at 35:7-23 (objections omitted).

3

Rutherford's sworn testimony refutes the representation made to the Court that Rutherford was "screened" from this case.[5]  Instead, she spoke and communicated directly with her colleagues at Acacia and the Collins Edmonds firm regarding the decision to sue Schlumberger, thereby confirming the ethical violation that requires disqualification of the attorneys involved in this suit and dismissal of this case.

## II.   <u>BACKGROUND</u>

Plaintiff is a shell corporation formed by well-known patent assertion entity, Acacia Research Corporation ("Acacia"), for the purpose of filing lawsuits on U.S. Patent No. 7,986,319 ("the '319 Patent") against companies in the energy market, including Schlumberger.  Acacia hired Rutherford, Schlumberger's long-time senior intellectual property attorney, directly from Schlumberger just months prior to its acquisition of the '319 Patent.  Acacia hired Rutherford because of her "extensive experience in managing intellectual property issues at leading U.S. companies," including Schlumberger, "to focus on monetizing energy technologies."[6]

---

[5]   Collins made similar misrepresentations on three other occasions that are refuted by Rutherford's sworn testimony.

First, Collins represented to the Court: "From the onset of [Collins Edmonds'] engagement . . . Ms. Rutherford has been screened from any discussion that involves Schlumberger, or any of its products or technology.  No one at [Collins Edmonds] has received any information of any kind related to Schlumberger or Petrel from Ms. Rutherford."  Ex. 5, Collins' Apr. 21, 2014 Letter, at 3 (emphasis added).

Second, Collins represented to Schlumberger's counsel: "Since the time of her arrival at Acacia, Ms. Rutherford has been screened and will continue to be screened from any discussion that involves Schlumberger, or any of its products or technology."  Ex. 6, Collins' May 5, 2014 Letter, at 3 (emphasis added).

Third, even after Rutherford admitted communicating with Collins regarding Acacia's decision to acquire and file suit on the '319 Patent, Collins represented that: "Ms. Rutherford has at all times been screened from this case and she has never discussed Schlumberger (beyond informing people that she is screened from Schlumberger matters) or Petrel with any counsel, or with anyone at Acacia or [Plaintiff] Dynamic 3D Geosolutions."  Ex. 7, Collins' June 9, 2014 Letter, at 2 (emphasis added).

[6]   Ex. 8, Acacia's June 3, 2013 Press Release, at 2.

While a senior intellectual property lawyer for Schlumberger, Rutherford was intimately involved in the rendering of legal advice about Schlumberger's Petrel Product ("Petrel"), the sole product accused of patent infringement in this case. Rutherford managed a copyright litigation for Schlumberger about the Petrel product. She led Schlumberger's efforts to assess intellectual property risks and protect its intellectual property rights, including with respect to the Petrel product. With knowledge of her long-standing representation of Schlumberger on these matters, Acacia hired Rutherford for the purpose of "monetizing energy technologies" (i.e., suing energy companies for patent infringement). Rutherford started work at Acacia just three days after she left Schlumberger. Within one month of her departure from Schlumberger, Rutherford began to participate in Acacia's decision to acquire and file suit against Schlumberger on the '319 Patent. Rutherford participated in meetings regarding the '319 Patent at which Schlumberger and its Petrel product were discussed and identified as a potential target for assertion of the patent. Rutherford personally approved the decision to acquire and file lawsuits on the '319 Patent, and her "concurrence" recommendation was considered by Acacia's CEO prior to Acacia's decision to sue Schlumberger.

Rutherford was a key participant in the decision by Acacia to acquire and file suit against Schlumberger on the '319 Patent. Acacia acquired the patent through its subsidiary, Acacia Research Group LLC ("ARG"). The '319 Patent was then assigned to Plaintiff Dynamic 3D Geosolutions LLC, after the Plaintiff was incorporated for the purpose of filing patent infringement lawsuits against Schlumberger and other defendants. Plaintiff has no employees, but is a wholly-owned subsidiary of ARG. ARG, in turn, is a wholly-owned subsidiary of Acacia. Because Plaintiff is a shell corporation established for purposes of filing '319 Patent litigation, all actions taken on Plaintiff's behalf are controlled by Acacia's in-house legal

department working together with the Collins Edmonds firm, Plaintiff's counsel of record in this case. Indeed, it is Acacia's in-house lawyer, Gary Fischman, who has attended the Court's April and August 2014 status conferences as the Plaintiff's corporate "representative." Ex. 4, 1st Pretrial Hr'g Tr. 3:7-11; Ex. 9, 2nd Pretrial Hr'g Tr. 3:8-13.

Plaintiff filed this case on February 4, 2014 and sued Halliburton that same day with a complaint that is virtually identical to its Complaint against Schlumberger.[7] Plaintiff has since filed four more complaints alleging infringement of the '319 Patent by other companies in the energy sector.[8]

Under long-standing Fifth Circuit precedent, (1) Rutherford, and (2) all of Acacia's in-house counsel <u>must</u> be disqualified from this case. Additionally, (3) Plaintiff's outside counsel should be disqualified in this case. And, because this action has been infected from its inception by Rutherford's conflict of interest, this case should be dismissed.

## III.   <u>SUMMARY OF ARGUMENT</u>

First, Rutherford <u>must</u> be disqualified from representing Acacia in this case because it raises issues substantially related to her representation of her former client, Schlumberger. It cannot be credibly disputed that Rutherford knows a massive amount of Schlumberger's privileged, confidential, secret, proprietary, and trade secret information in general. Nor can it be credibly disputed that Rutherford represented Schlumberger in intellectual property analysis and litigation regarding Petrel, the very product at issue in this case.

Rutherford also has deep familiarity with Schlumberger's privileged and confidential information regarding its efforts to monetize, enforce, and strengthen its patent portfolio, in

---

[7]   <u>See</u> Ex. 10, Pl.'s Halliburton Compl.

[8]   <u>See</u> Ex. 11, Pl.'s Emerson Elec. Co. Compl.; Ex. 12, Pl.'s LMK Res., Inc. Compl.; Ex. 13, Pl.'s Paradigm, B.V. Compl.; Ex. 14, Pl.'s IHS Inc. Compl.

defending itself from intellectual property claims of others, and has extensive experience with Schlumberger's litigation and settlement strategies.   Once the Court finds a substantial relationship on these indisputable facts, there is no discretion for the Court to exercise—long-standing and controlling Fifth Circuit precedent <u>requires</u> that Rutherford be disqualified.[9]

Second, and as a matter of law, Rutherford's conflict is irrebuttably imputed to all other counsel in Acacia's legal department.  Acacia's purported efforts to "screen" Rutherford fail as a matter of law and of fact.  Fifth Circuit law does not permit an ethics "screen" to overcome the irrebuttable imputation of a fellow attorney's conflict.  Further, although of no relevance under the Fifth Circuit's standards, any efforts by Acacia to "screen" Rutherford came far too late and are legally insufficient to meet the requirements of an effective "screen," even in those non-Texas jurisdictions that recognize such screens.  Instead, Rutherford's own sworn testimony establishes that she "concurred" in a recommendation by the Collins Edmonds firm to sue Schlumberger and her recommendation was presented to Acacia's CEO, who then authorized the filing of this suit.  All other lawyers in Acacia's legal department suffer from an incurable conflict of interest and must also be disqualified.  Based on the indisputable facts and the irrebuttable presumption that pertains, there is no discretion for the Court to exercise here either—the controlling Fifth Circuit precedent <u>requires</u> that all lawyers in Acacia's legal department be disqualified.[10]

---

[9]  <u>In re Am. Airlines, Inc.</u>, 972 F.2d 605, 611 (5th Cir. 1992) ("[A] a lawyer who has given advice in a substantially related matter <u>must be disqualified</u>, whether or not he has gained confidences." (emphasis added)).

