IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DYNAMIC 3D GEOSOLUTIONS LLC, | |
| Plaintiff, | |
| v. | CASE NO.:  1:14-cv-00112-LY |
| SCHLUMBERGER LIMITED (SCHLUMBERGER N.V.); SCHLUMBERGER HOLDINGS CORPORATION; and SCHLUMBERGER TECHNOLOGY CORPORATION | JURY TRIAL DEMANDED |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISQUALIFY AND DISMISS**

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  FACTS .................................................................................................................... 4

    a.   Schlumberger faces $600,000 in sanctions and attorneys' fees for pursing in state court the same discredited theory that it now reasserts here. ....................................... 4

    b.   Ms. Rutherford's work experience while at Schlumberger was not related at all, let alone substantially related, to the issues of the present suit. .......................................... 5

    c.   Ms. Rutherford's minimal involvement with the acquisition and enforcement of the '319 Patent at Acacia was limited to concurring in a recommendation made by others. ................................................................................................................ 6

        i.   Ms. Rutherford's Deposition Testimony ........................................................ 6

        ii.  Acacia Research Group, Gary Fischman ....................................................... 9

        iii. Dynamic's Lead Outside Counsel, Michael Collins ................................. 10

III. DISCUSSION ......................................................................................................... 11

    a.   The Substantial Relationship Test .............................................................. 11

    b.   Ms. Rutherford should not be disqualified, as Schlumberger cannot prove a substantial relationship exists under either the Fifth Circuit or Texas standards. ... 13

        i.   Schlumberger has presented virtually no competent evidence as to what specific matters Ms. Rutherford worked on while at Schlumberger. ...................................... 13

        ii.  Cases are not "substantially related" by virtue of involving the same general .. subject matter. .................................................................................................................. 15

        iii. There are no common factual or legal issues between Ms. Rutherford's prior ........and current representations other than her exposure to earlier versions of  ........................ Petrel. 17

        iv.  Ms. Rutherford's role as a supervisory in-house counsel at Schlumberger must .......be taken into account. .......................................................................................................... 19

    c.   Acacia's In House Counsel do not require disqualification under any theory .......... 20

    d.   Schlumberger has failed to prove that Collins, Edmonds should be disqualified. .... 22

        i.   Collins, Edmonds is not co-counsel with Ms. Rutherford under the law governing disqualification. .............................................................................................................. 22

        ii.  There is no evidence that Ms. Rutherford actually has any confidential information that would be relevant to Dynamic 3D's patent infringement case. .......................... 23

        iii. There is no presumption of disclosure and Schlumberger has failed to demonstrate an actual disclosure to Collins, Edmonds of its confidential information. ...................... 23

    e.   This action should move forward because Schlumberger has not demonstrated a need for dismissal. .......................................................................................................... 30

IV.  CONCLUSION ......................................................................................................... 31

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arnold v. Cargill Inc.*,
    2004 WL 2203410 (D. Minn. Sept. 24, 2004) ........................................................ 31

Biax Corp. v. Fujitsu Computer Sys. Corp.,
    2007 WL 1466638 (E.D. Tex. May 16, 2007) ........................................................ 16

*Brennan's, Inc. v. Brennan's Restaurants, Inc.*,
    590 F.2d 168 (5th Cir.1979) ................................................................ 12, 22, 24, 25

*Cf. Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
    409 F.3d 127 (2d Cir. 2005)........................................................................ 21

Ciba-Geigy Corp. v. Alza Corp.,
    795 F. Supp. 711 (D.N.J. 1992) ................................................................ 16

*Doe v. A Corporation*,
    709 F.2d 1043 (5th Cir. 1983) ................................................................ 31

*Duncan v. Merrill, Lynch, Pierce, Fenner & Smith*,
    646 F.2d 1020 (5th Cir. 1981) ................................................................ 12, 31

*Honeywell Int'l, Inc. v. Philips Lumileds Lighting Co.*,
    2009 WL 256831 (E.D. Tex. Jan. 6, 2009)........................................................ 20

*In re American Airlines, Inc.*,
    972 F.2d 605 (5th Cir. 1992) ................................................................ 12, 14

*In re American Home Products Corp.*,
    985 S.W.2d 68 (Tex. 1998)........................................................................ 25, 26, 28

*In re Drake*,
    195 S.W.3d 232 (Tex. App.—San Antonio 2006, no pet.)....................................... 15

*In re SAExploration, Inc.*,
    2012 WL 6017717 (Tex.App.-Houston [14 Dist.], December 4, 2012)................................. 20

*In re Texas Windstorm Insurance Association*,
    417 S.W.3d 119 (Tex.App—Houston [1st Dist.] 2013, no pet.) ................................ 15

*J.K & Susie L. Wadley Research Inst. & Blood Bank v. Morris*,
    776 S.W.2d 271 (Tex. App.—Dallas 1989, no writ) ......................................... 12, 13

**Cases**

*Johnston v. Harris County Flood Control Dist.*,
　　869 F.2d 1565 (5th Cir. 1989) ................................................. 12

*Kreeger v. State Farm Fire & Cas. Co.*,
　　2008 WL 1745197 (S.D. Miss. Apr. 11, 2008)........................ 31

*Ledwig v. Cuprum S.A.*,
　　2004 WL 573650 (W.D. Tex. Jan. 28, 2004) ................... passim

*McIntosh v. State Farm Fire & Cas. Co.*,
　　2008 WL 941640 (S.D. Miss. Apr. 4, 2008)........................... 31

*Metro. Life Ins. Co. v. Syntek Fin. Corp.*,
　　881 S.W.2d 319 (Tex. 1994)................................................... 15

*NCNB Tex. Nat'l Bank v. Coker*,
　　765 S.W.2d 398 (Tex. 1989)................................................... 13

*OneBeacon Ins. Co. v. T. Wade Welch & Associates*,
　　2012 WL 393309 (S.D.Tex. Feb. 6, 2012) ............... 11, 12, 14

Power MOSFET Techs., L.L.C. v. Siemens AG,
　　2002 WL 32785219 (E.D. Tex. Sept. 30, 2002) .................. 16, 17

*United States ex rel. Fair Laboratory Practices Assocs. v. Quest Diagnostics Inc.*,
　　2011 WL 1330542 (S.D.N.Y. Apr. 5, 2011)........................... 31

*Vinewood Capital, LLC v. Sheppard Mullin Richter & Hampton, LLP*,
　　735 F.Supp.2d 503 (N.D. Tex. 2010) ................. 22, 24, 25, 26

*Wilson P. Abraham Construction Corp. v. Armco Steel Corp.*,
　　559 F.2d 250 (5th Cir.1977) ................................................. 22

**Other Authorities**

Chapter 27 of the Texas Civil Practice and Remedies Code ........................................ 3

**Rules**

Tex. D.R. 1.09(a) ........................................................................ 21

## I.    INTRODUCTION

Plaintiff Dynamic 3D Geosolutions LLC ("Plaintiff" or "Dynamic") files this response in opposition to Defendants Schlumberger Limited (Schlumberger N.V.), Schlumberger Holdings Corporation, and Schlumberger Technology Corporation's (collectively, "Defendants" or "Schlumberger") Motion to Disqualify Counsel and to Dismiss without Prejudice ("Motion") (Dkt. No 48). Schlumberger in its Motion, demands that this Court assert jurisdiction over and "disqualify" Ms. Rutherford; an attorney who 1) is not admitted to practice in the Western District of Texas; 2) has not entered an appearance in this case, or any of the related cases; 3) is an employee of a non-party; and 4) is not employed or retained by Plaintiff.

Schlumberger then goes on to ask that this Court exercise jurisdiction over a non-party corporate entity and impute Ms. Rutherford's alleged knowledge of Schlumberger's confidential information from Ms. Rutherford, as an executive of Acacia Research Corporation, a non-party, to all employees of Acacia and its various subsidiaries who happen to be licensed attorneys. Finally, Schlumberger blatantly ignores black letter law governing the disqualification of co-counsel and asks that this Court to also impute Ms. Rutherford's supposed conflict to Plaintiff's chosen outside counsel, Collins, Edmonds, Pogorzelski, Schlather & Tower PLLC ("Collins, Edmonds"), despite utterly failing to produce or even offer any evidence to meet its burden of proving that Ms. Rutherford actually disclosed any of Schlumberger's confidential information to Collins, Edmonds. For the reasons detailed herein, Schlumberger's Motion should be denied in all respects.

