IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DYNAMIC 3D GEOSOLUTIONS LLC, | CASE NO.: 1:14-CV-00112-LY |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| SCHLUMBERGER LIMITED (SCHLUMBERGER N.V.); SCHLUMBERGER HOLDINGS CORPORATION; AND SCHLUMBERGER TECHNOLOGY CORPORATION, | |
| Defendants. | |

**SCHLUMBERGER'S REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISQUALIFY COUNSEL AND TO DISMISS WITHOUT PREJUDICE**

**TABLE OF CONTENTS**

**Page**

I.    SUMMARY OF ARGUMENT ................................................................................ 1

II.   DISCUSSION ..................................................................................................... 3

      A.    Plaintiff Mischaracterizes Schlumberger's Motion ............................... 3

      B.    The Fifth Circuit's "Substantial Relationship" Standard Governs
            This Motion................................................................................................ 5

      C.    Rutherford's Former Representation of Schlumberger Is
            "Substantially Related" To This Action ................................................. 7

      D.    Rutherford's Conflict Is Imputed to All Attorneys Within Acacia...................... 10

      E.    The Collins Edmonds Firm Must Be Disqualified ............................... 12

      F.    This Action Should Be Dismissed Without Prejudice......................... 16

## TABLE OF AUTHORITIES

**Page**

### CASES

Ackerman v. Nat'l Prop. Analysts, Inc.,
887 F. Supp. 510 (S.D.N.Y. 1993), aff'd, 60 F.3d 810 (2d Cir. 1995)...................................5

Biax Corp. v. Fujitsu Computer Sys. Corp.,
No. 2:06-CV-364-TSW, 2007 WL 1466638 (E.D. Tex. May 16, 2007)..............................7

Brennan's Inc. V. Brennan's Restaurants, Inc.,
590 F.2d 168 (5th Cir. 1979) ........................................................................................... 15

Ciba-Geigy Corp. v. Alza Corp.,
795 F. Supp. 711 (D.N.J. 1992) .........................................................................................7

Cognex Corp. v. VCode Holdings, Inc.,
No. 06-cv-1040, 2006 WL 3043129 (D. Minn. Oct. 24, 2006)........................................ 11

Dean Witter Reynolds, Inc. v. Clements, O'Neill, Pierce & Nickens, L.L.P.,
No. H-99-1882, 2000 WL 36098499 (S.D. Tex. Sept. 8, 2000)..........................................6

E.F. Hutton & Co. v. Brown,
305 F. Supp. 371 (S.D. Tex. 1969) .....................................................................................5

Hybrid Kinetic Auto. Holdings, Inc. v. Hybrid Kinetic Auto. Corp.,
643 F. Supp. 2d 819 (N.D. Miss. 2009).............................................................................. 6

Hydril Co. v. Multiflex, Inc.,
553 F. Supp. 552 (S.D. Tex. 1982) .....................................................................................6

In re Am. Airlines, Inc.,
972 F.2d 605 (5th Cir. 1992) .....................................................................................passim

In re Am. Home Prods. Corp.,
985 S.W.2d 68 (Tex. 1998)............................................................................................... 15

In re Corrugated Container Antitrust Litig.,
659 F.2d 1341 (5th Cir. 1981) ............................................................................................8

In re DW Wallcovering, Inc.,
74 F.3d 1259, 1996 WL 17457 (Fed. Cir. 1996) ................................................................9

In re Riles,
No. 620, 2000 WL 1062086 (Fed. Cir. July 20, 2000).....................................................6, 9

John Crane Prod. Solutions, Inc. v. R2R & D, LLC,
No. 3:11-CV-3237-D, 2012 WL 3453696 (N.D. Tex. Aug. 14, 2012) ................................. 6

Ledwig v. Cuprum S.A.,
No. SA-03-CA-542-RF, 2004 WL 573650 (W.D. Tex. Jan. 28, 2004)................................ 15

National Med. Enter., Inc. v. Godbey,
924 S.W.2d 123 (Tex. 1996)................................................................................................ 10

NCK Org. Ltd. v. Bregman.,
71 F.R.D. 338 (S.D.N.Y. 1976), aff'd, 542 F.2d 128 (2d Cir. 1976) ................................... 12

NCNB Tex. Nat'l Bank v. Coker,
765 S.W.2d 398 (Tex. 1989)................................................................................................ 10

OneBeacon Ins. Co. v. T. Wade Welch & Associates,
No. H-11-3061, 2012 WL 393309 (S.D. Tex. Feb. 6, 2012)................................................... 9

Sumpter v. Hungerford,
No. 12-cv-717, 2013 WL 2181296 (E.D. La. May 20, 2013) ................................................. 6

Sun Studs, Inc. v. Applied Theory Assocs., Inc.,
772 F.2d 1557 (Fed. Cir. 1985)............................................................................................. 7

Tendeka, Inc. v. Glover,
No. H-13-1764, 2014 WL 2002260 (S.D. Tex. May 15, 2014)............................................... 6

Vinewood Capital, LLC v. Sheppard Mullin Richter & Hampton, LLP,
735 F. Supp. 2d 503 (N.D. Tex. 2010) ............................................................................... 15

## STATUTES

Fed. R. Civ. P. 26(b)(4)(C)(ii) ...................................................................................................... 8

## OTHER AUTHORITIES

David Hricik, Patent Ethics: Litigation (2010) ............................................................................ 7

