IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DYNAMIC 3D GEOSOLUTIONS LLC, <br><br> Plaintiff, <br><br> v. <br><br> SCHLUMBERGER LIMITED (SCHLUMBERGER N.V.); SCHLUMBERGER HOLDINGS CORPORATION; and SCHLUMBERGER TECHNOLOGY CORPORATION <br><br> Defendants. | CASE NO.: 1:14-CV-00112-LY <br><br> JURY TRIAL DEMANDED |

**MOTION OF NON-PARTY AUSTIN GEOMODELING, INC. TO QUASH SUBPOENA**

Non-party Austin Geomodeling, Inc. ("AGM") respectfully moves the Court under Rule 45(d) of the Federal Rules of Civil Procedure for an order quashing the document subpoena ("the Subpoena") served on it by Defendants Schlumberger Limited (Schlumberger N.V.) et al. (collectively, "Schlumberger") on September 12, 2014. A copy of the Subpoena is attached hereto as Exhibit 1. Because the Subpoena demands compliance in this district, this Court is the proper forum for motions to quash and motions for sanctions. Fed. R. Civ. P. 45(d)(1)(3).

The Subpoena is a glaring example of the overreaching that this Court warned Schlumberger to avoid in the initial pretrial conference on April 22, 2014. It seeks virtually all of the documents in AGM's possession that in any way relate to this litigation or AGM's venture with Plaintiff Dynamic 3D Geosolutions LLC ("Dynamic 3D") to enforce U.S. Patent No. 7,986,319 ("the '319 patent"), despite the fact that most of these documents are protected by the attorney-client privilege, the common legal interest privilege and the work product doctrine. This Court should quash the Subpoena because it improperly seeks production of an unduly burdensome volume of irrelevant and largely privileged work product and attorney-client communications, it subjects AGM to undue burden and harassment, including in having to generate a lengthy privilege log for privileged case materials which should have never been requested in the first place, it does not allow a reasonable time for compliance, it is untimely, and it is hopelessly and unnecessarily overbroad.

## BACKGROUND

### A. The Relationship Between AGM, Dynamic 3D and Acacia

AGM's Motion to Quash arises out of Schlumberger's ill-conceived efforts to disqualify various counsel in the above captioned suit alleging infringement of the '319 patent filed by Dynamic 3D. The '319 patent was duly and legally issued to AGM principals Tron Isaksen

1

("Isaksen") and Robin Dommisse ("Dommisse") on July 26, 2011. Complaint, Doc. No. 1 at ¶ 11. During its prosecution, Isaksen and Dommisse assigned all right title and interest in and to the '319 patent to AGM, a small developer of geological and geophysical software tools based in Austin, Texas. *Id.* at ¶ 22. By the summer of 2013, AGM was faced with widespread and growing infringement of the '319 patent, but lacked the resources to pursue the much better capitalized infringers. *Id. at* ¶ 20. At that time, Isaksen and Dommisse concluded that in order for AGM to enforce the '319 patent and protect its small business against growing infringement, AGM would have to partner with a larger and better funded entity, preferably one that possessed substantial expertise in licensing and enforcement of intellectual property rights. *Id.* at ¶ 21.

In early July of 2013, Dommisse and Isaksen had their first face-to-face meeting with Acacia. Declaration of Robin Dommisse, Ex. 2 at ¶ 3. The purpose of that meeting was to discuss partnering with Acacia in the licensing and enforcement of the '319 patent, including litigation against an unspecified number of infringers. *Id.* Among the attendees for Acacia at that first meeting was John Schneider, an Acacia attorney who Dommisse understood was charged with helping the parties determine whether there was a sound legal basis for enforcing the '319 patent. *Id.*

In August of 2013, Dommisse and Isaksen had their second meeting with Acacia. *Id.* at ¶ 4. A different Acacia attorney, Gary Fischman, attended in place of Mr. Schneider. *Id.* Dommisse understood Mr. Fischman's role to be similar to that previously played by Mr. Schneider, however. *Id.*

Also, in August of 2013, AGM entered into an agreement with Acacia Research Group LLC ("Acacia") to license and enforce the '319 patent. Complaint, Doc. No. 1 at ¶ 21. As part of the agreement, AGM assigned all right, title and interest in and to the '319 patent to Acacia,

including the right to enforce the patent and obtain past damages. *Id.* In turn, Acacia provided AGM with a right to a portion of any proceeds from licensing and enforcement of the '319 patent, and a non-exclusive grant-back license under the '319 patent. Ex. 2 ¶ 5. In December of 2013, Acacia assigned all right, title and interest in and to the '319 patent to Dynamic 3D, which is the current owner. Complaint, Doc. No. 1, ¶ 22.

