IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DYNAMIC 3D GEOSOLUTIONS LLC, | § § § | |
| Plaintiff, | § § | Civil Action No. 1:14-cv-00112-LY |
| v. | § § | |
| SCHLUMBERGER LIMITED (SCHLUMBERGER N.V.); SCHLUMBERGER HOLDINGS CORPORATION; and SCHLUMBERGER TECHNOLOGY CORPORATION | § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants. | § § | |

## DECLARATION OF ROBIN DOMMISSE

I, Robin Dommisse, hereby declare as follows:

1. I am over the age of 21 and I am competent to testify on the matters set forth herein. The following is based upon my personal knowledge, and if called as a witness I could and would testify competently thereto.

2. I am Chief Executive Officer of Austin Geomodeling, Inc. ("AGM"). AGM is a small developer of geological and geophysical software tools that is based in Austin, Texas. Tron Isaksen and I are the founders and current principals of AGM.

3. In early July of 2013, Tron Isaksen and I had our first face-to-face meeting with Acacia Research Group LLC ("Acacia"). The purpose of that meeting was to discuss partnering with Acacia in the licensing and enforcement of AGM's U.S. Patent 7,986,319 ("the '319 patent"), including possible litigation against an unspecified number of infringers. Among the attendees for Acacia at that first meeting was John Schneider, an Acacia attorney who I

1



understood was charged with helping the parties determine whether there was a sound legal basis for enforcing the '319 patent through litigation.

4. In August of 2013, Mr. Isaksen and I had our second meeting with Acacia. A different Acacia attorney, Gary Fischman, attended in place of Mr. Schneider. I understood Mr. Fischman's role to be similar to that previously played by Mr. Schneider, however.

5. Also, in August of 2013, AGM entered into an agreement with Acacia Research Group LLC ("Acacia") to license and enforce AGM's '319 patent. AGM assigned all right, title and interest in and to the '319 patent to Acacia, including the right to enforce the patent and obtain past damages. In turn, Acacia provided AGM with a right to a portion of any proceeds from licensing and enforcement of the '319 patent, and a non-exclusive grant-back license under the '319 patent.

6. In December of 2013, AGM had its first meeting with outside litigation counsel, Michael Collins of Collins, Edmonds, Pogorzelski, Schlather & Tower, PLLC. ("CEP") Acacia's Gary Fischman was also present along with Mr. Isaksen and me. At that meeting, Mr. Isaksen and I discussed with Mr. Collins various matters relevant to the infringement and validity of the '319 patent in anticipation of Dynamic 3D's enforcement efforts in the federal courts.

7. During the course of the above-captioned litigation and the patent infringement cases against other defendants, Mr. Isaksen and I have worked extensively with outside counsel CEP and Mr. Collins to develop infringement theories for various products and review prior art cited by Defendants.

8. AGM is a small company, with only eight employees.

9. The majority of AGM's documents are stored electronically. Documents related to the enforcement of the '319 patent comprise in excess of 17,500 files stored in over 490 folders.



I estimate that AGM also has over 1000 e-mail threads that are potentially responsive to one of the requests in the subpoena that Schlumberger served on AGM.

10. In order to comply with Schlumberger's document requests, AGM would be forced to assign an employee full time to review each of those 17,500 files and 1000 e-mail threads for responsiveness. I estimate that this first pass review alone would take that employee more than a month.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, professional opinions and beliefs.

Executed on September 26, 2014 in Austin, Texas.

Robin Dommisse