```
1                   IN THE UNITED STATES DISTRICT COURT
                     FOR THE WESTERN DISTRICT OF TEXAS
2                             AUSTIN DIVISION

3   DYNAMIC 3D GEOSOLUTIONS LLC,                      ) AUSTIN, TEXAS
                                                      )
4   VS.                                               )
                                                      )
5   SCHLUMBERGER LIMITED, SCHLUMBERGER HOLDINGS CORPORATION,) AU:14-CV-00112-LY
    SCHLUMBERGER TECHNOLOGY CORPORATION, SCHLUMBERGER  )
6   LIMITED (SCHLUMBERGER N.V.), AUSTIN GEOMODELING, INC.,  )
    ---------------------------------------------------------------------------
7   SCHLUMBERGER LIMITED, SCHLUMBERGER HOLDINGS CORPORATION,) AU:14-CV-00934-LY
    SCHLUMBERGER TECHNOLOGY CORPORATION, SCHLUMBERGER  )
8   LIMITED, SCHLUMBERGER HOLDINGS CORPORATION, SCHLUMBERGER)
    TECHNOLOGY CORPORATION, COLLINS, EDMONDS, POGORZELSKI,  )
9   SCHLATHER & TOWER, PLLC                           )
    ---------------------------------------------------------------------------
10  SCHLUMBERGER HOLDINGS CORPORATION, SCHLUMBERGER    ) AU:14-CV-00967-LY
    TECHNOLOGY CORPORATION, SCHLUMBERGER LIMITED       )
11  (SCHLUMBERGER N.V.), SCHLUMBERGER LIMITED (SCHLUMBERGER )
    N.V.), GARY FISCHMAN, ACACIA RESEARCH GROUP LLC    ) NOVEMBER 6, 2014
12

13

14

15            ***********************************************
                    TRANSCRIPT OF MOTIONS HEARING
16
              BEFORE THE HONORABLE MARK LANE
17            ***********************************************

18

19

20

21

22

23

24

25
```

```
 1  APPEARANCES:

 2  DYNAMIC 3D                MICHAEL JAMES COLLINS
    GEOSOLUTIONS LLC:         MATTHEW C. JUREN
 3                            COLLINS EDMONDS POGORZELSKI
                              SCHLATHER & TOWER PLLC
 4                            1616 S. VOSS ROAD, SUITE 125
                              HOUSTON, TEXAS 77018
 5
    GARY FISCHMAN             CABRACH J. CONNOR
 6  ACACIA RESEARCH GROUP:    MIGUEL S. RODRIGUEZ
                              TAYLOR DUNHAM & RODRIGUEZ LLP
 7                            301 CONGRESS AVENUE, SUITE 1050
                              AUSTIN, TEXAS 78701
 8
                              TRAVIS P. BRENNAN
 9                            STRADLING YOCCA CARLSON & RAUTH, P.C.
                              660 NEWPORT CENTER DRIVE, SUITE 1600
10                            NEWPORT BEACH, CALIFORNIA 92660

11  SCHLUMBERGER:             MAXIMILIAN A. GRANT
                              LATHAM & WATKINS LLP
12                            555 ELEVENTH STREET NW, SUITE 1000
                              WASHINGTON, DC 20004
13
                              STEVEN J. WINGARD
14                            SCOTT, DOUGLASS & MCCONNICO, L.L.P.
                              600 CONGRESS AVENUE, SUITE 1500
15                            AUSTIN, TEXAS 78701

16                            TERRENCE J. CONNOLLY
                              THOMAS HUMPHREY
17                            LATHAM & WATKINS LLP
                              885 THIRD AVENUE
18                            NEW YORK, NEW YORK 10022

19  TRANSCRIBER:              ARLINDA RODRIGUEZ, CSR
                              501 WEST 5TH STREET, SUITE 4152
20                            AUSTIN, TEXAS 78701
                              (512) 391-8791
21

22

23

24  Proceedings recorded by electronic sound recording, transcript

25  produced by computer.
```

| | | |
|---|---|---|
| 09:12:07 | 1 | (Proceedings began at 9:28 a.m.) |
| 09:12:07 | 2 | THE CLERK:  The Court calls A:14-CV-112, *Dynamic 3D* |
| 09:12:22 | 3 | *Geosolutions LLC v. Schlumberger Limited, et al.*; A:14-CV-934, |
| 09:12:37 | 4 | *Dynamic 3D Geosolutions LLC v. Schlumberger Limited, et al.*; |
| 09:12:40 | 5 | and A:14-CV-967, *Dynamic 3D Geosolutions v. Schlumberger* |
| 09:12:52 | 6 | *Holdings Corporations, et al.*, for a motions hearing. |
| 09:12:56 | 7 | THE COURT:  Well, very good.  In a moment I'm going |
| 09:12:58 | 8 | to ask all the attorneys to introduce themselves so I can get |
| 09:13:01 | 9 | oriented.  But besides not having life tenure, the other big |
| 09:13:06 | 10 | difference here is I don't have a court reporter either.  So a |
| 09:13:09 | 11 | reminder to all of you, use these microphones in front of you. |
| 09:13:13 | 12 | Make sure they're kind of pointed toward you so that it picks |
| 09:13:17 | 13 | up what you say for posterity. |
| 09:13:35 | 14 | Perhaps starting over here on the left, if everybody |
| 09:13:38 | 15 | could introduce themselves. |
| 09:13:41 | 16 | MR. COLLINS:  Yes, Your Honor.  Michael Collins from |
| 09:13:44 | 17 | the law firm Collins, Edmonds, Pogorzelski, Schlather & Tower. |
| 09:13:49 | 18 | Today I'm with my colleague Matt Juren, who is also with our |
| 09:13:54 | 19 | law firm.  We represent Plaintiff Dynamic 3D Geosolutions Inc. |
| 09:13:59 | 20 | on its motion for protection, and we represent non-movants -- |
| 09:14:04 | 21 | or nonparty movants Collins Edmonds Porgorzelksi, et al., and |
| 09:14:10 | 22 | me as well as nonparty movant Austin Geomodeling, Inc. on their |
| 09:14:18 | 23 | motions to quash. |
| 09:14:21 | 24 | THE COURT:  Okay.  Okay.  Very good.  Thank you. |
| 09:14:25 | 25 | MR. CONNOR:  Good Morning Judge.  Cabrach Connor from |

| | | |
|---|---|---|
| 09:14:28 | 1 | Taylor Dunham and Rodriguez on behalf of third-party movants |
| 09:14:33 | 2 | Gary Fischman and Acacia Research Group.  And I'm joined with |
| 09:14:38 | 3 | my partner Miguel Rodriguez and also from the Stradling firm in |
| 09:14:44 | 4 | California, Travis Brennan. |
| 09:14:48 | 5 | MR. BRENNAN:  Good morning, Your Honor. |
| 09:14:49 | 6 | THE COURT:  Good morning to each of you.  Thank you. |
| 09:14:50 | 7 | MR. WINGARD:  Good morning, Your Honor.  Steve |
| 09:14:53 | 8 | Wingard with Scott, Douglass & McConnico we represent |
| 09:14:55 | 9 | Schlumberger.  I'm here this morning with Max Grant from |
| 09:15:00 | 10 | Latham & Watkins. |
| 09:15:02 | 11 | MR. GRANT:  Good morning, sir. |
| 09:15:03 | 12 | THE COURT:  Good morning. |
| 09:15:04 | 13 | MR. WINGARD:  Terry Connolly from Latham & Watkins. |
| 09:15:05 | 14 | MR. CONNOLLY:  Good morning, Your Honor. |
| 09:15:05 | 15 | MR. WINGARD:  Tom Humphrey from Latham & Watkins and |
| 09:15:08 | 16 | Dave Slater who is running our IT stuff. |
| 09:15:12 | 17 | THE COURT:  All right.  Well, very good.  Thank you, |
| 09:15:14 | 18 | gentlemen. |
| 09:15:16 | 19 | Okay.  You-all have produced a tremendous amount of |
| 09:37:17 | 20 | paperwork, and I've tried to read it all.  I really have.  But |
| 09:37:23 | 21 | I thought what I would at least start with is tell you what I |
| 09:37:26 | 22 | really don't want to talk about today and then focus on what I |
| 09:37:32 | 23 | do want to talk about.  I really don't think it will be |
| 09:37:38 | 24 | productive to talk about blame one way or the other on who |
| 09:37:45 | 25 | should have met and conferred and who didn't.  I just don't |

| | | |
|---|---|---|
| 09:37:50 | 1 | think that will be helpful.  I also don't want to talk about, |
| 09:37:55 | 2 | you know, inability or there wasn't a reasonable period of time |
| 09:37:59 | 3 | in which to comply with the original subpoenas.  I don't think |
| 09:38:02 | 4 | that will be helpful -- that they're untimely; that the |
| 09:38:06 | 5 | briefing period has passed and so that production has -- is |
| 09:38:11 | 6 | irrelevant or moot because of that.  That Schlumberger's first |
| 09:38:19 | 7 | set of subpoenas were overbroad.  I think everybody's conceded |
| 09:38:22 | 8 | that they probably were.  But, nonetheless, we're going to |
| 09:38:31 | 9 | have -- we're going to have to move forward.  I don't want to |
| 09:38:34 | 10 | talk about sanctions, and don't really -- you know, |
| 09:38:38 | 11 | characterizing all of this as harassment, I think is -- I |
| 09:38:43 | 12 | understand the advocacy there but, again, I don't think that |
| 09:38:47 | 13 | will be productive. |
| 09:38:48 | 14 | Here's what I do think is going to be productive: |
| 09:38:54 | 15 | Judge Yeakel clearly authorized some discovery here.  He warned |
| 09:39:04 | 16 | Schlumberger not to be -- I guess the word I'll use is |
| 09:39:07 | 17 | "abusive" -- with it.  But, nonetheless, he did authorize |
| 09:39:11 | 18 | something.  So I think we all concede that, there is going to |
| 09:39:15 | 19 | be some exchange of information and documents here.  The issue |
| 09:39:20 | 20 | for me is what is a reasonable amount of discovery and what's |
| 09:39:30 | 21 | relevant.  And then, lastly, I want to avoid burdening the |
| 09:39:40 | 22 | wrong party with producing something that perhaps another party |
| 09:39:44 | 23 | is in a better position to produce. |
| 09:39:47 | 24 | Now, against that backdrop, you-all have clearly been |
| 09:39:53 | 25 | meeting and conferring and talking about compromises, as |

| | | |
|---|---|---|
| 09:39:59 | 1 | evidenced by what was filed last evening which we didn't get |
| 09:40:04 | 2 | access to this morning until about 8:30.  So we have gone |
| 09:40:09 | 3 | through some of that. |
| 09:40:10 | 4 | THE COURT:  Yes, sir? |
| 09:40:11 | 5 | UNIDENTIFIED SPEAKER:  Your Honor, may I approach the |
| 09:40:12 | 6 | bench? |
| 09:40:13 | 7 | THE COURT:  Sure.  I won't lie to you.  I breezed |
| 09:40:30 | 8 | through it.  Certainly I read the status -- the six-page status |
| 09:40:34 | 9 | report, and then I breezed through where you are with |
| 09:40:38 | 10 | Exhibits 1, 2, and 3.  I don't have anything on Acacia though, |
| 09:40:45 | 11 | right?  I mean, I don't know who wants to be the lead here, |
| 09:40:49 | 12 | but ... |
| 09:40:51 | 13 | MR. WINGARD:  Your Honor, yesterday we were able to |
| 09:40:54 | 14 | confer with the attorneys for the four parties that we filed a |
| 09:40:58 | 15 | joint status report on.  Mr. Brennan, Travis Brennan, was the |
| 09:41:04 | 16 | lead counsel for Acacia Research Group.  And Gary Fischman, he |
| 09:41:09 | 17 | was in the air, and so we couldn't get authorization to file a |
| 09:41:13 | 18 | similar type of joint status report.  It just -- the time |
| 09:41:18 | 19 | didn't work. |
| 09:41:18 | 20 | THE COURT:  But is it fair to say it's -- wherever |
| 09:41:21 | 21 | you are, it's similar to what we have, at least with AGM and |
| 09:41:25 | 22 | Dynamic? |
| 09:41:26 | 23 | MR. WINGARD:  Yes, Your Honor.  I believe it is. |
| 09:41:28 | 24 | THE COURT:  Okay.  Very good.  Okay.  The thing that |
| 09:46:40 | 25 | jumps out at me is part of the -- of your efforts to reach an |

| | | |
|---|---|---|
| 09:46:46 | 1 | agreement on the request for production, though, also appear to |
| 09:46:51 | 2 | be dependent upon an agreement as to stipulations.  I can't |
| 09:46:58 | 3 | make people stipulate.  So help me understand how I help you. |
| 09:47:08 | 4 |         MR. GRANT:  Your Honor, could I -- |
| 09:47:08 | 5 |         MR. COLLINS:  Well, it's my motion. |
| 09:47:09 | 6 |         MR. GRANT:  I apologize. |
| 09:47:10 | 7 |         THE COURT:  And it's Mr. Grant? |
| 09:47:11 | 8 |         MR. GRANT:  Yes, sir. |
| 09:47:13 | 9 |         THE COURT:  I'll certainly let you visit with me |
| 09:47:15 | 10 | next. |
| 09:47:16 | 11 |         MR. COLLINS:  Your Honor, you're exactly right.  You |
| 09:47:19 | 12 | can't force people to stipulate to any facts, and they're |
| 09:47:27 | 13 | asking for identical factual stipulations from not only the |
| 09:47:32 | 14 | plaintiff, but from my firm and me individually.  The |
| 09:47:40 | 15 | stipulations in our view are being used as leverage to get -- |
| 09:47:46 | 16 | get them to agree to this reduced scope of document request, |
| 09:47:51 | 17 | which is what they already agreed to last week with |
| 09:47:58 | 18 | Ms. Rutherford on her motion to quash before Judge Elison in |
| 09:48:03 | 19 | the Southern District of Texas. |
| 09:48:05 | 20 |         And our view is that we're willing to give some |
| 09:48:11 | 21 | limited factual stipulations -- and you'll see it there in our |
| 09:48:14 | 22 | proposal.  We're willing to give non-argumentative fact |
| 09:48:21 | 23 | stipulations to relevant facts, but we're not willing to |
| 09:48:28 | 24 | stipulate to things that may not be true that are not relevant |
| 09:48:34 | 25 | to the case. |

