IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DYNAMIC 3D GEOSOLUTIONS LLC, | CASE NO.: 1:14-CV-00112-LY |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| SCHLUMBERGER LIMITED (SCHLUMBERGER N.V.); SCHLUMBERGER HOLDINGS CORPORATION; AND SCHLUMBERGER TECHNOLOGY CORPORATION, | |
| Defendants. | |

**SCHLUMBERGER'S SUPPLEMENTAL SUBMISSION IN SUPPORT OF ITS
MOTION TO DISQUALIFY COUNSEL AND TO DISMISS WITHOUT PREJUDICE**

Schlumberger files this Supplemental Submission in support of Defendants' Motion to Disqualify Counsel and to Dismiss Without Prejudice ("Motion to Disqualify").  ECF No. 48.[1] This Submission:

1)  identifies and submits supplemental evidence that was just produced by Dynamic 3D and its Acacia affiliates in response to multiple Court orders denying motions to quash subpoenas and a motion for protective order; and

2)  responds to the Court's instruction at the conclusion of the technology tutorial last week that it wanted to know what confidential Schlumberger information Ms. Rutherford knew and how that information risks tainting the case against Schlumberger.

## I.   PLAINTIFF AND ITS ACACIA AFFILIATES RECENTLY PRODUCED DOCUMENTS AND PRIVILEGE LOGS THAT FURTHER SUPPORT SCHLUMBERGER'S MOTION TO DISQUALIFY

Consistent with the Court's Order lifting the stay to permit discovery relevant to Schlumberger's Motion to Disqualify, Schlumberger served discovery requests and subpoenas on Rutherford, Plaintiff, original patent assignee Austin Geomodeling, and several Acacia affiliated companies and persons.  All persons/entities from whom discovery was sought filed motions to quash or for protective orders and/or raised objections.  No person or entity agreed to voluntarily comply with this Court's Order authorizing discovery without further judicial intervention.

Ms. Rutherford's motion to quash was heard by Judge Ellison in the U.S. District Court for the Southern District of Texas.   After Judge Ellison provided his views about the appropriateness of the documents subpoenaed by Schlumberger, Rutherford agreed to produce documents and a privilege log, which Schlumberger obtained on Tuesday, November 11, after 8 p.m.  Dynamic 3D, Austin Geo, Acacia Research Group and Acacia lawyer, Gary Fischman,

---

[1]    Abbreviations defined in Defendants' Motion, ECF No 48.  For clarity, Schlumberger will continue to cite to Exhibits 1 to 43 that were submitted with its Motion to Disqualify and its Reply brief.  For this submission Schlumberger will attach hereto copies of recently produced documents as Ex. A, B, et seq. and for each such exhibit also note  the Exhibit number on Schlumberger's Supplemental Exhibit List to be filed with the Court before the November 20 hearing.

were ordered to provide discovery by no later than 5 p.m. on Friday, November 14 when Magistrate Judge Lane denied their motions to quash and motions for protective orders.  Austin Geo Ord., 1:14-cv-00112-LY, ECF No. 93; Dynamic 3D's Ord., 1:14-cv-00112-LY, ECF No. 94; Fischman-ARG Ord., 1:14-cv-00967-LY, ECF No. 32; 1:14-cv-00934-LY, ECF No. 20. Those documents were mostly produced between 8 p.m. and midnight on November 14.  The newly produced documents and logs support Schlumberger's Motion to Disqualify because they confirm that:

> ➤ Ms. Rutherford was very involved in Acacia's decision to acquire rights in the '319 Patent and its decision to sue Schlumberger;

> ➤ Ms. Rutherford was very involved in conducting a damages analysis of those damages Acacia could expect to recover in the lawsuits asserting the '319 Patent;

> ➤ Contrary to the repeated misrepresentations made to the Court, Ms. Rutherford was ***never*** screened from discussions involving the case against Schlumberger and regularly communicated with her colleague, Gary Fischman, about the case against Schlumberger; and

> ➤ Mr. Fischman systematically forwarded to Rutherford confidential communications between Acacia and Plaintiff's outside counsel, Michael Collins.

These documents confirm that, under the controlling Fifth Circuit law, this Court has no discretion and ***must*** grant the relief requested in Schlumberger's motion.

