# Exhibit 164

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

DYNAMIC 3D GEOSOLUTIONS LLC,

    PLAINTIFF,

  v.

HALLIBURTON COMPANY;
HALLIBURTON ENERGY SERVICES, INC;
LANDMARK EXPLORATION AND
PRODUCTION SOFTWARE AND
SERVICES, INC.; AND
LANDMARK GRAPHICS CORPORATION

    DEFENDANTS.

CASE NO.:

JURY TRIAL DEMANDED

DRAFT

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Dynamic 3D Geosolutions LLC files this Original Complaint against Defendants Halliburton Company; Halliburton Energy Services, Inc.; Landmark Exploration and Production Software and Services, Inc.; and Landmark Graphics Corporation as follows:

PARTIES

1.    Plaintiff Dynamic 3D Geosolutions LLC ("Dynamic Geo") is a Texas limited liability company with its principal place of business in Plano, Texas.

2.    On information and belief, Defendant Halliburton Company is a Delaware corporation with a place of business Houston, Texas.

3.    On information and belief, Defendant Halliburton Energy Services, Inc. is a Delaware corporation with a place of business Houston, Texas.

4. On information and belief, Defendant Landmark Exploration and Production Software and Services, Inc. is a Delaware corporation with a place of business in Houston, Texas.

5. On information and belief, Defendant Landmark Graphics Corporation is a Delaware corporation with a place of business in Houston, Texas. Hereinafter, Defendants Halliburton Company; Halliburton Energy Services, Inc.; Landmark Exploration and Production Software and Services, Inc.; and Landmark Graphics Corporation are collectively referred to as "Defendants."

6. On information and belief, Defendant Halliburton Company owns and controls the other defendants.

## JURISDICTION AND VENUE

7. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. On information and belief, Defendants are subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to their substantial business in this forum, including related to the infringements alleged herein. Further, on information and belief, Defendants, within this state, directly and/or through intermediaries, have a) advertised (including through websites), used, offered to sell, sold, licensed and/or distributed infringing systems and/or methods; b) induced the making and/or use of infringing systems and/or methods by others; and/or c) contributed to the making and/or use of infringing systems and/or methods by others.

CHR0115

9.      Further, on information and belief, Defendants are subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to persons or entities in Texas.

10.     Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c), 1391(d) and 1400(b). On information and belief, from and within this Judicial District, Defendants have committed at least a portion of the infringements at issue in this case. Without limitation, on information and belief, within this district Defendants, directly and/or through intermediaries, have a) advertised (including through websites), used, offered to sell, sold, licensed and/or distributed infringing systems and/or methods; b) induced the use of infringing systems and/or methods by others; and/or c) contributed to the use of infringing systems and/or methods by others. Without limitation, on information and belief, venue is also proper because Defendants reside in this Judicial District since they each have contacts within this Judicial District sufficient to subject them to personal jurisdiction if this Judicial District were a separate state.

## BACKGROUND

### The Patent

11.     This dispute involves Defendants' infringement of United States Patent No. 7,986,319 ("the '319 patent"), entitled "Method and System for Dynamic Three-Dimensional Geological Interpretation and Modeling."

12.     The '319 patent was duly and legally issued to Tron Isaksen ("Isaksen") and Robin Dommisse ("Dommisse") on July 26, 2011. During its prosecution, Isaksen and Dommisse assigned all right title and interest in and to the '319 patent to Austin Geomodeling, Inc. ("AGM").

CHR0116

Founding of Austin Geomodeling

13. AGM was founded by Isaksen and Dommisse in Austin, Texas in 1996. It began as a small, high-tech start-up company that provided reservoir modeling consulting services for oil and gas producers in the United States and abroad. Isaksen and Dommisse brought to AGM a wealth of knowledge in the geosciences that had been gleaned from their work in developing some of the oil and gas industry's then-leading geological modeling tools.

14. From 1996 until 2002, the AGM team led by Isaksen and Dommisse performed reservoir modeling and consulting services for a number of large oil and gas producers with fields in North and South America, Australia, the North Sea, China, North Africa and the Middle East. During this time frame, AGM performed its consulting services using the reservoir modeling software licensed to it by third parties.