[10]  <u>Id.</u> at 614 n.1 (stating, in <u>dicta</u>, that "A second <u>irrebuttable</u> presumption is that confidences obtained by an individual lawyer will be shared with the other members of his firm." (emphasis added) (citation omitted)); <u>OneBeacon</u>, 2012 WL 393309, at *5-6 (finding irrebuttable presumption discussed in <u>In re. Am. Airlines</u>, 972 F.2d at 614 n.1, still applies where attorney received confidential information about substantially related matters during course of prior representation).

Third, the Collins Edmonds firm has engaged in substantive conversations and jointly prepared for trial with Rutherford and other members of Acacia's in-house legal department. Those contacts raise a rebuttable presumption that disqualified counsel shared confidential information with attorneys at the Collins Edmonds firm that could only be rebutted by proof that "there was no reasonable prospect that the opposing party's confidential information was disclosed and that it was not disclosed." The Collins Edmonds firm cannot meet this burden because Rutherford's testimony confirms that she has had substantive communications with outside counsel in the preparation and filing of this lawsuit and, in approving the Collins Edmonds firm's recommendation to sue Schlumberger and her concurrence in the filing of the lawsuit against Schlumberger implicitly shared Schlumberger's confidential information

Last, because this action has been infected from its inception by counsel's conflicts of interest, the complaint should be dismissed without prejudice to its possible renewal by counsel untainted by the conflicts of interest detailed herein.

## IV.    FACTUAL BACKGROUND

### A.    Rutherford's Background and Employment at Schlumberger.

Rutherford has been a member of the Texas Bar since 1988. CR Dep. vol. 1, 113:5-21. Rutherford lives in Texas and worked as an attorney within the state for both Schlumberger and Acacia. Id. at 113:22-23, 241:18-21. Schlumberger hired Rutherford in 2006 as one of its intellectual property counsel. Id. at 113:24-114:6. Rutherford served as Schlumberger's Senior Counsel, Licensing and Litigation from 2006 until 2009. In 2009, Rutherford was promoted to Deputy General Counsel for Intellectual Property. Id. at 141:25-142:5.[11] As Deputy General

---

[11]   Rutherford's job description changed after her promotion in 2009.  Her initial title in that new position was "Director of Intellectual Property," but it was later changed to "Deputy

Counsel for IP, Rutherford was responsible for "developing and implementing . . . [Schlumberger's] worldwide IP strategy."  Ex. 15, Director of IP Description. In this role she developed, implemented, and oversaw Schlumberger's intellectual property programs, including monetization, enforcement (including litigation), and operation of Schlumberger's business segments.  Id.  Rutherford was also "[r]esponsible for protecting and preserving . . . [Schlumberger's] IP assets including patents, trademarks and trade secrets by establishing and maintaining best practices and procedures."  Id.

As detailed below, Rutherford personally represented Schlumberger in a variety of matters substantially related to Plaintiff's patent infringement claims during her seven years as an intellectual property lawyer for Schlumberger.

1.  Rutherford Directed a Twelve-Person Team Charged with Performing a Comprehensive Legal and Technical Assessment of Schlumberger's Petrel Product, the Product That Is at the Center of Plaintiff's Claims in This Case.

In 2007, Rutherford led a 12-person team responsible for performing what Rutherford dubbed a "Goldstar" assessment of Schlumberger's Petrel product for the dual purposes of assessing risk of lawsuits against it and of broadening Petrel's intellectual property coverage. Ex. 3, SLB Log 1-5; see also supra note 3 (explaining source of factual predicate for this subsection).  Projects designated for Goldstar assessment received intense scrutiny from Schlumberger's intellectual property department.  As coordinator of the Goldstar analysis for the accused Petrel product, Rutherford participated in at least six meetings with fellow Schlumberger counsel.  Ex. 3, SLB Log 1-5.  Among other things, those meetings involved: (1) a strategy session to define the strategy map and prepare for the filing of patent applications; (2) finalization of Petrel Goldstar documents; and (3) the review and revision of the Petrel patent

---

General Counsel for Intellectual Property."  To avoid confusion this brief  uses "Deputy General Counsel for Intellectual Property"  CR Dep. vol. 1, 141:25-142:5.

application, with specific focus on expanding disclosures, refining claims, and preparing for filing.  Id. at 2.  Rutherford also participated in Schlumberger's retention of outside counsel to perform patent strategy analysis for the Petrel product.  Id. at 1.

Rutherford received written reports for each phase of the Petrel Goldstar intellectual property assessment.  Id. at 1-5.  One of the reports discussed Schlumberger's competitors' products, including Austin GeoModeling's ("Austin Geo") RECON product—a predecessor to Plaintiff's RECON 3.0 product, which Plaintiff claims is covered by the '319 Patent.  Ex. 16, Pl.'s Schlumberger Compl. ¶¶ 17-18.  Rutherford also received: (1) a memo analyzing the patent portfolio, competitive landscape, and business/IP strategies of Petrel and Petrel's competitor products; (2) a document discussing business and technology plans for the Petrel product from 2007 to 2012, issued in February 2007 by Schlumberger Information Systems ("SIS"), the business unit responsible for Petrel; (3) a chart reflecting the intellectual property rights occupied by Petrel and Petrel's competitor products; (4) a plan to strengthen intellectual property coverage for Petrel, including filing new patent applications and/or acquiring technology via licensing and acquisitions; and (5) a document mapping Petrel as it existed, Petrel as it was expected to exist after addition of database functions, and Petrel's competitor products. Ex. 3, SLB Log 2-4.

2.    Rutherford Represented Schlumberger In Its Efforts to Enforce, Monetize, and Strengthen Schlumberger's Patent Portfolio, Including Patents on the Alleged-Infringing Petrel Product.

Rutherford had responsibility for developing Schlumberger's patent enforcement and licensing programs.  CR Dep. vol. 1, 114:25-115:7.  Rutherford directed intellectual property enforcement lawsuits and provided input on litigation strategies, including Schlumberger's patent litigation in the energy sector.  Id. at 115:13-21, 122:8-11.  Rutherford also advised on important intellectual property enforcement actions brought by Schlumberger's various business units, including SIS, the business unit responsible for Petrel.  Id. at 117:22-118:15, 124:18-24.

For example, in 2007, Rutherford managed a copyright infringement case Schlumberger filed in Canada over the unlicensed copying of software in Schlumberger's Petrel product. Id. at 124:12-126:16; see generally Ex. 17, Holloway Decl. This included "explain[ing] to [trial counsel] the nature of the Petrel software, and deliver[ing] to [trial counsel] information regarding its authorship and [Schlumberger]'s ownership." Id. ¶ 6. Rutherford reviewed and approved the "statement of claim (i.e., complaint) . . . which asserts [Schlumberger]'s ownership of the Petrel software and the nature of damages [Schlumberger] would suffer." Id. ¶ 7. Rutherford also reviewed and approved materials disclosing: (1) "a description of the Petrel software and [Schlumberger]'s standard licensing terms"; (2) "the value of the Petrel software (e.g., licensing rates and streams)"; and (3) the harm to Schlumberger flowing from the defendant's infringing activities. Id. ¶¶ 10-11.

> On virtually every important matter, Ms. Rutherford was directly and personally involved. In virtually every case where anyone else at [Schlumberger] communicated with me, Ms. Rutherford was copied on those communications. In addition to providing instructions, Ms. Rutherford was very involved in assessing the strength of [Schlumberger]'s case, formulating our litigation strategy, and formulating settlement goals and discussions.