Schlumberger's Motion is exactly the kind of overreaching that this Court admonished Schlumberger not to commit. Shortly after Dynamic sued Schlumberger for patent infringement, Schlumberger filed a civil suit against Charlotte Rutherford ("Ms. Rutherford"), its former

Deputy General Counsel for Intellectual Property, in the 127th Judicial District Court of Harris County, Texas, Cause No. 2014-13621 ("State Court Case"). Schlumberger alleged that Ms. Rutherford committed misappropriation of trade secrets, conversion, breach of fiduciary duty, theft under the Texas Theft Liability Act, and breach of contract and through those alleged acts caused the present patent infringement case to be filed against Schlumberger. Exhibit A, Schlumberger's First (Sic) Amended Petition. Schlumberger's latest petition in that case alleges exactly the same acts that form the basis for this Motion. Exh. A, ¶¶ 25-29. Schlumberger sought extensive discovery in the State Court Case including information relevant only to the present patent infringement case.

On August 27, 2014, Texas State District Judge Sandill saw through Schlumberger's baseless allegations and entered an order dismissing Schlumberger's claims for misappropriation of trade secrets, conversion, breach of fiduciary duty, and theft under the Texas Theft Liability Act. Exh. B, Order Dismissing State Court Claims. Judge Sandill further ordered Schlumberger to pay $350,000 in attorneys' fees *and* $250,000 in sanctions for conduct prohibited under Chapter 27 of the Texas Civil Practice and Remedies Code. *Id*. This Court should not permit Schlumberger's misconduct to continue in this case.

In addition, Schlumberger's Motion is devoid of any competent or admissible evidence regarding what Ms. Rutherford worked on while at Schlumberger that was substantially related to the present patent infringement case, much less the specific facts necessary for a finding of a substantial relationship under Fifth Circuit precedent. Instead, Schlumberger rehashes the same conclusory allegations (the type which resulted in Schlumberger being sanctioned in its case against Ms. Rutherford) throughout its Motion and its expert's report about what the supposed evidence would show, if, and only if, the Court requests to see it. In fact, Schlumberger's own

expert, Mr. Burton, testified repeatedly that his opinions were based on alleged documents he never saw, and on other's descriptions of the documents which he failed to verify before reaching his conclusions.

Moreover, even if the evidence is what Schlumberger claims it to be, Schlumberger has wholly failed to meet its threshold burden of proving a substantial relationship between the matters that Ms. Rutherford worked on while at Schlumberger and the issues presented in the present patent infringement case. There is no material factual commonality, and the legal issues are completely dissimilar from her prior representation of Schlumberger. There are no common causes of action. The alleged commonality between Ms. Rutherford's prior representations of Schlumberger and the case at hand begins and ends with the name of the software product "Petrel." Distilled to its essence, Schlumberger's argument that any work involving any version of Petrel—an extremely large and multifaceted software package—at any point in time is "substantially related" to the present patent infringement suit against Schlumberger. Schlumberger's expert goes as far to say that any work related to enforcement of U.S. Patent 7,986,319 (the " '319 Patent") against any of Schlumberger's competitors is the same as, and therefore substantially related to, litigating the '319 Patent against Schlumberger. *See* Exh. C, Burton Deposition, 134:14-21. However, as Plaintiff will demonstrate, this argument fails the "substantial relationship" test under either Texas or Fifth Circuit standards.

Finally, Schlumberger has not even made an attempt to show what, if any, confidential information Ms. Rutherford possesses that would be relevant to any issue in the present patent infringement case, much less that she communicated it to another person at Dynamic, Acacia, or Collins, Edmonds, as outside counsel. It was this very same failure that led District Judge Sandill to dismiss most of Schlumberger's state court action and award Ms. Rutherford over a half-

million dollars in attorneys' fees and sanctions against Schlumberger. In order to disqualify

Collins, Edmonds, as outside counsel, Schlumberger is required to show that Ms. Rutherford

actually communicated Schlumberger's confidential information to such outside counsel.

Schlumberger does not even attempt to acknowledge or meet this burden, and cannot do so. For

the reasons detailed herein, Schlumberger's Motion should be denied in all respects.

## II.     FACTS

### a. Schlumberger faces $600,000 in sanctions and attorneys' fees for pursing in state court the same discredited theory that it now reasserts here.

Schlumberger's State Court Case against Ms. Rutherford was filed shortly after this

patent litigation. The claims in the State Court Case were premised on the same factual

allegations as the Motion: that Ms. Rutherford improperly used confidential information that she

learned while at Schlumberger to involve herself in a decision by Acacia to file this patent

infringement suit against Schlumberger. Exh. A, ¶¶ 25-29, 34, 39. As noted above, Judge Sandill

sanctioned Schlumberger and dismissed its misappropriation of trade secrets, conversion, breach

of fiduciary duty, and Texas Theft Liability Act claims. Exh. B.[1]

In the State Court Case, Schlumberger sought extensive discovery from Ms. Rutherford

on issues directly relevant to the present patent infringement case. Schlumberger was represented

by separate counsel from the inception of the State Court Case, but mere days before Ms.

Rutherford's deposition, Maximillian Grant, lead counsel for Schlumberger in the present patent

infringement case, moved for a *pro hac vice* admission in the State Court Case and took Ms.

Rutherford's deposition. Mr. Grant asked Ms. Rutherford numerous questions concerning her

work at Acacia and her alleged involvement in the decision to acquire and enforce the '319

patent through Plaintiff, a subsidiary of Acacia. Many of these questions had no purpose in the

---

[1] The only claim remaining is a breach of contract claim. Exh. A, ¶¶ 45-49.

State Court Case and were solely intended to develop Schlumberger's Motion in the present case. *See generally* Exh. D (For example, pp. 30-32, questioning directed to Ms. Rutherford's involvement related to Dynamic's lawsuit against Halliburton). Despite questioning Ms. Rutherford for an entire day, and then being permitted by Judge Sandill to resume the deposition for a portion of another day, Schlumberger failed to put forth enough evidence to survive Ms. Rutherford's motion to dismiss. Exh. B.

> **b. Ms. Rutherford's work experience while at Schlumberger was not related at all, let alone substantially related, to the issues of the present suit.**

Schlumberger's "evidence" of what Ms. Rutherford worked on at Schlumberger comes largely from Exhibit 3 to the Motion. Schlumberger has described this document as a "privilege-type" log. Motion, Exh. 3. This "privilege-type" log contains descriptions of handpicked documents that, according to Schlumberger, show selective communications that Ms. Rutherford received during her employment with Schlumberger. *Id.* Schlumberger did not submit any of these documents to the Court and refused to furnish them, even with privileged information redacted, to Plaintiff's counsel.[2]

Ms. Rutherford denies the preparation of any of the GoldStar projects or reports. Exh. D, Rutherford Depo., Vol. 1, 162:18-20. Ms. Rutherford also denied having immediate supervisory responsibility for any of the GoldStar projects. *Id.* at 162:18-20; 163:15-19. However, Ms. Rutherford sat in, when she could fit it in her schedule, on a few GoldStar presentations, which were provided to a broad audience of Schlumberger employees. *Id.* at 161:25-162:11. Ms. Rutherford recalls providing high-level instructions for the employees that would actually perform the analysis. *Id.* at 163:1-19. These instructions were not unique and one GoldStar

---

[2] Amon Burton, Schlumberger's expert, relied upon these descriptions in rendering his opinions, but admits that he never saw the documents themselves, or even knew who wrote the descriptions. (Exh. C, Burton Depo., 13:14-17:13). Professor Burton further admitted that Exhibit 3 is not a privilege log. *Id.*

presentation, as Ms. Rutherford recalls, concerned Petrel as it existed in 2007. *Id.* at 165:7-166:3. However, Ms. Rutherford testified that she did not perform any substantive work on the report beyond providing general instructions on the procedure for creating a GoldStar presentation as used within Schlumberger. *Id.* at 166:23-4; 167:18-21.