Restatement (Third) of Law Governing Lawyers § 123 (2000) ................................................. 11

Schlumberger files this Reply Brief in support of Defendants' Motion to Disqualify Counsel and to Dismiss Without Prejudice.  ECF No. 48.[1]

## I.    <u>SUMMARY OF ARGUMENT</u>

Plaintiff's opposition mischaracterizes: (1) the evidence before the Court; (2) the relief requested by Schlumberger; and (3) the law governing this Motion.  It is premised on the erroneous factual assertion that Rutherford did nothing with respect to this lawsuit.  But that is <u>not</u> her sworn testimony.  Instead, she testified under oath that she concurred in the decision "to acquire and **file the litigation *against Schlumberger* by Dynamic 3D**."  Ex. 2, Rutherford Dep. vol. 2 (hereinafter "CR Dep. vol. 2"), 27:2-4.[2]  Plaintiff's opposition ignores her critical admission.  Rutherford's testimony that she participated in the decision to acquire <u>and</u> <u>sue</u> her former client Schlumberger on the '319 Patent cannot be controverted by self-serving declarations suggesting Rutherford "misremembered" her involvement with the Collins Edmonds firm.  Regardless, Rutherford's testimony that she cooperated with fellow Acacia attorneys in the decision to acquire and sue Schlumberger on the '319 Patent is <u>undisputed</u>.

On the law, Plaintiff's opposition distorts the Fifth Circuit's "substantial relationship" test by asserting that Rutherford cannot be disqualified because she did not work on the very same matter at issue here (i.e., she did not switch sides with respect to the '319 Patent).  But, the Fifth Circuit's "substantial relationship" test is broader than the identical matter test that Plaintiff seeks to apply.  Matters need only be "akin to the present action in a way reasonable persons would understand as important to the issues involved" to require disqualification.  <u>In re Am.</u>

---

[1]    Abbreviations defined in Defendants' Motion, ECF No 48.  For clarity, Schlumberger will: (1) continue to cite to Exhibits 1 to 27 of the Motion insofar as they are referenced in this Reply; and (2) number new exhibits submitted in support of this Reply from 28 to 43.

[2]    All emphasis added unless otherwise noted.

Airlines, Inc., 972 F.2d 605, 623 (5th Cir. 1992).  There is no colorable dispute that Rutherford performed substantial amounts of IP legal work on Schlumberger's Petrel product, the product at issue in this case.  The so-called "older" versions of Petrel, on which she undisputedly worked, are directly relevant to this case for several reasons.  For example, if the case survives the pending motion to dismiss on 35 U.S.C. § 101 grounds, the "older" Petrel will be key evidence establishing invalidity of the '319 Patent.

All Acacia attorneys must also be disqualified.  By law, they are irrebuttably presumed to have access to all of the former client confidences that Rutherford possesses.  Even if Fifth Circuit law recognized the efficacy of an ethics screen (it does not), Rutherford's uncontradicted testimony that she told her fellow Acacia attorneys that she concurred in the decision to sue Schlumberger establishes that no effective ethics screen was erected.  The Collins Edmonds firm should be disqualified as well.  Although it contends that Rutherford "misremembered" when it got involved in this case, the attempt to contradict her repeated sworn testimony cannot immunize Collins Edmonds from disqualification.[3]  Where, as here, Schlumberger's former counsel has given sworn testimony that she communicated her concurrence in the decision to sue Schlumberger, Collins Edmonds' self-serving affidavits cannot rebut that testimony.  But, even ignoring Rutherford's testimony about her discussions with outside counsel, Collins Edmonds must still be disqualified because its attorneys continue to discuss with Rutherford the related '319 Patent cases, which involve validity issues that are identical to this case, and

---

[3]   Rutherford has not withdrawn, qualified, or rescinded her testimony that she concurred with Collins Edmonds in the decision "to acquire and **file the litigation *against Schlumberger* by Dynamic 3D**," but has instead affirmed it.  CR Dep. vol. 2, 27:2-4; see also CR Dep. vol. 1 Reporter Certification 6-9; Ex. 29, CR Dep. vol. 2 Reporter Certification 6-7.

because the Collins and Fischman Declarations fail to deny that employees in Acacia have received and/or disclosed Schlumberger's confidences.

Finally, because this case was infected from its inception by Rutherford's breach of loyalty and improper concurrence in the decision to sue Schlumberger, it should be dismissed. Whatever prejudice flows from such a dismissal is the result of the decision to engage in the unethical conduct that led to this motion; counsel cannot escape the foreseeable consequences of their conduct—i.e., dismissal.

## II.    DISCUSSION

### A.    Plaintiff Mischaracterizes Schlumberger's Motion

Contrary to Plaintiff's claim that Schlumberger purportedly seeks an order "tantamount to an injunction" prohibiting Rutherford for practicing law in all courts and the United States PTO, Ex. 30, Pl.'s Resp. 30 (hereinafter "Pl.'s Resp."), Schlumberger asks only that the Court:

> (1) disqualify Rutherford from this case; (2) disqualify Acacia's in-house legal department (including all persons acting in any legal capacity) from this case; (3) disqualify the Collins Edmond's firm from this case; (4) dismiss this action without prejudice; (5) permit Schlumberger to brief entitlement to its reasonable attorney's fees and costs in this action; and (6) grant any other relief the Court deems just.