In December of 2013, AGM had its first meeting with outside litigation counsel, Michael Collins of Collins, Edmonds, Pogorzelski, Schlather & Tower, PLLC. ("CEP") Ex. 2, ¶ 6. Acacia's Gary Fischman was also present along with Dommisse and Isaksen. *Id.* At that meeting, Isaksen and Dommisse discussed with Mr. Collins various matters relevant to the infringement and validity of the '319 patent in anticipation of Dynamic 3D's enforcement efforts in the federal courts. *Id.* During the course of the above-captioned litigation and the patent infringement cases against other defendants, Dommisse and Isaksen have worked extensively with outside counsel CEP and Mr. Collins to develop infringement theories for various products and review prior art cited by Defendants. *Id.* at ¶ 7.

Because AGM retains an interest in the proceeds of any enforcement of the '319 patent and is working alongside Dynamic 3D to enforce that patent, AGM, Acacia and Dynamic 3D share common legal interests, including relating to at least the validity, enforceability, licensing and enforcement of the '319 patent through litigation. *See, e.g., U.S. v. BDO Seidman, LLP,* 492 F.3d 806, 815-16 (7th Cir. 2007) (the common interest doctrine applies where the parties undertake a joint effort with respect to a common legal interest, and protects communications made to further an ongoing enterprise).

3

**B. Schlumberger's Overbroad, Burdensome, and Privilege-Piercing Subpoena to AGM**

Schlumberger filed its motion to disqualify counsel and to dismiss with prejudice on August 15, 2014. Doc. No. 48. As this Court is well aware, a pre-*Markman* discovery stay is currently in place. However, the Court stated in the last status conference on August 12, 2014 that it would allow some reasonable discovery in connection with Schlumberger's motion to disqualify. Ex. 3, Transcript of Pretrial Conference of August 12, 2014, p. 37-38. The Court ordered the parties to discuss by telephone the scope of discovery reasonably necessary. *Id.* Schlumberger, however, did not seek to discuss or arrive at any agreement as to a reasonable scope of discovery prior to serving either the Subpoena on AGM, or the virtually identical subpoenas that it served on CEP, Michael Collins, individually, Acacia, two other companies affiliated with Acacia, Acacia's CEO Matt Vella, and Acacia in-house attorneys Gary Fischman and Charlotte Rutherford. Declaration of Michael Collins, Ex.4, ¶ 4. Neither AGM nor the undersigned counsel even learned of Schlumberger's intent to seek documents from AGM, or the scope of the discovery sought until receiving an email on September 11 with a notice of the Subpoena. *Id.* The Subpoena itself was served on September 12, 2014. Ex. 1. Schlumberger also made no attempt to serve any discovery prior to filing the Motion to Disqualify, much less discuss its scope with the undersigned counsel, as the Court had ordered. Ex. 4, ¶ 5. Instead, Schlumberger waited until September 11, 2014 – almost four weeks after filing its Motion to Disqualify - to serve any discovery at all. *Id.*

The document requests in the Subpoena are extremely broad and, on their face, seek to broadly pierce the attorney-client privilege, the common legal interest privilege, and work product protection. Among other things, Schlumberger seeks communications between AGM and/or any member of its common legal interest group (including Dynamic 3D and Dynamic 3D's parent company, Acacia) with outside litigation counsel CEP and Collins about a broad range of

4

litigation-related topics. For example, the Subpoena seeks communications concerning claim construction, validity, willfulness and/or a reasonable royalty with respect to the '319 patent. Ex. 1, Request No. 4. The Subpoena also seeks all communications concerning the patent lawsuit. Ex. 1, Request No. 3. Schlumberger further seeks all communications in AGM's possession between Ms. Rutherford, an in house attorney at Acacia, and anyone working for AGM, Dynamic 3D, Acacia, and/or outside counsel CEP concerning the patent litigation, and claim construction, validity, willfulness and a reasonable royalty with respect to the '319 patent. Ex. 1, Requests No. 1 and 2. The Subpoena also seeks all documents in Dynamic Geo's possession evidencing communications between anyone at AGM (and/or members of the common legal interest group) concerning Ms. Rutherford's alleged participation in the patent litigation, the decision to acquire the '319 patent, and the decision to sue Schlumberger on the '319 patent. Ex. 1, Requests No. 5, 6 and 7. Finally, the Subpoena seeks all communications involving anyone at AGM, the common legal interest group and/or outside counsel concerning Ms. Rutherford prior to the beginning of her employment with Acacia. Ex.1, Request No. 9. In sum, Schlumberger seeks virtually all of AGM's files and communications on the patent lawsuit against Schlumberger, as well as the other five patent lawsuits against Schlumberger's competitors.

## LEGAL STANDARD

Rule 45(d) of the Federal Rules of Civil Procedure obligates a party issuing and serving a subpoena on a non-party to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed.R.Civ.P. 45(d)(1). "On timely motion, the court for the district where compliance with the subpoena is required ***must*** quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

5

>  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
>  (iv) subjects a person to undue burden."