| | | |
|---|---|---|
| 09:48:37 | 1 | So at this point what we're offering is some very |
| 09:48:41 | 2 | reasonable stipulations from the plaintiff only.  There's no |
| 09:48:46 | 3 | reason to get identical stipulations, as Schlumberger is |
| 09:48:51 | 4 | demanding, from my firm and individually from me.  It seems |
| 09:48:55 | 5 | that one stipulation should be fine, and we've more than bent |
| 09:49:01 | 6 | over backwards here saying, look, we will try to help you out |
| 09:49:05 | 7 | with some reasonable factual stipulations.  But, you know, in |
| 09:49:12 | 8 | exchange for that, you know, you will agree to the same |
| 09:49:15 | 9 | document request that you agreed to with Ms. Rutherford without |
| 09:49:19 | 10 | stipulations.  So I think we've gone the extra mile here. |
| 09:49:26 | 11 | THE COURT:  Let me ask you something real quick.  I'm |
| 09:52:36 | 12 | thinking about the order, though, that I'm going to be working |
| 09:52:39 | 13 | on today and maybe a bit tomorrow.  I'm going to -- I'll get |
| 09:52:45 | 14 | you-all something certainly by the end of the day Friday.  But |
| 09:52:48 | 15 | in that order, how do I say -- how do I articulate that |
| 09:52:56 | 16 | Mr. Collins and the Collins Law Firm agree to stipulate, so |
| 09:53:02 | 17 | we're ordering them to stipulate?  I just don't see how I can |
| 09:53:06 | 18 | do that.  I think I'm back to this RFP in this format is |
| 09:53:12 | 19 | authorized, and that's it. |
| 09:54:53 | 20 | MR. COLLINS:  I would agree with you, Your Honor.  I |
| 09:55:06 | 21 | certainly will stand by and -- and my client, the plaintiff, |
| 09:55:09 | 22 | will certainly stand by its offer to make the stipulations. |
| 09:55:14 | 23 | But I don't think that it's appropriate that that be included |
| 09:55:17 | 24 | in the order. |
| 09:55:18 | 25 | THE COURT:  Right.  And so perhaps it's all -- as far |

| | | |
|---|---|---|
| 09:55:21 | 1 | as I could go would be to note in a footnote that you have |
| 09:55:25 | 2 | represented that you will make these minimum stipulations. |
| 09:55:30 | 3 | But, again, I can't bind you to that either. |
| 09:57:59 | 4 | MR. COLLINS:  I would agree. |
| 09:58:01 | 5 | THE COURT:  Okay.  All right. |
| 09:58:22 | 6 | MR. COLLINS:  It wouldn't be appropriate in the |
| 09:58:25 | 7 | order. |
| 09:58:25 | 8 | THE COURT:  Okay.  Mr. Grant? |
| 09:58:27 | 9 | MR. GRANT:  Thank you, sir.  So, Judge, let me |
| 09:59:10 | 10 | address the stipulation issue briefly, and then I think perhaps |
| 09:59:16 | 11 | offer a potential way ahead.  With regards to the stipulations, |
| 09:59:20 | 12 | what the Court needs to understand is that they arose in |
| 09:59:23 | 13 | response to representations about, you know, there's going to |
| 10:00:46 | 14 | be a lot of documents regarding the communications between |
| 10:00:51 | 15 | Acacia, Mr. Fischman, and Collins Edmonds.  We said, well, if |
| 10:00:56 | 16 | the issue is burdensomeness about the amount of those |
| 10:01:00 | 17 | communications, which of course is relevant -- directly |
| 10:01:03 | 18 | relevant to the issues before Judge Yeakel and the scope of any |
| 10:01:08 | 19 | relief, should he decide relief is warranted, we said we'll |
| 10:01:11 | 20 | then just stipulate to it. |
| 10:01:13 | 21 | I agree that the Court can't require a stipulation. |
| 10:01:15 | 22 | What we did is we just tried to offer that as alternative to |
| 10:01:21 | 23 | discovery.  Now, what I think we would ask the Court to do is |
| 10:01:25 | 24 | simply order that the discovery that we think is appropriate, |
| 10:01:29 | 25 | meaning the narrowed up stuff that we've sort of gotten to now, |

10:01:33  1  and then that option for stipulation remains available and they

10:01:38  2  can say, well, you know, we'll take the stipulation.  We don't

10:01:41  3  want to produce the documents.  But I agree with the Court.

10:01:44  4  All the Court can do is order discovery to proceed.

10:01:47  5         If I may, Your Honor, there's sort of four issues

10:01:51  6  that I think if we just get the Court's guidance on, we could

10:01:55  7  take a break and I think the parties would hash out what

10:01:59  8  remains because, as the Court noted, we've been working real

10:02:03  9  hard and both sides have been working hard to try to narrow

10:02:06  10  this up and get us to where we ought to be in order for

10:02:10  11  Judge Yeakel to make an appropriate decision on the record.

10:02:13  12         And so now we sort of have a limited number of issues

10:02:17  13  that if you, I think, tell us this is where I'm likely to go,

10:02:22  14  we'll get to a result that's probably agreed upon.

10:02:27  15         THE COURT:  Well, I'll tell you, you're -- you're

10:02:30  16  getting on to the second issue which was I was going to

10:02:33  17  challenge you-all to give me a path that I can take to try to

10:02:40  18  resolve this.  So if you've got a four-issues path, let's

10:02:45  19  explore it.

10:02:46  20         MR. GRANT:  Yes, sir.  Absolutely.  So, first of all,

10:02:49  21  the issue with Rutherford, the scope of her stuff is different.

10:02:52  22  And so I don't think the deal that was reached with

10:02:56  23  Judge Ellison last week is relevant here.  So it was first --

10:02:58  24         THE COURT:  It strikes me as a little relevant.

10:03:01  25         MR. GRANT:  Well, it's a little relevant but not

| | | |
|---|---|---|
| 10:03:04 | 1 | entirely relevant, Your Honor. |
| 10:03:05 | 2 | THE COURT:  Okay. |
| 10:03:06 | 3 | MR. GRANT:  The stuff that's different is important. |
| 10:03:08 | 4 | And, really, our objective here, Your Honor -- and I think, you |
| 10:03:11 | 5 | know, some of what we've seen is editing of the stipulations. |
| 10:03:16 | 6 | You know, they say, well, we won't stipulate to that, but we'll |
| 10:03:19 | 7 | stipulate to this.  I want to be crystal clear what our |
| 10:03:22 | 8 | objective is.  Whatever Judge Yeakel decides, I'm confident and |
| 10:03:28 | 9 | Mr. Collins has said that, you know, it's going to end up being |
| 10:03:32 | 10 | appealed.  So the whole question is, how do we give |
| 10:03:37 | 11 | Judge Yeakel the record that he needs to write an opinion that |
| 10:03:41 | 12 | will be adequately supported? |
| 10:03:44 | 13 | And so if we start twiddling with the stipulations, |
| 10:03:48 | 14 | then I think we need the discovery so that the judge can write |
| 10:03:52 | 15 | a fact-based opinion that's going to get some deference.  And |
| 10:03:55 | 16 | if we have a stipulation, it's got to be a strong one because, |
| 10:04:00 | 17 | otherwise, I don't think that's going to get much deference if |
| 10:04:03 | 18 | it's reviewed. |
| 10:04:04 | 19 | So with regards to the stipulations, Your Honor, |
| 10:04:07 | 20 | that's an alternative discovery.  That's completely between the |
| 10:04:11 | 21 | parties.  And the Court should just understand that in terms |
| 10:04:15 | 22 | of -- in terms of context.  It was something we offered as an |
| 10:04:18 | 23 | alternative so that the judge could say, well, that element of |
| 10:04:23 | 24 | the controlling law is met and I don't have to go into the |
| 10:04:26 | 25 | facts. |

| | | |
|---|---|---|
| 10:04:27 | 1 | With regard to the subpoenas, part of what |
| 10:04:32 | 2 | Mr. Collins and his firm has asked is that we withdraw |
| 10:04:37 | 3 | subpoenas.  I don't have any concern about the documents being |
| 10:04:45 | 4 | produced by the party in a best position to produce them.  But |
| 10:04:49 | 5 | I don't think those subpoenas can be withdrawn until the |
| 10:04:52 | 6 | documents are produced and we know there's no further |
| 10:04:55 | 7 | squabbling because the Court needs to retain jurisdiction to |
| 10:04:59 | 8 | say, you know what?  I've seen what Acacia has produced and I |
| 10:05:06 | 9 | don't think it's efficient and now I'm going to enforce that |
| 10:05:09 | 10 | subpoena against the Collins Edmonds firm. |
| 10:05:11 | 11 | So I think if the court says, yeah, we're not going |
| 10:05:14 | 12 | to need to withdraw any subpoenas, we're fine with the party |
| 10:05:17 | 13 | who's best situated producing the documents.  But those |
| 10:05:20 | 14 | subpoenas need to remain in effect and we need a representation |
| 10:05:23 | 15 | that, you know, the party that produced the documents has |
| 10:05:29 | 16 | produced everything we would have or something to that effect. |
| 10:05:32 | 17 | The next issue has to do with these organizational |
| 10:05:35 | 18 | documents from the Acacia's entities, Your Honor.  I don't |
| 10:05:38 | 19 | think we're too far apart on that.  But this is the kind of |
| 10:05:42 | 20 | stuff that's produced every day, and it's particularly |
| 10:05:45 | 21 | important, as the Court saw from the background of this case, |
| 10:05:48 | 22 | where we have, you know, an entity that was formed that has no |
| 10:05:53 | 23 | assets other than the patents; that Mr. Fischman is a vice |
| 10:05:57 | 24 | president of an entity two levels up; he's the corporate |
| 10:06:01 | 25 | representative for that plaintiff; you know, the intermediate |

```
10:06:06  1   corporate entity is the only member of that LLC.  So I think
10:06:09  2   that couldn't be more straightforward.  It's produced in
10:06:15  3   commercial litigation all the time.  And I think if the Court
10:06:18  4   says, yeah, those are going to get produced, then we'll be able
10:06:21  5   to figure out a proper scope.
10:06:24  6           And then the last thing, Your Honor, is timely
10:06:27  7   production.  As the Court probably knows, you know, that
10:06:31  8   hearing where Judge Yeakel authorized discovery was August
10:06:34  9   12th.  The response brief was filed, I think, in early
10:06:40 10   September and, you know, pretty quickly thereafter we filed a
10:06:44 11   subpoena.  So I think we just need to make sure that whatever
10:06:49 12   we get, we get it in time that we have a fair period -- it
10:06:55 13   doesn't have to be a week, but a fair period -- to consider
10:06:58 14   that and get it in front of Judge Yeakel so he can consider it
10:07:02 15   on the 20th.
10:07:04 16           THE COURT:  By what time?  When do you need it?
10:07:07 17           MR. GRANT:  So, Your Honor, I think if we had it
10:07:10 18   seven days before that, so that would be one week from Friday,
10:07:14 19   then that gives us enough time to review the documents over the
10:07:17 20   weekend, get a submission to Judge Yeakel -- let's call it by
10:07:22 21   Tuesday -- and gives the Court time to figure out when he shows
10:07:29 22   up on Friday whether he has questions about them or not.  I
10:07:33 23   mean, to me we just have to go backwards from how much time
10:07:36 24   does the Court need.  I think the Court needs probably three
10:07:40 25   days to consider those documents.
```

| | | |
|---|---|---|
| 10:07:41 | 1 | THE COURT:  At least. |
| 10:07:43 | 2 | MR. GRANT:  Yeah.  At least.  So, you know, I -- I |
| 10:07:46 | 3 | hear the Court.  But, you know, part of that concern I have is, |
| 10:07:49 | 4 | you know, I think the most recent proposal was, well, we'll |
| 10:07:53 | 5 | produce documents in two weeks.  Well, the hearing is in two |
| 10:07:56 | 6 | weeks and a day.  So, you know -- and we've all been working on |
| 10:08:00 | 7 | this for a while.  So that production, once the Court orders |
| 10:08:04 | 8 | it, should be able to occur fast because everybody knows what |
| 10:08:10 | 9 | we've been negotiating about.  And I would think that, to the |
| 10:08:13 | 10 | extent that production is readily accessible -- and it should |
| 10:08:18 | 11 | be by now because everybody's been working on this for six |
| 10:08:21 | 12 | weeks -- that it should be ready to go pending on whatever the |
| 10:08:25 | 13 | Court's ruling is on scope. |
| 10:08:27 | 14 | THE COURT:  Okay. |
| 10:08:28 | 15 | MR. GRANT:  So I think if we get the Court's guidance |
| 10:08:31 | 16 | on these issues, what I would propose is let's take a 30-minute |
| 10:08:36 | 17 | break and see if the parties work it out. |
| 10:08:39 | 18 | THE COURT:  Okay.  Mr. Collins? |
| 10:08:48 | 19 | MR. COLLINS:  Just a few brief remarks, Your Honor. |
| 10:08:51 | 20 | With regard to the four issues, I would submit to you that the |
| 10:08:57 | 21 | agreement that Schlumberger reached with Ms. Rutherford is |
| 10:09:02 | 22 | highly relevant.  I agree with the Court on that.  She is, |
| 10:09:06 | 23 | after all, the primary target of the disqualification motion. |
| 10:09:11 | 24 | And the central issue in the disqualification motion is whether |
| 10:09:15 | 25 | something she worked on at Schlumberger is substantially |

```
10:09:18   1   related to the issues in the patent suit.  So, to me, the
10:09:25   2   agreement that Schlumberger made with Ms. Rutherford is the
10:09:33   3   baseline of what they really think they need.
10:09:38   4          THE COURT:  And, for instance, as you approach your
10:09:40   5   proposals, does it incorporate those dates and whatnot that
10:09:47   6   were reached in the Southern District?
10:09:50   7          MR. COLLINS:  Your Honor, my proposals track almost
10:09:52   8   identically for all of my clients the agreement that
10:09:57   9   Schlumberger reached with Ms. Rutherford.
10:10:05  10          THE COURT:  Okay.
10:10:06  11          MR. COLLINS:  I agree that factual stipulations in
10:10:09  12   theory can be alternative to discovery, but we don't want to
10:10:15  13   leave factual stipulations just open and continue that warfare
10:10:22  14   and have the threat of more discovery hanging over our head if
10:10:27  15   they don't get what they believe they're entitled to in the way
10:10:33  16   of factual stipulations.  And I think the subpoenas should be
10:10:39  17   withdrawn.  I think they --
10:10:40  18          THE COURT:  Yeah.  Tell me -- I have to admit
10:10:42  19   ignorance here.  What is the significance?  Why is that a big
10:10:47  20   deal?
10:10:47  21          MR. COLLINS:  Well, if -- they don't have to be
10:10:49  22   withdrawn if the Court clearly issues an order saying they're
10:10:54  23   modified in this regard.
10:10:55  24          THE COURT:  That's what I'm intending to do.  I mean,
10:10:59  25   if you-all -- I would welcome a break and the last-minute
```

| | | |
|---|---|---|
| 10:11:02 | 1 | opportunity for you-all to fix this. I'm not going anywhere |
| 10:11:07 | 2 | today. It would save me a tremendous amount of time. But |
| 10:11:11 | 3 | assuming that you can't, I think that's what I have to do. |
| 10:11:16 | 4 | MR. COLLINS: Yes, Your Honor. And we have no issue |
| 10:11:18 | 5 | with that. I believe you're absolutely right. |
| 10:11:24 | 6 | THE COURT: Okay. |
| 10:11:25 | 7 | MR. COLLINS: And, you know, as far as organizational |
| 10:11:27 | 8 | documents from Acacia, I'm going to defer that and let one of |
| 10:11:34 | 9 | the lawyers for Acacia speak, with the Court's permission. |
| 10:11:37 | 10 | THE COURT: Yes. Because I have to admit that's the |
| 10:11:40 | 11 | one that I don't understand why there's a big brouhaha on that |
| 10:11:44 | 12 | one, but I'm sure we'll hear why in a minute. |
| 10:11:49 | 13 | MR. COLLINS: And with respect to time of production, |
| 10:11:51 | 14 | Your Honor, I have to say, with all due respect, we included a |
| 10:11:55 | 15 | lot of evidence in our original motions, which I don't want to |
| 10:11:58 | 16 | rehash, about how burdensome it would have been and how many |
| 10:12:02 | 17 | files would have had to have been searched. The time of |
| 10:12:06 | 18 | production largely depends on what the Court orders us to |
| 10:12:10 | 19 | produce. |
| 10:12:12 | 20 | If we can get by with producing just the documents |
| 10:12:22 | 21 | that they've agreed to with Ms. Rutherford and -- or in our |
| 10:12:28 | 22 | proposal to them, then it's much less of an issue. I will say |
| 10:12:33 | 23 | this, though: One of the subpoenas is directed to Austin Geo. |
| 10:12:37 | 24 | The others -- the others are directed to me and my firm. |
| 10:12:41 | 25 | There's a request for production to the plaintiff. Not |

10:12:47   1   coincidentally, the date they've asked for compliance is next

10:12:51   2   Wednesday, the 12th.  That's the same day that we have the

10:12:55   3   technology tutorial before Judge Yeakel.  That's going to be a

10:13:03   4   tutorial that both Mr. Grant and I are going to participate in.