## II.     RESPONSE TO THE COURT'S REQUEST FOR INFORMATION ABOUT THE CONFIDENTIAL SCHLUMBERGER INFORMATION RUTHERFORD KNEW AND HOW IT RISKS TAINTING THE CASE AGAINST SCHLUMBERGER

### A.     The Controlling Fifth Circuit Law

The Court's oral request that Schlumberger address the issue of actual taint, according to the Fifth Circuit, focuses on the wrong issue.  Importantly for the Court, the controlling Fifth Circuit law expressly *rejects* the notion that Schlumberger need make a showing (a) that Rutherford had access to specific confidential information; (b) that Rutherford disclosed such

2

information to Acacia; or (c) that such disclosure will impose any actual prejudice on Schlumberger. That is not the law.

In its seminal case on disqualification, In re American Airlines, 972 F.2d 605 (5th Cir. 1992), the Fifth Circuit expressly rejected the argument that disqualification was inappropriate unless the disqualified attorney was shown to possess specific confidential information that it would likely misuse in the case.

> [T]he sole issue is whether these prior representations are substantially related to the present case. Our inquiry may be narrowed to this single question because the substantial relationship test is governed by an irrebuttable presumption. Once it is established that the prior matters are substantially related to the present case, "the court will irrebuttably presume that relevant confidential information was disclosed during the former representation."

Id. at 614 (citation omitted).

Under the Fifth Circuit law that binds this Court, Schlumberger is *not* required to "prove that the past and present matters are so similar that a lawyer's continued involvement threatens to taint the trial. Rather, the former client must demonstrate that the two matters are substantially related." Id., at 616. That is it.

> [W]e adhere to our precedents refusing to reduce the concerns underlying the substantial relationship test to a client's interest in preserving his confidential information. The second fundamental concern protected by the test is . . . the client's interest in the loyalty of his attorney.

Id. And any request that Schlumberger provide more—*whether made by Plaintiff or the Court itself*—is improper and inconsistent with the controlling law because it is improper to inquire into the adverse use of a former client's confidences:

> Here, [the party opposing disqualification] appears to concede that such a breach requires disqualification, but asserts that the rule barring representation in substantially related matters is not violated unless the cases are so similar that there is a genuine threat of taint. We reject this argument.

Id. at 615-16.

> [The] [irrebuttable] presumption [that former counsel received confidences at its former firm] is intended to prevent proof that would be improper to make. The

3

> presumption avoids compelling the former client to prove the very things that he seeks to keep confidential.  If . . . the attorney could attempt to prove that he did not recall any disclosure of confidential information, or that no confidential information was in fact disclosed, this could . . . defeat the purpose of keeping the client's secrets confidential. . . . [T]he client might . . . be put into the anomalous position of having to show what confidences he entrusted to his attorney in order to prevent those confidences from being revealed.

In re Corrugated Container Antitrust Litig., 659 F.2d 1341, 1347 (5th Cir. 1981).  Thus, "[o]nce a substantial relationship has been established, former counsel is precluded from attempting to prove that [s]he did not receive confidences."  In re Am. Airlines, 972 F.2d at 628.

The sole issue for the Court is whether there is "a substantial relationship between the subject matter of the former and current representations."  Id. at 615.  Once that hurdle is cleared, then Fifth Circuit law *requires* that Rutherford and Acacia's in-house legal department be disqualified.  On this issue, the Fifth Circuit has determined that there is no discretion for a district court to exercise.  None.  See id. at 609 ("In this circuit . . . a district court's ruling upon a disqualification motion is not a matter of discretion.")

### B.    Even Though "Taint" is Not Required, Plenty Exists

Schlumberger's motion papers demonstrate that Rutherford must be disqualified because a substantial relationship exists between the subject matter of her prior work as Schlumberger's lawyer and this case.  A substantial relationship exists where the former representation is "akin to the present action in a way reasonable persons would understand as important to the issues involved."  Id. at 623.  Once a substantial relationship is found, the Court has no choice and must irrebuttably presume that Rutherford's involvement taints these proceedings:

> A "genuine threat" of adverse use of confidences is established by showing that a prior representation is substantially related to the present case. . . . *[A] party demonstrates a 'genuine threat' by establishing a substantial relationship between past and present cases, not . . . the other way around*.