15. While using the third party software, Isaksen and Dommisse became acutely aware of its shortcomings, including problems with workflows that made the software cumbersome and time-consuming to use. This led Isaksen and Dommisse to develop their own geological interpretation and modeling software which they named RECON®. The first commercial versions of RECON® were released in approximately 2002. Among the early licensees were Chevron, BHP and PetroChina.

Isaksen and Dommisse Develop a Revolutionary New Product

16. While the initial version of RECON® enjoyed success in the marketplace, Isaksen and Dommisse began to realize that RECON® could be enhanced to address even more of the pressing problems that were common to all of the geological interpretation and modeling software that was in use at the time. They realized, among other things, that there was a need to transition the geological interpretation process from the two-dimensional domain to the three-

dimensional domain. In other words, there was a need for the ability to move what geologists refer to as "well picks" and "surface picks" around in a three dimensional model instead of merely manipulating them in two dimensional cross-sections and maps. They also realized that there was a need for a single computerized system and process that could be used interactively by geophysicists, geologists and reservoir engineers.

17.     In 2006, Isaksen and Dommisse set out to develop a next-generation version of RECON® that would revolutionize 3D geological interpretation tools. They wanted to solve the problems that limited then-current software, including the then-current version of RECON®. Over the next year, Isaksen and Dommisse created and developed a new version of RECON® - a single computerized tool for performing geological interpretations that, *inter alia,* could be displayed and manipulated in three dimensions, and that would perform well log correlation operations by forming dynamic cross-sections of a pre-determined geological region for generating a set of graphical data describing that region.

18.     On August 1, 2007, Isaksen and Dommisse applied for a United States patent on some of the inventions that they had conceived of and reduced to practice in the next-generation version of RECON®. That application duly issued on July 26, 2011, as the '319 patent.

19.     In early 2008, AGM began selling commercial licenses to the next-generation version of RECON®, which it designated as RECON® 3.0. The oil and gas production industry quickly adopted the new technology that Isaksen and Dommisse had incorporated into RECON® 3.0 - a single geological interpretive tool in which interpretations are displayed and manipulated in three dimensions, and in which updates occur automatically — as the new *de facto* industry standard for geological interpretation software.

The Industry Copies Isaksen and Dommisse's New Product

20. AGM's competitors, including Defendants, took note of the industry demand for AGM's state-of-the-art geological interpretation tools. Unfortunately, however, instead of seeking to license AGM's inventive technology, Defendants instead began introducing, marketing and selling licenses to their own software tools that unlawfully appropriated RECON's patented inventions. Moreover, on information and belief, Defendants began using their own infringing software to provide consulting services and training to customers.

21. By the summer of 2013, faced with widespread and growing infringement of its `319 patent, AGM was caught between the proverbial rock and a hard place. Growing unlicensed competition demanded enforcement of the '319 patent in order to ensure AGM's long term survival. Yet, the same growing infringement was diverting from AGM the revenue that it needed to protect its intellectual property rights. Indeed, AGM's share of the market for 3D geological interpretation tools was eroding due to unlawful patent infringement by others, and AGM was being forced to lay off workers and move to smaller offices. AGM is a small company with only a limited number of employees. A campaign to pursue Defendants, who are much larger and better capitalized than AGM, for infringement of the '319 patent would have been prohibitively expensive for AGM relying solely upon its own finances.

AGM Turns to Acacia

22. By this time, Isaksen and Dommisse had concluded that in order for AGM to enforce the '319 patent and protect its business, AGM would have to partner with a larger and better funded entity, preferably one that possessed substantial expertise in licensing and enforcement of intellectual property rights. Thus, in August of 2013, AGM entered into an agreement with Acacia Research Group LLC ("ARG") to license and enforce the '319 patent. As

CHR0119

part of the agreement, AGM assigned all right, title and interest in and to the '319 patent to ARG, including the right to enforce the patent and obtain past damages.

23. In December of 2013, ARG assigned all right, title and interest in and to the '319 patent to Dynamic Geo.

## COUNT I
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,986,319

24. Plaintiff Dynamic Geo is the present assignee of the entire right, title and interest in and to the '319 patent, including all rights to sue for past and present infringement, and the exclusive right to seek injunctive relief. Accordingly, Dynamic Geo has standing to bring this lawsuit for infringement of the '319 patent.