Id. at ¶ 15. Rutherford also worked with outside counsel on other Schlumberger patent and trademark cases, and "Rutherford was also personally involved in formulating litigation and in some cases settlement strategy" in those cases as well. Id. at ¶ 17.

Rutherford managed Schlumberger's efforts to monetize its patents and other intellectual property assets. CR Dep. vol. 1, 119:4-120:4. Rutherford participated in efforts to strengthen Schlumberger's patent portfolio, id. at 171:19-172:19, and received at least two presentations about the desirability of strengthening patents covering products managed by the SIS unit of Schlumberger, including the Petrel product, id. at 151:1-151:16. Rutherford represented Schlumberger in matters relating to versions of the Petrel product that are not materially different

than the versions of Petrel accused of infringement in this case: "The features and functionality identified by [Plaintiff] as allegedly infringing existed in versions 2005, 2007, 2008, 2009, 2010, 2011, 2012, and 2013 of Petrel." Ex. 18, Beardsell Decl. ¶ 5.

> **B.     Rutherford Left Schlumberger and Immediately Began Work at Acacia On Intellectual Property Matters Concerning Schlumberger, the Accused Petrel Product, and the '319 Patent.**

Just three days after leaving Schlumberger, Rutherford started work at Acacia as its Senior Vice President and Associate General Counsel. Ex. 1-A, Rutherford Corrections to CR Dep., vol. 1, at 3. Rutherford accepted the position at Acacia some seven (7) weeks before her departure and more than a month before giving Schlumberger notice, on April 10, 2013, and performed work on behalf of Acacia prior to termination of her employment at Schlumberger. CR Dep. vol. 1, 255:12-20. Acacia hired Rutherford to direct Acacia's efforts to find, acquire, and assert patents against defendants in the energy industry. Ex. 8, Acacia's June 3, 2013 Press Release (Rutherford "[j]oin[ed] the Acacia team . . . [to] monetize[e] energy technologies"). Rutherford opened Acacia's Houston office, the office of Acacia that is responsible for "monetizing" Acacia's energy related patents. CR Dep. vol. 1, 241:1-21; see also Ex. 19, Acacia's Dec. 9, 2013 Press Release. Acacia's Houston office employs: (1) Gary Fischman, an intellectual property attorney responsible for '319 Patent litigation, CR Dep. vol. 1, 98:10-20, 102:16-20, 103:20-104:4; and (2) Phillip Mitchell, an engineer who works on '319 Patent matters at the direction of Fischman and the Collins Edmonds firm, id. at 80:19-81:5. Rutherford is the senior Acacia employee in the Houston office; both Fischman and Mitchell report to her. Id. at 41:7-24.

      1.      <u>Rutherford Met With the Founders of Austin Geo (the Named Inventors of the '319 Patent) and Participated in Acacia's Decision to Acquire the '319 Patent Knowing That Schlumberger's Petrel Product Was a Potential Target of Suit.</u>

Shortly after being hired by Acacia, Rutherford participated in two meetings with the named inventors of the '319 Patent for the purpose of assessing whether Acacia should acquire the '319 Patent for possible assertion against companies in the energy market. <u>Id.</u> at 58:14-60:1, 68:3-69:7.   Other members of Acacia's legal and engineering departments were present, including Fischman, who participated in the second meeting.   <u>Id.</u> at 59:5-60:1, 66:10-16. Rutherford admits that she was acting as a lawyer for Acacia at both of these meetings.   <u>Id.</u> at 141:8-19.

Rutherford admits that Schlumberger and its Petrel product were discussed and the company was  identified as a potential target for assertion of the patent.  <u>Id.</u> at 65:4-20, 70:6-19; CR Dep. vol. 2, 37:10-25, 46:3-11.  Rutherford did not excuse herself from either meeting even though Schlumberger and Petrel were discussed.  CR Dep. vol. 1, 82:18-85:13.

      2.      <u>Rutherford Participated In and Approved Acacia's Decision to Acquire the '319 Patent and File Suit Against Schlumberger's Petrel Product.</u>

Rutherford participated in Acacia's decision to acquire the '319 Patent and sue Schlumberger on it.  Indeed, although Acacia was a aware of the '319 Patent before it hired Rutherford, it only decided to acquire it <u>after</u> she got involved and concurred in the decision to acquire the patent.  CR Dep. vol. 1, 77:25-78:3.  For example, Rutherford participated in a conference call with: (1) Fischman; (2) Michael Collins, a Shareholder at the Collins Edmonds firm; (3) Matthew Vella, Acacia's CEO; and (4) the named inventors of the '319 Patent.  <u>Id.</u> at 70:24-71:16.  Rutherford admits this call was conducted in anticipation of litigation.  <u>Id.</u> at 71:17-19.

Rutherford then received recommendations from Fischman, Collins, and Mitchell that Acacia acquire and file suit against Schlumberger on the '319 Patent.  Id. at 79:17-81:5.  After being presented with a PowerPoint presentation by Collins discussing Schlumberger, id. at 82:8-17; 86:9-87:22; 99:11-100:5, Rutherford approved the recommendations to acquire the '319 Patent and to sue Schlumberger on it.  Id. at 79:17-81:5; 86:6-88:15; CR Dep. vol. 2, 27:2-4, 27:10-12, 31:11-18, 35:7-23 (objections omitted).

Rutherford admits that she was acting as Acacia's lawyer when she reviewed and approved those recommendations.  CR Dep. vol. 1, 141:20-24.  Rutherford approved the recommendations despite knowing that Acacia had identified Schlumberger as a potential target for a patent infringement suit based on the '319 Patent.  Id. at 63:24-64:9, 77:14-16; CR Dep. vol. 2, 37:10-25, 46:3-11.  With Rutherford's recommendation in-hand, Fischman and Collins Edmonds made the same presentation to Vella, Acacia's CEO and a member of Acacia's in-house legal department.  With the benefit of Rutherford's approval, Vella authorized acquiring the '319 Patent and suing Schlumberger.  CR Dep. vol. 1, 86:6-88:15.

        3.        Rutherford Admits to Working on Related '319 Patent Litigation
                Against Halliburton – and That Work Appears to Be Ongoing.

Rutherford admits that she was involved in '319 Patent litigation against Halliburton both prior to and after the filing of the complaint against Schlumberger.  Rutherford admits that, in the Summer of 2013, she reviewed the '319 Patent in anticipation of litigation.  Id. at 56:15-23.  Rutherford and Fischman made the decision to retain Collins Edmonds as Plaintiff's counsel of record in all '319 Patent litigation, including the case against Schlumberger.  Id. at 108:8-109:11.  Rutherford later reviewed a draft of the complaint that Plaintiff then filed against Halliburton on the same day Plaintiff sued Schlumberger.  Id. at 29:15-31:1, 78:11-79:4.  That complaint is identical in all material respects (and virtually identical in all respects) to the Complaint against

Schlumberger.  Compare Ex. 10, Pl.'s Halliburton Compl. with Ex. 16, Pl.'s Schlumberger Compl.  Rutherford requested that Fischman provide her with a copy of the complaint filed against Schlumberger so that she could review it.  CR Dep. vol. 2, 16:7-22.  Rutherford admits that she had discussions with Fischman regarding protection of Plaintiff's patent rights both before and after Plaintiff acquired the '319 Patent, and those discussions continued even after Plaintiff filed its complaint against Schlumberger.  Id. at 21:1-5, 21:12-21.  Rutherford admits that she was acting as a lawyer during those discussions, id. at 19:4-18, 21:22-22:3, but refused to disclose the substance of those communications; both Acacia and Plaintiff have asserted privilege.  Id. at 23:9-19.