Ms. Rutherford testified that, around 2007, she managed outside counsel with Ms. Ralston, general counsel for Schlumberger Information Solutions, in a litigation concerning copyright piracy. Exh. D, Rutherford Depo., Vol. 1, 124:18-24. That litigation involved only the illegal, verbatim reproduction of copies of an older version of Petrel. *Id.* at 125:13-21*; see also* Exh. E, Rutherford Deposition, Vol. 2, 46:23-25.

There is no evidence that Ms. Rutherford performed any work related to the '319 patent or was even aware of the existence of the '319 patent while at Schlumberger. There is no evidence that Ms. Rutherford ever participated in any patent litigation related to Petrel while at Schlumberger. There is no evidence that Ms. Rutherford was ever involved in any patent litigation at Schlumberger that presented legal and factual issues that were substantially similar to those presented in the case before this Court. There is no evidence that Ms. Rutherford performed or was exposed to any kind of analysis of whether Petrel infringed any patent. There is no evidence that Ms. Rutherford performed or was exposed to any kind of freedom to operate ("FTO") analysis for any version of Petrel. In sum, Ms. Rutherford's knowledge of Petrel was far more cursory than the information that Schlumberger advertises to the public about Petrel on Schlumberger's own website.

      **c.  Ms. Rutherford's minimal involvement with the acquisition and enforcement of the '319 Patent at Acacia was limited to concurring in a recommendation made by others.**

             i.  Ms. Rutherford's Deposition Testimony

Contrary to Schlumberger's portrayal, Ms. Rutherford testified that she has not participated in the present lawsuit by Dynamic against Schlumberger in any capacity. Exh. D, Rutherford Depo., Vol. I, 29:10-14. Ms. Rutherford has not discussed the present patent infringement case with anyone at Acacia and testified that she is not allowed to discuss such matters. *Id.* at 93:18-96:1; 44:25-45:9. Likewise, Ms. Rutherford has not discussed Schlumberger's Petrel product with anyone at Acacia or Plaintiff. Exh. D, Rutherford Depo., Vol. I, 45:13-19.

The only communications that Ms. Rutherford had in connection with the evaluation and acquisition of the '319 patent was two meetings with Austin Geomodeling ("AGM") and a phone call in which she testified that a presentation was made by outside counsel and Gary Fischman. *Id.* at 88:16-22. The only people Ms. Rutherford has spoken to regarding the '319 Patent are people who attended these three meetings and Marc Booth, the head of engineering at Acacia. *Id.* at 93:19-94:17. At both meetings with AGM, the inventors from AGM who were making a presentation brought up Schlumberger and mentioned that it had a product known as Petrel. Exh. E, Rutherford Depo., Vol. II, 42:14-25. At both meetings with AGM, when Schlumberger was mentioned, Ms. Rutherford told the meeting participants that she used to work for Schlumberger and could not talk about Schlumberger.  Exh. D, Rutherford Depo., Vol. I, 42:21-25; 44:5-9; and 44:25-45:9; Exh. E, Vol. II, 42:14-25). There was no further conversation about Schlumberger at either meeting. Exh. E, Vol. II, 42:21-25; 44:5-9; and 44:25 – 45:9. Ms. Rutherford has further testified that she could not recall any discussion in either of the AGM meetings about why the inventors of the '319 Patent believed Schlumberger might be a potential infringer. Exh. D, Rutherford Depo., Vol. I, 44:1-4.

After the two AGM meetings, Ms. Rutherford participated in a telephone conference call involving, among others, the two named inventors of the '319 Patent. *Id.* at 70:25-72:9. Ms. Rutherford testified that her participation in the conference call lasted only until the point when Schlumberger was to be discussed, when she then dropped from the conference call and did not rejoin. Exh. D, Rutherford Depo., Vol. I, 72:10-19.

Ms. Rutherford's involvement in the decision to acquire and sue on the '319 patent was limited to concurring in a recommendation made by other participants on the call. *Id.* at 79:17-80:14; 86:9-87:6. Ms. Rutherford's only recommendation was to proceed in litigation against *Halliburton*, not Schlumberger. *Id.* at 85:14-25; 87:19-22.

Ms. Rutherford was not involved in any due diligence related to the validity of the '319 Patent. *Id.* at 74:2-75:14. Ms. Rutherford was not involved in the negotiation or approval of the terms for acquisition of the '319 Patent. Exh. E, Rutherford Depo., Vol. II, 49:1-9. Ms. Rutherford has no knowledge regarding the financial arrangement of Acacia's acquisition of the '319 Patent. *Id.* at 49:10-13. There was no review by or input from Ms. Rutherford related to a pre-suit investigation or infringement analysis with respect to Schlumberger. Exh. E, Rutherford Depo., Vol. II, 17:9-11.

Ms. Rutherford spoke with Mr. Fischman about the protection of Dynamic's patent rights; however, these conversations related to Halliburton and not Schlumberger. *Id.* at 17:22-21:21. Schlumberger mentions that Ms. Rutherford received a copy of the complaint against Schlumberger; however, the complaint had already been filed without any input or feedback from Ms. Rutherford. *Id.* at 16:4-12; 16:13-17. The only comment Ms. Rutherford has made to anyone at Acacia, Dynamic, AGM, or outside counsel regarding the Schlumberger complaint

was to tell Mr. Fischman "thank you" for sending her a copy of the publically filed and freely available document. *Id.* at 17:1-8.

Lastly, Ms. Rutherford testified that Mr. Fischman is the only person at Acacia who is interacting with outside counsel on any of the '319 Patent cases pending in this Court. Exh. D, Rutherford Depo., Vol. I, 102:16-25.

ii.   Acacia Research Group, Gary Fischman

ARG entered into an agreement with AGM to acquire the '319 patent on August 20, 2013, subject to due diligence. Exh. F, Fischman Declaration, ¶ 4. In early November of 2013, Mr. Fischman assembled a PowerPoint presentation and presented it to Matt Vella during a November 7, 2013 telephone conference call with Matt Vella in which he recommended that ARG acquire the '319 patent and form a subsidiary to license and enforce that patent. *Id.,* ¶ 5. Charlotte Rutherford participated in the telephone call with and presentation to Mr. Vella. *Id.,* ¶ 6. However, she excused herself from the call before there was any discussion related to Schlumberger. *Id.,* ¶ 6. No outside counsel participated in the call with and PowerPoint presentation to Mr. Vella. *Id.,* ¶ 7. The decision to acquire and enforce the '319 patent was made at the conclusion of the call with Mr. Vella. *Id.,* ¶ 8. On November 18, 2013, ARG transmitted a formal written notice to Austin Geomodeling, Inc. of acceptable completion of the investigation period on the '319 patent, and ARG advised Austin Geomodeling, Inc. that the patent assignment agreement dated August 20, 2013 continued with full force and effect. *Id.,* ¶ 10.

Mr. Fischman first approached Michael Collins of Collins, Edmonds, Pogorzelski, Schlather & Tower, PLLC (the "Collins, Edmonds firm") about representing an Acacia subsidiary in the enforcement of the '319 patent after making the PowerPoint presentation to Mr. Vella and after the decision was made to acquire and enforce that patent. *Id.,* ¶ 9.

iii.   Dynamic's Lead Outside Counsel, Michael Collins

According to Mr.  Collins, he was first approached by Gary Fischman about the Collins, Edmonds firm representing a subsidiary of ARG in the enforcement of the '319 patent on or about November 12, 2013. Exh. G, Collins Declaration, ¶ 3. Prior to that time, neither he nor anyone in the Collins, Edmonds firm had heard of the '319 patent or that ARG was contemplating forming a subsidiary for purposes of enforcing that patent. *Id.,* ¶ 3. Mr. Collins has testified that neither he nor anyone in his firm provided a recommendation to Charlotte Rutherford or anyone else at ARG as to whether ARG should or should not acquire the '319 patent. *Id.,* ¶ 6.