Defs.' Mot. to Disqualify 31, ECF No. 48.  Far from seeking relief that is purportedly "literally unprecedented," Ex. 31, Hricik Decl. 6, 18 (hereinafter "Hricik Decl."), Schlumberger seeks relief that federal courts routinely grant—disqualification of counsel acting in the case before them.

Substantively, Plaintiff's opposition fails because it is premised on a mischaracterization of Rutherford's straightforward and unequivocal testimony.  It is premised on its assertions that "Rutherford's only recommendation was to proceed in litigation against Halliburton, not Schlumberger," Pl.'s Resp. 8 (emphasis original), and that "Rutherford Consult[ed] with Acacia About Enforcing the '319 Patent but Only Against Halliburton."  Hricik Decl. 16.  Rutherford's testimony refutes those assertions.  Rutherford admitted under oath and in open court that she

3

concurred in the decision "to acquire and **file the litigation against *Schlumberger* by Dynamic 3D**." CR Dep. vol. 2, 27:2-4. Rutherford further admitted that she "concurr[ed] with the recommendation from outside counsel [Collins] and in-house counsel [Fischman] to acquire the [']319 Patent **and to sue Schlumberger**." Id. at 31:15-18. Rutherford then admitted that Acacia's President and CEO, Vella, had the benefit of Rutherford's concurrence when he authorized acquiring the '319 Patent and filing this suit **against Schlumberger**. Ex. 1, Rutherford Dep. vol. 1 (hereinafter "CR Dep. vol. 1"), 86:6-88:15.

Plaintiff's counsel, Michael Collins', and client representative (Acacia in-house counsel), Gary Fischman's declarations seek to controvert Rutherford's sworn testimony that Collins participated in those discussions. But, Plaintiff has submitted no evidence disputing Rutherford's testimony that she communicated her concurrence in the decision to: (1) acquire the '319 Patent; and (2) sue her former client, Schlumberger, on the '319 Patent, to her fellow Acacia lawyers. Rutherford's testimony on this issue is uncontroverted.[4] Plaintiff relies heavily on its assertion that Rutherford "has not participated in the present lawsuit by Dynamic against Schlumberger in any capacity." Pl.'s Resp. 7. That assertion is refuted by Rutherford's own testimony and undercuts Plaintiff's arguments.[5]

---

[4]  Plaintiff's mischaracterization of Rutherford's undisputed testimony, without more, renders Plaintiff's opposition fatally defective. Thus, for example, the argument advanced by Plaintiff's expert, David Hricik, that Rutherford's representation of Acacia was purportedly not "adverse" to Schlumberger, Hricik Decl. 32-33, is, on its face, meritless and ignores her repeated admissions. CR Dep. vol. 2, 27:2-4, 31:15-18; CR Dep. vol. 1, 86:6-88:15. Telling your new employer that you agree with a recommendation to sue your former employer is "adversity" under any common sense definition of that term.

[5]  Plaintiff's suggestion, Pl.'s Resp. 4-5, that Schlumberger circumvented this Court's discovery stay by deposing Rutherford in the unrelated state court action is baseless. Rutherford's testimony was directly relevant to the state case, as evidenced by the fact that Rutherford's counsel failed to object to the overwhelming majority of questioning. The state court later overruled the majority of Rutherford's objections and ordered a second deposition.

Plaintiff incorrectly argues that this Court should somehow defer to the Harris County court. The state court case is, however, irrelevant to this Motion, which does not turn on whether Rutherford committed tortious acts or breached contractual obligations under Texas law, but rather depends on the application of the Fifth Circuit's law of professional responsibility to attorneys working on a patent infringement case pending in federal court. The threadbare, three paragraph, state court order, Ex. 32, St. Ct. Order, repeatedly cited by Plaintiff (and currently on appeal), Ex. 33, St. Ct. Notice of Appeal, is irrelevant to the ethics issues presented here.

**B.     The Fifth Circuit's "Substantial Relationship" Standard Governs This Motion**

Fifth Circuit law governs the conduct of attorneys in connection with matters before this Court and requires disqualification. Plaintiff argues that Texas state rules somehow govern this Motion. That is nonsense. First, Plaintiff wrongly argues that Rutherford is immune from Fifth Circuit law because she has not filed a notice of appearance in this case. But, "a district court is obliged to take measures against unethical conduct occurring <u>in connection with any proceeding before it</u>." <u>In re Am. Airlines</u>, 972 F.2d at 611. Consequently, Texas district courts apply ethics rules to attorneys who are involved in cases before them, including attorneys who do not formally appear. <u>E.F. Hutton & Co. v. Brown</u>, 305 F. Supp. 371, 379-81 (S.D. Tex. 1969) (applying Fifth Circuit law to disqualify out-of-state firm that had not made an appearance); <u>see</u> <u>Ackerman v. Nat'l Prop. Analysts, Inc.</u>, 887 F. Supp. 510, 516, 518 (S.D.N.Y. 1993) (applying New York law to attorney who had not appeared but "for all practical purposes" acted as co-counsel), <u>aff'd</u>, 60 F.3d 810 (2d Cir. 1995).

Second, Plaintiff's argument that Fifth Circuit law should not apply to conduct that occurred before the case was filed, Hricik Decl. 20-22, is likewise baseless. Plaintiff cites no law in support of that argument; we have found none. Regardless, the totality of Rutherford's improper

conduct was undertaken for the specific purpose of filing this patent infringement suit in this Court, and she undisputedly concurred in the decision to file this action. Plaintiff's argument would deny federal courts the ability to regulate unethical conduct occurring in connection with the filing of a federal action merely because an attorney ceases unethical conduct before a complaint is filed. That result would damage the attorney-client relationship and undermine former client confidence in the profession's ability to protect their interests. No case holds that this Court should be so handicapped in fulfilling its obligation to "take measures against unethical conduct occurring in connection with any proceeding before it." In re Am. Airlines, 972 F.2d at 611.