Fed.R.Civ.P. 45(d)(3)(A) (emphasis added). Non-parties such as AGM are given "special protection against the time and expense of complying with subpoenas." *Exxon Shipping Co. v. U.S. Dept. of Interior,* 34 F.3d 774, 779 (9th Cir. 1994). The fact of nonparty status is taken into account by courts in weighing the burdens imposed by a subpoena. *See, e.g., Katz v. Batavia Mar. & Sporting Sup.,* 984 F.2d 422, 424 (Fed.Cir. 1993) (citing movant's status as a non-party to the underlying patent litigation in affirming the trial court's order quashing subpoena).

### ARGUMENT AND AUTHORITIES

The Subpoena represents egregious overreaching by Schlumberger and must be quashed because it improperly seeks production of an unduly burdensome volume of irrelevant and privileged attorney work product and attorney-client communications, it subjects AGM to undue burden and harassment, including having to generate a lengthy privilege log for privileged case materials which should have never been requested in the first place, it does not allow a reasonable time for compliance, it is untimely, and it is hopelessly and unnecessarily overbroad.

**A.   Many of the materials sought are subject to the attorney-client privilege, work product protection and/or common legal interest privilege.**

The Court must quash the Subpoena because it is largely directed to materials that are protected by the attorney-client privilege, the common legal interest privilege and the work product protection. Fed.R.Civ.P. 45(d)(3)(A)(iii). For example, Schlumberger is seeking to force AGM to produce all communications in its possession between Ms. Rutherford, an in-house lawyer at Dynamic 3D's parent company, and any other person at AGM, Acacia, Dynamic 3D, and/or CEP related to the construction of the claims of the '319 patent, the validity of the '319 patent, willful

6

infringement of the '319 patent, a reasonable royalty with respect to the '319 patent, and the patent litigation between Dynamic 3D and Schlumberger. On its face, this request is primarily directed to materials covered by the attorney client privilege, common legal interest privilege and work product protection. Ms. Rutherford's role is that of an attorney to both Dynamic 3D and Acacia. Any communication she has had with anyone at AGM concerning any of these topics in anticipation of litigation is covered by the common legal interest privilege that AGM shares with Dynamic 3D Geo and Acacia.

Schlumberger also seeks to force AGM to produce all communications in its possession between outside counsel CEP on one hand, and the other members of the common legal interest group, on the other, related to Schlumberger, Schlumberger's Petrel product, the construction of the claims of the '319 patent, the validity of the '319 patent, willful infringement of the '319 patent, a reasonable royalty with respect to the '319 patent and the patent litigation between Dynamic 3D and Schlumberger. This request would cover virtually all of outside counsel CEP's communications with the other members of the common legal interest group related to the Schlumberger patent litigation as well as the other five cases involving the '319 patent. The vast majority of the communications between CEP and the other members of the common legal interest group have been made for the purpose of obtaining legal advice about the patent litigation and enforcement of the '319 patent. Ex. 4, ¶ 6. These communications are clearly protected from discovery by the attorney client privilege and/or the common legal interest privilege where applicable.

Schlumberger also seeks to force AGM to produce all communications in its possession involving AGM, the members of its common legal interest group, and outside counsel CEP concerning in-house counsel Rutherford's alleged participation in this patent litigation, the

7

decision to acquire the '319 patent and the decision to sue Schlumberger. Again, many if not most of any such communications that would be found in the possession of AGM are subject to the attorney-client privilege, the common legal interest privilege and/or constitute work product.

**B.     The Subpoena subjects AGM to undue burden and is harassing.**

The Court must quash the Subpoena because it subjects AGM to undue burden and is harassing. Fed.R.Civ.P. 45(d)(3)(A)(iv). The Subpoena seeks virtually all communications in AGM's files related to any of the six patent cases that have been filed alleging infringement of the '319 patent.

AGM is a small company, with only eight employees. Ex. 2, ¶ 8. The majority of its documents are stored electronically. *Id.* at ¶ 9. Documents related to the enforcement of the '319 patent comprise in excess of 17,500 files stored in over 490 folders. *Id.* AGM also estimates that it has over 1000 e-mail threads that are potentially responsive to one of the requests. *Id.* In order to comply with Schlumberger's broad-based discovery demands, AGM would be forced to assign an employee full time to review each of those 17,500 files and 1000 e-mail threads for responsiveness. *Id.* at ¶ 10.  AGM estimates that this first pass review alone would take that employee more than a month. *Id.* Thus, over 12 percent of AGM's work force would be engaged in document review for more than a month complying with the Subpoena rather than helping AGM keep up with its ongoing operations.