10:13:07   5   Our teams are working on that.

10:13:10   6         My primary presenter is Robin Dommisse, the CEO of

10:13:16   7   Austin Geomodeling, and Mr. Dommisse is in South America right

10:13:21   8   now.  I think I -- and I told them that we could produce --

10:13:28   9   that AGM could produce documents to them by next Friday, which

10:13:35  10   is -- I think that's probably acceptable.  I represented

10:13:42  11   that -- that the plaintiff could produce documents to

10:13:52  12   Schlumberger along with a privilege log within 14 days.

10:13:55  13         And it -- I -- I use that time because most of what

10:14:04  14   is going to be produced, which would be from not only the

10:14:10  15   plaintiff's files, but my law firm's files, is going to be

10:14:13  16   attorney work product; a lot of it, if not most of it, is going

10:14:18  17   to be privileged; and there's going to be an extensive

10:14:27  18   privilege log.

10:14:27  19         And while I'm at it, I think the other point I would

10:14:30  20   note is that since Dynamic 3D Geo has agreed to produce

10:14:35  21   documents from my firm's files along with their own files,

10:14:40  22   there's no need for these subpoenas to Collins Edmonds or me

10:14:44  23   individually and there's no need to require us to make any fact

10:14:49  24   stipulations.  They can get everything they need from the files

10:14:54  25   of both my law firm and my client in their request for

| | | |
|---|---|---|
| 10:14:59 | 1 | production from my client. |
| 10:15:02 | 2 | THE COURT:  Okay. |
| 10:15:04 | 3 | MR. COLLINS:  And, if I may, I would like just to |
| 10:15:06 | 4 | have one of -- I'm not sure who will address it, but it may be |
| 10:15:12 | 5 | Mr. Brennan -- address the documents that Schlumberger is |
| 10:15:19 | 6 | seeking regarding Acacia's organizational structure. |
| 10:15:23 | 7 | THE COURT:  Okay.  Yeah.  Let's talk about that. |
| 10:15:27 | 8 | MR. BRENNAN:  Thank you, Your Honor.  Acacia Research |
| 10:15:31 | 9 | Group LLC, which is the company that employs both my other |
| 10:15:38 | 10 | client, Gary Fischman and Ms. Rutherford, is the parents of the |
| 10:15:46 | 11 | plaintiff in this case, Dynamic 3D.  Dynamic 3D is its wholly |
| 10:15:51 | 12 | owned subsidiary.  If -- if what the other side is asking for |
| 10:15:57 | 13 | is some kind of chart that substantiates the corporate |
| 10:16:04 | 14 | relationship between those entities and the individuals that |
| 10:16:11 | 15 | worked on behalf of those entities, to the extent that those |
| 10:16:15 | 16 | individuals' names come up on a privilege log that we produce, |
| 10:16:24 | 17 | we're happy to do that if we're talking about issues that |
| 10:16:28 | 18 | relate to the '319 patent and this litigation.  I understand |
| 10:16:33 | 19 | that they're asking for more than that.  It's not entirely |
| 10:16:36 | 20 | clear to me exactly what more they're asking for at this point. |
| 10:16:41 | 21 | THE COURT:  Okay.  Let's find out. |
| 10:16:44 | 22 | MR. BRENNAN:  Let's find out. |
| 10:41:32 | 23 | MR. GRANT:  Yes, sir.  So when you say '319 patent, I |
| 10:41:40 | 24 | think we have to mean the '319 patent litigation.  So part of |
| 10:41:46 | 25 | the issue, Your Honor, is they sued us and a bunch of other |

| | | |
|---|---|---|
| 10:41:50 | 1 | companies in what are technically separate suits that are all |
| 10:41:53 | 2 | about the same assertion of infringement.  And the substantial |
| 10:41:59 | 3 | relationship is relevant because, for example, Halliburton has |
| 10:42:03 | 4 | cited our earlier product as prior art in their case.  So it |
| 10:42:11 | 5 | can't possibly be the case that Ms. Rutherford or the Acacia |
| 10:42:19 | 6 | persons can create a wall and say, Well, we didn't work on the |
| 10:42:23 | 7 | Schlumberger case regarding our defense to that claim of patent |
| 10:42:26 | 8 | invalidity which is based on the Schlumberger product.  We only |
| 10:42:31 | 9 | worked on the Halliburton case.  It's the same analysis.  So I |
| 10:42:35 | 10 | think as long as when we say the '319 patent, we mean the '319 |
| 10:42:40 | 11 | patent litigations that are pending, then I -- then I think |
| 10:42:46 | 12 | we're on the same page. |
| 10:42:49 | 13 | Can I briefly respond to the Rutherford question, |
| 10:42:53 | 14 | because the question you asked is a fair one, Your Honor, which |
| 10:42:56 | 15 | is how similar is it?  So part of what Judge Yeakel has to do |
| 10:43:00 | 16 | is a couple of steps.  One, he has to make that decision about |
| 10:43:04 | 17 | whether the case is substantially related to her work.  That's |
| 10:43:09 | 18 | really what the Rutherford discovery is about.  If he makes the |
| 10:43:13 | 19 | decision that that work is substantially related, then the |
| 10:43:19 | 20 | discovery we're seeking here that goes beyond the Rutherford |
| 10:43:23 | 21 | discovery is directly necessary for Judge Yeakel to form a |
| 10:43:27 | 22 | remedy. |
| 10:43:28 | 23 | THE COURT:  So why shouldn't we just shut this whole |
| 10:43:32 | 24 | thing down and resolve that first question first? |
| 10:43:35 | 25 | MR. GRANT:  That's up to Judge Yeakel.  And if |

```
10:43:38   1   Judge Yeakel says, let's have two DQ hearings.  Let's have a DQ
10:43:43   2   hearing on whether there's a substantial relationship, and then
10:43:47   3   let's have a second one about the level of imputation that's
10:43:50   4   involved, you know, Your Honor, I don't think I have a problem
10:43:53   5   with that.
10:43:53   6            THE COURT:  If we do that, how -- how -- how does
10:43:59   7   that affect the request for production that you've got?  I
10:44:02   8   mean, does it reduce it to one or two or it is satisfied with
10:44:08   9   Rutherford's production out of the Southern District.
10:44:11  10            MR. GRANT:  I don't think it's completely satisfied,
10:44:14  11   but it takes care of a lot of the issues because a lot of the
10:44:18  12   issues we're dealing with here, Your Honor, is how much of her
10:44:21  13   conflict is imputed to Acacia, whether Acacia qualifies as a
10:44:26  14   firm under the ADA and Texas rules, whether that imputation and
10:44:32  15   those communications between Acacia and Mr. Collins and his
10:44:37  16   firm, what's the level of communication there, whether there's
10:44:42  17   a next step imputation as to -- as to him and, you know, what
10:44:49  18   the level of involvement was in the decisions to acquire the
10:44:55  19   patent.
10:44:55  20            So, I agree with you, sir.  It's a two-step process,
10:45:02  21   but Judge Yeakel didn't structure the hearing that way.  He
10:45:07  22   told us to be prepared to argue everything, and he told us to
10:45:10  23   conduct discovery to be prepared.
10:45:13  24            THE COURT:  Yeah.  And that's, by the way, our
10:45:15  25   problem with time crunch here.  I -- the way it works is
```

| | | |
|---|---|---|
| 10:45:20 | 1 | district judges tell magistrates what to do.  It doesn't go the |
| 10:45:24 | 2 | other way.  So I'm like you-all.  I'm working within that same |
| 10:45:31 | 3 | time frame.  I can't move things.  I don't even think I can |
| 10:45:34 | 4 | narrow the issues -- |
| 10:45:35 | 5 | MR. GRANT:  And I think, Your Honor -- |
| 10:45:37 | 6 | THE COURT:  -- if I want to. |
| 10:45:38 | 7 | MR. GRANT:  And I think, Your Honor, in the end, you |
| 10:45:41 | 8 | know, Judge Yeakel needs a full record to decide the case.  And |
| 10:45:46 | 9 | the -- the addition -- I think at this stage, you know, |
| 10:45:52 | 10 | respectfully, I would err in the direction of slightly broader |
| 10:45:55 | 11 | discovery because I think we've narrowed it up substantially. |
| 10:45:59 | 12 | Because, in the end, if that discovery is relevant, it's going |
| 10:46:02 | 13 | to be before Judge Yeakel.  And if he thinks it's relevant, |
| 10:46:07 | 14 | it's going to be cited in his opinion.  And if he thinks it's |
| 10:46:11 | 15 | relevant and cites it in his opinion, it's going to be reviewed |
| 10:46:15 | 16 | by the Federal Circuit.  And, you know, I think that's what |
| 10:46:20 | 17 | both -- as officers of the court, both sides' lawyers are |
| 10:46:25 | 18 | obligated to give Judge Yeakel what he needs to make a full and |
| 10:46:29 | 19 | fair decision.  And so that's what this is about. |
| 10:46:33 | 20 | THE COURT:  Well, it is -- clearly it's about what he |
| 10:46:35 | 21 | needs, and whatever he needs has got to be relevant, it's got |
| 10:46:39 | 22 | to be reasonable.  You know, I am a little troubled by the law |
| 10:46:43 | 23 | firm subpoenas to Mr. Collins and his firm because it's, like |
| 10:46:53 | 24 | we just talked about, first you've got -- you have work to do |
| 10:46:58 | 25 | with Rutherford first, and we're kind of blowing right by that |

```
10:47:08   1   and we're getting right into the law firm.
10:47:10   2           MR. GRANT:  No, sir.  No, sir.  We're not blowing
10:47:16   3   right by that.  It's just that that information is information
10:47:18   4   that we, in part, have from public records regarding her prior
10:47:22   5   deposition and, in part, are now going to get directly from
10:47:26   6   her.  And it's information that's within the control of
10:47:30   7   Schlumberger, right?  So the information about whether her work
10:47:34   8   on this '319 patent and the accused product is substantially
10:47:39   9   related, that's within our custody or control.  We're the ones
10:47:42   10  who get to say, you know, here's the accused product.  Here's
10:47:48   11  the prior art product.  They're identical.  This one is
10:48:03   12  invalidating to this one.  So that information is within our
10:48:14   13  custody or control.  To the extent there's minor additional
10:48:19   14  stuff, that's the stuff that was taken up with Judge Ellison
10:48:22   15  last week.
10:48:22   16          The next two steps are particularly important.  The
10:48:26   17  first one has to do with the irrebuttable presumption of
10:48:32   18  imputation to the firm, right?  So now the only question is:
10:48:35   19  How broad is this that within Acacia?  And, as we mentioned,
10:48:39   20  they have various entities and are entitled to do that under
10:48:43   21  the law.  But we need to understand those communications and
10:48:46   22  those relationships because we believe, if you consider what
10:48:49   23  the entity is set up to do and, for example, the fact that its
10:48:53   24  CEO was the person who, on Mr. Collins' recommendation and on
10:49:00   25  Ms. Rutherford's recommendation, made the decision to sue.
```

| | | |
|---|---|---|
| 10:49:03 | 1 | If she's conflicted out, then under the controlling |
| 10:49:07 | 2 | law, all of Acacia is conflicted out.  They have lawyers acting |
| 10:49:12 | 3 | in VD, they've got lawyers acting in lawyer.  But that's what |
| 10:49:16 | 4 | the discovery as to the Acacia entities is into. |
| 10:49:18 | 5 | Now, the next stuff is there is a rebuttable |
| 10:49:22 | 6 | presumption with regards to outside counsel.  And I think |
| 10:49:24 | 7 | that's resolved, Your Honor, by the stipulation which just says |
| 10:49:30 | 8 | we have lots of substantive communications with Acacia about |
| 10:49:36 | 9 | this case.  I mean, that's really all we're looking for. |
| 10:49:39 | 10 | THE COURT:  That's what you think happened.  Their -- |
| 10:49:43 | 11 | their pleadings they say that did not happen. |
| 10:49:46 | 12 | MR. GRANT:  And that's why we need the discovery, |
| 10:49:50 | 13 | Your Honor.  Because if we have a privilege log that shows, I |
| 10:49:53 | 14 | don't know, 300 entries of e-mails and communications with |
| 10:49:56 | 15 | Mr. Fischman and other people at Acacia and the Collins Edmonds |
| 10:50:02 | 16 | firm regarding the lawsuit -- |
| 10:50:03 | 17 | THE COURT:  Well, what would be wrong with that?  I |
| 10:50:06 | 18 | mean, I guess I'm focused on Rutherford here. |
| 10:50:09 | 19 | MR. GRANT:  Yes, sir. |
| 10:50:09 | 20 | THE COURT:  And that's -- |
| 10:50:13 | 21 | MR. GRANT:  There's nothing wrong, Your Honor.  But |
| 10:50:15 | 22 | what the law is, she has confidential, privileged information |
| 10:50:20 | 23 | that she's used against us.  Under the law, that's imputed to |
| 10:50:26 | 24 | all her colleagues at Acacia.  That's the law.  So that |
| 10:50:31 | 25 | confidential information of a lawyer's obligations to their |

10:50:54  1  client which, you know, I think are pretty serious.

10:50:58  2          THE COURT:  See, what you're talking about, those are

10:50:59  3  issues that Judge Yeakel is going to resolve.  I appreciate

10:51:03  4  you're advocacy, but I've read the plaintiff's side of this and

10:51:07  5  they take issue with your characterization of the case is

10:51:10  6  imputable, the impact of the Bar rules.  I mean, that's for

10:51:18  7  Judge Yeakel.  What I want to focus on is what is relevant

10:51:21  8  here.  And my one concern is, I think that anything that

10:51:27  9  Rutherford is involved in as it relates to, certainly

11:08:05  10 Schlumberger, is fair game.  Anything Rutherford is involved in

11:08:12  11 as it relates to the '319 litigation, I understand your

11:08:16  12 argument, but I do wonder why she can't be involved in the

11:08:24  13 Halliburton litigation.