4

Id.[2]  Regardless, disqualification is appropriate here even under the "actual prejudice" or "taint" standard that the Fifth Circuit has expressly rejected and that the Court inquired about, even though it does not apply.  Id. at 619.

Rutherford played an integral role in Acacia's decisions to acquire the '319 Patent and file this suit against Schlumberger.  Documents produced by Plaintiff Dynamic 3D or its Acacia affiliates in response to the Court's orders show that Rutherford  was heavily involved in Acacia's acquisition of  the '319 Patent.  See e.g., Ex. A (X-145 on Schlumberger's Supplemental Exhibit List); Ex. B (X-265); Ex. C (X-269); Ex. D (X-272) and Ex. E (X-273).  Both Schlumberger and its accused Petrel product were discussed during those communications.  It is uncontested that Rutherford concurred in Acacia's decisions "to acquire and *file the litigation against Schlumberger by Dynamic 3D*."  Ex. 2 (Rutherford Dep. vol. 2, 27:2-4).

The documents just produced by Plaintiff and the Acacia affiliates establish that, contrary to her sworn testimony that she had not reviewed a draft complaint against Schlumberger before it was filed (Ex. 1, Rutherford Dep. vol. 1, 78:7-10), *Rutherford did review and approve the draft Schlumberger Complaint prior to filing*.  See Ex F. (X-175) (January 29, 2004 Rutherford email responding to Gary Fischman's email with draft complaint for Schlumberger, stating, "Thanks Gary.  Good job.  Please extend my thanks to [the Collins Edmonds firm]").  That draft Schlumberger Complaint and the as-filed Schlumberger Complaint alleged that "Defendants have had actual knowledge of the '319 patent since at or about the time of its issuance on July 26, 2011 . . . ."  Ex. G (X-165) (Draft SLB Compl. ¶ 26); Ex. H (X-168) (As-Filed SLB Compl. ¶ 26).  The Complaint further alleges that Schlumberger "must have been aware of the objectively high likelihood that [Petrel] infringes the '319 patent because of the similarity of the key features of [Petrel] and AGM'S patented RECON software" and that Schlumberger has "not taken any

---

[2]      All emphasis added unless otherwise noted.

steps to redesign the infringing systems and methods to avoid infringement . . . ."  Ex. G (X-165) (Draft SLB Compl. ¶ 31);  Ex. H  (X-168) (As-Filed SLB Compl. ¶ 31).

First, it is undisputed that Rutherford was the coordinator of a 12-person team at Schlumberger responsible for a Petrel IP analysis, which analyzed Petrel's competitive landscape and the business and IP strategies of Petrel and Petrel's competitor products, including Austin Geomodeling's RECON product that led to the '319 Patent.  Ex. 3 (SLB Expert Disclosure) (H11502-0001-005632- H11502-0001-005634). Rutherford thus had access to Schlumberger confidential information that is directly implicated by Plaintiff's willfulness allegations. Rutherford's approval of the willfulness language in the Complaint and the risk that she might, even inadvertently, use the information she gained while coordinating the IP analysis of Petrel and the RECON product thus taints the inception of this case and risks tainting any further litigation of this matter.  In view of the confidential information that Rutherford possessed with respect to Schlumberger's Petrel product, Rutherford's concurrence in the recommendation that Acacia acquire the '319 Patent and sue her former client was, at the very least, an implied communication that she believed the infringement claim, including the claim that Schlumberger had willfully infringement the patent, necessarily informed her judgment to concur in Acacia's decision to sue Schlumberger.

Second, the documents and privilege logs that were just produced in response to the Court's orders prove that Rutherford was heavily involved in Acacia's estimation of potential damages recoverable from Schlumberger from alleged infringement of the '319 Patent.  See Ex. I (X-60-B) (Rutherford Priv. Log Entry Nos. 4-8, 10, 19, 20, and 30).  Plaintiff acknowledges that "the factors that would go into determining a reasonable royalty for the use of the '319 patent" is one of the "primary factual issues" in this litigation.  See Pl.'s Resp. 17, ECF No. 61.  Among

other things, relevant factors include: (1) rates paid by Schlumberger for use of patents comparable to the '319 Patent; (2) the commercial relationship between Schlumberger and Austin Geo, such as whether they are competitors; (3) the extent to which Schlumberger used the '319 Patent and the value of that use; (4) the portion of profit or of the selling price that may be customary in that particular business to allow for use of the invention or analogous inventions; and (5) the results of a hypothetical negotiation between the licensor and licensee.  See Powell v. Home Depot U.S.A., Inc., 663 F.3d 1221, 1239 & n.3 (Fed. Cir. 2011) (relying on Georgia–Pacific Corp. v. U.S. Plywood Corp., 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970), factors to calculate reasonable royalty).