25. The various claims of the '319 patent are generally directed to, *inter alia,* systems and methods for performing geological interpretation operations, including, without limitation, performing well log correlation operations, comprising forming dynamic cross-sections of a predetermined geological region for energy resources exploration and production, for generating a set of graphical data describing said predetermined geological region; presenting manipulable three-dimensional geological interpretations of two-dimensional geological data relating to said predetermined geological region; automatically updating said manipulable three-dimensional geological interpretations; and creating three-dimensional well log and seismic interpretations of geological data relating to said predetermined geological region.

26. On information and belief, Defendants have been and now are directly infringing the '319 patent by actions comprising using systems and methods for performing geological interpretation operations that perform well log correlation operations, comprising forming dynamic cross-sections of a predetermined geological region for energy resources exploration and production for generating a set of graphical data describing said predetermined geological

CHR0120

region; present manipulable three-dimensional geological interpretations of two-dimensional geological data relating to said predetermined geological region; automatically update said manipulable three-dimensional geological interpretations; and create three-dimensional well log and seismic interpretations of geological data relating to said predetermined geological region. Such systems and methods include, without limitation, Defendants' DecisionSpace® base software system when configured, without limitation, with one or more of the following modules: Geology, Earth Modeling, GIS, Geophysics, Petrophysics and/or Well Planning. Such infringing uses of those systems and methods include, without limitation, providing training for Defendants' customers using both Defendants' and customers' computer systems; providing geological, geophysical and engineering consulting services for customers using both Defendants' and customers' computer systems, and providing both remote and onsite application hosting for customers.

## COUNT II
## INDUCING INFRINGEMENT OF OF U.S. PATENT NO. 7,986,319

27. On information and belief, at least since receiving notice of the '319 patent, including at a minimum from this lawsuit, Defendants have been violating and continue to violate 35 U.S.C. § 271(b) by actively inducing others to directly infringe the '319 patent.

28. On information and belief, Defendants have had actual knowledge of the '319 patent since at or about the time of its issuance on July 26, 2011, at least as a result of Defendants' visits to AGM's website. According to AGM's records, Defendants have visited AGM's website over a hundred times since the '319 patent issued — more than any of AGM's other competitors. Since on or about August 8, 2011, the home page of AGM's website has prominently displayed a link to an announcement of the issuance of the '319 patent. The

CHR0121

announcement explains that the '319 patent "covers the unique workflows in AGM's RECON® software and its underlying Cascade Technology®.

29. Direct infringers include Defendants' direct and indirect customers, including for example and without limitation, the oil and gas production companies that make, license and/or use the foregoing geological interpretation systems and methods.

30. On information and belief, Defendants are and/or have been actively inducing their direct and indirect customers to directly infringe the '319 patent. On information and belief, despite actual knowledge by Defendants of the '319 patent, Defendants have advertised, marketed, promoted, demonstrated the use of (including provided instructions for use), sold, offered for sale, licensed and or provided instructions, training and support in the use of the foregoing infringing geological interpretation systems and methods to their direct and indirect customers. For example and without limitation, Defendants have conducted and are conducting training courses for their DecisionSpace® geological interpretation software in which the customers' engineers and geoscientists are taught to perform geological interpretation on a step by step basis using systems and methods that infringe the '319 patent. In addition, Defendants have provided and provide customers with extensive online and live support to assist those customers in using the foregoing infringing geological interpretation systems and methods. Moreover, Defendants' website has hosted and continues to host several instructional videos which illustrate the infringing use of their DecisionSpace® software and extoll the benefits that customers can derive from using this software for geological interpretation in a manner which infringes the claims of the '319 patent. On information and belief, Defendants' actions demonstrate that Defendants have specifically intended their direct and indirect customers to

CHR0122

directly infringe the '319 patent and knew or should have known that the activities of the foregoing direct and indirect customers constituted such direct infringement.