## V.    DISCUSSION

A "[d]istrict [c]ourt is obliged to take measures against unethical conduct occurring in connection with any proceeding before it."   In re Am. Airlines, 972 F.2d at 611 (emphasis in original) (quotation and citations omitted); Ex. 20, Burton Decl. ¶ 17.  As a result, "[a] motion to disqualify counsel is the proper method for a party-litigant to bring the issues of conflict of interest or breach of ethical duties to the attention of the court."   In re Am. Airlines, 972 F.2d at 611 (quoting Musicus v. Westinghouse Elec. Corp., 621 F.2d 742, 744 (5th Cir. 1980)).  "[U]nless a conflict is addressed by courts upon a motion for disqualification, it may not be addressed at all."  Id.  As the Fifth Circuit observed in In re American Airlines, Inc., motions to disqualify are "our business—our responsibility."  Id.

"When considering motions to disqualify, courts should first look to 'the local rules promulgated by the local court itself.'"  In re ProEducation Int'l., Inc., 587 F.3d 296, 299 (5th Cir. 2009) (quoting FDIC v. U.S. Fire Ins. Co., 50 F.3d 1304, 1312 (5th Cir. 1995)).  The Local Court Rules for the Western District of Texas provide that "any attorney permitted to practice before [the Court] must comply with the standards of professional conduct set out in the Texas

Disciplinary Rules of Professional Conduct [("Texas Rules")] . . . which are hereby adopted as the standards of professional conduct."  Local Court Rules, AT-7(a).  "For matters not covered by the Texas rules," the ABA Model Rules should be consulted.  Id.; see also Ex. 20, Burton Decl. ¶ 19.  When there is conflict among the relevant ethical canons, courts in the Fifth Circuit apply the more stringent of the standards.[12]

### A.   All Members of Acacia's In-House Legal Department Are Subject to the Court's Jurisdiction By Virtue of Their Substantial and Ongoing Participation In This Matter.

The Court has jurisdiction over Rutherford and Acacia in-house counsel, and to take appropriate action to remedy all unethical conduct, even though they have not entered a formal appearance in this case.  See E.F. Hutton & Co. v. Brown, 305 F. Supp. 371, 379-81 (S.D. Tex. 1969) (finding jurisdiction over out-of-state firm that had not made an appearance); Ackerman v. Nat'l Prop. Analysts, Inc., 887 F. Supp. 510, 516 (S.D.N.Y. 1993) (issuing disciplinary order against attorney who had not made an appearance), aff'd, 60 F.3d 810 (2d Cir. 1995).

Acacia's in-house legal department has submitted to the Court's jurisdiction through its participation in Plaintiff's patent infringement suit against Schlumberger.  Rutherford, Fischman, and Mitchell—all employees of ARG—participated in meetings in Austin, Texas, CR Dep. vol. 1, 66:17-21, regarding Acacia's acquisition of the '319 Patent and potential suit against Schlumberger, id. at 65:4-20, 70:6-19; CR Dep. vol. 2, 37:10-25, 46:3-11.  Vella, Acacia's CEO,

---

[12]   In re Dresser Indus., Inc., 972 F.2d 540, 544-45 (5th Cir. 1992) (finding error in exclusive reliance on Texas Rules, which did not require informed consent before accepting representation giving rise to concurrent conflict of interest); Galderma Labs., L.P. v. Actavis Mid Atl. LLC, 927 F. Supp. 2d 390, 396 (N.D. Tex. 2013) (applying ABA Model Rules, which required informed consent before waiver of conflict premised on prior representation); JuxtaComm-Texas Software, LLC v. Axway, Inc., No. 6:10-CV-2011, 2010 WL 4920909, at *2 (E.D. Tex. Nov. 29, 2010) ("The Fifth Circuit has shown a preference for the more stringent ABA Model Rule . . . ." (citing In re Dresser, 972 F.2d at 544)); Rembrandt Techs., LP v. Comcast Corp., No. 2:05-CV-443, 2007 WL 470631, at *2 (E.D. Tex. Feb. 8, 2007) (applying stricter ABA Model Rule).

is also a member of Acacia's in-house legal department and communicated with Rutherford regarding the decision to acquire and file suit against Schlumberger on the '319 Patent.[13] According to Rutherford, Fischman continues to manage all '319 Patent litigation together with Collins Edmonds, Plaintiff's counsel of record.  CR Dep. vol. 1, 98:10-20, 102:16-20, 103:20-104:4.  Indeed, Fischman appeared as Plaintiff's corporate "representative" at the first pretrial scheduling conference, the status conference on August 12, and in the parties' meet and confer process relating to the disqualification issue.  See Ex. 4, 1st Pretrial Hr'g Tr. 3:7-11; Ex. 9, 2nd Pretrial Hr'g Tr. 3:8-13; Ex. 21, Joint Status Report, at 3-5.

**B.     Rutherford Suffers From An Incurable Conflict of Interest Based on Her Prior Representation of Schlumberger in Matters Substantially Related to Her Representation of Acacia In This Case.**

An attorney may not be adverse to a former client in a matter that is substantially related to her representation of a former client.  The party seeking disqualification under the "substantial relationship" test must show: (1) an actual attorney-client relationship between the movant and attorney it seeks to disqualify; and (2) a substantial relationship between the subject matter of the former and current representations.  In re Am. Airlines, 972 F.2d at 614.

1.     Rutherford Admits That Schlumberger Is Her Former Client to Whom She Owes A Fiduciary Duty and the Duties of Candor and Loyalty.

Rutherford has acknowledged her prior employment in Schlumberger's in-house legal department.  CR Dep. vol. 1, 128:24-25 ("I understand that as an attorney, having worked for Schlumberger, I have fiduciary duties to Schlumberger.").  Rutherford further acknowledges that she owes Schlumberger: (1) fiduciary duties; (2) a duty of candor; and (3) a duty of loyalty.  Id.

---

[13]  See the State Bar of California's profile for Matthew David Vella, Ex. 22, which provides that Vella has been Registered In-House Counsel ("RIHC") status since October 28, 2009. Vella works in the intellectual property law section of Acacia Technologies, which is based in Acacia's headquarters in Newport Beach, California.

at 122:12-123:25 (fiduciary duties); 128:18-129:16 (fiduciary duties); 130:5-9 (loyalty); 130:10-14 (candor).

> 2. <u>Rutherford's Representation of Acacia In Its Acquisition and Litigation of the '319 Patent Against Schlumberger Is Substantially Related to Rutherford's Prior Representation of Schlumberger.</u>

Due to the substantial relationship test's interest in protecting a former client's interest in loyalty, once a court finds that two representations are substantially related,

> [t]he court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation.  It will not inquire into their nature and extent.  <u>Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.</u>

<u>In re Am. Airlines</u>, 972 F.2d at 618 (quoting <u>T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.</u>, 113 F. Supp. 265, 268–69 (S.D.N.Y. 1953)).  Thus, once the Court finds that Rutherford's former representation of Schlumberger is substantially related to issues raised by this litigation, it need not inquire into the nature or extent of confidences she received; it is irrebuttably presumed that she received relevant confidences that could be used against Schlumberger in this case.

The Court, therefore, need not find that Rutherford actually disclosed Schlumberger's confidences in representing Acacia.

> [T]he "substantially related" branch of disqualification is a stringent one.  It may well result in disqualification of lawyers or firms that did absolutely nothing wrong: lawyers or firms that neither had nor used information in the prohibited way.  But that is because the rule is not intended to punish.  Instead it is intended as a guaranty to clients, and the guaranty cannot be too tightly tailored if it is to inspire confidence.