When Mr. Collins first met Ms. Rutherford in June of 2013, she stated to him that she would not discuss anything related to Schlumberger or its technology. *Id.,* ¶ 7. Since that first meeting, neither Mr. Collins nor anyone at his firm has had any discussion with Ms. Rutherford regarding Schlumberger or any of its products and technology, including with respect to Schlumberger's Petrel software. *Id.,* ¶ 7. While Mr. Collins has had several discussions regarding the enforcement of the '319 patent within groups of people at ARG that included Ms. Rutherford, neither he nor anyone at his firm has had any discussion of Schlumberger or Petrel in her presence. *Id.,* ¶ 8.

Mr. Collins has testified that neither he nor anyone at Collins, Edmonds prepared and/or presented a PowerPoint presentation to anyone at ARG or any subsidiary thereof, including Ms. Rutherford, that made any recommendation regarding whether to acquire the '319 patent. *Id.,* ¶ 9. Mr. Collins has further testified that neither he nor anyone at Collins, Edmonds prepared and/or presented a PowerPoint presentation to anyone at ARG, including Mr. Fischman, Ms. Rutherford or Matt Vella, that contained a recommendation as to whether to sue Schlumberger or

10

Halliburton. *Id.,* ¶ 10. Mr. Collins has testified that neither he nor anyone at Collins, Edmonds provided any recommendation to Ms. Rutherford that ARG or Dynamic 3D should or should not file suit against Schlumberger. *Id.,* ¶ 11. Mr. Collins has testified that Ms. Rutherford has never told him or anyone at his firm that she concurred in the decision to file the patent infringement suit against Schlumberger. *Id.,* ¶ 12.  Mr. Collins has further testified that neither he nor anyone at his firm has had any communication with Ms. Rutherford regarding the above-captioned patent litigation against Schlumberger. *Id.,* ¶ 13. Finally, Mr. Collins has testified that, since the outset of his firm's involvement with the '319 patent, Ms. Rutherford has been walled off from any discussion of Schlumberger or its technology with anyone at the firm. *Id.,* ¶ 14.

## III.   DISCUSSION

### a.  The Substantial Relationship Test

Schlumberger relies only on federal law to assert that there is a substantial relationship between Ms. Rutherford's work for Schlumberger and the patent infringement lawsuit, but ignores the significant choice of law issues that raises. Indeed, the motion does not address Texas law on the substantial relationship test at all.

Texas law should apply to the question of Ms. Rutherford's disqualification. See, e.g., Tex. D.R. 8.05; Model Rule 8.5; Hricik Decl. at p. 21. Ms. Rutherford was a Texas lawyer working in Texas when Acacia was considering whether to acquire the '319 patent. Her current representation of Acacia does not involve representing Acacia in any federal court. She is not admitted to practice in the Western District of Texas, has not been admitted *pro hac vice*, and so is not permitted to practice before this Court.

The Fifth Circuit cautions that the rules of disqualification should not be applied mechanically. *OneBeacon Ins. Co.*, 2012 WL 393309 (S.D.Tex. Feb. 6, 2012) (citing *Johnston v.*

*Harris County Flood Control Dist.*, 869 F.2d 1565, 1569 (5th Cir. 1989)). Indeed, the Court must "scrutinize the 'precise nature of the relationship between the present and former representations.'" *OneBeacon Ins. Co.*, 2012 WL 393309 (S.D.Tex. Feb. 6, 2012).[3] A substantial relationship may be found only after "the moving party delineates with specificity the subject matters, issues and causes of action" common to prior and current representations and the court engages in a "painstaking analysis of the facts and precise application of precedent." *In re American Airlines, Inc.,* 972 F.2d 605, 614; *Duncan,* 646 F.2d at 1029 (quoting *Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 174 (5th Cir.1979)).

At the outset, Schlumberger must establish "1) an actual attorney-client relationship between [itself] and the attorney [it] seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations." *Id.* Because Dynamic 3D does not dispute the former attorney-client relationship, the test will focus on whether Schlumberger has shown that there is a "substantial relationship" between Ms. Rutherford's former and current representations.

This Court should apply Texas law to determine whether a "substantial relationship" exists. Under Texas state law, Schlumberger cannot prove a "substantial relationship" by simply alleging that one exists with conclusory statements and vague offerings of evidences. *J.K & Susie L. Wadley Research Inst. & Blood Bank v. Morris*, 776 S.W.2d 271, 278 (Tex. App.— Dallas 1989, no writ). "A superficial resemblance between issues is not enough to constitute a substantial relationship, and facts that are community knowledge or that are not material to a determination  of the issues litigated to not constitute 'matters involved' within the meaning of the law." *Id.* "Sustaining this burden requires evidence of specific similarities capable of being

---

[3] *See also Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1569 (5th Cir. 1989); *Duncan v. Merrill, Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1029 (5th Cir. 1981).

recited in the disqualification order." *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 399-400 (Tex. 1989). The party claiming that conflict exists may not rely on conclusion, but must provide the trial court with sufficient information to allow it to engage in a "painstaking analysis" to decide whether the matters are substantially related. *J.K & Susie L. Wadley Research Inst. & Blood Bank v. Morris*, 776 S.W.2d 271, 278 (Tex. App.—Dallas 1989, no writ).

> **b. Ms. Rutherford should not be disqualified, as Schlumberger cannot prove a substantial relationship exists under either the Fifth Circuit or Texas standards.**

Even assuming that this Court has jurisdiction over Ms. Rutherford, Schlumberger has failed to perform the proper analysis to meet its burden of proving a substantial relationship between subject matter of her past work with Schlumberger and her current work with Acacia under either Fifth Circuit or Texas law. This creates a domino effect that brings down its entire Motion, because if there is no substantial relationship, then Ms. Rutherford should not be disqualified. If Ms. Rutherford is not disqualified, then there is no need to analyze whether imputation to her "firm" is required. If there is no disqualification or imputation, then there is no need to analyze whether co-counsel has actually received confidential information from the disqualified lawyer.

> **i. Schlumberger has presented virtually no competent evidence as to what specific matters Ms. Rutherford worked on while at Schlumberger.**

Schlumberger attempts to support its Motion with an exhibit titled "Confidential Expert *Privilege-Type* Log," which, according to Schlumberger's counsel, lists alleged communications and documents *in Schlumberger's possession* regarding Ms. Rutherford's work at Schlumberger. *See* Exhibit 3 to Motion. In a bold assertion, Schlumberger asserts that it has the right to requested relief merely based upon the representations of its counsel as to the contents of these

documents. Motion, p. 1, fn. 3 ("Schlumberger believes that these motion papers, including the privilege log level description of documents, demonstrate its right to the requested relief without the need for further disclosure."). Schlumberger has asserted that it will provide copies of these documents only to the Court on an *ex parte* basis if, and only if, the Court requests such a viewing. Motion, pp. 1-2, fn. 3. Schlumberger relies upon *OneBeacon Ins. Co.* 2012 WL 393309, at *8, n.3, for its offering of these documents for in camera inspection, but Schlumberger completely sidesteps its failure to produce these documents with its Motion, much less its refusal to provide even redacted copies to the Plaintiff or its outside counsel for rebuttal. Exh. H, Email from A. Wahls, p. 2.

Schlumberger's position ignores its burden to come forward with competent evidence to meet its burden of proof on the "substantial relationship" test. *In re American Airlines*, 972 F.2d at 614. The "privilege log" descriptions are unreliable hearsay, likely drafted by a lawyer and passed off as evidence. Moreover, these descriptions violate the best evidence rule. The documents should speak for themselves as to their contents. Dynamic objects to the use of the "privilege-type" log as a proxy for actual, competent evidence.

Even more alarming is the fact that Schlumberger's own ethics expert, Mr. Burton, has not reviewed these documents that are alleged to be in Schlumberger's possession before rendering his opinions. *See* Burton Declaration, Motion, Exhibits 20 & 20C. Indeed, Mr. Burton states that he only reviewed the "Confidential Expert Privilege-Type Log" and an updated version of the same. *See Id.,* p. 2. Mr. Burton confirmed in his deposition on no less than six occasions that he had not seen or read the documents Schlumberger relies upon in its Motion. Exh. C, Burton Depo., 15:12-15; 24:15-18; 66:23-67:3; 81:9-16; 168:23-169:9; 170:17-19. Mr. Burton does not even know who authored the descriptions on the "privilege-type" log. At this

point, Plaintiff is not even able to verify that these documents actually exist much less what the contents reveal about Ms. Rutherford's work at Schlumberger.