Plaintiff's fallback argument that this Court should apply a new, but unspecified, test for determining a "substantial relationship," Hricik Decl. 28-31—rather than the test that has been applied in this Circuit since In re American Airlines—should likewise be rejected. The Fifth Circuit has never questioned the "substantial relationship" standard articulated in In re American Airlines, 972 F.2d at 619, 623. That standard provides that a "substantial relationship" exists if the prior representation is "akin to the present action in a way reasonable persons would understand as important to the issues involved." Id. Texas district courts routinely apply this standard, including as recently as three months ago.[6] The Court should decline Plaintiff's

---

[6]   In re Riles, No. 620, 2000 WL 1062086, at *3 (Fed. Cir. July 20, 2000) (applying Fifth Circuit standard); Tendeka, Inc. v. Glover, No. H-13-1764, 2014 WL 2002260, at *4 (S.D. Tex. May 15, 2014) (same); John Crane Prod. Solutions, Inc. v. R2R & D, LLC, No. 3:11-CV-3237-D, 2012 WL 3453696, at *2 (N.D. Tex. Aug. 14, 2012) (same); Dean Witter Reynolds, Inc. v. Clements, O'Neill, Pierce & Nickens, L.L.P., No. H-99-1882, 2000 WL 36098499, at *7 (S.D. Tex. Sept. 8, 2000) (same); Hydril Co. v. Multiflex, Inc., 553 F. Supp. 552, 554 (S.D. Tex. 1982) (same). This standard has likewise been applied by at least ten other district courts in the Fifth Circuit. See e.g., Sumpter v. Hungerford, No. 12-cv-717, 2013 WL 2181296, at *9 (E.D. La. May 20, 2013) (applying Fifth Circuit standard, ordering disqualification); Hybrid Kinetic Auto. Holdings, Inc. v. Hybrid Kinetic Auto. Corp., 643 F. Supp. 2d 819, 827 (N.D. Miss. 2009) (same).

request to ignore Fifth Circuit precedent and create a "new" test for determining whether a "substantial relationship" exists.[7]

### C. Rutherford's Former Representation of Schlumberger Is "Substantially Related" To This Action

Rutherford's Petrel related work for Schlumberger was "akin to the present action in a way reasonable persons would understand as important to the issues involved." Id. Plaintiff argues that Rutherford's work is irrelevant because she purportedly worked on "older" versions of Petrel. Pl.'s Resp. 16-17. But the evidence is uncontradicted that "[t]he features and functionality identified by [Plaintiff] as allegedly infringing existed in versions 2005, 2007, 2008, 2009, 2010, 2011, 2012, and 2013 of Petrel." Ex. 18, Beardsell Decl. ¶ 5. Plaintiff argues without support that the Beardsell Declaration somehow "strains credulity." Pl.'s Resp. 17. But Plaintiff declined to take Beardsell's deposition (though offered on the date Plaintiff requested, Ex. 34, A. Wahls Email (Aug. 25, 2014)), and hence its attack on Beardsell's credibility is unsupported. Schlumberger nonetheless produced documents to Plaintiff proving that the allegedly infringing features of Petrel existed in those "older" versions of Petrel. Ex. 35, Hayes Email (July 24, 2014); Ex. 35-A, Defs.' Initial Invalidity Contentions.

---

[7] Plaintiff cites three cases to argue that "numerous cases make clear that even two successive patent-related representations are not substantially related . . . merely because similar technology is involved in both representations." Pl.'s Resp. 16. Plaintiff's expert Hricik concedes "that ethical issues are not unique to patent law and . . . the law of the proper regional circuit" applies. David Hricik, Patent Ethics: Litigation 7 (2010) (citing Sun Studs, Inc. v. Applied Theory Assocs., Inc., 772 F.2d 1557, 1566 (Fed. Cir. 1985)). Thus, Fifth Circuit law governing disqualification applies here. Regardless, Rutherford's prior representation of Schlumberger and this case involve the very same product—Petrel. Plaintiff's cases are irrelevant. Ciba-Geigy Corp. v. Alza Corp., 795 F. Supp. 711, 716-17 (D.N.J. 1992) applies a "substantial relationship" standard that is inconsistent with Fifth Circuit law. Biax Corp. v. Fujitsu Computer Sys. Corp., No. 2:06-CV-364-TSW, 2007 WL 1466638, at *2-3 (E.D. Tex. May 16, 2007) and Power Mosfet Techs, L.L.C. v. Siemens AG, No. 2:99–CV–168, 2002 WL 32785219, at *2 (E.D. Tex. 2002) incorrectly apply the different California test for determining whether a "substantial relationship" exists.

Plaintiff's "strains credulity" argument, Pl.'s Resp. 17, confirms that the features and functionality of the "older" Petrel versions are at issue in this case.  Schlumberger contends that older versions of Petrel invalidate the '319 Patent.   Ex. 35-A, Defs.' Initial Invalidity Contentions.  And Halliburton has already asked the United States PTO to invalidate the '319 Patent based on the "older" versions of Petrel.  Ex. 36,  Halliburton IPR, No. 1; Ex. 37, Halliburton IPR, No. 2; Ex. 38,  Halliburton IPR, No. 3.