Once potentially responsive documents were found, AGM would then be forced to conduct a second review of those documents to determine whether some privilege or immunity is applicable. Given the nature of the requests - which are essentially an attempt to obtain AGM's files related to the enforcement of the '319 patent – many if not most of the responsive documents would end up on a privilege log. Even accounting for non-responsive documents, duplicates and some non-privileged

8

documents, it is clear that AGM would be forced to create a voluminous privilege log. Because of the tedious nature of the work, creating a privilege log for potentially thousands of documents could take a number of additional weeks. All of this expense and burden would be incurred for documents that are largely privileged and protected from discovery. Under the circumstances, the burden and expense on non-party AGM vastly outweighs any possible benefit that Schlumberger could realize from forcing AGM to go through this needless exercise. Indeed, under the circumstances, the Subpoena is nothing more than an attempt to harass AGM.

### C. The Subpoena fails to allow a reasonable time to comply

The Subpoena must be quashed because it fails to allow a reasonable time to comply. Fed.R.Civ.P. 45(d)(3)(A)(i). The Subpoena was served on September 12, 2014 and demands compliance by October 2, 2014, or three weeks later. Ex. 1. Given the overreaching breadth of the requests, the number of documents that would have to be searched for responsiveness and the large number of documents that would have to be logged on a privilege log, the task could not reasonably be completed in three weeks. Even if the requests for AGM's files related to the '319 patent were proper (which they are not), AGM would need more than a month to fully comply, despite having to dedicate one of its eight employees full time to the task. Ex. 2, ¶ 10.

### D. The Subpoena is untimely

The Subpoena must be quashed as untimely because briefing on Schlumberger's Motion to Disqualify closed well before the October 2, 2014 date on which Schlumberger has demanded compliance. Schlumberger filed its Motion to Disqualify on August 15, 2014. Doc. No. 48. It failed to seek any written discovery whatsoever in connection with that motion until almost four weeks *after* filing a motion on which it has the burden of proof. Ex. 4, ¶ 5. Moreover, Schlumberger's briefing on the Motion to Disqualify closed on September 19, 2014, when Schlumberger filed its

reply brief. Doc. No. 68. A subpoena requesting that documents allegedly relevant to that motion be produced on October 2, 2014 is untimely and gives further credence to the notion that the Subpoena is simply calculated to harass AGM.

### E.  The Subpoenas are overbroad

The Subpoenas should also be quashed because they are overbroad. The requests, when viewed as a whole, do not remotely comport with this Court's order that discovery in connection with the Motion to Disqualify be *reasonable*. Schlumberger made no attempt at all before serving the Subpoena to confer and agree on a reasonable scope of discovery as ordered by the Court. Instead, Schlumberger simply served a subpoena which purports to require AGM to produce what essentially amounts to its entire file related to the enforcement of the '319 patent.

### CONCLUSION

For the reasons set forth above, AGM respectfully requests that the Court quash the document subpoena directed to it by Schlumberger.

September 26, 2014

Respectfully submitted,

*/s/ Michael J. Collins*
Michael J. Collins – LEAD COUNSEL
Texas Bar No. 04614510
John J. Edmonds, Esq.
Texas Bar No. 789758
Henry Pogorzelski, Esq.
Texas Bar No. 24007852
Shea N. Palavan, Esq.
Texas Bar No. 24083616
Matthew C. Juren
Texas Bar No. 24065530
**COLLINS, EDMONDS, POGORZELSKI, SCHLATHER & TOWER, PLLC**
1616 South Voss Road, Suite 125
Houston, Texas 77057
Telephone: (281) 501-3425
Facsimile: (832) 415-2535

> Email: mcollins@cepiplaw.com
> jedmonds@cepiplaw.com
> hpogorzelski@cepiplaw.com
> spalavan@cepiplaw.com
> mjuren@cepiplaw.com
>
> ***Attorneys for Non-Party Movant Austin Geomodeling, Inc.***

## CERTIFICATE OF CONFERENCE

The undersigned counsel of record has conferred with Schlumberger counsel Steven Wingard, Terrence Connolly and Thomas Humphrey by telephone regarding the relief that Movant Austin Geomodeling, Inc. is seeking herein. The participants discussed the issues raised by the foregoing motion and ways to possibly narrow the parties' differences. However, in the end, no agreement was reached, and Defendants have indicated that they oppose the above motion. The participating counsel did agree to continue discussing ways of narrowing or resolving the parties' differences on the issues presented by this motion.

Dated:  September 26, 2014           */s/ Michael J. Collins*
                                      Michael J. Collins

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on September 26, 2014. As such, this document was served on all counsel who have consented to electronic service. Local Rule CV-5(b)(1).

Dated:  September 26, 2014           */s/ Michael J. Collins*
                                      Michael J. Collins

11