11:08:25  14          MR. GRANT:  Because, Your Honor, it's substantially

11:08:28  15 related to the work she did for us.  And if she helps form, for

11:08:32  16 example, the response to Halliburton's invalidity claims,

11:08:39  17 that's the same response that's going to come to our invalidity

11:08:45  18 claims because it's based on our prior art product that she was

11:08:50  19 responsible for and worked on as a lawyer at Schlumberger.

11:08:57  20          It's no different than you being a partner at a law

11:09:00  21 firm and being involved in a product liability case as to a

11:09:07  22 specific accident suing the company that runs the plant and

11:09:14  23 then separately saying, well, we're also suing the company that

11:09:20  24 makes the product.  And all the facts and everything else is

11:09:22  25 the same and you say, well, we previously represented the

11:09:25  1   person that runs the plant.  So I'm not going to be involved in

11:09:28  2   that.  But I'm going to be involved in the litigation against

11:09:30  3   the company that made the product.  It's exactly the same

11:09:33  4   facts.

11:09:35  5          THE COURT:  But they've got a case -- and I'll get

11:09:37  6   half of this right -- involving somebody who worked for an

11:09:40  7   appraisal board and then left after 20-something years, turned

11:09:45  8   right around and sued the county on behalf of clients.  And,

11:09:48  9   again, this is kind of the same thing, isn't it?

11:09:51  10         MR. GRANT:  Well, so, Your Honor, I think it's

11:09:53  11  different.  That case is quite distinguishable.  But, in the

11:09:59  12  end, Judge Yeakel will decide whether they're right on the law

11:10:02  13  or we're right on the law.  If he decides we're right on the

11:10:07  14  law, then he needs the facts to figure out what the remedy is.

11:10:15  15         Now, you may be right, Your Honor.  They may produce

11:10:18  16  these facts, Judge Yeakel may think we're wrong on the law, and

11:10:39  17  he may say none of this matters.  But what if that doesn't

11:10:42  18  happen?  What if Judge Yeakel says, you know what?  I agree

11:10:45  19  with Schlumberger's view of the law.  How come I don't have any

11:10:50  20  information on the communications between Acacia's in-house

11:10:53  21  people and the Collins Edmonds firm?  Where is that?

11:10:58  22         And you know, if the Court wants to reject our

11:11:03  23  request for that information, I appreciate that.  But then I

11:11:06  24  have to have a record where I can go to Judge Yeakel, and say,

11:11:11  25  Judge Yeakel, we asked if that information.  We -- we -- it was

| | |
|---|---|
| 11:11:16 | 1 |
| 11:11:20 | 2 |
| 11:11:26 | 3 |
| 11:11:31 | 4 |
| 11:11:37 | 5 |

1  subject to, effectively, a motion to compel, a motion to quash,

2  and your colleague rejected that and we think we're entitled to

3  that.  And that might be a basis for us -- for our cross-appeal

4  if he says, well, Rutherford's conflicted, but I'm not going to

5  take the law firm out of it.

6              THE COURT:  Is -- help me understand the one, two,

7  three primary -- as you-all have gotten closer to an agreement

8  on which RFPs you're going to agree on, what are the remaining

9  big issues that -- that I need to decide?  And that's against a

10  backdrop that I note, for instance, in one of these

11  productions, three, four, and five, there's nothing there.

12  It's like we're not going to do that one anymore.  But to the

13  extent that we're not going to do three, four, or five being

14  based on a stipulation of facts, which we all agree on I can't

15  go into --

16              MR. GRANT:  Yes, sir.

17              THE COURT:  -- are three, four and five back on the

18  table?

19              MR. GRANT:  So I think the answer to that is yes.

20  But with my apologies, Your Honor, I just finished a jury trial

21  in Delaware, so I'm going to ask my colleague, Mr. Connolly,

22  who has been doing the negotiations and is more deeply involved

23  to handle the specifics of the request and where we

24  specifically are in the negotiations, if that pleases the

25  Court.

ARLINDA L. RODRIGUEZ, OFFICIAL COURT REPORTER
U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)

| | | |
|---|---|---|
| 11:12:45 | 1 | THE COURT:  Absolutely. |
| 11:12:46 | 2 | MR. GRANT:  Thank you, sir. |
| 11:12:47 | 3 | MR. CONNOLLY:  Thank you, Your Honor. |
| 11:12:51 | 4 | Terrence Connolly.  Thanks for having us here today, |
| 11:12:54 | 5 | Your Honor.  We appreciate your time.  With respect to your |
| 11:12:56 | 6 | specific question, Your Honor, and this -- and this proves that |
| 11:13:01 | 7 | we have been treating these parties separately and seeking the |
| 11:13:05 | 8 | information and the stipulations from different parties. |
| 11:13:49 | 9 | The answer to your question is:  We have withdrawn, |
| 11:13:54 | 10 | without condition, several of the requests that are directed at |
| 11:13:58 | 11 | Austin Geomodeling.  That is the original assignee of the |
| 11:14:03 | 12 | patent.  Okay?  So when you saw those withdrawn in the book, |
| 11:14:11 | 13 | those were not subject to any stipulation. |
| 11:14:13 | 14 | However, the requests 3 and 4 that are directed at |
| 11:14:21 | 15 | the Collins Edmonds firm and Mr. Collins, those -- those |
| 11:14:25 | 16 | requests and the narrowing that we did, which very, very, very, |
| 11:14:31 | 17 | narrowly cabined-in time frames in response to statements we |
| 11:14:36 | 18 | can't -- you know, if you -- if you ask us for everything after |
| 11:14:41 | 19 | the filing of the complaint, there will be -- I'll have a |
| 11:14:45 | 20 | privilege log with hundreds, if not thousands, of documents. |
| 11:14:48 | 21 | Okay.  That's fine.  Go ahead and stipulate to it, and we won't |
| 11:14:53 | 22 | put you through the paces. |
| 11:14:54 | 23 | But I want Your Honor to understand that the argument |
| 11:14:57 | 24 | about -- about we didn't insist upon Ms. Rutherford's |
| 11:15:03 | 25 | stipulation, we asked Ms. Rutherford to stipulate that she |

11:15:08  1  interviewed before she left Schlumberger.  We didn't ask her

11:15:12  2  anything about communications among Acacia.  We asked her what

11:15:15  3  she was going to know about.  We concluded based upon the

11:15:18  4  negotiations that we were having with her the two stipulations

11:15:22  5  that we had asked her about, totally different from these

11:15:26  6  stipulations, weren't necessary in order to get the deal done.

11:15:29  7       So to say -- to say, you know, you gave up on

11:15:34  8  stipulations over there is fine.  Your Honor, I just want to

11:15:37  9  make this crystal clear.  We made -- we didn't demand the

11:15:43 10  stipulations.  We offered the stipulations because we were met

11:15:46 11  with an argument that your requests are incredibly burdensome

11:15:51 12  because all of this stuff is privileged.  And, you know, you

11:15:54 13  get -- you're trying to get into all of our litigation

11:15:58 14  strategy, et cetera, et cetera.

11:16:01 15       Frankly, in an effort to try to resolve it and not --

11:16:06 16  I don't need a privilege log of a 100,000 pages.  I don't want

11:16:13 17  a privilege log of 100,000 pages.  Our response when

11:16:16 18  Mr. Collins suggested, that was okay.  Then just tell us -- you

11:16:21 19  know, stipulate that you've had -- you have those -- you've had

11:16:26 20  lots of conversations with the people at Acacia about this

11:16:31 21  lawsuit because that's what's necessary when you get to steps

11:16:34 22  two and three.

11:16:34 23       And, Your Honor, the -- it's a little bit of an odd

11:16:38 24  duck, but understand that -- the first question is, is it

11:16:46 25  substantially related or not.  And that's what we focused on

| | | |
|---|---|---|
| 11:16:49 | 1 | our discussions with Ms. Rutherford about.  We took discovery |
| 11:16:53 | 2 | on that.  We took -- and she gave a deposition and answered |
| 11:16:57 | 3 | questions with respect to the -- the question of her |
| 11:17:04 | 4 | participation and Acacia's -- her new employer's decision to |
| 11:17:12 | 5 | buy the patent and she concurred in the decision to sue her |
| 11:17:15 | 6 | former client.  So we think we've got that.  We don't really |
| 11:17:18 | 7 | think there's a whole lot about that.  They want to talk about |
| 11:18:09 | 8 | old version of Petrel versus the new version of Petrel.  But |
| 11:18:22 | 9 | Judge Yeakel is going to decide that. |
| 11:18:24 | 10 | But -- and this is set out in our disqualification |
| 11:18:30 | 11 | motion.  That's the first step of the process.  But then the |
| 11:18:33 | 12 | next step is, because of -- because the triggering mechanism is |
| 11:18:38 | 13 | substantial relationship, the next question then becomes, okay, |
| 11:18:43 | 14 | everybody in that -- if it were a law firm, everybody in the |
| 11:18:47 | 15 | same law firm, under Texas applicable Fifth Circuit law, is |
| 11:18:54 | 16 | automatically disqualified.  So we've been met with an |
| 11:19:00 | 17 | argument, well, it's just the -- you know, it's the plaintiff |
| 11:19:05 | 18 | in the case.  Plaintiff 3D.  And, of course, Plaintiff 3D |
| 11:19:10 | 19 | didn't exist until a week before the patent was -- the patent |
| 11:19:17 | 20 | suit was filed.  So we're not going to just define the law firm |
| 11:19:20 | 21 | as being the -- the wholly owned subsidiary of ARG.  And we |
| 11:19:26 | 22 | know that the actual CEO of the very parent company |
| 11:19:31 | 23 | participated in this decision.  So we need to figure out what |
| 11:19:34 | 24 | is the -- we need to -- not we need.  Judge Yeakel needs to |
| 11:19:38 | 25 | figure out the definition of where is this law firm. |

| | | |
|---|---|---|
| 11:19:43 | 1 | And so the stipulations that we were asking were |
| 11:19:45 | 2 | intended to say, okay.  We'll give you these very narrow dates, |
| 11:19:50 | 3 | six months.  We -- we will limit our document requests to a |
| 11:19:55 | 4 | six-month period, a nine-month period, et cetera.  And, by the |
| 11:19:58 | 5 | way, if what you're telling us is true, that, for example, |
| 11:20:01 | 6 | Mr. Collins says, I didn't do any -- he submitted a declaration |
| 11:20:06 | 7 | in opposition to the motion for disqualification.  So that's |
| 11:20:10 | 8 | another distinguishing factor, Your Honor.  Mr. Collins has |
| 11:20:13 | 9 | made himself a fact witness in the case, and he specifically |
| 11:20:16 | 10 | disagreed with Ms. Rutherford's sworn testimony about what he |
| 11:20:21 | 11 | did and didn't do. |
| 11:20:23 | 12 | So we submitted a declaration -- a subpoena to him |
| 11:20:27 | 13 | that says -- basically, designed to test the veracity of his |
| 11:20:32 | 14 | declaration.  I agree with you.  It's -- it's an unusual thing, |
| 11:20:37 | 15 | Your Honor.  I don't every day serve subpoenas on those people. |
| 11:20:40 | 16 | But that's -- that's what that's directed to. |
| 11:20:43 | 17 | The -- the question of why -- why do we care beyond |
| 11:20:48 | 18 | Ms. Rutherford and Acacia, why do we care about Mr. Collins, is |
| 11:20:53 | 19 | because, again, not the kind of thing that lawyers deal with |
| 11:20:59 | 20 | every day.  Under the ethical rules, there are a subset of |
| 11:21:04 | 21 | rules in the Fifth Circuit specifically articulated in this |
| 11:21:08 | 22 | *American Home Products* case which define that, when it is |
| 11:21:15 | 23 | proper to also impute or direct and disqualify outside counsel. |
| 11:21:25 | 24 | As Your Honor might imagine, it's either -- there is a higher |
| 11:21:30 | 25 | burden to disqualify outside counsel. |

| | | |
|---|---|---|
| 11:21:32 | 1 | And so when we're seeking information on -- with |
| 11:21:37 | 2 | respect to Mr. Collins' participation, it's not designed to get |
| 11:21:43 | 3 | into the substance of his thoughts.  It's designed to either |
| 11:21:49 | 4 | give us -- the easy way to do it is a log that says, yeah, I'm |
| 11:21:55 | 5 | litigating these cases on this same patent with these same |
| 11:22:01 | 6 | issues with the following groups of lawyers at the Acacia |
| 11:22:06 | 7 | entities, which would allow us to then say to the judge, under |
| 11:22:10 | 8 | the *American Home Products*, that qualifies. |
| 11:22:13 | 9 | And, by the way, the language that we've used is |
| 11:22:16 | 10 | verbatim out of those cases.  It's not argumentative.  It says, |
| 11:22:20 | 11 | In the *American Home Products* case, there is two flavors in the |
| 11:22:25 | 12 | way that you can disqualify outside counsel, different rules |
| 11:22:29 | 13 | with respect to outside counsel and in-house counsel.  Of |
| 11:22:32 | 14 | course, the automatic imputation rule doesn't apply.  Flavor |
| 11:22:54 | 15 | one is there has to be substantive conversations.  That's the |
| 11:22:58 | 16 | word that we used.  Your Honor, if we -- I could point you to |
| 11:23:03 | 17 | the paragraph in the case where it came out of. |
| 11:23:07 | 18 | So I understand that it seems this is a little bit of |
| 11:23:11 | 19 | an unusual thing to say, well, why do you need all of this? |
| 11:23:15 | 20 | It's because that's what the case law says. |
| 11:23:18 | 21 | THE COURT:  Well, I hear you.  I guess against all |
| 11:23:20 | 22 | this backdrop is when you talk or when Mr. Collins talks or |
| 11:23:24 | 23 | Mr. Grants talks, I believe you-all are always telling me the |
| 11:23:28 | 24 | truth.  Mr. Collins has filed pleadings -- he's filed an |
| 11:23:33 | 25 | affidavit in which he said these things didn't happen.  The |