The uncontroverted evidence before the Court establishes that Rutherford's representation of Schlumberger involved leading efforts to license the Petrel product and to settle an IP dispute regarding the 2005 Petrel software that involved her analysis of potential damages. See e.g., Ex. 3 (Expert Disclosure 9, 12-13, ECF No. 48-6).  Rutherford also received an 11-page confidential memorandum from outside counsel discussing calculation of damages in Petrel-related litigation.  See Ex. J (X-344-B) (SLB's In Camera Log No. 4) (Doc ID No. H-11502-0002-045954).  Rutherford was thus privy to Schlumberger's confidential information about royalty rates it sought and obtained for its patented Petrel product, the commercial relationship between Austin Geo and Schlumberger, the value that Schlumberger placed on its similar product, etc.  Rutherford's participation in the estimation of damages recoverable for any alleged patent infringement inevitably taints the inception of this case and runs the risk of tainting any further proceedings.  Schlumberger should not be forced to defend a damages claim or to choose whether or not to negotiate a licensing agreement in a case where its former Deputy General Counsel for Intellectual Property, with knowledge of Schlumberger's confidential licensing

7

information, participated in the inception of the case.  See Radware, Ltd. v. A10 Networks, Inc., C-13-02021, 2014 WL 977488 (N.D. Cal. Mar. 5, 2014) (ordering disqualification where attorneys obtained information relevant to Georgia-Pacific factors because it "could be relevant to developing damages theories").  Rutherford's knowledge of what the licensing value or damages were as it pertained to the litigation she directly managed for Schlumberger necessarily informed her judgment to concur in Acacia's decision to sue Schlumberger.

Third, it is uncontested that Rutherford represented Schlumberger in matters relating to earlier versions of Petrel.  See e.g., Ex. 3 (Expert Disclosure, ECF No. 48-6).  Rutherford led a multi-month patent analysis of the Petrel product and managed Petrel-related litigation.  Id.  Her duty was to determine what features and functions of Petrel should be: (i) protected by Schlumberger's own patents; (ii) maintained as confidential and protected as Schlumberger trade secrets; or (iii) protected by copyright rather than patented.  Martyn Beardsell has stated under oath that "[T]he features and functionality identified by [Plaintiff] as allegedly infringing existed in versions 2005, 2007, 2008, 2009, . . . of Petrel."  Ex. 18 (Beardsell Decl. ¶ 5).  Plaintiff's Response was that the Beardsell Declaration "strains credulity."  Pl.'s Resp. 17.  These are the features and functions of the versions of Petrel on which Ms. Rutherford worked while Deputy General Counsel for Intellectual Property at Schlumberger.  Her knowledge of those features and functions, including what features and functions are *not* independently covered by Schlumberger's patents or other IP, necessarily informed her judgment to concur in Acacia's decision to sue Schlumberger.[3]

---

[3]    The recently produced documents note that the features of "older" versions of Petrel are relevant even without reference to the invalidity issue.  See Ex. K  (X-157), an October 24, 2013 email from  Bonner  to Rutherford, Fischman and others regarding  Austin GeoModeling's demonstration of its RECON product to Matthew Vella, showing the impact of turning off Cascade feature of RECON, showing the impact of the loss of "Cascade" and the additional  time and process steps "under previous version of Petrel."  Ex. K (X-157).

Under the controlling Fifth Circuit law, prejudice to Schlumberger exists even if Rutherford had *not*, in fact, received any Schlumberger confidential information about Petrel.

> [T]he substantial relationship test, as set out in our precedents and the Rules, contains no exception for prior representations in which an attorney's advice was based on public information. Accordingly, the question is not whether [the attorney's former] representation . . . involved matters of public knowledge but whether the subject matter of the prior representation is substantially related to the present case.