## COUNT III
## CONTRIBUTING TO INFRINGEMENT OF OF U.S. PATENT NO. 7,986,319

31.     On information and belief, at least since receiving notice of the '319 patent, including at a minimum from this lawsuit, Defendants have been violating and continue to violate 35 U.S.C. § 271(c) by contributing to the infringement by others of the '319 patent. Upon information and belief and as set forth above, Defendants have had actual knowledge of the '319 patent since at or about the time of its issuance. The foregoing geological interpretation systems and methods have been used by others, including Defendants' direct and indirect customers, to commit acts of direct infringement of the '319 patent. The use of the foregoing geological interpretation systems and methods constitutes a material part of the invention. Defendants knew that the foregoing geological interpretation systems and methods were especially made or especially adapted for use in an infringement of the '319 patent. The foregoing systems and methods are not a staple article or commodity of commerce suitable for substantial non-infringing use. Indeed, the only possible use of the foregoing systems and methods for geological interpretation is in the patented invention.

## WILLFULNESS

32.     On information and belief, Defendants have studied the claims of these patents and compared them with the foregoing accused systems and methods, thereby obtaining knowledge of their infringements. Upon information and belief, Defendants must have been aware of the objectively high likelihood that the accused systems and methods infringe the '319 patent because of the similarity of the key features of Defendant's DecisionSpace® software and AGM' s patented RECON® software. On information and belief, Defendants have taken no action

CHR0123

to stop or lessen the extent of their own direct infringements, nor have they taken any steps to stop or lessen the extent of the direct infringement of the above-referenced third party direct infringers. On information and belief, Defendants have not taken any steps to redesign the infringing systems and methods to avoid infringement, nor have they taken any action to warn the foregoing direct and indirect customers of their infringements of the foregoing patents. Accordingly, Defendants have acted in an objectively reckless manner, which justifies a finding that their infringements have been willful.

## OTHER ALLEGATIONS

33. As a result of Defendants' infringing conduct with respect to the '319 patent, Defendants have damaged Dynamic Geo. Defendants are liable to Dynamic Geo in an amount that adequately compensates Dynamic Geo for their infringement, which, by law, can be no less than a reasonable royalty.

34. On information and belief, all Defendants have at least had actual notice of the above asserted patents since on or about August 8, 2011, as more fully set forth above.

35. Dynamic Geo's predecessor-in-interest to the '319 patent, AGM, complied with the marking provisions of 35 U.S.C. § 287(a).

36. As a consequence of these Defendants' infringement, Dynamic Geo has been irreparably damaged and such damage will continue without the issuance of an injunction from this Court.

## PRAYER FOR RELIEF

WHEREFORE, Dynamic Geo respectfully requests that this Court enter:

1. A judgment in favor of Dynamic Geo that Defendants have directly and indirectly infringed the '319 patent;

CHR0124

2.	A judgment finding that such infringement has been and/or is willful as noted hereinabove, thus entitling Dynamic Geo to enhanced damages under 35 U.S.C. § 284;

3.	A permanent injunction enjoining Defendants, and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringing the '319 patent;

4.	A judgment and order requiring Defendants to pay Dynamic Geo its damages, costs, expenses, fees and prejudgment and post-judgment interest for its infringement of the '319 patent as provided under 35 U.S.C. §§ 284 and/or 285; and

5.	Any and all other relief to which Dynamic Geo may show itself to be entitled.

<u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Dynamic Geo requests a trial by jury of any issues so triable by right.

Respectfully submitted,

By: /s/ *draft*
Michael J. Collins
Texas Bar No. 04614510
John J. Edmonds
Texas Bar No. 789758
Andrew P. Tower
Texas Bar. No. 00786291
Henry M. Pogorzelski
Texas Bar No. 24007852
COLLINS, EDMONDS & POGORZELSKI,
SCHLATHER & TOWER, PLLC
1616 S. Voss Road, Suite 125
Houston, Texas 77057
Telephone: (281) 501-3425
Facsimile: (832) 415-2535
hpogorzelski@cepiplaw.com
mcollins@cepiplaw.com

CHR0125

jedmonds@cepiplaw.com
atower@cepiplaw.com
hoporzelski@cepilaw.c

ATTORNEYS FOR PLAINTIFF
DYNAMIC 3D GEOSOLUTIONS LLC

13

**CHR0126**