<u>Original Appalachian Artworks, Inc. v. May Dep't Stores Co.</u>, 640 F. Supp. 751, 755 (N.D. Ill. 1986).  As the Fifth Circuit explained in <u>Brennan's Inc. v. Brennan's Restaurants, Inc.</u>:

> A client would feel wronged if an opponent prevailed against him with the aid of an attorney who formerly represented the clients in the same matter.  As the court recognized in <u>E.F. Hutton</u> . . . , <u>this would undermine public confidence in the legal system as a means for adjudicating disputes.</u>

590 F.2d 168, 172 (5th Cir. 1979) (emphasis added); United States v. Basham, 918 F. Supp. 2d 787, 800 (C.D. Ill. 2013) ("'[B]ecause the most honorable lawyer cannot perform a frontal lobotomy on himself, he cannot be presumed to engage in [a] new representation and carry out his obligation of undivided fidelity to the new client without the use consciously or subliminally of the confidences and secrets reposed in him by the old client.'" (quoting MPL, Inc. v. Cook, 498 F. Supp. 148, 151 (N.D. Ill. 1980))); see also Ex. 20, Burton Decl. ¶ 21(a).

The subject matter between two representations "does not need to be 'relevant' in the evidentiary sense to be 'substantially related.'  It need only be akin to the present action in a way reasonable persons would understand as important to the issues involved."  In re Am. Airlines, 972 F.2d at 623 (internal quotation marks omitted) (quoting In re Corrugated Container Antitrust Litig., 659 F.2d 1341, 1346 (5th Cir. 1981), abrogated on other grounds, Gibbs v. Paluk, 742 F.2d 181 (5th Cir. 1984)); Ex. 20, Burton Decl. ¶ 21(a)-(c).[14]  Thus, the party moving for disqualification need not establish a "genuine threat that confidences revealed to his former counsel will be divulged to his present adversary."   In re Am. Airlines, 972 F.2d at 615 (quotation and citation omitted); Compare Ex. 20, Burton Decl. ¶ 21(a)-(c) with Ex. 20, Burton Decl. ¶¶ 23-24.

Under these long-standing principles, Rutherford must be disqualified.  Schlumberger is entitled to certainty that its confidential and privileged information will not be used against it, even inadvertently or subconsciously, by Rutherford.  Schlumberger is also entitled to prevent Rutherford's breach of her duty of loyalty through representation of an adverse party in matters

---

[14]  See also In re Riles, No. 620, 2000 WL 1062086, at *3 (Fed. Cir. July 20, 2000) (applying same standard); Tendeka, Inc. v. Glover, No. H-13-1764, 2014 WL 2002260, at *4 (S.D. Tex. May 15, 2014) (same); John Crane Prod. Solutions, Inc. v. R2R & D, LLC, No. 3:11-CV-3237-D, 2012 WL 3453696, at *2 (N.D. Tex. Aug. 14, 2012) (same); Dean Witter Reynolds, Inc. v. Clements, O'Neill, Pierce & Nickens, L.L.P., No. H-99-1882, 2000 WL 36098499, at *7 (S.D. Tex. Sept. 8, 2000) (same).

that are substantially related to her former representation of Schlumberger.  The only way to safeguard Schlumberger's interests in confidentiality and loyalty is to disqualify Rutherford in this matter.  In re Am. Airlines, 972 F.2d at 618-19.

There can be no colorable dispute that Rutherford's former representation of Schlumberger is substantially related to this matter.  Ex. 20, Burton Decl. ¶¶ 25(a)-(o) ("substantially related" under Fifth Circuit standard); see also Ex. 20, Burton Decl. ¶¶ 25(p), 26(a)-(d) ("substantially related" under Texas Supreme Court's standard).  As noted supra in Part IV.A, Rutherford was deeply involved in all aspects of intellectual property litigation and licensing activities for Schlumberger.  She managed a copyright lawsuit over the Petrel product and led a team responsible for examining the intellectual property rights and risks associated with the Petrel product.  Within one month of her departure from Schlumberger, Rutherford began to participate in Acacia's decision to acquire the '319 Patent and the decision to file this lawsuit accusing the Petrel product – a product on which she had worked – of patent infringement.  Plaintiff's pleadings directly raise legal and factual issues that implicate Rutherford's former representation of Schlumberger.  For example, Plaintiff's allegation that Schlumberger willfully infringed the '319 Patent, Ex. 16, Pl.'s Schlumberger Compl. ¶ 31, directly implicates Schlumberger's conduct during the period that Rutherford was in charge of Schlumberger's IP enforcement and risk assessment policies and conduct, see Fractus, S.A. v. Samsung Elecs. Co., 876 F. Supp. 2d 802, 844-52 (E.D. Tex. 2012) (stating "whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed" is relevant to a determination of willfulness (citing Read Corp. v. Portec, Inc., 970 F.2d 816, 826 (Fed. Cir. 1992), abrogated on other grounds, Markman v. Westview Instruments, Inc., 52 F.3d 967, 975

(Fed. Cir. 1995) (en banc)).  Thus, Plaintiff's willfulness allegation makes Rutherford's conduct while at Schlumberger relevant, as well as the conduct of lawyers who reported to her regarding Petrel and/or the patent-in-suit.

Plaintiff seeks reasonable royalty damages.  Ex. 16, Pl.'s Schlumberger Compl. ¶ 32; see also Ex. 21, Joint Status Report, at 27.  Rutherford's intimate knowledge of Schlumberger's licensing programs, including royalty rates Schlumberger was seeking and obtaining, is relevant to the reasonable royalty calculation that Plaintiff concedes is an issue in this case.  See, e.g., Powell v. Home Depot U.S.A., Inc., 663 F.3d 1221, 1239 n.3 (Fed. Cir. 2011) (one of the Georgia–Pacific factors that is relevant to determining the reasonable royalty rate is the "rates paid by the licensee for the use of comparable patents" (citing Georgia–Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970))).  Rutherford must be disqualified because her management of Schlumberger's licensing program is substantially related to this case.

There can be no genuine dispute that the subject matter between Rutherford's representation of Schlumberger and her representation of Acacia are "akin to the present action in a way reasonable persons would understand as important to the issues involved."  In re Am. Airlines, 972 F.2d at 623 (internal quotation marks omitted); Ex. 20, Burton Decl. ¶¶ 25(a)-(p). The Federal Circuit in In re Riles found that a Texas district court had not erred in finding a substantial relationship under far less compelling circumstances.  2000 WL 1062086, at *2-3.  In In re Riles, three outside counsel had represented Shell in eight patent matters.  The attorneys then transferred to a new firm and, eight months later, filed a patent-infringement claim against Shell for firm client, Riles.  Id. at *1.

> [The] district court [had] determined that the three attorneys, during their representation of Shell: (1) obtained knowledge of Shell's settlement and litigation strategy in patent litigation; (2) billed over 1,200 hours to Shell for a

variety of patent matters; and (3) consulted with Shell's in-house patent attorneys and executives to discuss confidential subject matters, including Shell's prelitigation, settlement, and litigation practices in patent disputes.