### ii.  Cases are not "substantially related" by virtue of involving the same general subject matter.

Cases are not related, much less substantially related by virtue of involving the same general subject matter. For example, in *In re Texas Windstorm Insurance Association*, the moving party alleged there was a substantial relationship, and thus a conflict, because the two representations arose from the same event: Hurricane Ike. *In re Texas Windstorm Insurance Association*, 417 S.W.3d 119 (Tex.App—Houston [1st Dist.] 2013, no pet.). However, while both cases were related to Hurricane Ike, the underlying issues—improper claims settlement of two different claims—were distinct and the court held that the overarching common link, Hurricane Ike, did not matter. *Id.; see also Metro. Life Ins. Co. v. Syntek Fin. Corp.*, 881 S.W.2d 319, 320–21 (Tex. 1994) (affirming denial of disqualification motion where lawyer represented man in divorce suit, learned the structure of his business assets, and then sued the former client in a suit related to the former client's business dealings).

In another case that parallels Schlumberger's allegations, an attorney represented the San Antonio appraisal district in tax lawsuits for 22 years.  *In re Drake*, 195 S.W.3d 232, 236–37 (Tex. App.—San Antonio 2006, no pet.).  He then quit and began suing the appraisal district on behalf of taxpayers.  *Id*.  The trial court found that, during his representation of the tax board, the lawyer he learned everything the board's strategy is such suits from its manner of handling discovery to its methods for questioning witnesses to its usual settlement positions.  *Id*.  Despite this common overlap—which is far greater than what Schlumberger alleges in this case—the court found that such facts "fall[ ] short of the requisites of the established substantial relation standard."  *Id.* at 237.

15

These principles hold equally true in the patent context and in cases not applying Texas state law.  Here, Schlumberger alleges a conflict based on Ms. Rutherford's involvement in a copyright piracy suit related to an earlier version of the Petrel software.  But numerous cases make clear that even two successive *patent-related* representations are not substantially related for disqualification purposes merely because similar technology is involved in both representations.  *Power MOSFET Techs., L.L.C. v. Siemens AG*, No. 2:99-CV-168, 2002 WL 32785219, at *3 (E.D. Tex. Sept. 30, 2002) ("Just because two devices fall into the same general category, e.g. photocopiers or Power MOSFETS, does not necessarily mean patent infringement cases in that same category will be substantially related.").  In *Power MOSFET*, for instance, the court denied a motion to disqualify in part because, when "advances have propelled technology forward, earlier products can differ dramatically from later products."  *Id.*  The court also emphasized that, for complex products, the particular features accused of infringement are highly probative of the "substantial relationship" issue.  *Id.*; *see also Biax Corp. v. Fujitsu Computer Sys. Corp.*, No.2:06-CV-364 (TSW), 2007 WL 1466638, at *2-3 (E.D. Tex. May 16, 2007) (denying motion to disqualify where current and prior representations both involved server technology, but "the specific aspects of server technology related to those representations are quite different"); *Ciba-Geigy Corp. v. Alza Corp.*, 795 F. Supp. 711, 717 (D.N.J. 1992) (denying motion to disqualify and finding no substantial relationship suit alleging infringement of patent for transdermal nicotine patch and suit alleging infringement of patent for transdermal estradiol patch despite overlapping depositions and document review).

The result should be no different here. Schlumberger claims that the Canadian copyright case that Ms. Rutherford worked on at Schlumberger is substantially related to Dynamic's patent infringement suit on the '319 patent. While both suits involve Petrel, however, that is where the

overlap ends. The 2006-2007 Canadian case involved allegations that the Defendant had pirated an earlier version of Petrel. The present patent infringement case concerns allegations that a later version of Petrel infringes the '319 patent – a patent that was not even issued until four years after the conclusion of that case. Those facts alone are sufficient to disprove the existence of a substantial relationship.  *See Power MOSFET*, 2002 WL 32785219, at *3.

### iii.   There are no common factual or legal issues between Ms. Rutherford's prior and current representations other than her exposure to earlier versions of Petrel.

There are no legal or factual issues common to Ms. Rutherford's prior and current representation other than her general exposure to earlier versions of Petrel. In this litigation on the '319 patent, the primary factual issues deal with the features of the ***current*** version of Petrel, the identification of prior art to the '319 patent and the factors that would go into determining a reasonable royalty for the use of the '319 patent. The primary legal issues are whether the claims of the '319 patent read on the current version of Petrel, whether the '319 patent is valid, and what would be a reasonable royalty for the use of the '319 patent.

There are few if any factual similarities between Ms. Rutherford's prior work for Schlumberger and the current patent case. The GoldStar project and the copyright case in Canada involve older versions of Petrel that predate the issuance of the '319 patent by a number of years. While Schlumberger has offered Mr. Beardsell's declaration in support of the proposition that the features of Petrel that implicate the asserted claims of the '319 patent have not changed since the 2005 version, that assertion strains credulity when one considers that new versions of Petrel were introduced in 2007, 2008, 2009, 2010, 2011, 2012 and 2013. Motion, Exh. 18, ¶ 5.

When asked at the first meeting if it was representing that any items on the "privilege-type" log, including the GoldStar report, related to the "patented dynamic 3D feature" of the

'319 patent, Schlumberger stated that it was not making such a representation. In fact, the only factual similarity between any of the items on the "privilege-type" log and this patent case is that they both involve Petrel – albeit very different versions.

There is no suggestion by Schlumberger that Ms. Rutherford identified any prior art to the '319 patent, or even knew that the '319 patent existed during her tenure there. Nor is there any suggestion that she conducted or had any exposure to any kind of analysis of the more recent version of Petrel at issue in this litigation or the '319 patent after it issued in July of 2011 to determine whether the more recent version of Petrel might infringe, whether the patent was valid, or what would be a reasonable royalty for the use of the '319 patent. There is no evidence that, while employed by Schlumberger, Ms. Rutherford was ever involved in a patent infringement case involving Petrel or any remotely similar technology. While the 2007 copyright case in Canada involved Petrel, it involved a version that predated the issuance of the '319 patent by some four years, and presented none of the legal issues that are present in a patent case (i.e., infringement, validity and what constitutes a reasonable royalty). The legal issue presented in the copyright case was whether the defendant had illegally copied and distributed the software. Schlumberger has made no showing that Ms. Rutherford learned any technical details about how that early version of Petrel worked or had any exposure to Petrel's source code in connection with managing outside counsel in that case.

With respect to the alleged efforts to monetize Schlumberger's own intellectual property, any such work by Ms. Rutherford is completely irrelevant to the issues presented in this case – whether a Schlumberger products infringes the'319 patent, whether the '319 patent is valid, and an appropriate royalty for use of the patent. Indeed, general knowledge and litigation strategies of an organizational entity have long been held insufficient and expressly rejected as forming a

substantial relationship with a later representation. Model Rule 1.9, cmt. 3; s*ee also* Exh. I,

Hricik Declaration, pp. 7, 30.

Other than managing outside counsel in the software copying case, it is apparent that Ms.

Rutherford's knowledge of and involvement with Petrel while at Schlumberger was tangential at

best. Contrary to Schlumberger's assertions, Ms. Rutherford testified that she did not supervise

and was not directly involved in any GoldStar projects. Exh. D, Rutherford Depo., Vol. 1

162:18-20; 163:15-19. Her only involvement with the Petrel Goldstar project was to furnish

another Schlumberger lawyer, Jenny Salazar, with generic guidelines on how to perform a

GoldStar project. *Id.* at 163:1-19; 166:23-4; 167:18-21. She further testified that she does not

recall receiving the GoldStar report that allegedly involves Petrel and that she only received a

one-page summary from the attorney who prepared the report. *Id.* at 165:22-166:3. She also

testified that does not recall ever seeing the 2011 report that allegedly mentions Petrel at some

point. *Id.* at 177:24-178:3. These documents are not her work product nor has Schlumberger

shown that she had any substantial involvement in their preparation. In fact, she does not even

recall seeing either of them. *Id.* at 165:22-166:3; 177:24-178:3.