Plaintiff's argument that the Court must blind itself to the privilege-log level description of documents regarding Rutherford's former representation of Schlumberger absent disclosure of the underlying documents ignores Fifth Circuit law (and Schlumberger's offer to produce the underlying documents in camera).  That law requires that once the Court finds a "substantial relationship" it must "irrebuttably presume that relevant confidential information was disclosed during the former period of representation," In re Am. Airlines, 972 F.2d at 614, because:

> [The] presumption is intended to prevent proof that would be improper to make. The presumption avoids compelling the former client to prove the very things that he seeks to keep confidential.  If . . . the attorney could attempt to prove that he did not recall any disclosure of confidential information, or that no confidential information was in fact disclosed, this could . . . defeat the purpose of keeping the client's secrets confidential. . . . [T]he client might . . . be put into the anomalous position of having to show what confidences he entrusted to his attorney in order to prevent those confidences from being revealed.

In re Corrugated Container Antitrust Litig., 659 F.2d 1341, 1347 (5th Cir. 1981).  Schlumberger's counsel has submitted a Declaration attesting to the accuracy of the document descriptions in the log.  Ex. 27, Amstutz Decl.[8]  As noted, the documents are readily available for in camera review.[9]

---

[8]  Plaintiff's attack on Schlumberger's expert, Amon Burton, because he did not review the underlying privileged documents, rings hollow.  Had Burton reviewed the underlying documents, Plaintiff would have demanded their production.   See Fed. R. Civ. P. 26(b)(4)(C)(ii) (requiring disclosure of "facts or data"  an expert "considered in forming" his opinions).  That would have put Schlumberger in precisely the "anomalous position of having to show what confidences [it] entrusted to [its] attorney" that In re Corrugated Container held is improper.

Plaintiff asserts that Rutherford's role at Schlumberger was "entirely supervisory." Pl.'s Resp. 20. But throughout the 2007 Petrel Goldstar analysis Rutherford regularly scheduled conference calls or attended meetings regarding Petrel's intellectual property analysis. Ex. 3, SLB Log 1-8. And Rutherford personally assumed responsibility for matters relating to Schlumberger's enforcement efforts. Id. at 11. Schlumberger's log reflects multiple documents regarding Rutherford's involvement in Petrel-related copyright litigation, many of which include Rutherford's personal edits in tracked changes. Id. at 7-8.[10]

Plaintiff encourages the Court to parse through Rutherford's work on Petrel, arguing that each matter is, as a stand-alone, insufficient to establish "substantial relationship." But that invites legal error because Courts consider the totality of the circumstances in applying the substantial relationship test. See e.g., In re Riles, 2000 WL 1062086, at *1 (discussing district court's reliance on multiple aspects of former representation in finding a "substantial relationship"); see also Defs.' Mot. to Disqualify 22 n.15, ECF No. 48 (collecting cases).

Rutherford's purported lack of recall of the confidences that she learned at Schlumberger, Pl.'s Resp. 19, is irrelevant. As explained in Section II.A, once the Court finds a "substantial relationship" it must irrebuttably presume that relevant confidences were disclosed during the prior representation. Plaintiff's unsupported assertion that some of the information Rutherford relied on during the Goldstar analysis is "presumably" in the public sphere, Hricik Decl. 42, is

---

[9]   See e.g., In re DW Wallcovering, Inc., 74 F.3d 1259, 1996 WL 17457, at *3 (Fed. Cir. 1996) (declining to grant mandamus based on use of an in camera hearing to determine "substantial relationship"); OneBeacon Ins. Co. v. T. Wade Welch & Associates, No. H-11-3061, 2012 WL 393309, at *8 n.3 (S.D. Tex. Feb. 6, 2012) (requesting materials for in camera review).

[10]  Plaintiff misconstrues ABA Formal Ethics Opinion 99-415. Pl.'s Resp. 20. Per that Opinion, "[d]irect involvement in the matter, or a style of supervision that results in access to material information concerning a matter" establishes personal representation. Ex. 39, ABA Formal Ethics Op. 99-415, at 2. The log demonstrates Rutherford was both directly involved in and had access to confidential information regarding Petrel. Ex. 3, SLB Log 1-8.

also irrelevant; information obtained by an attorney during a prior representation is protected "without regard to whether someone else may be privy to it." In re Am. Airlines, 972 F.2d at 620. And Plaintiff's argument that "there is no evidence . . . that Ms. Rutherford . . . knows of the Recon product," Hricik Decl. 11-12, is simply wrong. Rutherford received patent analysis regarding "Petrel and Petrel's competitor products, including Austin Geomodeling's RECON software product." Ex. 3, SLB Log 2. Contrary to Plaintiff, Hricik Decl. 41, Rutherford spearheaded efforts to license the Petrel product during her representation of Schlumberger. Ex. 3, SLB Log 9, 12. This evidence establishes that Rutherford worked on matters that are "akin to the present action in a way reasonable persons would understand as important to the issues involved," requiring disqualification.[11] In re Am. Airlines, 972 F.2d at 619, 623.