| | | |
|---|---|---|
| 11:23:37 | 1 | search for a -- documents from his own firm that suggests |
| 11:23:44 | 2 | otherwise, basically "veracity," is a nice way of saying he's |
| 11:23:49 | 3 | not telling the truth.  He's a liar.  Do you have anything to |
| 11:23:52 | 4 | indicate that he's a liar? |
| 11:24:08 | 5 | MR. CONNOLLY:  I just have Ms. Rutherford.  A, we |
| 11:24:25 | 6 | have Rutherford's testimony.  B, we have the -- some of the |
| 11:24:39 | 7 | stipulations.  We have admissions of Mr. -- of ARG and ARG's |
| 11:24:46 | 8 | Mr. Fischman, who is also a client representative, that says |
| 11:24:50 | 9 | he's driving this litigation.  So -- so what -- whether or |
| 11:24:55 | 10 | not -- and it's not just about that.  It's not just about |
| 11:24:59 | 11 | testing the veracity of his statement.  Maybe his recollection |
| 11:25:04 | 12 | is correct and hers isn't. |
| 11:25:06 | 13 | If we ask him for all the documents regarding his |
| 11:25:10 | 14 | communications with her and the answer is none, he has nothing |
| 11:25:13 | 15 | to produce and nothing to log.  No burden.  And we have our -- |
| 11:25:18 | 16 | and we have our conclusion.  But, Your Honor, we have no other |
| 11:25:24 | 17 | way of testing the veracity.  We have a sworn deposition of |
| 11:25:27 | 18 | Ms. Rutherford, who gave the testimony in open court before a |
| 11:25:33 | 19 | state court judge, and then signed her deposition transcript |
| 11:25:37 | 20 | without changing it. |
| 11:25:39 | 21 | And then we have, as Mr. Collins used the word, |
| 11:25:46 | 22 | "misremembered."  I don't think we should bear the burden of -- |
| 11:25:51 | 23 | of having to assume that one or the other is correct.  And, as |
| 11:25:57 | 24 | I said, if his testimony is accurate and he didn't have |
| 11:25:59 | 25 | anything to do with this, the time frames that we've imposed |

| | | |
|---|---|---|
| 11:26:05 | 1 | plus the -- we're not asking him to stipulate that he -- that |
| 11:26:08 | 2 | he had those communications with -- with -- you know, that |
| 11:26:12 | 3 | he's -- we haven't asked him to stipulate that his declaration |
| 11:26:16 | 4 | is inaccurate.  The stipulations go to other things. |
| 11:26:19 | 5 | And I know -- so that's the position that we're in. |
| 11:26:22 | 6 | But the other stipulations don't just go to the veracity of his |
| 11:26:27 | 7 | declaration.  It goes to what -- what is the appropriate scope |
| 11:26:32 | 8 | of relief in the event that Judge Yeakel agrees with us, that |
| 11:26:38 | 9 | the law is X and these are the facts. |
| 11:26:42 | 10 | THE COURT:  Okay.  I want to hear from Mr. Collins in |
| 11:26:46 | 11 | a moment, but I'll leave you with this:  Could an argument be |
| 11:26:49 | 12 | made that your initial subpoenas were so overbroad that I |
| 11:26:53 | 13 | should just limit the issue to whether or not, as they were |
| 11:26:58 | 14 | originally crafted, whether they're appropriate?  Because to me |
| 11:27:01 | 15 | that would be an easy call.  They're probably way overbroad. |
| 11:27:06 | 16 | Throw them all out and you get no discover because your |
| 11:27:10 | 17 | original subpoenas were too broad. |
| 11:27:12 | 18 | MR. CONNOLLY:  Well, first, Your Honor, understand |
| 11:27:15 | 19 | the -- first off, I don't think -- I think judges all the time |
| 11:27:20 | 20 | modify subpoenas.  Secondly, it wasn't as if we insisted on -- |
| 11:27:28 | 21 | until the eve of last night to negotiate these.  The very first |
| 11:27:33 | 22 | time we got notice that -- of what the problems were was when |
| 11:27:37 | 23 | we got hit with a motion to quash.  And so we immediately |
| 11:27:43 | 24 | responded by unilaterally modifying the subpoenas to address |
| 11:27:50 | 25 | the very types of things. |

| | | |
|---|---|---|
| 11:27:52 | 1 | For example, Your Honor, they took the position |
| 11:27:54 | 2 | that -- and -- and, honestly, the definition of Ms. Rutherford |
| 11:27:57 | 3 | was broad enough to cover her attorneys.  Mr. Collins or |
| 11:28:03 | 4 | counsel for Ms. Rutherford pointed out to me that was too broad |
| 11:28:07 | 5 | because it would get into all of her discussions in the state |
| 11:28:10 | 6 | court case.  I said, We don't want that.  That was |
| 11:28:12 | 7 | unintentional.  And I immediately said we will exclude from |
| 11:28:17 | 8 | that definition.  That's -- |
| 11:28:18 | 9 | THE COURT:  I appreciate the reasonableness since |
| 11:28:20 | 10 | then.  I'm just commenting that, originally, they were pretty |
| 11:28:26 | 11 | broad. |
| 11:28:27 | 12 | MR. CONNOLLY:  This was the issue you, Your Honor: |
| 11:28:29 | 13 | We were told by Judge Yeakel to wait to serve these.  We -- we |
| 11:28:35 | 14 | got their papers.  We studied them.  We did not -- one of the |
| 11:28:43 | 15 | first things, we very carefully considered whether we were |
| 11:28:47 | 16 | taking those positions.  We considered burden issues, benefit |
| 11:30:07 | 17 | issues, decided we weren't going to do that.  We drafted a set |
| 11:30:10 | 18 | of discovery requests.  We had to get them out because of the |
| 11:30:13 | 19 | time frame. |
| 11:30:14 | 20 | THE COURT:  Okay. |
| 11:30:15 | 21 | MR. CONNOLLY:  And we viewed that as basically the |
| 11:30:18 | 22 | invitation to have the dialogue.  Because Part of the problem, |
| 11:30:20 | 23 | Your Honor, is you never know how -- what people have.  I was |
| 11:30:23 | 24 | not aware of the fact, for example, that Mr. Collins was going |
| 11:30:28 | 25 | to say to me, I've had -- I think the initial word was |

| | | |
|---|---|---|
| 11:30:33 | 1 | "dozens."  That's the word that we used in the stipulation |
| 11:30:36 | 2 | because that's the word he used.  I've had "dozens" of |
| 11:30:39 | 3 | conversations with Mr. Fischman with respect to the -- this |
| 11:30:47 | 4 | lawsuit and the other lawsuits. |
| 11:30:50 | 5 | And so that's -- so we're -- I -- to be honest with |
| 11:30:55 | 6 | you, Your Honor, I don't think we should be faulted for, in a |
| 11:30:59 | 7 | very short period of time, putting together a set of discovery |
| 11:31:02 | 8 | requests to get the ball rolling and to have the negotiations. |
| 11:31:07 | 9 | THE COURT:  I don't mean to imply fault.  It's just |
| 11:31:10 | 10 | more of this is against the backdrop that what you-all are |
| 11:31:15 | 11 | essentially asking me to do is try to -- if you talk about a |
| 11:31:18 | 12 | short time frame, I even have a shorter one, try to figure out |
| 11:31:22 | 13 | everything that we've talked about so far and everything that's |
| 11:31:25 | 14 | in your pleadings and come up with something that's reasonable. |
| 11:31:28 | 15 | And it's going to be -- frankly, I can tell you right |
| 11:31:31 | 16 | now, it will be a compromise between what you want, what they |
| 11:31:37 | 17 | don't want you to have, and it's going to end up making both |
| 11:31:40 | 18 | sides unhappy.  That's my prediction.  But let me hear from |
| 11:31:46 | 19 | Mr. Collins. |
| 11:31:55 | 20 | MR. GRANT:  Sure.  Thank you, Your Honor. |
| 11:31:57 | 21 | MR. COLLINS:  Thank you, Your Honor.  I do want to |
| 11:31:59 | 22 | clear up what I think may be some misconceptions.  The six |
| 11:32:03 | 23 | patent cases are related only in that my client, Dynamic 3D |
| 11:32:12 | 24 | Geo, is suing on the same patent.  We're talking about these |
| 11:32:17 | 25 | other five cases being against Schlumberger's competitors. |

| | | |
|---|---|---|
| 11:32:21 | 1 | We're talking about the five other cases involving completely |
| 11:32:25 | 2 | different products.  Now, the infringement analysis is going to |
| 11:32:30 | 3 | be completely different in each of those cases, and nothing |
| 11:32:35 | 4 | that Ms. Rutherford knows that she learned from Schlumberger is |
| 11:32:40 | 5 | going to be of much use. |
| 11:32:41 | 6 | Now, Mr. Grant brings up the prior art.  Well, the |
| 11:32:48 | 7 | prior art is a matter of public record.  Halliburton cited |
| 11:33:10 | 8 | Schlumberger's Petrel product because they know a lot about it. |
| 11:33:14 | 9 | Indeed, it's a public product.  It's out there.  Anyone can buy |
| 11:33:17 | 10 | it and run it on their computer that wants to pay for it.  It's |
| 11:33:22 | 11 | also cited in Halliburton's filing for an inter partes review |
| 11:33:28 | 12 | in the United States Patent and Trademark Office.  One can go |
| 11:33:32 | 13 | to that Web site and see all of the features of Petrel in a |
| 11:33:38 | 14 | hundred-page claim chart. |
| 11:33:40 | 15 | So I -- and unless there's some type of secret, which |
| 11:33:47 | 16 | there's not, about Petrel that is going to be important in the |
| 11:33:54 | 17 | prior art analysis and there's nothing that's relevant at all |
| 11:33:59 | 18 | about any of these other five cases. |
| 11:34:04 | 19 | Now, I would like to get back, if we could, to the |
| 11:34:11 | 20 | issues before this court today.  Mr. Grant talked about the |
| 11:34:17 | 21 | substantial relationship test, and he conceded that all of that |
| 11:34:20 | 22 | information is in the possession -- well, I think he conceded. |
| 11:34:23 | 23 | I don't want to misconstrue what he said.  But let me just say |
| 11:34:31 | 24 | that all of the information that Schlumberger needs is in their |
| 11:34:34 | 25 | own custody and control.  We've asked for that information, and |

11:34:37   1  they said, no, you can't see it.  What she worked on at

11:34:41   2  Schlumberger is privileged.  The substantial relationship test

11:34:48   3  simply involves comparing the evidence.

11:34:52   4          THE COURT:  I'll interrupt you.  I think you're

11:34:54   5  making -- that's a good argument.

11:34:57   6          MR. COLLINS:  Okay.

11:34:57   7          THE COURT:  And so that will be a good argument for

11:34:59   8  Judge Yeakel.

11:35:00   9          MR. COLLINS:  Yes.

11:35:01  10          THE COURT:  In terms of his analysis.  That point is

11:35:03  11  well taken.

11:35:04  12          MR. COLLINS:  Okay.

11:35:05  13          THE COURT:  And that's going to be a problem that

11:35:08  14  Schlumberger is going to have.  But as it relates to what we're

11:35:11  15  doing here, the substantial relationship test, hasn't Acacia

11:35:18  16  almost conceded that when they -- that there is a substantial

11:35:25  17  relationship here when they -- when they walled her off -- they

11:35:28  18  make a point of saying, we've walled her off from anything to

11:35:34  19  do with Schlumberger?

11:35:36  20          MR. COLLINS:  Not at all.

11:35:37  21          THE COURT:  Is that purely prophylactic, or is

11:35:41  22  that -- could it be an admission that there's pretty good

11:35:45  23  overlap between the two?

11:35:46  24          MR. COLLINS:  It's not an admission, Your Honor.  Law

11:35:50  25  firms do that all the time.  They put up the ethical wall when

| | | |
|---|---|---|
| 11:35:54 | 1 | they hire somebody from another firm because they know that |
| 11:35:58 | 2 | they had a former client who is adverse to one of their current |
| 11:36:01 | 3 | clients.  We had to do that with Mr. Juren when we hired him |
| 11:36:05 | 4 | away because he was opposite me in a patent case in Houston. |
| 11:36:10 | 5 | And so that was all prophylactic, and that's all what this was. |
| 11:36:17 | 6 | If I may, I just want to briefly address discovery |
| 11:36:23 | 7 | from my law firm and the contacts that I've had with Acacia. |
| 11:36:35 | 8 | The issue is actually fairly simple.  I know they talk about |
| 11:36:40 | 9 | double imputation, and I know you read our briefing.  But they |
| 11:36:43 | 10 | have to show under any theory whether it's Fifth Circuit |
| 11:36:47 | 11 | binding precedent or their Texas law theory that Ms. Rutherford |
| 11:36:54 | 12 | communicated some type of confidential Schlumberger information |
| 11:37:01 | 13 | to us.  And that's why we agree that discovery -- you know, for |
| 11:37:09 | 14 | example, requests one and two which seek information about |
| 11:37:16 | 15 | communications between Ms. Rutherford and my firm is entirely |
| 11:37:20 | 16 | appropriate.  What we don't agree is appropriate is discovery |
| 11:37:26 | 17 | about what we may have talked about with Gary Fischman at |
| 11:37:31 | 18 | Acacia, who's our primary and virtually only contact. |
| 11:37:35 | 19 | That doesn't have any bearing on whether or not my |
| 11:37:40 | 20 | firm should be disqualified because that turns on the question |
| 11:37:45 | 21 | of whether Ms. Rutherford communicated any confidential |
| 11:37:49 | 22 | information to us.  And that's very important to note. |
| 11:37:56 | 23 | Moreover, as we've just talked about in terms of relevance, |
| 11:38:03 | 24 | it's completely irrelevant what my firm may have discussed with |
| 11:38:11 | 25 | Gary Fischman about the other five patent cases. |

| | | |
|---|---|---|
| 11:38:16 | 1 | THE COURT:  If the RFP is limited to what you propose |
| 11:38:21 | 2 | right there to that, how burdensome is that analysis going to |
| 11:38:26 | 3 | be? |
| 11:38:28 | 4 | MR. COLLINS:  The production or the analysis? |
| 11:38:33 | 5 | THE COURT:  I guess both.  I mean, it all -- |
| 11:38:35 | 6 | MR. COLLINS:  It does require analysis because we |
| 11:38:37 | 7 | have to look through a lot of things.  We can -- we can live |
| 11:38:41 | 8 | with that, Your Honor.  It's not as burdensome because if what |
| 11:38:49 | 9 | we've proposed, the stipulations we're willing to agree to and |
| 11:38:53 | 10 | the RFPs that I think we're very close on with Schlumberger, I |
| 11:39:01 | 11 | would think that we could easily do that within the 14 days |
| 11:39:04 | 12 | that we proposed. |
| 11:39:05 | 13 | Now, I realize that the Court is dealing with |
| 11:39:11 | 14 | Judge Yeakel's hearing deadline, but the Court needs to realize |
| 11:39:16 | 15 | that we're dealing with having to look through a lot of |
| 11:39:20 | 16 | documents, not only some for my law firm, but for -- |
| 11:39:25 | 17 | THE COURT:  Yeah.  I can tell you right now I feel |
| 11:39:29 | 18 | your pain, but it's probably going to be next Friday.  I'm |
| 11:39:32 | 19 | just -- I don't see any other way around it because, you know, |
| 11:39:37 | 20 | delivery of the material Friday does give them the weekend and |
| 11:39:42 | 21 | time to prepare a written product that gets dropped on |
| 11:39:45 | 22 | Judge Yeakel's staff on Tuesday or Monday, hopefully, and then |
| 11:39:51 | 23 | you-all have got to turn right around and work on a reply.  And |
| 11:39:55 | 24 | it's a brutal schedule.  I'm -- but I'm just being candid with |
| 11:40:01 | 25 | you.  I think it's going to be next Friday. |