In re Am. Airlines, 972 F.2d at 626 (citations omitted).

> This court has held that "[i]nformation [provided by a client] is sheltered from use by the attorney against his client by virtue of the existence of the attorney-client relationship. This is true without regard to whether someone else may be privy to it… This ethical precept . . . exists without regard to the nature or source of information or the fact that others share the knowledge.

Id. at 620 (citations omitted).

## III.   THE JUST PRODUCED DOCUMENTS FURTHER CONFIRM THAT RUTHERFORD'S CONFLICT IS IRREBUTTABLY IMPUTED TO ALL OTHER ACACIA ATTORNEYS

As a matter of law, Rutherford's conflict is irrebuttably imputed to all other counsel in Acacia's legal department: "A second irrebuttable presumption is that confidences obtained by an individual lawyer will be shared with the other members of his firm." In re Am. Airlines, 972 F.2d at 614 n.1 (citation omitted); see also OneBeacon, 2012 WL 393309, at *5-6 (irrebuttable presumption discussed in In re Am. Airlines, 972 F.2d at 614 n.1, applies where attorney received confidential information about substantially related matters during prior representation).

Plaintiff has sought to escape the application of the Fifth Circuit's second irrebuttable presumption by claiming that "[s]ince the time of her arrival at Acacia, Ms. Rutherford has been screened and will continue to be screened from any discussion that involves Schlumberger, or any of its products or technology." Ex. L (X-6) (Collins' May 5, 2014  Ltr.). The Fifth Circuit does *not*, as a matter of law, recognize the efficacy of screens to avoid conflicts. Even if there

9

were an effective screen, it would provide this Court with *no* discretion to do anything but disqualify Acacia's in-house legal department.  OneBeacon, 2012 WL 393309, at \*5-6.

Regardless, Plaintiff's "screened" claim was disproven as a matter of fact by Rutherford's deposition testimony that she expressly concurred in Acacia's decision to sue Schlumberger.  It is now further disproven by the recently produced documents and privilege logs.  No documents evidencing a screen were produced.  The documents instead demonstrate that Acacia's in-house lawyer, Fischman, routinely forwarded to Rutherford emails that he received from outside counsel of record, the Collins Edmonds firm.  Ex. M (X-160); Ex. N (X-166); Ex. F (X-175).  Similarly, Rutherford's privilege log (Ex. I (X-60-B)) demonstrates that: (1) on February 4, 2014, Fischman forwarded to her an alleged privileged assessment from the Collins Edmonds firm about assignment of the case to this Court (Id., No. 32); and (2) on February 26, 2014, Fischman forwarded to her Michael Collins' allegedly privileged description of communications he had with Mr. Steven Wingard, counsel of record for Schlumberger, regarding Schlumberger's request for an extension of time ( Id., No. 33).

## IV.   THE NEWLY PRODUCED DOCUMENTS CONFIRM THAT MICHAEL COLLINS AND THE COLLINS EDMONDS SHOULD BE DISQUALIFIED

Schlumberger's previous papers demonstrated that Michael Collins and the Collins Edmonds firm must be disqualified:  because they engaged in substantive conversations with Rutherford[4]; and because Collins has engaged in substantive conversations or jointly prepared

---

[4]   As noted in Schlumberger's earlier briefing, Rutherford admits that she and Fischman worked with Collins in recommending that Acacia acquire and file suit against Schlumberger on the '319 Patent. Ex. 1 (Rutherford Dep. vol. 1, 70:24-71:19, 79:17-81:5, 82:8-17, 86:9-87:22, 99:11-100:5); Ex. 2 (Rutherford Dep. vol. 2, 27:2-4, 27:10-12, 31:11-18, 35:7-23) (objections omitted).  Rutherford was presented with a PowerPoint presentation by Collins and possibly other attorneys at the Collins Edmonds firm discussing Schlumberger (Ex. 1, Rutherford Dep. vol. 1, 82:8-17, 86:9-87:22, 99:11-100:5), which led to Rutherford approving recommendations by Collins, Fischman, and Mitchell to acquire and file suit against Schlumberger on the '319 Patent (id. at 79:17-81:5; 86:6-88:15);  Ex. 2 (Rutherford Dep. vol. 2, 27:2-4, 27:10-12, 31:11-18, 35:7-23) (objections omitted).  Ms. Rutherford has never wavered from that testimony.  There is no evidence denying