Id.  "The district court [further] determined that . . . [the] case involved a patent different from those patents involved in the three attorneys' prior representation of Shell," but nonetheless found that "the above factors sufficiently showed a substantial relationship between the three attorneys' former representations of Shell and the patent litigation" before the court.  Id.  The Texas district court properly concluded that: "[R]easonable persons would understand it important that the three attorneys of Riles' present counsel formerly represented Shell in the same type of litigation and were privy to Shell's strategies and practices in this type of litigation."  Id. at *1 (quotation and citation omitted).  In re Riles confirms that disqualification of Rutherford is required.[15]

---

[15] Indeed, disqualification is routine under circumstances less egregious than here.  See Talon Research, LLC v. Toshiba Am. Elec. Components, Inc., No. C 11-04819 WHA, 2012 WL 601811, at *4-7 (N.D. Cal. Feb. 23, 2012) (disqualifying counsel based on: (1) common PTO classifications between patents from prior representation and patents-in-suit; (2) overlap in products accused in prior representation and those accused in action before the court; (3) attorney's knowledge of key decision makers within defendant corporation regarding patents-in-suit; and (4) attorney's ability to capitalize on insight into former client's risk aversion); Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd., No. 10-1067-LPS, 2011 WL 2692968, at *10-11 (D. Del. June 22, 2011) (disqualifying firm based on prior representation that afforded access to confidential information regarding patent enforcement firm's "formation, patent licensing practices, negotiation of patent licenses, strategies for potential patent litigation, and ways of mitigating the risk of patent litigation"); Innovation Ventures, Inc. v. N2 Distrib., Inc., No. 08-10983, 2009 WL 2381836, at *2 (E.D. Mich. July 31, 2009) (disqualifying counsel based on finding that prior representation and instant lawsuit were "unquestionably related" because "the underlying products [we]re the same in both instances"); Stratagene v. Invitrogen Corp., 225 F. Supp. 2d 608, 612 (D. Md. 2002) (disqualifying counsel based on attorney's access to confidential information that could have been relevant to infringement and invalidity claims regarding patent); Millburn Mktg. Assocs. v. Parker Labs., Inc., No. 93-3540 (HLS), 1994 WL 228531, at *4 (D.N.J. May 17, 1994) (disqualifying counsel based on attorney's prior work on patent applications relating to products at issue in the litigation).

### C.   All Lawyers in Acacia's In-House Legal Department Suffer From Incurable Conflicts of Interest Pursuant to the Rule of Irrebuttable Imputed Disqualification.

Under Rule 1.09(b) of the Texas Rules, when attorneys become associated with a firm, no attorney within that firm shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so under Rule 1.09(a).[16]  The Texas Rules broadly define "firm" to include "a lawyer or lawyers employed in the legal department of a corporation."  Tex. Disciplinary R. of Prof'l Conduct, Terminology; see also Ex. 20, Burton Decl. ¶¶ 29(e)-(f).

This rule of irrebuttable imputed disqualification "gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm."  Model Rules of Prof'l Conduct R. 1.10 cmt. 2 (2014).  It is a prophylactic rule, and can result in disqualification of even attorneys who have done nothing wrong.  See Doe v. A Corp., 709 F.2d 1043, 1047 (5th Cir. 1983) (there "is a conclusive and irrebuttable presumption that permitting the lawyer who has switched loyalties to represent the adversary of a former client in substantially related litigation will lead to disclosure and misuse of confidential information obtained during the previous representation").  Under Rule 1.09(b), Rutherford's conflict is imputed to all other counsel in Acacia's legal department.  Ex. 20, Burton Decl. ¶ 29(a)-(k).

---

[16]  See In re Am. Airlines, 972 F.2d at 614 n.1 (stating, in dicta, that "A second irrebuttable presumption is that confidences obtained by an individual lawyer will be shared with the other members of his firm." (emphasis added) (citation omitted)); OneBeacon, 2012 WL 393309, at *5-6 (finding irrebuttable presumption discussed in In re. Am. Airlines, 972 F.2d at 614 n.1, still applies where attorney received confidential information about substantially related matters during course of prior representation); Dean Witter Reynolds, 2000 WL 36098499, at *7 ("[T]here 'is, in effect, an irrebuttable presumption that an attorney in a law firm has access to the confidences of the clients and former clients of other attorneys in the firm.'" (quoting National Med. Enters., Inc. v. Godbey, 924 S.W.2d 123, 131 (Tex. 1996)); In re Guar. Ins. Servs., Inc., 343 S.W.3d 130, 133-34 (Tex. 2011) ("When the lawyer moves to another firm and the second firm represents an opposing party to the lawyer's former client, a second irrebuttable presumption arises—that the lawyer has shared the client's confidences with members of the second firm."); see also Ex. 20, Burton Decl. ¶¶ 27-28.

1.    <u>Rutherford's Conflict Must Be Imputed to All Counsel In Acacia's In-House Legal Department.</u>

The fact that Plaintiff is technically a separate corporation from Acacia does not shield any of Acacia's in-house counsel from disqualification.  Plaintiff, a wholly-owned Acacia subsidiary, is a client of Acacia's in-house legal department.  Plaintiff depends entirely on Acacia's in-house legal department for its strategy and conduct in this litigation.  Rutherford acknowledges that Plaintiff has no employees.  CR Dep. vol. 1, 36:22-37:1.  Plaintiff's Corporate Disclosure Statement provides that ARG is its parent—the very entity that employs both Rutherford and Fischman.  Ex. 23, Pl.'s Corp. Disclosure Stmt.  Acacia, in turn, owns 100% of ARG.  <u>Id.</u>  Plaintiff's Certificate of Formation also states that Plaintiff will not have managers, but rather will be governed by its members. Ex. 24, Pl.'s Cert. of Formation.  The Certificate lists "Acacia Research Group LLC" as its sole governing member.  <u>Id.</u>

Acacia's in-house legal department actively represents Plaintiff in this litigation. Rutherford admits that, in the Summer of 2013, she reviewed the '319 Patent in anticipation of litigation.  <u>Id.</u> at 56:15-23.  Rutherford, Fischman, and Vella are all members of Acacia's in-house legal department and were responsible for Acacia's decision to acquire and file suit against Schlumberger on the '319 Patent.  CR Dep. vol. 1, 79:17-81:5; 86:6-88:15; CR Dep. vol. 2, 27:2-4, 27:10-12, 31:11-18, 35:7-23 (objections omitted).  Rutherford and Fischman jointly decided to retain the Collins Edmonds firm as Plaintiff's counsel of record in all '319 Patent cases it has filed.  CR Dep. vol. 1, 108:8-109:11.  Rutherford has acknowledged having had discussions with Fischman regarding protection of Plaintiff's patent rights both <u>before and after</u> Plaintiff acquired the '319 Patent, and those discussions continued even <u>after</u> Plaintiff filed its complaint against Schlumberger alleging infringement of the '319 Patent.  CR Dep. vol. 2, 21:1-5, 21:12-21.  <u>Both</u> Acacia <u>and</u> Plaintiff have asserted privilege regarding the substance of those communications.

Id. at 23:9-19.   Finally, Rutherford admits that all '319 Patent litigation is controlled by Fischman, a member of Acacia's in-house legal department, working in conjunction with the Collins Edmonds firm.   CR Dep. vol. 1, 103:19-104:4.[17]   Acacia and Plaintiff thus share a common legal department.   Acacia's website prominently displays Plaintiff's name—"Dynamic 3D Geosolutions"—within its "Patent Portfolio" page and links to a press release in which Acacia announced Plaintiff's acquisition of the '319 Patent.   See Ex. 25, Acacia's Dec. 5, 2013 Press Release.   Under these circumstances there can be no colorable dispute that Acacia's legal department represents Plaintiff in this case.   See Honeywell Int'l, Inc. v. Philips Lumileds Lighting Co., No. 2:07-CV-463-CE, 2009 WL 256831 (E.D. Tex. Jan. 6, 2009) (disqualifying counsel and treating corporations the same client for attorney disqualification purposes under similar circumstances); see also Ex. 20, Burton Decl. ¶ 30(a)-(d).

        2.      Acacia's Other Lawyers Cannot Avoid The Irrebuttable Imputation of Rutherford's Conflict By Its Claimed Effort to Erect an "Ethics Screen".