Schlumberger cannot meet its burden under the substantial relationship test under either

the Fifth Circuit or Texas standard by simply alleging that both Ms. Rutherford's former and

current professional relationships involve Petrel.

### iv.   Ms. Rutherford's role as a supervisory in-house counsel at Schlumberger must be taken into account.

When applying the substantial relationship test, it must be taken into account that Ms.

Rutherford's role at Schlumberger was that of a supervisory in-house attorney. Ms. Rutherford's

general knowledge of Schlumberger's policies and practices would not preclude her from

representing later clients or parties, including Dynamic or Acacia in subsequent patent litigation

cases against Schlumberger. Exh. I, Hricik, pp. 7, 30. A 1999 ABA Ethics Opinion reviewing a disqualification rule identical to Tex. D.R. 1.09(a) concluded that a former in-house lawyer did not breach that rule even by representing a client against her former company, even though the matters were substantially related, because her involvement with the former matter while still employed in-house was limited to a supervisory role that made her privy to few of the relevant details. Exh. J. Even if the Court were to find that the earlier versions of Petrel were substantially related to the current patent litigation, Ms. Rutherford has not breached any ethical rule because the descriptions in the "privilege-type" log and her deposition testimony shows that her role at Schlumberger was entirely supervisory.

### c.   Acacia's In House Counsel do not require disqualification under any theory

Schlumberger argues that if Ms. Rutherford is found to have a conflict, it must be irrebuttably imputed to all lawyer employees of Acacia and its subsidiaries. However, Schlumberger's approach ignores the special role that in-house lawyers play, especially in a non-practicing entity, and the evidence that Acacia does not have a corporate legal department.[4]

Schlumberger's argument regarding disqualification of all lawyers employed by Acacia ignores the special role played by in-house counsel. In-house counsel frequently wear both a "business hat" and a "legal hat." Courts have recognized this fact of corporate life as a basis for applying different disqualification standards to in-house counsel. *See. e.g., In re SAExploration, Inc.,* 2012 WL 6017717 at *3 (Tex.App.-Houston [14 Dist.], December 4, 2012 (In-house counsel's role as a party employee implicates disqualification standards that differ from those

---

[4] Schlumberger discusses only one case, *Honeywell Int'l, Inc. v. Philips Lumileds Lighting Co.*, No. 2:07-CV-463-CE, 2009 WL 256831 (E.D. Tex. Jan. 6, 2009), in that entire section of its brief.  The *Honeywell* case, however, does not even come close to supporting the result that Schlumberger seeks in this case—the automatic disqualification of every lawyer who happens to work at Acacia, regardless of their job function.  Indeed, *Honeywell* only analyzes the situation where the plaintiff's law firm in a patent case concurrently represents the defendant's sister company in separate patent litigation.  2009 WL 256831, * 2. Nowhere does the *Honeywell* decision deal with the legal issues and factual circumstances unique to the in-house context.

applicable to retained, outside counsel). Moreover, Schlumberger does not cite any case where a court has imputed a conflict among in-house lawyers employed by a corporation, and Mr. Burton could not cite to any in his deposition. Burton Depo., 109:13–110:7.

Schlumberger's theory of disqualification as to all of the lawyer-employees of Acacia rests on treating Acacia as one big corporate law department. Both the ABA Model Rule 1.10(a) and the Texas Disciplinary Rule 1.09(b), both of which deal with imputation clearly apply to lawyers in a "firm." Schlumberger relies on the definitions contained in those rules that recognize that lawyers employed in the legal department or corporation are treated as a law firm for purposes of the ethical rules. However, there is no evidence in the record that Acacia even has a corporate law department, much less one that operates across all of its entities.

There is no question that the in-house counsel role is different than the outside counsel/law firm role.  Here, there are important reasons why the law-firm disqualification rule should not be applied to actual parties, especially non-practicing companies such as Acacia, which naturally have numerous patent lawyers working for them in a variety of capacities.

Hypothetically, if an attorney with a conflict were to join a non-practicing entity even without disclosing the existence of the conflict, under Schlumberger's reading of the law-firm disqualification rule, every lawyer working in the non-practicing entity would be disqualified and the company could be forced to sell the patent.  Such a result is extreme and unwarranted.  Faced with similarly peculiar outcomes, courts have refused to adopt an unyielding view of the law-firm disqualification rule that would result in absurd consequences. *Cf. Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 136 (2d Cir. 2005) (recognizing the need for a "functional approach" to the disqualification of "of counsel" attorneys given the nature of their role within a law firm).

The evidence has clearly established that Rutherford had very limited involvement with the '319 patent case, let alone this suit, and her limited involvement should not result in disqualification at all—especially of all other attorneys who happen to work at Acacia.

### d. Schlumberger has failed to prove that Collins, Edmonds should be disqualified.

It is black letter law in the Fifth Circuit that when co-counsel have not had an attorney-client relationship with the disqualified lawyer's former client, disqualification is warranted only when actual disclosure of the former client's confidential information to co-counsel is shown, *Brennan's Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168 (5th Cir.1979). A presumption of disclosure of confidences is inappropriate. *Id.* at 174, *quoting Wilson P. Abraham Construction Corp. v. Armco Steel Corp.,* 559 F.2d 250, 253 (5th Cir.1977); *Ledwig v. Cuprum S.A.*, 2004 WL 573650 at *3 (W.D. Tex. Jan. 28, 2004); *Vinewood Capital, LLC v. Sheppard Mullin Richter & Hampton, LLP*, 735 F.Supp.2d 503, 524 (N.D. Tex. 2010). The Fifth Circuit has never overruled or even criticized this precedent. As even Mr. Burton, Schlumberger's ethics expert, had to admit, he knows of no Fifth Circuit opinion that has ever used the approach to co-counsel disqualification that he and Schlumberger are advocating. Exh. C, Burton Depo., 173:6-20. Schlumberger has submitted no evidence nor even offered any credible allegation that anyone has disclosed any confidential information of Schlumberger to the Collins, Edmonds firm. That should be the end of the inquiry. Indeed, Judge Sandill's sanctioning of Schlumberger for making the same accusations should put this issue to rest.

    i. Collins, Edmonds is not co-counsel with Ms. Rutherford under the law governing disqualification.

The threshold inquiry is whether Collins, Edmonds is co-counsel with Ms. Rutherford. The facts establish that it is not. Ms. Rutherford is not affiliated with Collins, Edmonds, so there

cannot be an imputation of any conflict on that basis. Ms. Rutherford does not appear on any of the pleadings and has not entered an appearance. She has not participated in Dynamic's patent suit against Schlumberger. Exh. D, Rutherford Depo., Vol. I, 29:10-14. Moreover, her uncontroverted testimony is that all discussions between Acacia and Collins, Edmonds are handled by Gary Fischman, who is the only person at Acacia who interacts with Collins, Edmonds on any of the '319 patent cases against Schlumberger.

> ii.   There is no evidence that Ms. Rutherford actually has any confidential information that would be relevant to Dynamic 3D's patent infringement case.

Even if Ms. Rutherford is deemed by this Court to be co-counsel to Collins, Edmonds, Schlumberger has not demonstrated that Ms. Rutherford actually possesses any of its confidential information that is relevant to Dynamic's present patent infringement case. As discussed above, the dismissal of Schlumberger's misappropriation of trade secrets, conversion, breach of fiduciary duty, and Texas Theft Liability Act claims in the State Court Case against Ms. Rutherford is, itself, ample evidence that Ms. Rutherford does not possess any such confidential information.  Moreover, as discussed above, Schlumberger's allegations that her exposure to earlier versions of Petrel are sufficient to meet the substantial relationship test fall far short of establishing that she learned any non-public information about Petrel that would be relevant to the issues in the patent litigation before this Court.

> iii.   There is no presumption of disclosure and Schlumberger has failed to demonstrate an actual disclosure to Collins, Edmonds of its confidential information.