### D.      Rutherford's Conflict Is Imputed to All Attorneys Within Acacia

Plaintiff incorrectly argues that Acacia does not have a corporate law department. Pl.'s Resp. 21.[12] Schlumberger's Motion detailed the reporting relationships among Fischman,

---

[11] The matters are also "substantially related" under the Texas standard because "factual matters involved [in the former representation] [a]re so related to the facts in the pending litigation that it creates a genuine threat that confidences revealed to . . . former counsel will be divulged to [the former client's] adversary." NCNB Tex. Nat'l Bank v. Coker, 765 S.W.2d 398, 400 (Tex. 1989). There is here more than a mere "genuine threat" that Schlumberger's confidences will be divulged—Rutherford's uncontested testimony establishes that she's already divulged them by communicating her concurrence in the decision to sue Schlumberger to her fellow Acacia attorneys. Further, Rutherford's work for Schlumberger on Petrel is so related to several issues in this case that there is a "genuine threat" that Schlumberger's confidences will be revealed to Plaintiff. See Ex. 20, Am. Burton Decl. ¶ 25 (discussing facts warranting Rutherford's disqualification under Texas' "substantial relationship" standard). And, once the Court finds a "substantial relationship" under the Texas standard, Rutherford's conflict is irrebuttably imputed to every other attorney in Acacia's legal department. National Med. Enter., Inc. v. Godbey, 924 S.W.2d 123, 131 (Tex. 1996).

[12] Schlumberger has subpoenaed from Plaintiff, Acacia, and Collins Edmonds documents relevant to Schlumberger's Motion to Disqualify. Ex. 40, Reqs. for Production. For example, Schlumberger has subpoenaed documents regarding the corporate structure of Acacia Research Corporation ("ARC"), Acacia Research Group ("ARG"), and Plaintiff, and

Rutherford, Siegel, and Vella, all of whom are Acacia attorneys responsible for this case. Def.'s Mot. to Disqualify 12, 14, 16-17, 24, ECF No. 48; Ex. 20, Burton Decl. ¶ 12(m). Rutherford said she is Acacia's Associate General Counsel, a title that necessarily establishes that she is part of a law department. CR Dep. vol. 1 Reporter Certification 7. Plaintiff's request (unsupported by authority or even the opinion of its expert declarant) that it be relieved of the general rule of imputed disqualification because Acacia is a non-practicing entity/patent troll is baseless. Pl.'s Resp. 21. The Texas and ABA Model Rules each apply to attorneys within a "firm," which is defined to include attorneys in a corporate legal department. Ex. 20, Burton Decl. ¶¶ 29(e)-(f); see Restatement (Third) of Law Governing Lawyers § 123 cmt. d(i) (2000).

Plaintiff cites no authority recognizing the efficacy of an ethics screen in federal district courts in Texas, Hricik Decl. 43-44, for good reason—there is none. Instead, Texas federal courts routinely apply the stricter rules governing attorney ethics when faced with a potential conflict between the Texas and ABA Model Rules. See Defs.' Mot. to Disqualify 15-16 & n.12, ECF No. 48. In any event, Rutherford was not screened and admitted that she participated in meetings and conference calls where Schlumberger and/or Petrel were discussed. CR Dep. vol. 1, 65:4-20, 70:6-19, 70:24-71:19; CR Dep. vol. 2, 37:10-25, 46:3-11. While the Collins Declaration asserts that Rutherford has been "walled off" from his firm since he was hired in mid-November 2013, Ex. 41, Collins Decl. ¶ 14 (hereinafter "Collins Decl."), there is no

---

documents evidencing Rutherford's work on Petrel related matters. The subpoenaed entities have not yet produced documents. (Schlumberger has responded to all discovery requests propounded by Plaintiff and there are no outstanding discovery requests directed at Schlumberger.) However, Schlumberger believes that the evidence already of record establishes its right to the relief granted. For example, Plaintiff, ARG, and other ARC subsidiaries are mere "alter egos" of ARC. See Cognex Corp. v. VCode Holdings, Inc., No. 06-cv-1040, 2006 WL 3043129, at *9-11 (D. Minn. Oct. 24, 2006) (finding that ARC and ARC subsidiary were "alter egos," warranting imputation of subsidiary's actions to ARC).

competent evidence that any ethics screen was erected between Rutherford and the Collins Edmonds firm before that time, or that Rutherford has <u>ever</u> been screened from matters relating to Schlumberger at Acacia. The Fischman Declaration is notably silent on any purported ethics screen that would wall him off from Rutherford, to whom he reports. Ex. 42, Fischman Decl.[13] All lawyers in Acacia's in-house legal department suffer from incurable conflicts of interest pursuant to the rule of irrebuttable, imputed disqualification and must be disqualified.

### E.    The Collins Edmonds Firm Must Be Disqualified

Plaintiff wrongly argues that Rutherford cannot be treated as "co-counsel" of Collins Edmonds because she has not entered an appearance. Pl.'s Resp. 23. That puts form over substance. A similar argument was flatly rejected by the Second Circuit in <u>NCK Org. Ltd. v. Bregman</u>, 71 F.R.D. 338 (S.D.N.Y. 1976), <u>aff'd</u>, 542 F.2d 128 (2d Cir. 1976) (disqualifying former in-house counsel who had not appeared in case but consulted with outside counsel who had). The same result applies here. Rutherford testified that she consulted with Collins Edmonds when Acacia was deciding whether to acquire the '319 Patent and sue Schlumberger. CR Dep. vol. 1, 70:24-71:19, 79:17-81:5, 82:8-17, 86:9-87:22, 99:11-100:5; CR Dep. vol. 2, 27:2-4, 27:10-12, 31:11-18, 35:7-23. And there is no dispute that Rutherford co-chose the Collins Edmonds firm for this action, CR Dep. vol. 1, 108:8-109:11, and continues to consult with the Collins Edmonds firm in the related '319 Patent cases, Collins Decl. ¶ 8. On these facts, Rutherford must be treated as co-counsel to Collins Edmonds in this case.