| | | |
|---|---|---|
| 11:40:03 | 1 | Okay.  The stipulation thing is still a challenge for |
| 11:40:15 | 2 | me because it strikes me that if there are stipulations, then |
| 11:40:19 | 3 | there's room for narrower RFP's.  That's the argument that |
| 11:40:27 | 4 | Schlumberger just made.  But if there are no stipulations, then |
| 11:40:30 | 5 | they argue they are entitled to a broader amount of |
| 11:40:37 | 6 | information. |
| 11:40:38 | 7 | Help me with how I can craft something where I can't |
| 11:40:46 | 8 | make the stipulation -- I mean, is there room here to take a |
| 11:40:49 | 9 | break and you-all talk and I don't -- or not?  Here's what -- |
| 11:40:53 | 10 | here's our alternative:  The smartest person on my staff, |
| 11:41:00 | 11 | Ms. Gilbert here, and I will go back and we'll go through each |
| 11:41:05 | 12 | one of your RFPs and call a ball and a strike based on |
| 11:41:08 | 13 | everything I've read and everything that you-all have argued |
| 11:41:11 | 14 | this morning. |
| 11:41:12 | 15 | Like I said, it's an inexact science and it's going |
| 11:41:16 | 16 | to invariably probably make both sides unhappy.  But that's |
| 11:41:23 | 17 | kind of where I'm thinking we are right now unless you-all have |
| 11:41:28 | 18 | got some other way of helping me make that analysis. |
| 11:41:37 | 19 | MR. COLLINS:  I'm not sure that I do, but I'm |
| 11:41:39 | 20 | certainly open to discussing it with counsel. |
| 11:41:41 | 21 | THE COURT:  Sure. |
| 11:41:52 | 22 | MR. GRANT:  Your Honor, I think the truth is, if you |
| 11:42:02 | 23 | order proper scope of discovery, for example, that -- |
| 11:42:07 | 24 | THE COURT:  What if it's an improper scope of |
| 11:42:12 | 25 | discovery? |

| | | |
|---|---|---|
| 11:42:12 | 1 | MR. GRANT:  Well, then it is what it is, Your Honor. |
| 11:42:15 | 2 | But here's what I would submit:  If we get the right scope of |
| 11:42:18 | 3 | discovery, those stipulations would be agreed to like that. |
| 11:42:21 | 4 | Because the truth is, based on what it sounds like I'm hearing, |
| 11:42:29 | 5 | there's plenty of documents that's going to show substantive |
| 11:42:32 | 6 | communications between Mr. Collins and Mr. Fischman.  And |
| 11:42:34 | 7 | that's all we need to establish. |
| 11:42:36 | 8 | Now, whether Judge Yeakel thinks that's enough, |
| 11:42:39 | 9 | that's an issue for another day.  But, factually, if he agrees |
| 11:42:43 | 10 | with us, that's what he has to be able to put in his order. |
| 11:42:46 | 11 | THE COURT:  Well, right.  But I could see you—all |
| 11:42:49 | 12 | having this hearing on the 20th and Mr. Collins saying, Yes. |
| 11:42:52 | 13 | I've had communications.  As an officer of the court |
| 11:42:55 | 14 | representing that in open court, I've had these communications. |
| 11:42:58 | 15 | I'm not sure we've got to get into the need for logs because |
| 11:43:04 | 16 | all of that is going to be privileged. |
| 11:43:06 | 17 | MR. GRANT:  Why can't we get that on the record |
| 11:43:08 | 18 | today, sir?  It seems easy. |
| 11:43:10 | 19 | THE COURT:  Well, he's related that his -- at least |
| 11:43:12 | 20 | the stipulations -- you know, bottom line, I'm not going to |
| 11:43:15 | 21 | strong arm anybody to stipulate.  If he doesn't want to |
| 11:43:18 | 22 | stipulate, he doesn't want to stipulate. |
| 11:43:20 | 23 | MR. GRANT:  I understand. |
| 11:43:21 | 24 | THE COURT:  What he does at the hearing, I don't |
| 11:43:22 | 25 | know.  But the bottom line here is what I'm going to end up |

11:43:30    1   doing is a compromise between what you really want and what

11:43:33    2   you're going to get.  And, really, that doesn't make sense.

11:43:37    3   It's going to be a compromise between what you want and what

11:43:41    4   they don't want you to have.

11:43:42    5              MR. GRANT:  I understand.

11:43:43    6              THE COURT:  If I make a call there that's wrong, it's

11:43:48    7   going to come up at the hearing.

11:43:50    8              MR. GRANT:  Yes, sir.

11:43:50    9              THE COURT:  And at that time Judge Yeakel -- he's

11:43:55   10   been doing this a whole lot longer and he's a lot smarter than

11:43:58   11   I am.  He can do a bunch of different things.  He can continue

11:44:01   12   the hearing.  He can provide an opportunity to get some of

11:44:04   13   this.  So I'm not as worried about that.  I'm worried about

11:44:09   14   overbreadth and going too far here, frankly.

11:44:15   15              But last question for you-all is:  As I look at these

11:44:23   16   RFPs and I compare the two sides and the redline versions, is

11:44:31   17   there anything you can offer or tell me that can make that job

11:44:38   18   easier?  For instance --

11:44:44   19              MR. GRANT:  Yeah.

11:44:45   20              THE COURT:  -- you said a moment ago that I think,

11:44:47   21   one and two or three, four, and four, you don't need those on

11:44:51   22   certain ones.  Are there certain things that --

11:45:12   23              MS. GRANT:  Let's just walk you through them,

11:45:15   24   Your Honor.  It won't take long.

11:45:16   25              THE COURT:  Yeah.  Let's do that.

| | | |
|---|---|---|
| 11:45:18 | 1 | MS. GRANT:  Your Honor, just one last thing. |
| 11:45:21 | 2 | THE COURT:  Sure. |
| 11:46:17 | 3 | MR. GRANT:  I just want to make sure I'm clear.  I |
| 11:46:19 | 4 | understood that whatever the Court says needs to be produced |
| 11:46:23 | 5 | will get produced by Friday.  I would just ask that it be |
| 11:46:26 | 6 | something reasonable, like 5 p.m., not midnight. |
| 11:46:29 | 7 | THE COURT:  Yeah.  It's going to be end of -- |
| 11:46:31 | 8 | 5 o'clock Central Standard Time or whatever we're in.  Can we |
| 11:46:39 | 9 | just go through the black binder?  Is that the best way to go. |
| 11:46:55 | 10 | MR. CONNOLLY:  Sure, Your Honor. |
| 11:47:04 | 11 | MR. GRANT:  We could also put them up on the screen |
| 11:47:07 | 12 | if that makes it easier. |
| 11:47:09 | 13 | THE COURT:  All right.  Whatever is quickest and gets |
| 11:47:12 | 14 | me to where I need to be. |
| 11:47:14 | 15 | MR. CONNOLLY:  Okay.  Your Honor.  I think that |
| 11:47:16 | 16 | what -- if you look at the tab 1-C, Your Honor. |
| 11:47:19 | 17 | THE COURT:  Yes. |
| 11:47:22 | 18 | MR. CONNOLLY:  And I believe everybody has a copy of |
| 11:47:24 | 19 | this, Your Honor. |
| 11:47:28 | 20 | So the preliminary stuff, Your Honor, is just the |
| 11:47:32 | 21 | definitions.  And if it's not highlighted, there's no debate |
| 11:48:48 | 22 | about it.  With -- so the -- and this tab deals with the |
| 11:48:55 | 23 | plaintiff Dynamic Geosolutions. |
| 11:49:00 | 24 | THE COURT:  Okay. |
| 11:49:02 | 25 | MR. CONNOLLY:  We're extremely close with respect to |

11:49:04  1   the request for productions themselves.  We've got the

11:49:07  2   disagreement with respect to the stipulations.

11:49:09  3          THE COURT:  Sure.

11:49:11  4          MR. CONNOLLY:  Part of this is that most of these

11:49:16  5   have got to do with the fact that there is a defined term in

11:49:23  6   the definitions that are under tab one, Your Honor, of Acacia

11:49:28  7   persons and entities.  That's a defined term.

11:49:31  8          THE COURT:  Where are you now, sir?

11:49:34  9          MR. CONNOLLY:  Okay.  I'm at tab 1-C.

11:49:37  10         THE COURT:  Yes.

11:49:38  11         MR. CONNOLLY:  Approximately four pages from the end,

11:49:41  12  you'll start seeing some redlining about four or five pages

11:49:47  13  from the end.  The first line of the page reads "modified

11:49:50  14  request for production."

11:49:51  15         THE COURT:  Got it.

11:49:52  16         MR. CONNOLLY:  Okay.  Apologies, Your Honor, for not

11:49:55  17  directing you to that page earlier.

11:49:57  18         THE COURT:  No.  That's okay.

11:49:58  19         MR. CONNOLLY:  So what this is, Your Honor, is it

11:50:00  20  basically shows the -- in the highlighting where the parties

11:50:04  21  have a little bit of a difference.  Many of these differences I

11:50:08  22  believe are typographical errors or just a misunderstanding.

11:50:14  23  The -- the requests themselves, the definitions, contain a

11:50:21  24  defined term.  It's called Acacia persons and entities.

11:50:25  25  Mr. Collins had changed the conjunction "and" to "or."  We just

| | | |
|---|---|---|
| 11:50:35 | 1 | can't accept that because the defined term is actually Acacia |
| 11:50:39 | 2 | persons and entities.  I assume that that's not a problem. |
| 11:51:05 | 3 | MR. COLLINS:  It's not a problem. |
| 11:51:20 | 4 | THE COURT:  So, for instance, when we're looking at |
| 11:51:22 | 5 | this, blue is what Schlumberger wants; is that correct? |
| 11:51:30 | 6 | MR. CONNOLLY:  Yes -- no.  Blue -- these blue are |
| 11:51:36 | 7 | what Mr. Collins changed to our requests.  But I think -- |
| 11:51:42 | 8 | THE COURT:  Okay.  In other words, just looking at |
| 11:51:44 | 9 | the first one, 1A, Mr. Collins changed the "and" and wants an |
| 11:51:52 | 10 | "or," and you're okay with that? |
| 11:51:55 | 11 | MR. CONNOLLY:  No. |
| 11:51:58 | 12 | THE COURT:  You're not okay with that. |
| 11:52:14 | 13 | MR. CONNOLLY:  He's okay with going back to the way |
| 11:52:16 | 14 | we had it. |
| 11:52:17 | 15 | THE COURT:  Okay.  He's okay with going back to |
| 11:52:20 | 16 | "and." |
| 11:52:20 | 17 | MR. CONNOLLY:  Right.  So we have an agreement now |
| 11:52:23 | 18 | based upon Mr. Collins -- |
| 11:52:26 | 19 | THE COURT:  Okay. |
| 11:52:27 | 20 | MR. CONNOLLY:  Mr. Collins just misunderstood why we |
| 11:52:29 | 21 | used the term "and."  It's because it's a defined term. |
| 11:52:33 | 22 | THE COURT:  Okay.  Super. |
| 11:52:34 | 23 | MR. CONNOLLY:  So we have an agreement on the |
| 11:52:36 | 24 | language of 1A.  With respect to the language in 1B, I think |
| 11:52:40 | 25 | Mr. Collins wants the underscored words "in any way" out. |

| | | |
|---|---|---|
| 11:52:48 | 1 | MR. COLLINS:  That's correct. |
| 11:52:49 | 2 | THE COURT:  Okay. |
| 11:52:51 | 3 | MR. CONNOLLY:  So he had just not taken that out as |
| 11:52:54 | 4 | typo. |
| 11:53:12 | 5 | THE COURT:  Okay.  Because I don't think we have to |
| 11:53:14 | 6 | go through all of this as long as I understand what the blue |
| 11:53:16 | 7 | and the red means.  So like where it says "in any way" there on |
| 11:53:20 | 8 | number 1B, Mr. Collins, that's what Schlumberger wants but you |
| 11:53:25 | 9 | don't want that? |
| 11:53:32 | 10 | MR. CONNOLLY:  Actually, maybe the easiest thing to |
| 11:53:34 | 11 | do Your Honor is I can point out the ones that are really |
| 11:53:37 | 12 | significant.  We just didn't want to mislead Your Honor.  And |
| 11:53:41 | 13 | we were doing this about 11 o'clock at night, Your Honor. |
| 11:53:43 | 14 | THE COURT:  It's actually quite impressive. |
| 11:53:46 | 15 | MR. CONNOLLY:  Well, I can certainly thank my |
| 11:53:48 | 16 | colleagues for that. |
| 11:53:49 | 17 | THE COURT:  Yeah.  Where is Ms. -- is it Amstutz? |
| 11:53:54 | 18 | MR. CONNOLLY:  Yeah. |
| 11:53:54 | 19 | THE COURT:  She did all the darn work.  Where is she? |
| 11:54:30 | 20 | UNIDENTIFIED SPEAKER:  She's back at the office. |
| 11:54:32 | 21 | THE COURT:  Oh, jeez.  Okay.  Go ahead, Mr. Connolly. |
| 11:55:35 | 22 | MR. CONNOLLY:  Okay, so I honestly think -- and I'll |
| 11:55:37 | 23 | just describe this to Mr. Collins.  "Person" is a defined term, |
| 11:55:42 | 24 | so that's why we used the capital P.  I think we're in a |
| 11:55:46 | 25 | agreement -- and, Mike, if you have any disagreement with this, |

11:55:49  1  let me know.  I think we're in agreement with respect to

11:55:52  2  everything on that first page.

11:55:54  3          THE COURT:  Okay.

11:55:55  4          MR. CONNOLLY:  The changes that we have are

11:55:56  5  typographical errors or Mr. Collins didn't take out a phrase

11:56:04  6  that we did take out because he had taken out others and we

11:56:06  7  just wanted to be consistent.

11:56:09  8          THE COURT:  Okay.

11:56:09  9          MR. CONNOLLY:  It actually cuts in his favor.  So

11:56:12  10  where we have a disagreement is on now turning to page 9 of the

11:56:17  11  document.

11:56:19  12          THE COURT:  Yes.

11:56:19  13          MR. CONNOLLY:  The disagreement has to do with the

11:56:24  14  request for production number 8.  This dovetails with the

11:56:29  15  discussion that we had earlier with respect to Acacia.  And

11:56:32  16  this has to do with the documents sufficient to show the

11:56:38  17  corporate structure of any Acacia entity that was involved to

11:56:45  18  show the identities of the officers, directors, and attorneys

11:56:48  19  of the Acacia persons.

11:56:50  20          THE COURT:  Okay.

11:56:51  21          MR. CONNOLLY:  Okay.

11:56:51  22          THE COURT:  So Mr. Brennan?

11:56:56  23          MR. BRENNAN:  Yes, Your Honor.