for trial with Acacia and/or Gary Fischman, who has irrebuttably imputed knowledge of Schlumberger's confidences.  In re Am. Home, 985 S.W.2d 68, 81 (Tex. 1998).  The newly produced documents and privilege logs confirm that Fischman had substantive communications with both Rutherford and the Collins Edmonds firm. Ex. I (X-60-B) (Nos. 3, 4 and 34) .  In seeking to quash the subpoena Schlumberger served on him and Acacia Research Group, Fischman acknowledged that he "is involved in formulating litigation strategy in Dynamic 3D Geo's underlying Infringement Action against Schlumberger."  Ex. O (X-217) (Fischman-ARG's Joint Mot. to Quash, at 7).  Further, as noted above, the newly produced documents establish that Fishman routinely forwarded to Rutherford information about the case against Schlumberger provided by the Collins Edmonds firm.

In light of the evidence establishing that Mr. Fishman was a conduit for the systematic transmission of information between Rutherford and Collins Edmonds, Collins Edmonds cannot rebut the presumption that Fischman "did not disclose confidential information of his adversary" to them.  In re Am. Home, 985 S.W.2d at 81.

Dated:  November 19, 2014

---

that Mr. Collins and his firm learned of Rutherford's concurrence in the decision to file the case against Schlumberger from sources other than Rutherford.  In light of this evidence, Mr. Collins and the Collins Edmonds firm cannot prove that "there was no reasonable prospect that [Schlumberger's] confidential information was disclosed."  In re Am. Home, 985 S.W.2d at 77-78.

11

Respectfully submitted,

By: /s/ Paige Arnette Amstutz
    Stephen E. McConnico, State Bar No. 13450300
    Steven J. Wingard, State Bar No. 00788694
    Paige Arnette Amstutz, State Bar No. 00796136
    SCOTT, DOUGLASS & MCCONNICO, L.L.P.
    600 Congress Avenue, Suite 1500
    Austin, TX  78701
    Tel.: (512) 495-6300
    Fax: (512) 474-0731
    smcconnico@scottdoug.com
    swingard@scottdoug.com
    pamstutz@scottdoug.com

    Maximilian A. Grant (*pro hac vice*)
    Gabriel K. Bell (*pro hac vice*)
    LATHAM & WATKINS LLP
    555 Eleventh Street N.W., Suite 1000
    Washington, DC  20004-1304
    Tel.: (202) 637-2200
    Fax: (202) 637-2201
    max.grant@lw.com
    gabriel.bell@lw.com

    Ann Marie Wahls (*pro hac vice*)
    LATHAM & WATKINS LLP
    330 North Wabash Avenue, Suite 2800
    Chicago, IL  60611
    Tel.: (312) 876-7700
    Fax: (312) 993-9767
    annmarie.wahls@lw.com

    Terrence Connolly (*pro hac vice*)
    Thomas J. Humphrey (*pro hac vice*)
    LATHAM & WATKINS LLP
    885 Third Avenue
    New York, NY  10022
    Tel: (212) 906-1200
    Fax: (212) 751-4864
    terrence.connolly@lw.com
    thomas.humphrey@lw.com

    *Attorneys for Defendants*
    *Schlumberger Limited (Schlumberger N.V.),*
    *Schlumberger Holdings Corporation and*
    *Schlumberger Technology Corporation*

**<u>CERTIFICATE OF SERVICE</u>**

        I hereby certify that, on November 19, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

        Michael J. Collins
        John J. Edmonds
        Henry Pogorzelski
        Shea N. Palavan
        Matthew C. Juren
        COLLINS, EDMONDS & POGORZELSKI,
           SCHLATHER & TOWER, PLLC
        1616 S. Voss Road, Suite 125
        Houston, Texas 77057
        mcollins@cepiplaw.com
        jedmonds@cepiplaw.com
        hpogorzelski@cepiplaw.com
        spalavan@cepiplaw.com
        mjuren@cepiplaw.com

        /s/ Paige Arnette Amstutz
        Paige Arnette Amstutz

13

1159845