Acacia's claim that Rutherford has been effectively "screened" from this case fails as a matter of law and fact.   Ethics screens are not, as a matter of Texas law, sufficient to avoid irrebuttable imputation of a fellow attorney's conflict of interest.   Under the Texas Rules, it is irrebuttably presumed that an ethics screen does not cure a conflict of interest issue.   As the Texas Supreme Court explained:

> If the lawyer works on a matter, there is an irrebuttable presumption that the lawyer obtained confidential information during the representation.   When the lawyer moves to another firm and the second firm represents an opposing party to

---

[17]   Rutherford's admissions were confirmed by the way Plaintiff conducted the meet and confers held after the parties brought the disqualification issue to the Court's attention.   The parties have participated in two face-to-face meetings and one teleconference regarding the disqualification issue.   The only persons who appeared on Plaintiff's behalf were counsel from Collins Edmonds and Fischman, an ARG employee who answered solely to Rutherford until at least May 2014.   Fischman has also attended settlement discussions on Plaintiff's behalf.   See Ex. 21, Joint Status Report.

the lawyer's former client, a second <u>irrebuttable</u> presumption arises—that the lawyer has <u>shared</u> the client's confidences with members of the second firm. The effect of this second presumption is the mandatory disqualification of the second firm.

<u>In re Guar. Ins. Servs.</u>, 343 S.W.3d at 133-34 (internal citations omitted); <u>see also</u> Ex. 20, Burton Decl. ¶¶ 31(a)-(b), 33.

Acacia's "screening" argument also fails as a matter of fact. Preliminarily, even in jurisdictions that have adopted ABA Model Rule 1.10, which addresses ethical screens, there are strict procedural rules requiring timely and formal notice to the former client. <u>See</u> Model Rules of Prof'l Conduct R. 1.10(a)(2) (requiring that attorney be timely screened, prompt written notice be given to any affected former client, and certifications of compliance with screening procedures at regular intervals). No such notice or certifications of compliance were ever provided to Schlumberger. Ex. 26, Nava Decl. ¶¶ 5-6.

More importantly, the claimed efforts to screen Rutherford from matters related to this case have fallen far short of their stated objective. Rutherford has admitted to participating in at least two meetings and additional phone calls after she joined Acacia where Schlumberger and/or Petrel were discussed and identified as a potential target for assertion of the patent. CR Dep. vol. 1, 65:4-20, 70:6-19; CR Dep. vol. 2, 37:10-25, 46:3-11. She did not excuse herself from either meeting. CR Dep. vol. 1, 82:18-85:13. Even after learning of Acacia's plan to sue Schlumberger on the '319 Patent, <u>id.</u> at 63:24-64:9, 77:14-16; CR Dep. vol. 2, 37:10-25, 46:3-11, Rutherford approved Acacia's decision to acquire and file suit against Schlumberger on the '319 Patent, CR Dep. vol. 1, 79:17-81:5; 86:6-88:15; CR Dep. vol. 2, 27:2-4, 27:10-12, 31:11-18, 35:7-23. Acacia's CEO had the benefit of Rutherford's approval in authorizing Plaintiff to bring patent infringement claims against Schlumberger. CR Dep. vol. 1, 86:6-88:15. Finally, Rutherford has discussed protection of Plaintiff's patent rights both <u>before and after</u> Plaintiff

acquired the '319 Patent, and those discussions continued even <u>after</u> Plaintiff filed its complaint against Schlumberger alleging infringement of the '319 Patent.  CR Dep. vol. 2, 21:1-5, 21:12-21.  Rutherford acknowledges acting as an attorney during those discussions.  <u>Id.</u> at 19:4-18, 21:22-22:3.  Rutherford engaged in all this conduct while privy to a massive amount of attorney client, trade secret, and confidential information regarding Schlumberger's Petrel product and the manner in which Schlumberger handles intellectual property licensing and litigation.  Even had an "ethics screen" been erected thereafter, she was not "screened" from all contact with this case as is required for an effective "screen" in those jurisdictions (unlike Texas) that recognize them.  <u>See</u> Ex. 20, Burton Decl. ¶ 32(b)(i)-(ii).

> **D.**   **<u>The Collins Edmonds Firm Should Be Disqualified Both Under the Presumption of Shared Confidences and Because of the Implied Sharing of Schlumberger's Confidences By Rutherford.</u>**

If the party seeking disqualification of co-counsel such as the Collins Edmonds firm:

> establishes that there was contact or communication between the tainted  [person who actually possessed the adverse party's confidential information] and co-counsel, the burden shifts to the party resisting disqualification of co-counsel to offer evidence that there was no reasonable prospect that the opposing party's confidential information was disclosed and that it was not in fact disclosed.

<u>In re Am. Home Prods. Corp.</u>, 985 S.W.2d 68, 77-8 (Tex. 1998).[18]

---

[18]   In the alternative, disqualification of co-counsel is required where it appears an attorney with imputed knowledge of his adversary's confidences (e.g., Fischman) has shared those confidences with co-counsel. <u>In re Am. Home</u>, 985 S.W.2d at 81.  For example, to disqualify Collins Edmonds under this standard based on communications with Fischman, Schlumberger must first show that Collins Edmonds: (1) engaged in substantive conversations with Fischman; (2) jointly prepared for trial with Fischman; or (3) received confidential information from Fischman.  <u>Id.</u>  Once shown, there is a presumption of shared confidences, which Collins Edmonds can only rebut by "providing probative and material evidence that confidential information was not disclosed."  <u>Id.</u>  Rutherford admits that all '319 Patent litigation is controlled by Fischman, a member of Acacia's in-house legal department, working in conjunction with the Collins Edmonds firm.  CR Dep. vol. 1, 103:19-104:4.  Fischman has also appeared at two status conferences as Plaintiff's "representative."  <u>See</u> Ex. 4, 1st Pretrial Hr'g Tr. 3:7-11; Ex. 9, 2nd Pretrial Hr'g Tr. 3:8-13.  Aside from Rutherford's conduct, these facts raise a rebuttable presumption that Fischman has shared his

There can be no dispute but that there has been extensive contact between Rutherford and her co-counsel, Collins Edmonds.[19]   Rutherford readily admits that she and Fischman worked with Collins in recommending that Acacia acquire and file suit against Schlumberger on the '319 Patent.  CR Dep. vol. 1, 70:24-71:19, 79:17-81:5, 82:8-17, 86:9-87:22, 99:11-100:5; CR Dep. vol. 2, 27:2-4, 27:10-12, 31:11-18, 35:7-23 (objections omitted).  Rutherford was presented with a PowerPoint presentation by Collins and possibly other attorneys at the Collins Edmonds firm discussing Schlumberger, CR Dep. vol. 1, 82:8-17, 86:9-87:22, 99:11-100:5, which led to Rutherford approving recommendations by Collins, Fischman, and Mitchell to acquire and file suit against Schlumberger on the '319 Patent, id. at 79:17-81:5; 86:6-88:15; CR Dep. vol. 2, 27:2-4, 27:10-12, 31:11-18, 35:7-23 (objections omitted).   Rutherford also received and reviewed a draft of the related complaint against Halliburton alleging infringement of the '319 Patent.  CR Dep. vol. 1, 29:15-31:1, 78:11-79:4.   That complaint is virtually identical to the Complaint Plaintiff simultaneously filed against Schlumberger.   Compare Ex. 10, Pl.'s Halliburton Compl. with Ex. 16, Pl.'s Schlumberger Compl.  Schlumberger cannot confirm that Rutherford is not indirectly participating in this action against Schlumberger because the Collins Edmonds firm has refused to provide any information about the nature and extent of its communications with others in Acacia's legal department.   Under these circumstances Collins Edmonds will be unable to bear its burden of proving that "there was no reasonable prospect that [Schlumberger's] confidential information was disclosed."  In re Am. Home, 985 S.W.2d 68, 77-8; see also Ex. 20, Burton Decl. ¶ 46(a)-(b).

---

imputed knowledge of Schlumberger's confidences with Collins Edmonds.   See Ex. 20, Burton Decl. ¶ 45.