Even if Schlumberger could establish that Ms. Rutherford possessed confidential information of Schlumberger that is relevant to the patent infringement suit, Schlumberger has utterly failed to offer any proof that it has been communicated to Collins, Edmonds. It is beyond

dispute that Collins, Edmonds has had no attorney-client relationship with any Schlumberger entity. Even if Ms. Rutherford has confidential information that is relevant to the present patent infringement action against Schlumberger, the law does not presume that any confidential information has been shared with Collins, Edmonds. Actual disclosure must be shown before Collins, Edmonds can be disqualified. *Brennan's, Inc.* 590 F.2d at 174; *Ledwig.* 2004 WL 573650 at *3; *Vinewood Capital,* 735 F.Supp.2d at 524 (N.D. Tex. 2010). Collins, Edmonds has provided assurances on the record in open court and to Schlumberger through letters that there has been no disclosure of confidential information relating to Schlumberger or its Petrel product by Ms. Rutherford, or anyone else at Acacia, to anyone at Collins, Edmonds. *See, generally,* Motion. Collins, Edmonds has represented on the record that the information that forms the basis of the infringement allegations against Schlumberger came from publically available sources, as evidenced by Dynamic's preliminary infringement contentions. Exh. G, Collins Decl. ¶15. Mr. Collins' declaration testimony establishes that neither he nor anyone at his firm has had any communication with Mr. Rutherford regarding the above-captioned patent litigation against Schlumberger. *Id.* at ¶ 13. Since the outset of Collins, Edmonds' involvement with the '319 patent, Ms. Rutherford has been walled off from any discussion of Schlumberger or its technology with anyone at the firm. *Id.,* ¶ 14. Other than an admonition by Ms. Rutherford that she would not discuss anything related to Schlumberger in a get-acquainted meeting with attorneys from Collins, Edmonds in June of 2013, neither Mr. Collins nor anyone at Collins, Edmonds has had any discussion of Schlumberger or its technology, including with respect to Petrel, with Ms. Rutherford. *Id.,* ¶ 7.

Schlumberger tries to make an end-run around the uncontroverted facts by arguing that it does not have to prove actual disclosure of Schlumberger's confidential information. It ignores

the black letter law set forth in Fifth Circuit precedent and argues that any conflict that Ms.

Rutherford might have should be imputed to the Collins, Edmonds firm. Exh. C, Burton

Deposition, 121:10-23.

Although Mr. Burton acknowledges three Fifth Circuit opinions, including *Brennan's,*

which hold that the movant for disqualification of co-counsel must prove actual disclosure of the

former client's confidential information, he and Schlumberger ignore that precedent. Exh. C,

139:3-24. Instead, they argue that the Fifth Circuit would now adopt the approach used in Texas

law and articulated in *In re American Home Products Corp.,* which provides for a burden

shifting approach once the movant has demonstrated that there were ***substantive*** conversations

between disqualified counsel and co-counsel, joint preparation for trial by those counsel, or the

apparent receipt by co-counsel of confidential information. *In re American Home Products*

*Corp.,* 985 S.W.2d 68 (Tex. 1998). Although he concedes that the Fifth Circuit has never used

the *American Home Products* approach in any opinion on disqualification of co-counsel, Exh. C,

Burton Depo., 173:6-20, Mr. Burton and Schlumberger argue that the Fifth Circuit would adopt

that approach because several federal district courts in Texas have done so.

What Mr. Burton and Schlumberger ignore, however, is that these federal district court

opinions do not presume a disclosure of the former client's confidences to co-counsel. In fact

they clearly follow (and cite) *Brennan's* and state that a presumption of confidences is

inappropriate. *See, e.g., Ledwig v. Cuprum, S.A.,* 2004 WL 573650, at *3 (W.D.Tex. January 28,

2004) (when co-counsel have not had an attorney-client relationship with the disqualified

lawyer's former client, "a presumption of disclosure of confidences is inappropriate.");

*Vinewood Capital, LLC v. Sheppard Mullin Richter & Hampton, LLP*,  735 F.Supp.2d 503, 524

(N.D. Tex. 2010) ("Unless disqualified counsel has disclosed privileged information to co-

counsel, disqualification of co-counsel is not proper, and a presumption of disclosure is inappropriate."). In other words, the Court must still find a disclosure of confidential information before disqualifying co-counsel.

In *Ledwig,* the court stated that it was guided by Texas' *American Home Products* approach, but did not expressly adopt the approach. *Ledwig,* 2004 WL 573650 at *3. Judge Ferguson articulated the approach as follows:

> The initial showing requires that the "party seeking disqualification must first demonstrate that there were substantive conversations between disqualified counsel and co-counsel, joint preparation for trial by those counsel, or the apparent receipt by co-counsel of confidential information. *In re American Home Products Corp,* 985 S.W.2d 68, 81 (Tex.1998) A rebuttable presumption then arises that disqualified counsel shared confidential information with co-counsel. Then, the party resisting disqualification of co-counsel may rebut this presumption by providing probative and material evidence that confidential information was not disclosed to them. *Id.*

*Id.*

Even if this Court were inclined to discount established Fifth Circuit precedent and use the state law *American Home Products* approach to co-counsel disqualification, the result is the same. *Ledwig* and *Vinewood* clearly place the burden on Schlumberger to demonstrate that there were substantive conversations between the disqualified lawyer and co-counsel, joint preparation for trial by those counsel, or the apparent receipt of the former client's confidential information. Even if Schlumberger could meet this burden, Dynamic would then be afforded the opportunity to present rebuttal evidence that confidential information was not disclosed to Collins, Edmonds by Ms. Rutherford.

Schlumberger has failed to offer any proof whatsoever that Ms. Rutherford has jointly prepared for trial against Schlumberger. Schlumberger has not been able to identify any specific confidential information of Schlumberger that is relevant to the patent infringement litigation

that Collins, Edmonds has apparently received from Ms. Rutherford. Instead, Schlumberger is left to argue that there have been substantive communications between Ms. Rutherford and Collins, Edmonds about the patent infringement case against Schlumberger. Schlumberger fails to meet its burden of proof.

The alleged "substantive communications" between Collins, Edmonds identified by Schlumberger are exactly the kind of conclusory allegations that led Judge Ferguson to deny the motion for disqualification of co-counsel in *Ledwig*. According to Mr. Burton and Schlumberger, the information of substance that Ms. Rutherford communicated to Collins, Edmonds firm is 1) her participation in the presentation regarding acquisition of the '319 patent (despite the fact that she testified that she removed herself from the call before there was any discussion of Schlumberger), 2) her alleged receipt of a recommendation to sue Schlumberger from Collins, Edmonds to sue Schlumberger, 3) her concurrence in the decision to sue Schlumberger, 4) and her participation in the hiring of Collins, Edmonds. Exh. C, Burton Depo., 149:4-23). Incredibly, Mr. Burton does not take into account that Ms. Rutherford testified that she left the phone call before there was any discussion of Schlumberger and did not return. Exh. D, Rutherford Depo., Vol. I, 72:10-19; *see also* Exh. F, Fischman Decl., ¶ 6. Nor can he or Schlumberger identify any communication she had about Schlumberger at that meeting. Even if Ms. Rutherford's recollection of the facts regarding when Collins, Edmonds first participated in the '319 patent cases were entirely correct, neither Mr. Burton nor Schlumberger can identify any specific substantive communication about Schlumberger that took place in that meeting, much less any communication that took place before she excused herself from the meeting. Schlumberger and Mr. Burton also have no explanation for what substance concerning Schlumberger was communicated to Collins, Edmonds by Ms. Rutherford by virtue of her participation in the

decision to hire that firm to enforce and license the patent against an industry where there has been widespread infringement. Mr. Burton and Schlumberger are left to argue that Ms. Rutherford's concurrence in the decision to acquire and enforce the '319 patent, which she allegedly communicated to Collins, Edmonds, is somehow an implied communication of Schlumberger's confidential information by Ms. Rutherford to the Collins, Edmonds firm. Exh. C, Burton Depo., 128:5-14. Although Mr. Burton states the implied communication is a very important part of his analysis, *Id.* at 167:19-25, he is not aware of any case law authority for the proposition that an implied communication can be a substantive communication sufficient to shift the burden of resisting disqualification to the Collins, Edmonds firm. *Id.*, 166:16-24.