---

[13]   Collins' claim that "to the best of [his] knowledge" Rutherford was screened within Acacia, Collins Decl. ¶ 14, is entitled to no weight in light of his assertion that he was not approached to represent Acacia in this matter until mid-November 2013, <u>id.</u> at ¶ 3, and is refuted by Rutherford's admissions noted above. It is undisputed that Schlumberger never received any of the notices that are required for an effective ethics screen in the non-Texas jurisdictions that recognize them. <u>See generally</u> Ex. 26, Nava Decl.

Plaintiff's contention that the Harris County action "is ample evidence that Ms. Rutherford does not possess any such confidential information," Pl.'s Resp. 23, mischaracterizes what was at issue in that case (theft of computer storage devices and the like) and the law of the Fifth Circuit (which presumes possession of confidential information when matters are substantially related). See supra II.C.

Plaintiff concedes that if an actual disclosure of a former client's confidential information to co-counsel is shown, then co-counsel must be disqualified, even under its (incorrect) reading of Fifth Circuit law. Pl.'s Resp. 22. Plaintiff does not seriously dispute the idea that, crediting Rutherford's testimony that she concurred in Collins' recommendation to sue Schlumberger, her concurrence was an implicit communication of Schlumberger's confidential information, such as Rutherford's belief that the claim had merit. Ex. 20, Burton Decl. ¶¶ 43(e), 44.

Rutherford consistently testified that she and Fischman worked with Collins in recommending that Acacia acquire and file suit against Schlumberger on the '319 Patent. CR Dep. vol. 1, 70:24-71:19, 79:17-81:5, 82:8-17, 86:9-87:22, 99:11-100:5; CR Dep. vol. 2, 27:2-4, 27:10-12, 31:11-18, 35:7-23. Rutherford testified that she was presented with a PowerPoint presentation by Collins and possibly other attorneys at the Collins Edmonds firm discussing Schlumberger, CR Dep. vol. 1, 82:8-17, 86:9-87:22, 99:11-100:5, which led to Rutherford approving recommendations by Collins, Fischman, and Mitchell to acquire and file suit against Schlumberger on the '319 Patent, id. at 79:17-81:5; 86:6-88:15; CR Dep. vol. 2, 27:2-4, 27:10-12, 31:11-18, 35:7-23. Rutherford has not wavered from her recollection of these events and has signed both deposition transcripts without changing that testimony. See supra note 3. Collins appeared as Plaintiff's representative at both days of Rutherford's deposition but did nothing to "correct" what he self-servingly characterized as "misremembered" testimony. Indeed, in the

13

intervening weeks, neither Plaintiff nor Collins took issue with Rutherford's testimony.[14] Critically, neither the Collins nor Fishman Declaration denies that Collins Edmonds learned of Rutherford's concurrence in the decision to file this patent infringement case against Schlumberger from sources other than Rutherford.

Even if the Court were to disregard Rutherford's admissions of her communications with Collins Edmonds, the firm should still be disqualified. Collins concedes that he has "had several discussions regarding the enforcement of the '319 Patent within groups of people at ARG [Acacia Research Group] that included Ms. Rutherford." Collins Decl. ¶ 8. Thus, Rutherford continues to work with Collins Edmonds in the five related '319 Patent cases. Those cases involve the same issue of patent validity as here and will involve disputes about the "older" versions of Petrel on which Rutherford worked at Schlumberger. See supra II.A. In working on those related cases, Rutherford cannot help but use, and implicitly communicate to Collins Edmonds, the confidences she learned with respect to "old" Petrel. See United State v. Basham, 918 F. Supp. 2d 787, 800 (C.D. Ill. 2013) ("[B]ecause the most honorable lawyer cannot perform a frontal lobotomy on himself, he cannot be presumed to engage in [a] new representation and carry out his obligation of undivided fidelity to the new client without the use consciously or subliminally of the confidences and secrets reposed in him by the old client." (citation omitted)). And Collins admits that he discussed Schlumberger and/or Petrel with others in ARG. Collins Decl. ¶ 8.

---

[14]   For example, the parties submitted a Joint Status Report to the Court on July 29, 2014. Though Rutherford's testimony regarding her communications with Collins Edmonds had been public record for two weeks, Plaintiff did not question its accuracy. See Ex. 21, Joint Status Report, at 22-34 (Plaintiff's position and proposals). The parties then appeared before the Court on August 12, 2014. Neither Collins nor Fischman sought to bring their belief that Rutherford had "misremembered" material information to the Court's attention.