11:56:58  24          THE COURT:  I don't know if -- do we have a

11:57:00  25  counterproposal from you?  I'm not sure that we do.  In other

| 11:57:05 | 1 | words, if you -- if you were to re-craft eight, how -- what |
| 11:57:09 | 2 | would you want it to say or what are you willing to have it |
| 11:57:15 | 3 | say? |
| 11:57:15 | 4 | MR. BRENNAN:  Yes, Your Honor.  Excuse me.  This is |
| 11:57:22 | 5 | pretty simple, Your Honor.  Mr. Connolly said what they're |
| 11:57:27 | 6 | interested in is any Acacia entity that was involved.  I take |
| 11:57:34 | 7 | that to mean involved with the '319 patent because that's what |
| 11:57:40 | 8 | we're talking about here.  There are two entities.  There is |
| 11:57:45 | 9 | Acacia Research Group LLC, which is my client -- |
| 11:57:50 | 10 | THE COURT:  Okay. |
| 11:57:52 | 11 | MR. BRENNAN:  -- and there is Dynamic 3D, the |
| 11:57:55 | 12 | plaintiff.  My client assigned the patent rights after it |
| 11:57:59 | 13 | acquired them to the plaintiff, so we're talking about two |
| 11:58:03 | 14 | entities. |
| 11:58:06 | 15 | Your Honor, we would have no problem agreeing to |
| 11:58:11 | 16 | produce documents sufficient to show the identities and titles |
| 11:58:20 | 17 | of the individuals listed on a privilege log that are produced |
| 11:58:28 | 18 | in conformity with whatever agreement the parties reach today |
| 11:58:33 | 19 | or whatever the Court orders. |
| 11:58:36 | 20 | THE COURT:  So if I understand what you're saying, |
| 11:58:39 | 21 | you don't -- I mean, what I'm inclined to do is say, to the |
| 11:58:45 | 22 | extent this request for production is repeated with Dynamic and |
| 11:58:51 | 23 | the law firm, I'm not doing it there.  But with regard to |
| 11:58:54 | 24 | Acacia, you're okay with number 8? |
| 11:58:56 | 25 | MR. BRENNAN:  I'm sorry? |

| | |
|---|---|
| 11:58:58 | 1 |
| 11:59:00 | 2 |

THE COURT:  You're okay with request for production
number 8 as I'm looking at it here on page 9 of 1-C.

MR. BRENNAN:  No, Your Honor.  We think -- we think
as it's stated here on page 9 it's overbroad, and I'll explain
why.  The request -- and it's a little bit convoluted.  But
documents sufficient to show the identities of the officers,
directors, and attorneys of the Acacia persons and entities
referred to or identified by any documents produced or listed
on a privilege log and the reporting of relationships among
those persons or entities.

The problem with that, Your Honor, is that if we're
talking about attorneys for Acacia Research Group, that's a lot
of attorneys.  Acacia Research Group is involved in different
types of litigation that has nothing to do with this patent,
and that would involve identifying in-house attorneys, outside
counsel, that are involved in all --

THE COURT:  But if they're on a privilege log, if
that whole -- that broader group won't be on the privilege log,
will they?

MR. BRENNAN:  So if -- if that's how we're reading
this --

THE COURT:  That's what it says.

MR. BRENNAN:  -- is that -- because if you read this,
the plain language of this to me suggests, Your Honor, that
it's not limiting that way because it's asking -- if people are

12:00:48  1   identified -- if people or entities are identified on the

12:00:52  2   privilege log, it's asking for the identification of all of

12:00:56  3   those entities' attorneys.  And what I'm trying to explain is

12:01:02  4   that's a lot of people that have nothing to do with the patent

12:01:08  5   or with this lawsuit.

12:01:09  6              THE COURT:  Okay.

12:01:13  7              MR. CONNOLLY:  Your Honor, can I just interrupt one

12:01:15  8   second?

12:01:15  9              THE COURT:  Sure.

12:01:15  10             MR. CONNOLLY:  It might make things simpler.  I

12:01:19  11  apologize.

12:01:19  12             THE COURT:  Yeah.  You can use that.  They're all

12:01:37  13  hot, so you can use that microphone right there.

12:01:41  14             MR. CONNOLLY:  Thank you.  Your Honor, the -- first

12:01:43  15  off, we're happy to agree to exclude outside counsel who are

12:02:12  16  not working on the '319 patent.  So if that's what he means by

12:02:19  17  "a lot of entities," we don't need -- if there's -- the

12:02:23  18  identification of all their outside counsel that work on other

12:02:27  19  cases that don't have anything to do with this case.

12:02:30  20             THE COURT:  Let me -- let me ask you this:  This

12:02:33  21  question is going to be allowed -- some variation of this will

12:02:40  22  be authorized to Acacia.  Can you two sit down and hammer

12:02:46  23  something out and then give it to me because, one, before we're

12:02:51  24  done, I'm going to ask you all to send by e-mail Word documents

12:02:58  25  that reflect everything in this binder to my clerk because

```
12:03:03   1   our -- the way the order is going to read -- be crafted is it's
12:03:11   2   going to have the order and cite Exhibits 1, 2, 3, and 4, which
12:03:14   3   are going to be the RFPs that are authorized.  And it's going
12:03:17   4   to be -- it will make her job a whole lot easier.
12:03:22   5            MR. CONNOLLY:  Sure.
12:03:23   6            THE COURT:  So this one, if you can get it to us by
12:03:26   7   the end of day -- you can just E-mail Ms. Gilbert -- what you
12:03:32   8   can agree on in eight.  And if you don't agree, send me a red
12:03:35   9   line of where you disagree.
12:03:37  10            MR. CONNOLLY:  Happy to do that, Your Honor.
12:03:40  11            THE COURT:  Okay.  Super.
12:03:41  12            MR. BRENNAN:  Thank you, Your Honor.
12:03:43  13            THE COURT:  Okay.  Then still with 1-C, I'm -- I
12:03:45  14   don't even want to talk about factual stipulations, so -- or, I
12:03:50  15   mean, conditions.
12:53:01  16            MR. CONNOLLY:  You can see that's where all the
12:53:04  17   action is, in the factual stipulation.
12:53:05  18            THE COURT:  Right.  So moving on to 2-A or C.
12:53:08  19            MR. CONNOLLY:  Probably the easiest thing,
12:53:10  20   Your Honor, 2-C, this deals with Austin Geo.
12:53:19  21            THE COURT:  Okay.
12:53:21  22            MR. CONNOLLY:  Austin Geo is another one of
12:53:24  23   Mr. Collins' client, and Austin Geo was the original assignee
12:53:29  24   of the patent.
12:53:30  25            THE COURT:  Right.
```

| | | |
|---|---|---|
| 12:53:31 | 1 | MR. CONNOLLY:  So if you turn towards the end of |
| 12:53:34 | 2 | that -- |
| 12:53:35 | 3 | THE COURT:  That's page 8? |
| 12:53:39 | 4 | MR. CONNOLLY:  Page 8.  Yes, Your Honor.  Again, |
| 12:53:48 | 5 | we're down to some very short strokes here.  First off, I take |
| 12:53:54 | 6 | it from Mr. Collins' agreement to go back to the use of the |
| 12:53:58 | 7 | conjunction "and" instead of "or" in the phrase "Acacia persons |
| 12:54:02 | 8 | and entities," that's not objectionable; is that right, Mike? |
| 12:54:09 | 9 | MR. COLLINS:  That's not objectionable. |
| 12:54:11 | 10 | THE COURT:  Okay. |
| 12:54:12 | 11 | MR. CONNOLLY:  Okay.  So where we really are here, |
| 12:54:14 | 12 | Your Honor, is Mr. Collins had objected to the use of the |
| 12:54:16 | 13 | phrase "or associated with." |
| 12:54:18 | 14 | THE COURT:  Yes. |
| 12:54:19 | 15 | MR. CONNOLLY:  And that's kind of consistent |
| 12:54:21 | 16 | throughout, so that's a scope of distinction.  If he wants to |
| 12:54:25 | 17 | modify his view, we -- we do think it's important to get |
| 12:54:29 | 18 | "associated with" in addition to "employed."  So that shows you |
| 12:54:32 | 19 | a substantive distinction. |
| 12:54:33 | 20 | THE COURT:  Okay. |
| 12:54:34 | 21 | MR. CONNOLLY:  Minor distinction in 1-B, we think |
| 12:54:38 | 22 | just as matter of grammar, we need to include the word "or." |
| 12:54:42 | 23 | Otherwise the implication is it has to relate to all five of |
| 12:54:46 | 24 | those -- all six of those entities. |
| 12:54:48 | 25 | THE COURT:  So I need to keep that "or"? |

| | | |
|---|---|---|
| 12:54:50 | 1 | MR. CONNOLLY:  Yes.  I believe -- and I don't think |
| 12:54:53 | 2 | there's much of debate there. |
| 12:54:54 | 3 | Farther down, Your Honor, this is a substantive |
| 12:55:02 | 4 | disagreement in five and six.  It also carries over to page 9. |
| 12:55:06 | 5 | There's a disagreement as to, again, "associated with."  And he |
| 12:55:11 | 6 | wants to leave it -- he wants to exclude the references to |
| 12:55:17 | 7 | Acacia persons, entities, Collins Edmonds, and/or Austin Geo. |
| 12:55:23 | 8 | And, Your Honor, our view is, if Austin Geo has |
| 12:55:31 | 9 | possession of documents that we -- that we're not going to |
| 12:55:36 | 10 | otherwise get that include those entities, we're entitled to |
| 12:55:42 | 11 | get them from Austin Geo.  But we've also made it clear, |
| 12:55:45 | 12 | Your Honor, we don't need identical sets of documents from each |
| 12:55:53 | 13 | of the subpoenaed parties.  We want one comprehensive set of |
| 12:55:57 | 14 | documents and one comprehensive set of privilege logs knowing |
| 12:56:04 | 15 | who actually is the custodian. |
| 12:56:06 | 16 | So the -- the exclusion of "Acacia persons and |
| 12:56:11 | 17 | entities, Collins Edmonds" would allow for the possibility that |
| 12:56:15 | 18 | we might not get a document that they are the only custodian |
| 12:56:19 | 19 | of. |
| 12:56:19 | 20 | THE COURT:  Okay. |
| 12:56:20 | 21 | MR. CONNOLLY:  And if they don't have any, again, |
| 12:56:23 | 22 | there's no burden with respect to that. |
| 12:56:25 | 23 | THE COURT:  All right. |
| 12:56:26 | 24 | MR. CONNOLLY:  And, Your Honor, on page 9 of the same |
| 12:56:28 | 25 | document, there are also just minor typographical changes that |

12:56:34   1   I think we -- I shouldn't say that -- we've either already

12:56:37   2   covered them.  For example, the references to "associated with"

12:56:40   3   and the references to those three other entities or it's

12:56:43   4   typographical error which I think is indicated in -- in request

12:56:49   5   for production number 9, the exclusion of the sub --

12:56:53   6        THE COURT:  Again, in an effort to understand this,

12:56:55   7   going back to page 8 at the top, what's the difference between

12:56:59   8   the Austin Geomodeling, Inc. that's crossed out and the Austin

12:57:03   9   Geomodeling that's in blue?

12:57:07   10       MR. CONNOLLY:  I should ask that question.

12:57:12   11       MR. HUMPHREY:  I think it was just a difference in

12:58:18   12  the [unintelligible].

12:58:30   13       THE COURT:  Okay.  All right.  So moving on to three.

12:58:35   14  Three, I know, is a little different.

12:58:37   15       MR. CONNOLLY:  3-B is a different issue.  It's just a

12:58:40   16  question of we're not -- we're not willing to withdraw the

12:58:44   17  subpoenas, Your Honor.

12:58:48   18       THE COURT:  So you continue -- let me get my bearings

12:58:52   19  here.  Is there any agreement on the RFPs to Mr. Collins and

12:59:37   20  his firm?  Or when -- I'm looking at page 10 of 3-A.  No.

12:59:43   21  That's the factual stipulation.  Page 8 of 3-A.

13:00:00   22       MR. COLLINS:  No, Your Honor.  My firm's position and

13:00:02   23  my position are that once we agree to production from Dynamic

13:00:11   24  3D Geo and we agree that it's going to include documents from

13:00:16   25  the files of outside counsel that are responsive, then there's

|         |    |                                                                    |
|---------|----|--------------------------------------------------------------------|
| 13:00:20 | 1  | no need to have any subpoena or any stipulations from my law       |
| 13:00:24 | 2  | firm or me individually.  It's the same set of documents, and      |
| 13:00:30 | 3  | it's just simply harassment to make us jump through that hoop       |
| 13:00:35 | 4  | twice.                                                             |
| 13:00:36 | 5  | MR. CONNOLLY:  And, Your Honor, may I address that?               |
| 13:00:39 | 6  | THE COURT:  Well, I mean my quick thought would be,              |
| 13:00:56 | 7  | what if Rutherford calls you -- again, this all presupposes        |
| 13:01:01 | 8  | you're not telling the truth, which is just -- I can't wrap my     |
| 13:01:05 | 9  | arms around that.  Rutherford calls you and says, hey, listen.     |
| 13:01:09 | 10 | I know this secret about Schlumberger.  We need to exploit it.     |
| 13:01:13 | 11 | You go, Great, hang up, and then you write an e-mail to your       |
| 13:01:17 | 12 | staff.  That's not going to show up in Dynamic 3D's record.       |
| 13:01:23 | 13 | MR. COLLINS:  It would, Your Honor, because what I've            |
| 13:01:25 | 14 | said is, if a document request is directed to Dynamic Geo,         |
| 13:01:31 | 15 | we're going to agree that we're not only going to search and       |
| 13:01:36 | 16 | produce documents from Dynamic Geo's files, but our files as       |
| 13:01:41 | 17 | well.                                                             |
| 13:01:41 | 18 | THE COURT:  Yeah.  It's just another stipulation that           |
| 13:01:43 | 19 | I can't make you make, you know.  Okay.  So bottom line is you     |
| 13:01:49 | 20 | object to all of the RFP's directed to your firm.                 |
| 13:01:55 | 21 | MR. COLLINS:  That's correct.                                    |
| 13:01:56 | 22 | THE COURT:  Got it.  Now, the one we don't have here             |
| 13:01:59 | 23 | is Acacia.  But to the extent, for instance, I can use the AGM     |
| 13:02:03 | 24 | as a guide, Schlumberger, doesn't need three, four, or five        |
| 13:02:08 | 25 | answered for Acacia, does it?                                      |

```
13:02:12   1              MR. CONNOLLY:  I -- the -- it does -- well, with
13:02:16   2    respect to the -- the only issues with respect to the Acacia
13:02:21   3    ones are we have agreed to eliminate three and four subject to
13:02:29   4    our request for stipulations from that party.  And, if not, we
13:02:37   5    believe that those are appropriate requests.
13:02:39   6              THE COURT:  You're right.  I mis-said it.
13:02:41   7              MR. CONNOLLY:  So the only unconditional withdrawal,
13:02:44   8    if I could say that, Your Honor -- and, again, I hesitate to
13:02:47   9    say it's a condition.  We view it as an accommodation to what
13:02:51  10    we think is an otherwise appropriate request.  But with respect
13:02:54  11    to the Dynamic -- I'm sorry -- with respect to Austin Geo, a
13:03:08  12    non-Acacia entity, we -- what we withdrew from them is already
13:03:12  13    reflected in there.  We're not asking for them -- those were
13:03:15  14    unconditional withdrawals.  Okay?  All the other narrowing,
13:03:25  15    et cetera, we did it in response to the statements that we
13:03:27  16    heard, that it would be unduly burdensome to do privilege logs.
13:03:29  17    And that's how we crafted these.
13:03:31  18              THE COURT:  Okay.
13:03:32  19              MR. CONNOLLY:  All right.  And, Your Honor, with
13:03:34  20    respect to Austin -- with respect to ARG, Acacia Research
13:03:42  21    Group, as well as Mr. Fischman, we had agreed to -- there's no
13:03:51  22    difference between the requests that we were -- that we
13:03:54  23    directed to them and now the requests that we've directed to
13:03:58  24    the others subject to all the stipulations stuff.  And the only
13:04:04  25    real difference with respect to those entities is this
```