[19]   Ex. 20, Burton Decl. ¶ 35 (expressing opinion Collins Edmonds firm is Rutherford's co-counsel).

Nor will Collins Edmonds be able to bear its burden of proving that confidential information was not in fact disclosed.   In view of the confidential information that Rutherford possessed with respect to Schlumberger's intellectual property, including the Petrel product, Rutherford's communication to outside counsel and the CEO of Acacia that she concurred in the recommendation that Acacia acquire the '319 Patent and file a lawsuit against her former client for patent infringement was at least an implied communication of confidential information.   An attorney such as Collins or Vella who received or knew about Ms. Rutherford's recommendation could reasonably believe that, if someone with Ms. Rutherford's experience and who until very recently served as Schlumberger's Deputy General Counsel for Intellectual Property would recommend that Acacia sue Schlumberger for patent infringement, then that infringement claim likely has merit and could lead to the discovery of information adverse to Schlumberger.   See Model Rules of Prof'l Conduct R. 1.6(a) cmt. 4 (2014) ("This prohibition [of revealing information relating to the representation of a client] also applies to disclosures by a lawyer that do not in themselves reveal protected information but could reasonably lead to the discovery of such information by a third person"); see also Ex. 20, Burton Decl. ¶ 43(a)-(e).

## VI.   BECAUSE THIS ACTION HAS BEEN INFECTED BY RUTHERFORD'S CONFLICT OF INTEREST FROM ITS INCEPTION DISMISSAL WITHOUT PREJUDICE IS WARRANTED

Rutherford's participation in Acacia's decision to acquire the '319 Patent and to sue Schlumberger on it was made in light of her deep experience with Schlumberger's Petrel product and intellectual property licensing and litigation for her former client Schlumberger.   Thus, the very inception of this case has been infected by Rutherford's breach of her ethical obligations to Schlumberger.   Acacia was aware that Rutherford was a senior intellectual property lawyer for Schlumberger.   Indeed, they touted her work for Schlumberger in a press release announcing that

that she had been hired to "monetize" Acacia's energy-related assets.[20]  Acacia thus assumed the foreseeable risk that any involvement by Rutherford in the events that led to this case being filed might result in breach of duties she owed to Schlumberger, her former client.  Acacia should have recognized that Rutherford's conflict would be imputed to its in-house counsel and, likely, counsel at Collins Edmonds.  Rutherford is presumed to have shared Schlumberger's confidences with all other counsel within Acacia's legal department and at the Collins Edmonds firm.  As a result, Plaintiff's Complaint, pleadings, and correspondence have all been drafted by lawyers who are presumed to possess Schlumberger's confidences.

Courts do not hesitate to dismiss a complaint without prejudice where they find that an attorney's conflict of interest could jeopardize the integrity of a judicial proceeding.  In <u>Doe v. A Corp.</u>, the Fifth Circuit affirmed the dismissal of a complaint where the district court presumed that a representation would result in the disclosure of a former client's confidences.  709 F.2d at 1043.  The plaintiff-attorney in <u>Doe</u> had served as in-house counsel and rendered legal advice regarding the defendant-corporation's employee benefits plan.  The attorney thereafter sought to represent a class of other employees allegedly entitled to those benefits.  The district court dismissed the action without prejudice, relying on the irrebuttable presumption that, because the plaintiff-attorney's prior representation was substantially related to issues raised in the class action, it "would lead [the plaintiff-attorney] to use his former clients' confidential information to [the defendant-corporation's] detriment in prosecuting the action." <u>Id.</u> at 1045.  The Fifth Circuit affirmed, finding that the class representation "would create a tension between [the

---

[20] <u>See</u> Ex. 19, Acacia's Dec. 9, 2013 Press Release ("Prior to joining Acacia Research Corporation, energy practice leader and Senior Vice President Charlotte Rutherford previously held [an] executive position[] and managed the global IP practice[] for Schlumberger . . . .").

attorney's] obligations as representative . . . and his personal ethical duty to protect [the defendant-corporation's] secrets." Id. at 1047-48.

Similarly, in United States ex rel. Fair Laboratory Practices Associates v. Quest Diagnostics Inc., the court dismissed a complaint due to counsel's ethical breaches. The Court refused to allow non-attorney co-plaintiffs to proceed with a suit because it would allow them to profit from their attorney co-plaintiff's breach of his former client's confidences. No. 05-5393, 2011 WL 1330542, at *11 (S.D.N.Y. Apr. 5, 2011), aff'd sub nom. United States v. Quest Diagnostics Inc., 734 F.3d 154 (2d Cir. 2013). The Second Circuit affirmed, noting that "it would be virtually impossible to identify and distinguish each improper disclosure." Quest Diagnostics, 734 F.3d at 167 (quotation and citation omitted); see also Ackerman, 887 F. Supp. at 517 (dismissing complaint due to reliance on allegations derived from attorney's disclosure of his former client's confidential information).

Schlumberger will face significant prejudice if Plaintiff is permitted to continue to pursue this Complaint. This taint cannot be cured short of dismissing Plaintiff's current complaint without prejudice to its possible renewal by counsel untainted by the ethical violations detailed above. For the reasons set forth herein, Defendants' Motion to Disqualify and to Dismiss Without Prejudice should be granted.

## VII. **CONCLUSION**

WHEREFORE Schlumberger respectfully requests that the Court: (1) disqualify Rutherford from this case; (2) disqualify Acacia's in-house legal department (including all persons acting in any legal capacity) from this case; (3) disqualify the Collins Edmond's firm from this case; (4) dismiss this action without prejudice; (5) permit Schlumberger to brief entitlement to its reasonable attorney's fees and costs in this action; and (6) grant any other relief the Court deems just.

Dated:  August 15, 2014        Respectfully submitted,


By:    /s/ Steve McConnico
      Stephen E. McConnico, State Bar No. 13450300
      Steven J. Wingard, State Bar No. 00788694
      Paige Arnette Amstutz, State Bar No. 00796136
      SCOTT, DOUGLASS & McCONNICO, L.L.P.
      600 Congress Avenue, Suite 1500
      Austin, TX  78701
      Tel.: (512) 495-6300
      Fax: (512) 474-0731
      smcconnico@scottdoug.com
      swingard@scottdoug.com
      pamstutz@scottdoug.com

      Maximilian A. Grant (*pro hac vice*)
      Gabriel K. Bell (*pro hac vice*)
      LATHAM & WATKINS LLP
      555 Eleventh Street N.W., Suite 1000
      Washington, DC  20004-1304
      Tel.: (202) 637-2200
      Fax: (202) 637-2201
      max.grant@lw.com
      gabriel.bell@lw.com

      Ann Marie Wahls (*pro hac vice*)
      LATHAM & WATKINS LLP
      330 North Wabash Avenue, Suite 2800
      Chicago, IL  60611
      Tel.: (312) 876-7700
      Fax: (312) 993-9767
      annmarie.wahls@lw.com

      *Attorneys for Defendants*
      *Schlumberger Limited (Schlumberger N.V.),*
      *Schlumberger Holdings Corporation and*
      *Schlumberger Technology Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 15, 2014, I served the foregoing electronically via email to the following counsel of record:

Michael J. Collins
John J. Edmonds
Henry Pogorzelski
Shea N. Palavan
Matthew M. Zarghouni
COLLINS, EDMONDS & POGORZELSKI,
SCHLATHER & TOWER, PLLC
1616 S. Voss Road, Suite 125
Houston, Texas 77057
mcollins@cepiplaw.com
jedmonds@cepiplaw.com
hpogorzelski@cepiplaw.com
spalavan@cepiplaw.com
mzarghouni@cepiplaw.com

/s/ Steve McConnico
Steve McConnico