Even if this Court adopts the *American Home Products* approach to co-counsel disqualification, and even if it agrees with Schlumberger's creative implied communication theory, Dynamic's rebuttal evidence conclusively establishes that no confidential information of Schlumberger was disclosed to Collins, Edmonds. The timeline established by the declarations of Michael Collins and Gary Fischman establishes that neither Mr. Collins nor anyone at Collins, Edmonds could have been involved in the hour-long presentation that led to the decision to acquire and enforce the '319 patent. ARG entered into an agreement with AGM to acquire the '319 patent on August 20, 2013. Exh. F, Fischman Decl., ¶ 4. In early November of 2013, Mr. Fischman assembled a PowerPoint presentation and presented it to Matt Vella during a November 7, 2013, telephone conference with Mr. Vella in which Mr. Fischman recommended that ARG acquire the '319 patent and form a subsidiary to license and enforce that patent. *Id.*, ¶ 5. Charlotte Rutherford participated in the telephone call with and presentation to Mr. Vella. *Id.*, ¶ 6. However, she excused herself from the call before there was any discussion related to Schlumberger. *Id.*, ¶ 6. No outside counsel participated in the call with and PowerPoint

presentation to Mr. Vella. *Id.*, ¶ 7. The decision to acquire and enforce the '319 patent was made at the conclusion of the call with Mr. Vella. *Id.*, ¶ 8. On November 18, 2013, ARG transmitted a formal written notice to AGM of acceptable completion of the investigation period on the '319 patent, and ARG advised AGM that the patent assignment agreement dated August 20, 2013 continued with full force and effect.

Mr. Fischman did not approach Mr. Collins of Collins, Edmonds about representing an Acacia subsidiary in the enforcement of the '319 patent until ***after*** making the PowerPoint presentation to Mr. Vella and ***after*** the decision was made to acquire and enforce that patent. *Id.*, ¶ 9. Thus, Collins, Edmonds could not have participated in either the hour-long meeting where the PowerPoint was presented, or in any recommendation to acquire the '319 patent.

Mr. Collins confirms that neither he nor anyone at Collins, Edmonds prepared and/or presented a PowerPoint presentation to anyone at ARG or any subsidiary thereof, including Ms. Rutherford, that made any recommendation regarding whether to acquire the '319 patent. Exh. G, Collins Decl.*,* ¶ 9. Mr. Collins further confirms that neither he nor anyone at Collins, Edmonds prepared and/or presented a PowerPoint presentation to anyone at ARG, including Mr. Fischman, Ms. Rutherford or Matt Vella, that contained a recommendation as to whether to sue Schlumberger or Halliburton. *Id.*, ¶ 10. Mr. Collins also confirms that neither he nor anyone at Collins, Edmonds provided any recommendation to Ms. Rutherford that ARG or Dynamic 3D should or should not file suit against Schlumberger. *Id.*, ¶ 11. With respect to the "implied" communication alleged by Schlumberger, Mr. Collins has testified that Ms. Rutherford has never told him or anyone at his firm that she concurred in the decision to file the patent infringement suit against Schlumberger. *Id.*, ¶ 12. In short, even if Schlumberger could have identified a ***substantive*** actual conversation about the patent infringement case that occurred between Ms.

Rutherford and anyone from Collins, Edmonds, Dynamic has submitted more than sufficient material evidence that no confidential information could have been disclosed to it. Schlumberger's disqualification theory as to Collins, Edmond fails under either Fifth Circuit the Texas approach advocated by Mr. Burton.[5]

e.   **This action should move forward because Schlumberger has not demonstrated a need for dismissal.**

Schlumberger is arguing that this case should be dismissed because it has been tainted from the beginning by Ms. Rutherford's alleged breaches of confidence that, in turn, should be imputed to all attorneys at Acacia, Acacia Research Group, and Dynamic 3D Geosolutions, as well as Dynamic 3D Geosolutions' outside counsel, Collins, Edmonds. However, even if Schlumberger's "taint" theory is correct, Schlumberger's entire line of reasoning fails because it necessarily requires Schlumberger to show that Ms. Rutherford actually had specific, relevant confidential information and that Ms. Rutherford breached Schlumberger's confidences by disclosing it to other lawyers at Acacia and Collins, Edmonds. As discussed above, Schlumberger has failed to prove that Ms. Rutherford actually disclosed any confidential information of Schlumberger. This critical failure on Schlumberger's part cascades and causes Schlumberger's theory of imputation to Acacia's in-house attorneys as well as Collins, Edmonds to fail. The alleged "taint" that Schlumberger cites as the basis for dismissal of this case is simply non-existent.

The extraordinary relief sought by Schlumberger is tantamount to an injunction, even though Schlumberger makes no effort to demonstrate that it is entitled to one. If Schlumberger were to achieve dismissal of this action on the grounds sought, even if without prejudice, it

---

[5] Even Mr. Burton is unwilling to definitely opine at this time that Collins, Edmonds should be disqualified as Schlumberger urges. Exh. C, Burton Depo., 172:15-18. He is willing to leave that decision to the Court after it reviews the rebuttal evidence. *Id.*

would essentially be immune from suit by Acacia or any of its subsidiaries, not just in relation to the '319 Patent, but with respect to any patent infringement action brought by Acacia or an Acacia subsidiary. It would essentially have a license to infringe the '319 Patent and, for that matter, any patent owned by Acacia or a subsidiary, without fear of being sued. Schlumberger would be able to argue that Ms. Rutherford always has a conflict in any matter adverse to Schlumberger, and that conflict would be imputed to every lawyer in Acacia, and every outside counsel that Acacia might hire. Schlumberger's Motion to Dismiss should be denied.

In the ordinary course of granting a motion to disqualify, courts permit plaintiffs an appropriate amount of time to retain new counsel to continue pursuing the case. *See, e.g., Kreeger v. State Farm Fire & Cas. Co.*, 2008 WL 1745197, at*1 (S.D. Miss. Apr. 11, 2008); *McIntosh v. State Farm Fire & Cas. Co.*, 2008 WL 941640, at *2 (S.D. Miss. Apr. 4, 2008); *Arnold v. Cargill Inc.*, 2004 WL 2203410, at *14 (D. Minn. Sept. 24, 2004). Disqualification is already an "extreme remedy," *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1026 n.6 (5th Cir. 1981), and compounding that result by dismissing the case—even without prejudice—would serve no purpose but delay. In effort to evade these principles, Schlumberger can only resort to citing cases involving peculiar circumstances with no bearing on this case. See Motion, p. 30-31.[6] In the end, Schlumberger has not demonstrated reasons to justify dismissal.

## IV.   CONCLUSION

For the reasons stated herein, Schlumberger's Motion should be denied in its entirety.

---

[6] (citing *Doe v. A Corporation*, 709 F.2d 1043 (5th Cir. 1983) (dismissing claims without prejudice after disqualifying former in-house attorney from serving *as class representative*); *United States ex rel. Fair Laboratory Practices Assocs. v. Quest Diagnostics Inc.*, 2011 WL 1330542, at *11 (S.D.N.Y. Apr. 5, 2011) (dismissing without prejudice in *qui tam* context where federal government remained free to assert the same claims).

Dated: September 5, 2014

Respectfully submitted,

*/s/ Michael J. Collins*
Michael J. Collins – LEAD COUNSEL
Texas Bar No. 04614510
John J. Edmonds, Esq.
Texas Bar No. 789758
Henry Pogorzelski, Esq.
Texas Bar No. 24007852
Shea N. Palavan, Esq.
Texas Bar No. 24083616
Matthew C. Juren
Texas Bar No. 24065530
**COLLINS, EDMONDS, POGORZELSKI,
SCHLATHER & TOWER, PLLC**
1616 South Voss Road, Suite 125
Houston, Texas 77057
Telephone: (281) 501-3425
Facsimile: (832) 415-2535
Email: mcollins@cepiplaw.com
        jedmonds@cepiplaw.com
        hpogorzelski@cepiplaw.com
        spalavan@cepiplaw.com
        mjuren@cepiplaw.com

***Attorneys for Plaintiff***
***Dynamic 3D Geosolutions LLC***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on September 5, 2014. As such, this document was served on all counsel who have consented to electronic service. Local Rule CV-5(b)(1).

*/s/ Michael J. Collins*
Michael J. Collins