Those communications raise two separate rebuttable presumptions that Schlumberger's confidences have been disclosed to Collins Edmonds.[15]  First, a rebuttable presumption arises because "there was contact or communications" between Rutherford and Collins regarding related cases that raise issues common to this matter.  In re Am. Home Prods. Corp., 985 S.W.2d 68, 77-78 (Tex. 1998).  The Collins Edmonds firm can only rebut this presumption by proving that "there [i]s no reasonable prospect that [Schlumberger's] confidential information was disclosed" during Collins' communications with Rutherford.  Id.  Collins' admission that he has had several discussions with Rutherford regarding enforcement of the '319 Patent in the five related cases precludes the rebuttal of that presumption.  A second rebuttable presumption exists because Collins has had "substantive communications" and/or "jointly prepared for trial with" attorneys in ARG, all of whom have imputed knowledge of Schlumberger's confidences.  Id. at 81.  To rebut this presumption Collins Edmonds must produce "probative and material evidence that [Schlumberger's] confidential information was not disclosed."  Id.  The Collins and Fischman Declarations fail to rebut this second presumption because they do not address whether Acacia employees disclosed Schlumberger's confidences.

---

[15]  Plaintiff incorrectly argues that Brennan's Inc. V. Brennan's Restaurants, Inc., 590 F.2d 168 (5th Cir. 1979) established "black letter law" regarding disqualification of co-counsel.  Pl.'s Resp. 22.  The Court rejected a per se rule for disqualification of co-counsel.  Id. at 174. The only two Texas district court cases that have addressed co-counsel disqualification since the Fifth Circuit's seminal ruling in In re American Airlines, 972 F. 2d at 605, discuss with approval the In re American Home Products standard.  See Vinewood Capital, LLC v. Sheppard Mullin Richter & Hampton, LLP, 735 F. Supp. 2d 503, 524 (N.D. Tex. 2010); Ledwig v. Cuprum S.A., No. SA-03-CA-542-RF, 2004 WL 573650 at *3-4 (W.D. Tex. Jan. 28, 2004).  Application of the modern test for disqualification set out in In re American Home Products is both entirely logical and wholly consistent with those cases.  Ex. 20, Burton Decl. ¶¶ 41-46.

**F.      This Action Should Be Dismissed Without Prejudice**

There can be no genuine dispute that Rutherford had Schlumberger's confidences.  See e.g., Ex. 3, SLB Log; Ex. 17, Holloway Decl.  Plaintiff's expert admits that Rutherford "received attorney-client, work product, and confidential information" while a senior IP attorney for Schlumberger.  Hricik Decl. 9.  Nor does Plaintiff seriously contest that, by communicating her concurrence in the recommendation to sue Schlumberger, Rutherford necessarily communicated to at least her fellow Acacia attorneys her belief that the lawsuit brought on the Petrel product had merit.  Rutherford indisputably communicated her concurrence within Acacia, and that concurrence was a predicate to Acacia's decision to sue Schlumberger.  That undisputed communication infected the inception of this case.

Plaintiff's argument that a dismissal would immunize Schlumberger from all lawsuits by Acacia affiliates is both irrelevant and an overstatement.  Schlumberger asks only that the Court dismiss this case, and without prejudice.  Any difficulty that Plaintiff or Acacia will have in trying to cure the ethical breach that it (not Schlumberger) created is an issue for another day and irrelevant to the relief Schlumberger seeks. Schlumberger's Motion to Disqualify Counsel and Dismiss Without Prejudice, ECF No. 48, should be granted.

16

Dated:  September 19, 2014          Respectfully submitted,

By:  /s/ Ann Marie Wahls
     Stephen E. McConnico, State Bar No. 13450300
     Steven J. Wingard, State Bar No. 00788694
     Paige Arnette Amstutz, State Bar No. 00796136
     SCOTT, DOUGLASS & MCCONNICO, L.L.P.
     600 Congress Avenue, Suite 1500
     Austin, TX  78701
     Tel.: (512) 495-6300
     Fax: (512) 474-0731
     smcconnico@scottdoug.com
     swingard@scottdoug.com
     pamstutz@scottdoug.com

     Maximilian A. Grant (*pro hac vice*)
     Gabriel K. Bell (*pro hac vice*)
     LATHAM & WATKINS LLP
     555 Eleventh Street N.W., Suite 1000
     Washington, DC  20004-1304
     Tel.: (202) 637-2200
     Fax: (202) 637-2201
     max.grant@lw.com
     gabriel.bell@lw.com

     Ann Marie Wahls (*pro hac vice*)
     LATHAM & WATKINS LLP
     330 North Wabash Avenue, Suite 2800
     Chicago, IL  60611
     Tel.: (312) 876-7700
     Fax: (312) 993-9767
     annmarie.wahls@lw.com

     Terrence Connolly (*pro hac vice)*
     Thomas J. Humphrey (*pro hac vice*)
     LATHAM & WATKINS LLP
     885 Third Avenue
     New York, NY  10022
     Tel: (212) 906-1200
     Fax: (212) 751-4864
     terrence.connolly@lw.com
     thomas.humphrey@lw.com

     *Attorneys for Defendants*
     *Schlumberger Limited (Schlumberger N.V.),*
     *Schlumberger Holdings Corporation and*
     *Schlumberger Technology Corporation*

17

## CERTIFICATE OF SERVICE

I hereby certify that, on September 19, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Michael J. Collins
John J. Edmonds
Henry Pogorzelski
Shea N. Palavan
Matthew C. Juren
COLLINS, EDMONDS & POGORZELSKI,
    SCHLATHER & TOWER, PLLC
1616 S. Voss Road, Suite 125
Houston, Texas 77057
mcollins@cepiplaw.com
jedmonds@cepiplaw.com
hpogorzelski@cepiplaw.com
spalavan@cepiplaw.com
mjuren@cepiplaw.com


/s/ Ann Marie Wahls
        Ann Marie Wahls

18