| | | |
|---|---|---|
| 13:04:09 | 1 | organizational information, request number 8. |
| 13:04:12 | 2 | THE COURT:  Okay. |
| 13:04:13 | 3 | MR. CONNOLLY:  Have I sufficiently confused |
| 13:04:16 | 4 | everybody, Your Honor? |
| 13:04:16 | 5 | THE COURT:  I think you-all have done a great job. |
| 13:04:18 | 6 | My goal here is not to be a hindrance, but to help you-all get |
| 13:04:23 | 7 | to where you need to be.  So we're going to work today and |
| 13:04:26 | 8 | tomorrow and get that order out.  I can tell you, generally |
| 13:04:29 | 9 | speaking, the shape of the order.  It will require production |
| 13:04:32 | 10 | next Friday. |
| 13:04:33 | 11 | Mr. Collins, I'm going to wrestle with the impact on |
| 13:04:37 | 12 | your firm.  But even -- but given your representation here that |
| 13:04:43 | 13 | you're going to give up any e-mails given Dynamic's receipt, I |
| 13:04:49 | 14 | mean, you've probably already started working on that |
| 13:04:51 | 15 | production.  I'm telling you-all that because don't wait for my |
| 13:04:56 | 16 | order on Friday.  You -- you-all, really, when I look at -- |
| 13:05:00 | 17 | you're really close.  In many ways, I'm still -- I don't know |
| 13:05:05 | 18 | really why we're having a hearing because you're so close.  But |
| 13:05:09 | 19 | that's neither here nor there. |
| 13:05:11 | 20 | The order will be -- will just have Exhibits 1, 2, 3, |
| 13:05:15 | 21 | and 4, and it will be the RFPs that should be answered with |
| 13:05:21 | 22 | regard to the four subpoenas that form the basis of your |
| 13:05:25 | 23 | current disagreement. |
| 13:05:27 | 24 | And, again, a reminder, if -- when we -- when we |
| 13:05:33 | 25 | finish up here, if you can get Ms. Gilbert's e-mail address and |

| | | |
|---|---|---|
| 13:05:37 | 1 | then somebody send in the A, Bs, and Cs for each of these.  And |
| 13:05:47 | 2 | number 8 -- I think it's number 8 -- with regard to Acacia if |
| 13:05:53 | 3 | you-all are able to reach some type of agreement. |
| 13:05:55 | 4 | MR. CONNOLLY:  If we're able to reach agreement, |
| 13:05:57 | 5 | Your Honor, we'll let you know.  If we're not, we'll have two |
| 13:06:00 | 6 | proposals down and we'll redline it and it will have the same |
| 13:06:03 | 7 | format to follow. |
| 13:06:04 | 8 | THE COURT:  Perfect. |
| 13:06:05 | 9 | MR. COLLINS:  We'll do that, Your Honor.  I think it |
| 13:06:08 | 10 | may call for us to submit clean copies of what we're proposing |
| 13:06:12 | 11 | because, Terry, I may be wrong, but I couldn't find it in this |
| 13:06:16 | 12 | binder, a clean copy of our proposal. |
| 13:06:20 | 13 | MR. CONNOLLY:  I can't speak to that, Michael, but I |
| 13:06:22 | 14 | certainly have no objection. |
| 13:06:25 | 15 | MR. COLLINS:  Steve? |
| 13:06:27 | 16 | MR. WINGARD:  Your proposal should be behind the |
| 13:06:30 | 17 | D tabs. |
| 13:06:32 | 18 | MR. COLLINS:  Okay. |
| 13:06:32 | 19 | THE COURT:  Yeah.  Get that straight, because |
| 13:06:34 | 20 | whatever you e-mail me, I'm going to take it as gospel that's |
| 13:06:38 | 21 | Schlumberger's last version and Mr. Collins' last version. |
| 13:07:11 | 22 | MR. GRANT:  And we'll coordinate. |
| 13:09:06 | 23 | UNIDENTIFIED SPEAKER:  Yeah.  We'll copy each other, |
| 13:09:12 | 24 | Your Honor. |
| 13:09:16 | 25 | UNIDENTIFIED SPEAKER:  Yes.  Absolutely.  I think the |

| | | |
|---|---|---|
| 13:09:18 | 1 | problem was, in the version that they submitted, there were |
| 13:09:20 | 2 | redlines.  And I do believe that I have clean copies. |
| 13:09:24 | 3 | THE COURT:  Okay. |
| 13:09:26 | 4 | UNIDENTIFIED SPEAKER:  For the Court without all the |
| 13:09:29 | 5 | redlining. |
| 13:09:29 | 6 | THE COURT:  Okay.  However you send it, just make on |
| 13:09:31 | 7 | the e-mail, do the obvious which is just make it real clear to |
| 13:09:34 | 8 | Ms. Gilbert which one is which.  But given -- given how much |
| 13:09:40 | 9 | work you-all have done on this, I'm confident that you would |
| 13:09:43 | 10 | have done that anyway.  So anything else that I can do to help |
| 13:09:48 | 11 | you-all today? |
| 13:09:50 | 12 | MR. GRANT:  I just appreciate the Court's time and |
| 13:09:52 | 13 | effort. |
| 13:09:52 | 14 | THE COURT:  Oh, you're welcome.  I kind of half |
| 13:09:57 | 15 | enjoyed it. |
| 13:09:57 | 16 | Mr. Connor? |
| 13:09:58 | 17 | MR. CONNOR:  Yes, Judge.  If I may, I'd like to |
| 13:10:00 | 18 | address the last point which is unique now to ARG and |
| 13:10:04 | 19 | Mr. Fischman, which are those request numbers 3 and 4 that we |
| 13:10:08 | 20 | heard that Schlumberger is still seeking from the third |
| 13:10:14 | 21 | parties.  It's our position, first of all, that the |
| 13:10:19 | 22 | stipulations that they would like in order to drop those |
| 13:10:22 | 23 | requests are inappropriate.  And I don't see -- if the |
| 13:10:31 | 24 | stipulations are reached between the parties, it probably |
| 13:10:37 | 25 | obviates the need for any stipulation with nonparties, first |

13:10:41  1  point.

13:10:42  2          MR. CONNOLLY:  May I?  I'm sorry for the

13:10:44  3  interruption.  Your Honor, that's fine.  If we get stipulations

13:10:47  4  for the party, we don't need them from non -- from nonparties.

13:10:51  5  The issue is we haven't gotten them from anybody.

13:10:56  6          MR. CONNOR:  So with respect to the breadth of

13:10:58  7  requests 3 and 4 that Your Honor --

13:11:01  8          THE COURT:  To Acacia?

13:11:04  9          MR. CONNOR:  To Acacia and to Mr. Fischman.

13:11:06  10          THE COURT:  Okay.

13:11:10  11          MR. CONNOR:  Third parties.

13:11:11  12          THE COURT:  Okay.  All right.

13:11:12  13          MR. CONNOR:  Those two requests really swallow the

13:11:15  14  rest of them.  You know, there are several requests -- five,

13:11:18  15  six, and seven, for example -- that specifically target

13:11:22  16  documents evidencing communications regarding participation in

13:11:28  17  the lawsuit, the decision to initiate the lawsuit, and the

13:11:32  18  decision to acquire the patent from Austin Geo.

13:11:36  19          Those are tailored.  I see that there's an agreement.

13:11:43  20  Requests three and four basically swallow those up, and they

13:11:48  21  are directed to documents that evidence or reflect any

13:11:53  22  communication between anybody at Acacia or involving

13:11:58  23  Mr. Fischman that is unbounded by any of those scopes in five,

13:12:08  24  six, and seven.

13:12:10  25          So we don't think that those two requests are

13:12:12  1  appropriate at all, and I think it's reflected by the fact

13:12:15  2  they've withdrawn them.  They should also be withdrawn with

13:12:19  3  respect to ARG and Mr. Fischman.

13:12:22  4          MR. GRANT:  Just two sentences, Your Honor, will help

13:12:25  5  explain.  The distinction is the communications between

13:12:28  6  Ms. Rutherford and Acacia are irrebuttably presumed to have

13:12:33  7  occurred.  The communications between Acacia and Collins

13:14:14  8  Edmonds firm are rebuttably presumed to have occurred.  So

13:14:18  9  that's why there's a distinction.  And the law as to the first

13:14:22  10 one, we don't need any evidence that's not important.  But as

13:14:27  11 to the second one, Judge Yeakel has to see that evidence in

13:14:30  12 order for him to determine whether that presumption is

13:14:33  13 rebutted.  That's the distinction.

13:14:35  14          THE COURT:  But did I understand that there's some

13:14:38  15 stipulation that could be made that could obviate the need for

13:14:42  16 three and four?

13:14:53  17          UNIDENTIFIED SPEAKER:  Yes, sir.  There could be for

13:15:02  18 sure.

13:15:04  19          MR. COLLINS:  Yes, Your Honor.

13:15:05  20          THE COURT:  Okay.

13:15:06  21          MR. COLLINS:  And you'll see in our proposal we've

13:15:09  22 already offered the following stipulation.

13:15:14  23          THE COURT:  No.  But are you making that one now on

13:15:16  24 the record, that -- so that I -- when we're putting this

13:15:20  25 together, I don't have to deal with three and four?

```
13:15:23   1              MR. COLLINS:  Right.  On the record I'll say that
13:15:25   2   attorneys employed by Collins Edmonds Pogorzelski Schlather &
13:15:29   3   Tower PLLC have had communications and conversations with
13:15:37   4   Matthew Vella, who is the president or CEO of Acacia, regarding
13:15:41   5   protection of Dynamic 3D's rights in the '319 patent through
13:15:50   6   possible litigation.  We're also willing to say that -- and you
13:15:55   7   can read these.
13:15:56   8              THE COURT:  Yeah.  What are you looking at there?  Is
13:15:59   9   that the -- the stipulation?
13:16:02  10              MR. COLLINS:  I'm looking at the stipulations that
13:16:03  11   are in our proposal.
13:16:05  12              THE COURT:  For Dynamic?
13:16:08  13              MR. COLLINS:  For Dynamic.
13:16:10  14              THE COURT:  Okay.
13:16:11  15              MR. COLLINS:  Which I think would be 1-B or 1-C.
13:16:15  16              MR. GRANT:  Your Honor, here's the competing ones.
13:16:18  17   And so there's a red line there.  So the distinction has to do
13:16:23  18   with two things:  One, the scope of who's participating in
13:16:59  19   those communications, and that goes to those organizational
13:17:03  20   issues.  And then the second one has to do with the sort of
13:17:08  21   magic words that come from the case law.  So, you know, that's
13:17:13  22   the distinction.  And what -- what we can't do is we can't have
13:17:17  23   a stipulation that doesn't use the magic words of the case law,
13:17:21  24   because if Judge Yeakel relies on that in his ruling, I think
13:17:26  25   that's subject to, you know, being argued on appeal.
```

13:17:35  1        MR. CONNOLLY:  So, for example, Your Honor, just so

13:17:37  2  you understand -- and these by the way, Your Honor, I think are

13:17:41  3  reflected -- you'd be able to parse through these.  It's the

13:17:47  4  last few pages of tab 1-C.

13:17:49  5        THE COURT:  Yeah.

13:17:51  6        MR. CONNOLLY:  It shows you the difference -- the

13:17:53  7  differences.  Just so you understand why we're using particular

13:17:57  8  words, you'll see we use the word "substantive" and Mr. Collins

13:18:04  9  struck it.

13:18:05  10        THE COURT:  Okay.

13:18:06  11        MR. CONNOLLY:  That phrase, "have had substantive

13:18:10  12  communications and conversations" comes from a case that we

13:18:16  13  rely upon and cite in our brief on the two motions.

13:18:24  14  Specifically if Your Honor wanted to see it, it's on page 27.

13:18:27  15        THE COURT:  No.  I'm with you there.  So,

13:18:29  16  Mr. Collins, I'm not strong-arming you here at all.  Are you

13:18:33  17  willing to put "substantive" and "possible" back in or ...

13:18:39  18        MR. COLLINS:  I can't make that --

13:18:41  19        THE COURT:  Okay.

13:18:42  20        MR. COLLINS:  I can't make that stipulation,

13:18:43  21  Your Honor.

13:18:43  22        THE COURT:  Okay.  Well, then I'll look at three and

13:18:47  23  four and decide what to do.

13:18:49  24        MR. CONNOLLY:  That's it, Your Honor.

13:18:51  25        THE COURT:  Okay.  Fair enough.  All right.

| | | |
|---|---|---|
| 13:18:53 | 1 | Mr. Connor, you -- I think you had the floor.  Do you have |
| 13:18:57 | 2 | anything else you'd like to add? |
| 13:18:59 | 3 | MR. CONNOR:  Just one more thing, Your Honor.  So |
| 13:19:02 | 4 | if -- if request 3 were complied with by Acacia and |
| 13:19:10 | 5 | Mr. Fischman, it wouldn't give them the substantive |
| 13:19:16 | 6 | communications they're requesting.  It would -- it encompasses |
| 13:19:20 | 7 | everything -- plane reservations, lunch dates.  The substantive |
| 13:19:25 | 8 | communications are already sought, and they're are already |
| 13:19:27 | 9 | within the scope of the other requests. |
| 13:19:29 | 10 | THE COURT:  Okay.  Okay.  All right.  Very good.  Any |
| 13:19:36 | 11 | other last thoughts anybody wants to share? |
| 13:19:41 | 12 | UNIDENTIFIED SPEAKER:  No, sir. |
| 13:19:41 | 13 | THE COURT:  All right.  Thank you, gentlemen.  I |
| 13:19:43 | 14 | appreciate it. |
| 13:19:44 | 15 | (Proceedings concluded at 10:55 a.m.) |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

1                    **REPORTER'S CERTIFICATE**

2        I, Arlinda Rodriguez, do hereby certify that the foregoing

3   was transcribed from an electronic recording made at the time

4   of the aforesaid proceedings and is a correct transcript, to

5   the best of my ability, made from the proceedings in the

6   above-entitled matter, and that the transcript fees and format

7   comply with those prescribed by the Court and Judicial

8   Conference of the United States.

9

10  /S/ Arlinda Rodriguez                November 14, 2014

11  ARLINDA RODRIGUEZ                    DATE

12

13

14

15

16

17

18

19

20

21

22

23

24

25