**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| DYNAMIC 3D GEOSOLUTIONS LLC, | ) | AU:14-CV-00112-LY |
| | ) | |
|   Plaintiff, | ) | |
| | ) | |
| VS. | ) | AUSTIN, TEXAS |
| | ) | |
| SCHLUMBERGER LIMITED, SCHLUMBERGER HOLDINGS | ) | |
| CORPORATION, SCHLUMBERGER TECHNOLOGY | ) | |
| CORPORATION, SCHLUMBERGER LIMITED | ) | |
| (SCHLUMBERGER N.V.), | ) | |
| | ) | |
|   Defendant. | ) | NOVEMBER 20, 2014 |

*************************************************

TRANSCRIPT OF MOTIONS HEARING

BEFORE THE HONORABLE LEE YEAKEL
*************************************************

APPEARANCES:

| | |
|---|---|
| DYNAMIC 3D GEOSOLUTIONS LLC: | MICHAEL JAMES COLLINS |
| | MATTHEW C. JUREN |
| | JOHN J. EDMONDS |
| | HENRY POGORZELSKI |
| | COLLINS EDMONDS POGORZELSKI |
| | SCHLATHER & TOWER PLLC |
| | 1616 S. VOSS ROAD, SUITE 125 |
| | HOUSTON, TEXAS 77018 |
| | |
| SCHLUMBERGER: | STEVEN J. WINGARD |
| | SCOTT, DOUGLASS & MCCONNICO, L.L.P. |
| | 600 CONGRESS AVENUE, SUITE 1500 |
| | AUSTIN, TEXAS 78701 |
| | |
| | MAXIMILIAN A. GRANT |
| | LATHAM & WATKINS LLP |
| | 555 ELEVENTH STREET NW, SUITE 1000 |
| | WASHINGTON, D.C. 20004 |
| | |
| | TERRENCE J. CONNOLLY |
| | THOMAS HUMPHREY |
| | LATHAM & WATKINS LLP |
| | 885 THIRD AVENUE |
| | NEW YORK, NEW YORK 10022 |

```
 1  ACACIA RESEARCH GROUP          CABRACH J. CONNOR
    GARY FISCHMAN:                 TAYLOR DUNHAM AND RODRIGUEZ LLP
 2                                 301 CONGRESS AVE., SUITE 1050
                                   AUSTIN, TEXAS 78701
 3
    COURT REPORTER:                ARLINDA RODRIGUEZ, CSR
 4                                 501 WEST 5TH STREET, SUITE 4152
                                   AUSTIN, TEXAS 78701
 5                                 (512) 391-8791

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24  Proceedings recorded by computerized stenography, transcript

25  produced by computer.
```

| | | |
|---|---|---|
| 09:02:18 | 1 | (Open Court) |
| 09:02:18 | 2 | THE COURT:  We're here this morning on the motion to |
| 09:02:22 | 3 | disqualify in *Dynamic 3D Solutions LLC*.  Let me get |
| 09:02:34 | 4 | announcements.  I'm primarily interested in who is going to |
| 09:02:38 | 5 | participate in the presentation today.  So let me have your |
| 09:02:41 | 6 | announcements and who you represent. |
| 09:02:43 | 7 | MR. WINGARD:  Your Honor, Steve Wingard, representing |
| 09:02:46 | 8 | Schlumberger.  I'm here with Max Grant, who is going to be the |
| 09:02:48 | 9 | presenter today, Terrence Connolly, Tom Humphrey and |
| 09:02:56 | 10 | David Slater from Latham & Watkins. |
| 09:02:57 | 11 | THE COURT:  All right. |
| 09:02:58 | 12 | MR. COLLINS:  Your Honor, Michael Collins for |
| 09:03:00 | 13 | Plaintiff Dynamic 3D Geosolutions.  With me here today are my |
| 09:03:05 | 14 | colleagues from my firm, Matthew Juren, John Edmonds, and Henry |
| 09:03:10 | 15 | Pogorzelski.  Also we have the Dynamic 3D client representative |
| 09:03:16 | 16 | here today, Mr. Fischman. |
| 09:03:17 | 17 | THE COURT:  Let me make a couple of observations |
| 09:03:26 | 18 | before we get started.  When I first went on this bench a |
| 09:03:28 | 19 | little over 11 years ago and, before that, when I became a |
| 09:03:31 | 20 | justice on the State Third Court of Appeals, I made up my mind, |
| 09:03:34 | 21 | having been on your side of the bench for 28 and a half years, |
| 09:03:35 | 22 | that I was never going to gratuitously pick on lawyers.  And I |
| 09:03:39 | 23 | have tried to adhere to that. |
| 09:03:41 | 24 | But let me make an observation about this motion. |
| 09:03:44 | 25 | Number one, it is -- witness the number of people in this |

09:03:47 1    courtroom.  It is the most over-lawyered thing maybe I have

09:03:50 2    ever seen.  Secondly, all parties have inundated me with more

09:04:01 3    material than was ever needed to decide this issue.

09:04:06 4         I give talks to lawyers and lawyer groups all the

09:04:11 5    time, and my colleagues do the same thing and we generally say

09:04:16 6    the same things.  And that is, please give us only what we need

09:04:22 7    to decide the issue in front of us.  I am not going to read

09:04:27 8    everything you have given me.  I will tell you that.  When I

09:04:31 9    get this much material on a motion to disqualify, I'm just not

09:04:35 10   going to read it because, one, I don't have the time and, two,

09:04:38 11   over 90 percent of it is unnecessary.

09:04:42 12        The law on this disqualification is very

09:04:46 13   straightforward.  There are not that many cases that the judge

09:04:49 14   has to consider.  I don't need all the background noise and the

09:04:55 15   clutter.  I don't care what your clients think about the issue.

09:05:00 16   I deal with the lawyers.  And you harm yourselves when you give

09:05:06 17   me the amount of stuff you have given me that is unnecessary

09:05:12 18   for resolution of the issue before me.

09:05:15 19        I don't know when this practice started.  It happens

09:05:23 20   in other things other than motions to disqualify.  But in the

09:05:27 21   last 15 to 20 years, it seems like the legal profession has

09:05:30 22   decided that quantity is more important than quality.  And it's

09:05:37 23   not.  I get motions to extend the number of pages in every

09:05:41 24   motion.  I usually grant them because I believe at the trial

09:05:45 25   court level, my job is to let you make the record that you want

```
09:05:51   1   to make.  And if you're clever enough to get me reversed, so be
09:05:54   2   it.  I don't worry about reversals.  I try not to go out of my
09:05:59   3   way to get reversed, but I recognize it as an occupational
09:06:03   4   hazard.
09:06:04   5          But I say this and I mean it sincerely:  I have
09:06:08   6   never -- and, I mean it, never -- seen an instance where I have
09:06:12   7   granted additional pages where the product has been improved.
09:06:17   8   It is harder to write less than it is to write more.  And it
09:06:21   9   seems like the legal profession today wants to write as much as
09:06:25  10   they can and never give it to somebody else in their law firm
09:06:30  11   to edit for them.
09:06:31  12          The page limitations that we have in our local rules
09:06:35  13   are adequate.  For some reason, nobody ever listens to me on
09:06:39  14   that.  If you would pay more attention to what you're doing
09:06:42  15   instead of just inundating me with pages and motions and things
09:06:47  16   over and over again, you would be enhanced.
09:06:51  17          So having said that this morning -- and I know you
09:06:54  18   have worked on your presentations and I have given you an hour
09:07:00  19   to a side, which I think is more time than you need -- what I
09:07:04  20   am interested in this case in knowing, and it's probably all I
09:07:08  21   am interested in knowing, is:  One, what Ms. Rutherford knew,
09:07:16  22   when she knew it, and what she might have passed on and, two,
09:07:20  23   whether a substantial relationship exists between the subject
09:07:24  24   matter of the former and present representations.  And I want
09:07:30  25   that reduced down to telling me basically what is the harm
```

| | | |
|---|---|---|
| 09:07:37 | 1 | factor in this case. |
| 09:07:41 | 2 | I'm looking at a patent infringement case.  I will |
| 09:07:47 | 3 | admit to you, other than the fact that Ms. Rutherford at one |
| 09:07:53 | 4 | time or another was with two of the parties or their |
| 09:07:57 | 5 | representative law firms, I have a hard time figuring out, |
| 09:08:02 | 6 | other than for the purpose of gamesmanship, how she possibly |
| 09:08:08 | 7 | could affect whether or not, at the end of the day, there's |
| 09:08:13 | 8 | going to be infringement in this case. |
| 09:08:15 | 9 | So that's what I want you to direct me to.  You don't |
| 09:08:19 | 10 | have to reinvent the wheel.  I don't want to hear about all of |
| 09:08:22 | 11 | the background stuff.  Give me just as limited a statement of |
| 09:08:29 | 12 | background facts as you think you need to develop your |
| 09:08:32 | 13 | arguments, and then concentrate on that argument.  I think both |
| 09:08:41 | 14 | sides have conceded -- if I'm wrong, tell me -- that there was |
| 09:08:45 | 15 | an attorney-client relationship, and so I think we're down to |
| 09:08:47 | 16 | substantial relationship. |
| 09:08:49 | 17 | I had read Judge Sparks' opinion well before I got in |
| 09:08:53 | 18 | your most recent filings.  I will tell you the facts of that |
| 09:08:56 | 19 | case are different than they are here.  You can mention that |
| 09:09:03 | 20 | because I find the opinion helpful, but I don't find it |
| 09:09:06 | 21 | dispositive, if for no other reason but the issue of |
| 09:09:11 | 22 | Ms. Rutherford's potential conflict was raised at an extremely |
| 09:09:15 | 23 | early stage in this case.  There's not an untimely raising. |
| 09:09:21 | 24 | The opinion in *National Oilwell Varco* mentions how |
| 09:09:25 | 25 | much water had flowed under the bridge before we got around -- |

| | | |
|---|---|---|
| 09:09:28 | 1 | or Judge Sparks got around to the disqualification issue.  I |
| 09:09:33 | 2 | consider that, based on existing precedent, to be a large |
| 09:09:38 | 3 | difference in this case.  The motion to disqualify was filed |
| 09:09:42 | 4 | early and timely in this case, so nobody needs to argue to me |
| 09:09:47 | 5 | about timeliness because I'm telling you I've already ruled on |
| 09:09:51 | 6 | it and the motion is timely.  So if you can glean out other |
| 09:09:56 | 7 | things in *National Oilwell Varco*, feel free to do so.  But it's |
| 09:10:00 | 8 | not -- we're not going to deal with when the motion was filed. |
| 09:10:03 | 9 | It was filed in a timely manner. |
| 09:10:07 | 10 | So I want you to restrict your arguments to things |
| 09:10:12 | 11 | that might actually help me determine under existing law |
| 09:10:17 | 12 | whether or not there is a substantial conflict. |
| 09:10:21 | 13 | Now, I will say one of the things that Judge Sparks |
| 09:10:24 | 14 | points out -- and it was an issue that I had also previously |
| 09:10:28 | 15 | focused on -- is there is a difference between disqualifying |
| 09:10:34 | 16 | Ms. Rutherford and disqualifying the law firm.  You need to |
| 09:10:40 | 17 | draw that.  You need to argue to me whether there is the second |
| 09:10:47 | 18 | irrebuttable presumption, which is another thing that is |
| 09:10:51 | 19 | mentioned in the cases. |
| 09:10:52 | 20 | But those are the issues here.  It's not all of the |
| 09:10:55 | 21 | other things.  So know that.  And you're going to do better, |
| 09:10:59 | 22 | both of you, if -- again, I use the cliche all the time -- you |
| 09:11:03 | 23 | shoot with a rifle instead of a shotgun.  And I'll try to give |
| 09:11:07 | 24 | you a practice tip.  Every judge everywhere around the country |
| 09:11:11 | 25 | that I talk to do not like to be overwhelmed with documents |

| | | |
|---|---|---|
| 09:11:17 | 1 | that don't mean anything.  And you-all are better off if you |
| 09:11:20 | 2 | constantly look toward paring this thing down, and you |
| 09:11:26 | 3 | definitely are in my court.  And I have a real lack of |
| 09:11:30 | 4 | understanding as to why I never can get that message across. |
| 09:11:34 | 5 | When I was in private practice, I always tried to do |
| 09:11:37 | 6 | things the way the judge wanted it because I had this -- maybe |
| 09:11:41 | 7 | it's an old-fashioned belief -- that the judge is the one |
| 09:11:45 | 8 | that's going to decide this and you might be helped if you kind |
| 09:11:49 | 9 | of focus your record on what the judge continuously tells you |
| 09:11:53 | 10 | the judge wants.  I don't get very far with that argument |
| 09:11:59 | 11 | today.  Not just in your case, but in others.  So end of |
| 09:12:02 | 12 | lecture, and I will hear from the movant at this point. |
| 09:12:12 | 13 | MR. GRANT:  All right, Your Honor.  Let's see if we |
| 09:12:19 | 14 | can cut through the clutter today because I think we can. |
| 09:12:22 | 15 | THE COURT:  Well, go ahead and announce who you are |
| 09:12:24 | 16 | for the court reporter.  I know who you are, but we need to get |
| 09:12:28 | 17 | it on the record. |
| 09:12:28 | 18 | MR. GRANT:  My name is Max Grant, and I represent the |
| 09:12:30 | 19 | Defendant Schlumberger and the movant. |
| 09:12:33 | 20 | The first thing I want to do, Your Honor, is just |
| 09:12:38 | 21 | talk a little bit about two lines of authority that I think |
| 09:12:40 | 22 | Judge Sparks' decision kind of cuts through the middle of and I |
| 09:12:44 | 23 | think it's understandable when you understand the facts. |
| 09:12:46 | 24 | There are two different lines of authority in the |
| 09:12:48 | 25 | Fifth Circuit.  One line of authority comes under this |

| | | |
|---|---|---|
| 09:12:51 | 1 | *ProEducation* case, and a separate and distinct line of |
| 09:12:55 | 2 | authority comes under the *American Airlines* case. |
| 09:12:58 | 3 | In the *ProEducation* case, we deal with a situation |
| 09:13:01 | 4 | where the lawyer did not personally represent the former client |
| 09:13:09 | 5 | on a substantially related matter.  The partners in the firm |
| 09:13:13 | 6 | did, and there's an imputation because out of that.  But the |
| 09:13:15 | 7 | lawyer didn't have a personal stake and a personal |
| 09:13:18 | 8 | representation.  That gives rise to a couple of implications |
| 09:13:25 | 9 | under the law. |
| 09:13:25 | 10 | The disputed qualification dissolves when that lawyer |
| 09:13:30 | 11 | transfers to a new firm, and the new firm is not disqualified. |
| 09:13:33 | 12 | Now, that means that, in that situations, courts -- district |
| 09:13:37 | 13 | courts in this circuit have plenty of discretion, the actual |
| 09:13:41 | 14 | disclosure of confidential information is relevant to the |
| 09:13:45 | 15 | analysis, and walls can be used to address the situation. |
| 09:13:53 | 16 | And we're on slide 2, Your Honor. |
| 09:13:55 | 17 | THE COURT:  I've got you. |
| 09:13:56 | 18 | MR. GRANT:  The *American Airlines* case is different. |
| 09:13:58 | 19 | The *American Airlines* case involves when the lawyer at issue |
| 09:14:00 | 20 | actually personally represented the former client on a |
| 09:14:03 | 21 | substantially related matter.  And under the Fifth Circuit law, |
| 09:14:06 | 22 | where that is the factual scenario, the lawyer is irrebuttably |
| 09:14:11 | 23 | disqualified and there's no discretion on that question.  And |
| 09:14:14 | 24 | the new law firm is also irrebuttably disqualified.  And under |
| 09:14:19 | 25 | the Fifth Circuit law, there's no discretion on that question |

| | | |
|---|---|---|
| 09:14:22 | 1 | either.  And, in this case, the actual disclosure of |
| 09:14:26 | 2 | confidential information is not relevant, and walls serve no |
| 09:14:31 | 3 | purpose. |
| 09:14:31 | 4 | Now, what Judge Sparks had to deal with was a pretty |
| 09:14:37 | 5 | anomalous situation where the lawyer did not join the second |
| 09:14:39 | 6 | law firm until after the case was filed, which is not the case |
| 09:14:45 | 7 | here, and the lawyer left that law firm before the |
| 09:14:47 | 8 | disqualification motion was filed.  So he dealt with a pretty |
| 09:14:51 | 9 | anomalous factual situation that I guess we could argue cuts in |
| 09:14:55 | 10 | between these two lines of authority. |
| 09:14:57 | 11 | And what he did, in part because of the other factual |
| 09:15:01 | 12 | issues, the prejudice issues, et cetera, is he relied primarily |
| 09:15:05 | 13 | on the *ProEducation* line of cases to fashion what he thought |
| 09:15:09 | 14 | was an equitable remedy.  But that's not the situation in the |
| 09:15:14 | 15 | case we have here. |
| 09:15:14 | 16 | In fact, there's a district court case, *OneBecon*, |
| 09:15:18 | 17 | from 2012.  And this case discusses the distinction between |
| 09:15:24 | 18 | these two lines of authority.  And what that case says is, |
| 09:15:27 | 19 | While *ProEducation* questioned the continued applicability of |
| 09:15:31 | 20 | irrebuttable presumptions, it did so in the context of |
| 09:15:35 | 21 | considering whether an attorney who did not work on a |
| 09:15:39 | 22 | particular matter at his prior firm is irrebuttably presumed to |
| 09:15:44 | 23 | have obtained confidential information. |
| 09:15:47 | 24 | That's not the case here.  In here it says -- the |
| 09:15:50 | 25 | court analyzed and says, Here the defendants have submitted |

```
09:15:53   1   evidence that the lawyer at issue did receive confidential
09:15:56   2   information while working at his prior firm, and there's no
09:15:59   3   need to rely on the presumption and, therefore, the presumption
09:16:03   4   that he shared confidences with other members of the firm still
09:16:07   5   applies, as the Texas Supreme Court, which promulgates the
09:16:12   6   rule, said.  And this is 2012.
09:16:14   7         So there's no debate that the current Texas and
09:16:16   8   Fifth Circuit rules say that, if the lawyer's personally
09:16:20   9   involved, then both irrebuttable presumptions apply.  And then
09:16:24  10   they said, While he worked on the matters, screening him is
09:16:27  11   insufficient.
09:16:27  12         So if we then look at the third slide, Your Honor,
09:16:30  13   we're sort of back to where we started, which is these two
09:16:34  14   lines of authority.  And what I think the Court will see, when
09:16:40  15   it looks at the facts, is that our case falls squarely within
09:16:43  16   the American Airlines line of authority.  The lawyer worked on
09:16:45  17   the case directly -- And that's exactly what the Court asked me
09:16:48  18   to talk about and I'm going to talk about in detail.  And if
09:16:51  19   that's the situation, then we're in the American Airlines line
09:16:54  20   of authority and not the this anomalous situation with
09:16:58  21   Judge Sparks and not this relatively clear situation under
09:17:01  22   ProEducation.
09:17:02  23         And, in fact, if you look at the ProEducation
09:17:06  24   decision, this is a quote from it and, actually, a quote that
09:17:09  25   Judge Sparks repeats, in which he says that the departing
```

| | | |
|---|---|---|
| 09:17:12 | 1 | lawyer, if they personally represented the former client, |
| 09:17:15 | 2 | remains under the imputed disqualification.  And I'll of course |
| 09:17:20 | 3 | note for the Court that the authority that the Fifth Circuit |
| 09:17:24 | 4 | and that Judge Sparks relied on is Mr. Burton's treatise on |
| 09:17:29 | 5 | this issue. |
| 09:17:29 | 6 | So we're under this separate situation and -- |
| 09:17:34 | 7 | THE COURT:  So here's the deal. |
| 09:17:35 | 8 | MR. GRANT:  Yeah. |
| 09:17:36 | 9 | THE COURT:  All of the Fifth Circuit cases involved |
| 09:17:40 | 10 | what I would call traditional lawsuits with traditional issues |
| 09:17:44 | 11 | where lawyers talk to one another and do things.  We are here, |
| 09:17:49 | 12 | as I mentioned earlier, on a patent infringement case. |
| 09:17:52 | 13 | MR. GRANT:  Uh-huh. |
| 09:17:52 | 14 | THE COURT:  The issues that may or may not be |
| 09:17:54 | 15 | discussed are different.  I see a difference when I analyze |
| 09:18:02 | 16 | disqualification cases in a patent case or disqualification |
| 09:18:06 | 17 | situations in a patent case than potentially in a general law |
| 09:18:10 | 18 | case. |
| 09:18:10 | 19 | Is it your position that we don't care -- the Court |
| 09:18:16 | 20 | does not consider what the type of case is, the Court doesn't |
| 09:18:20 | 21 | consider anything, which could have been shared that could have |
| 09:18:23 | 22 | been harmful to one party or another.  It's just the mere fact, |
| 09:18:29 | 23 | and the Court make no inquiry, that the lawyer was at |
| 09:18:35 | 24 | Schlumberger and then moved over to the law firm? |
| 09:18:40 | 25 | MR. GRANT:  Yeah.  I'll answer that question, |

| | | |
|---|---|---|
| 09:18:42 | 1 | Your Honor, and show you the law on it.  If we're in the |
| 09:18:44 | 2 | *American Airlines* situation where the lawyer personally |
| 09:18:47 | 3 | represented -- |
| 09:18:48 | 4 | THE COURT:  While you're doing this, though, I want |
| 09:18:50 | 5 | you to address my question about the difference between general |
| 09:18:53 | 6 | law cases and patent cases, because I see a large difference |
| 09:18:56 | 7 | here. |
| 09:18:57 | 8 | MR. GRANT:  Yes, Your Honor.  I'm happy to address |
| 09:18:59 | 9 | it. |
| 09:19:00 | 10 | THE COURT:  That is just the cross you have to bear |
| 09:19:02 | 11 | because I get to make the decision. |
| 09:19:04 | 12 | MS. GRANT:  I'll bear it gladly, Your Honor, along |
| 09:19:07 | 13 | with the thorned crown, if necessary.  The answer is there's no |
| 09:19:10 | 14 | difference between patent cases and other types of commercial |
| 09:19:13 | 15 | civil litigation cases.  And the reason that there's no |
| 09:19:16 | 16 | difference, if we're in the *American Airlines* line of cases, |
| 09:19:19 | 17 | Your Honor, is because there's two issues. |
| 09:19:22 | 18 | One is confidentiality.  And that's the one that, in |
| 09:19:25 | 19 | the *ProEducation* case, requires the Court to inquire as to |
| 09:19:28 | 20 | whether there were confidences disclosed and whether there were |
| 09:19:31 | 21 | walls and things like that.  But where the lawyer personally |
| 09:19:35 | 22 | represented the client on a substantially related matter, |
| 09:19:37 | 23 | there's a separate and independent issue that trumps that, and |
| 09:19:43 | 24 | it's the duty of loyalty. |
| 09:19:44 | 25 | And what the Fifth Circuit in *American Airlines* makes |

09:19:47  1   clear is that duty of loyalty says that your question,

09:19:51  2   Your Honor, about whether there is confidences shared or actual

09:19:54  3   prejudice or taint to the case is not relevant because there is

09:19:58  4   a public policy concern about lawyers who appear to be disloyal

09:20:04  5   regardless of any actual prejudice.

09:20:06  6           So let's just walk briefly through that introduction,

09:20:10  7   because I want to make sure the Court has it in mind and I want

09:20:12  8   to do everything I can as an officer of the court to make sure

09:20:15  9   that the Fifth Circuit law in this issue is clear, because

09:20:18  10  there is a distinction between these two lines of cases and

09:20:21  11  there's no distinction once we're in the *American Airlines* line

09:20:24  12  of cases.  Your point would be fair for the other line, but

09:20:28  13  there's no distinction in *American Airlines*.

09:20:29  14          THE COURT:  So tell me ... I make a decision in this

09:20:34  15  case.  I either disqualify Ms. Rutherford or I don't, and the

09:20:46  16  side who loses has a right to apply for a writ of mandamus.  I

09:20:50  17  believe that, even though we apply Fifth Circuit law, that

09:20:56  18  mandamus goes to the Federal Circuit.

09:20:59  19          MR. GRANT:  No question.

09:21:00  20          THE COURT:  So I think it is important for both sides

09:21:02  21  to draw this distinction because the Federal Circuit

09:21:05  22  historically has not always openly embraced the regional

09:21:11  23  circuits on the way they apply the regional circuit's law.

09:21:14  24          MR. GRANT:  I'm happy to address that, Your Honor.

09:21:16  25  And you know what?  I think, in this case, the Federal Circuit

09:21:18  1  will apply the Fifth Circuit law strictly.  And the reason is

09:21:21  2  this:  The Federal Circuit will understand that, in this

09:21:24  3  situation, the case is worse, not better, than general

09:21:27  4  commercial litigation.  We can't possibly have the case where

09:21:32  5  someone can go to the chief IP counsel of a company, hire that

09:21:36  6  person, and then have that person have the level of involvement

09:21:41  7  that Ms. Rutherford had in this case before deciding to sue on

09:21:45  8  the very issues for which she was responsible.

09:21:48  9      That would be a breach of duty of loyalty,

09:21:53  10  Your Honor, and the public policy concern is nobody -- nobody

09:21:58  11  out there would be able to have any confidence in the actual

09:22:01  12  adjudication of that case.  Because whether or not there is an

09:22:04  13  actual transfer of confidences, the loyalty violation would be

09:22:08  14  such that no one would have confidence in the result it would

09:22:12  15  obtain.  And that's the reason.

09:22:13  16      And I would submit, Your Honor, that if and when the

09:22:16  17  Federal Circuit gets this case on mandamus, they will apply

09:22:19  18  this law more strictly, not less strictly, because the Federal

09:22:22  19  Circuit understands the public policy impact if patent

09:22:27  20  assertion companies are permitted to hire chief IP counsel from

09:22:32  21  their targets and then involve those people in the analysis of

09:22:35  22  claims that will be brought against them.  So the case in the

09:22:39  23  Federal Circuit, Your Honor, will be stronger than it would if

09:22:41  24  it were in the Fifth Circuit.

09:22:43  25      Let me just briefly March through the law on *American*

| | | |
|---|---|---|
| 09:22:46 | 1 | *Airlines* before I get to the factual questions that you had, |
| 09:22:49 | 2 | Your Honor, because it's important to see just how strong this |
| 09:22:52 | 3 | law is and how unequivocal it is.  And that *ProEducation* line |
| 09:22:57 | 4 | of cases is not relevant here because that is a case where the |
| 09:23:04 | 5 | lawyer didn't personally represent the former client. |
| 09:23:07 | 6 | The Fifth Circuit in the *American Airlines* scenario, |
| 09:23:10 | 7 | the district court's ruling on a disqualification matter is not |
| 09:23:13 | 8 | a heart of discretion.  That's different from *ProEducation* and |
| 09:23:18 | 9 | distinct from the situation that Judge Sparks faced. |
| 09:23:20 | 10 | The substantial relationship test cannot be reduced |
| 09:23:23 | 11 | to a confidentiality rule.  I think that's what the Court is |
| 09:23:26 | 12 | asking, but the Federal Circuit has answered that question |
| 09:23:29 | 13 | unequivocally.  And here is why, what I was just talking about, |
| 09:23:33 | 14 | Your Honor.  Because the substantial relationship test is |
| 09:23:36 | 15 | concerned with both the duty of confidentiality and -- it's |
| 09:23:41 | 16 | right here, Your Honor -- duty of confidentiality and the duty |
| 09:23:45 | 17 | of loyalty.  And so a lawyer who has given advice in a |
| 09:23:49 | 18 | substantially related matter must be disqualified whether or |
| 09:23:52 | 19 | not they gained confidences.  And that's because of the |
| 09:23:56 | 20 | personal representation that occurred. |
| 09:23:58 | 21 | Now, under that standard, Rutherford must be |
| 09:24:04 | 22 | disqualified.  All of Acacia's in-house counsel must be |
| 09:24:10 | 23 | disqualified.  There's nothing that can be rebutted, and |
| 09:24:13 | 24 | there's no room for discretion under the controlling law. |
| 09:24:16 | 25 | Plaintiff's outside counsel should be disqualified -- |

09:24:21   1   and I'll talk about that -- but that is an issue that's not one

09:24:24   2   that leaves no room for discretion.  But under these facts, I

09:24:27   3   would submit that there isn't any, and the case should be

09:24:30   4   dismissed as to Schlumberger.  I'm not talking about those

09:24:33   5   other five defendants about which they've asserted these

09:24:35   6   claims.

09:24:36   7          THE COURT:  Now, let's suppose you're right.  Why

09:24:38   8   should I dismiss the case even if I disqualify the lawyers?

09:24:42   9   Why are you entitled to that remedy?

09:24:44  10          MR. GRANT:  Well, the reason I'm entitled to that

09:24:46  11   remedy is, first of all, that's the way courts have handled it

09:24:49  12   in the past.  But, second of all, Your Honor, there is no

09:24:52  13   scenario that I can envision as I sit here today -- and I'm not

09:24:55  14   asking the Court for an advisory opinion -- but there's no

09:24:57  15   scenario that I can envision as I sit here today that Acacia,

09:25:03  16   as the current owner or assignee of the patent, could assert

09:25:08  17   this patent against Schlumberger at all, including if

09:25:11  18   Ms. Rutherford left the company.

09:25:13  19          The involvement of her in the initial assertion of

09:25:15  20   this case so taints this case and so violates the duty of

09:25:21  21   loyalty that was irrevocably applied here, that there is no way

09:25:25  22   that Acacia can sue Schlumberger on the '319 patent.  And I

09:25:29  23   think that certainly applies now.  I don't know whether that

09:25:32  24   could be ostensibly cured under some scenario that I can't

09:25:36  25   imagine in the future, but it can't be done now, including if

09:25:39 1 new lawyers come in and handle the case, because those new

09:25:42 2 lawyers will have the knowledge of the record in this case and

09:25:45 3 the knowledge that Ms. Rutherford based, on the knowledge she

09:25:49 4 had, concurred in the decision to proceed.

09:25:51 5         THE COURT:  Well, you're asking me to build a

09:25:56 6 presumption upon a presumption -- that I engage in the

09:25:58 7 irrebuttable presumption that she had the knowledge and that

09:26:06 8 she imparted the knowledge.  And then a further -- you further

09:26:12 9 ask me to establish a presumption or an irrebuttable

09:26:18 10 presumption that new lawyers would automatically have that

09:26:20 11 knowledge.

09:26:22 12         MR. GRANT:  Well, the answer is I don't know the

09:26:24 13 answer to that question, Your Honor.  There's no -- I'm not

09:26:26 14 asking for a presumption with regard to Ms. Rutherford.  Once I

09:26:30 15 show there's a substantial relationship, then the duty of

09:26:35 16 loyalty requires that she be disqualified.

09:26:37 17         THE COURT:  Okay.

09:26:39 18         MS. GRANT:  Okay.  The next step under this law is,

09:26:41 19 all lawyers in her, quote, firm, which both the ABA and Texas

09:26:43 20 rules say is the in-house legal department, they're all also

09:26:47 21 irrebuttably disqualified.

09:26:50 22         Now, the next step is a fair point, Your Honor, and

09:26:52 23 I'm not asking you to build a presumption on a presumption.

09:26:55 24 What I'm telling you is there's a very specific legal test that

09:26:57 25 I'll go through, and it involves whether Ms. Rutherford had

09:27:02  1  contact or communications with Mr. Collins and his firm.  And

09:27:06  2  I'll show you specifically she did.  There's no debate about

09:27:09  3  it.

09:27:09  4        The separate independent test is or whether they

09:27:14  5  conducted in trial preparations or substantive conversations

09:27:18  6  with any of the Acacia lawyers, and I'll show you the evidence

09:27:21  7  that there is no debate that they did.  Now, once that occurs,

09:27:25  8  they're disqualified.

09:27:26  9        Now, could the case subsequently be brought by

09:27:28  10  another firm?  Could they set up some sort of a wall or a

09:27:31  11  separate entity that completely shielded the existing

09:27:35  12  irrebuttably disqualified lawyers?  You know, that may or may

09:27:38  13  not be the case, Your Honor.  And I'm not asking you to dismiss

09:27:41  14  the case with prejudice.  I'm asking you to dismiss the case

09:27:44  15  without prejudice.  And if some new lawyers figure out a theory

09:27:48  16  under which they believe they can bring the case, well, you

09:27:51  17  know, then we'll have an opportunity to address that on the

09:27:53  18  actual facts that exist.

09:27:55  19        But I am asking you and telling you and suggesting to

09:27:57  20  you that, under the law, the way the courts have dealt with

09:28:00  21  this is they've dismissed the case without prejudice and that's

09:28:03  22  the right result here.

09:28:04  23        Okay.  Let's talk about the substantial relationship

09:28:08  24  test.  I think -- well, the Court's obliged to act.  The

09:28:13  25  Court's doing that, obviously.  The motion to disqualify, as

09:28:16  1  the Court's recognized, is the proper method.  And it's got to

09:28:18  2  be addressed now.  We don't need to reiterate this law.  So

09:28:23  3  let's talk about the Rutherford issue itself.

09:28:25  4       As you correctly recognize, Your Honor -- I'm on

09:28:28  5  slide 9 -- there's two issues:  One, whether there was an

09:28:30  6  attorney-client relationship -- and you're correct.  That was

09:28:33  7  conceded -- and, second, whether there's a substantial

09:28:36  8  relationship.  And that's where I'm going to spend the majority

09:28:39  9  of my time.  Just so the record is clear for the Court, this is

09:28:42  10  Plaintiff's response to our motion in which they concede that

09:28:46  11  there is an attorney-client relationship.

09:28:49  12       So we can go back, we can check that box.  And the

09:28:51  13  only factual issue before the Court is whether the nature of

09:28:56  14  the representations are substantially related.  And I would

09:28:59  15  submit, Your Honor, and we'll go through those facts, they're

09:29:03  16  more than substantially related.  They're the same.

09:29:06  17       Next.

09:29:06  18       Okay, now, this is the legal standard of what

09:29:10  19  "substantial relationship" means.  It doesn't mean relevant in

09:29:14  20  an evidentiary matter.  It just simply means, "It need only be

09:29:18  21  akin to the present action in a way that reasonable persons

09:29:21  22  would understand as important to the issues involved."

09:29:25  23       So this standard of substantial relationship, this

09:29:28  24  threshold, isn't a high one, Your Honor.  And the reason it's

09:29:31  25  not a high one is because this has to do with protecting the

09:29:35  1   public's confidence in a lawyer's duty to his client.

09:29:42  2              Next.

09:29:42  3              Now, this is the law in this scenario where the

09:29:46  4   lawyer personally represented the client.  In this scenario,

09:29:50  5   the Court will assume that during the course of the former

09:29:54  6   representation, confidences were disclosed bearing on the

09:29:57  7   subject matter.  It will not inquire into their nature and

09:30:00  8   extent.

09:30:01  9              That's what the Fifth Circuit says, Your Honor.  Now,

09:30:03  10  we're going to show you the nature and extent of those

09:30:06  11  confidences.  But under the Fifth Circuit law, that's not what

09:30:09  12  we're supposed to do.  All we have to show is a substantial

09:30:12  13  relationship.

09:30:13  14             So what this Fifth Circuit court case says,

09:30:16  15  Your Honor, is that the Court will not inquire into the nature

09:30:19  16  and extent of the former representation confidences that were

09:30:22  17  disclosed, but we'll do it anyway.

09:30:24  18             Only in the manner -- and here's why.  Only in this

09:30:30  19  manner can the lawyer's absolute duty of fidelity be enforced.

09:30:35  20  So this doesn't have to do with the duty of confidentiality,

09:30:39  21  Your Honor.  It has do with a lawyer's ethical duty of loyalty

09:30:42  22  to their clients, which clients are supposed to be able to rely

09:30:46  23  on without having actual concern about whether confidences are

09:30:49  24  disclosed or not.

09:30:50  25             Next.

| | | |
|---|---|---|
| 09:30:51 | 1 | Okay.  Once that is established, the Court will |
| 09:30:56 | 2 | irrebuttably presume that the relevant information was |
| 09:30:59 | 3 | disclosed. |
| 09:31:01 | 4 | Next. |
| 09:31:03 | 5 | The genuine threat of the adverse use of confidences |
| 09:31:07 | 6 | is established by showing the prior representation is |
| 09:31:10 | 7 | substantially related.  That's it.  The Fifth Circuit goes on |
| 09:31:13 | 8 | to say the way you establish a genuine threat is just by |
| 09:31:18 | 9 | showing the substantial relationship.  It's not the other way |
| 09:31:21 | 10 | around.  So we don't need to show a threat of the actual use of |
| 09:31:24 | 11 | confidences under the controlling law. |
| 09:31:26 | 12 | And then there's a conclusive and irrebuttable |
| 09:31:32 | 13 | presumption that this situation will lead to the disclosure and |
| 09:31:35 | 14 | misuse of confidential information.  It's irrebuttably presumed |
| 09:31:40 | 15 | that that will be the case if there's a substantial |
| 09:31:42 | 16 | relationship. |
| 09:31:44 | 17 | The parties seeking to disqualify -- Your Honor, this |
| 09:31:47 | 18 | is right out of the Fifth Circuit case -- need not prove that |
| 09:31:49 | 19 | the past and present matters are so similar that the lawyer's |
| 09:31:54 | 20 | continued involvement threatens to taint the trial.  We don't |
| 09:31:57 | 21 | have to show that.  Rather, all we've got to show is that |
| 09:32:02 | 22 | they're substantially related and -- |
| 09:32:05 | 23 | Next one. |
| 09:32:06 | 24 | -- the presumption is intended to prevent us from |
| 09:32:10 | 25 | having to prove -- provide proof that would be improper to |

09:32:14 1  make, the kind of stuff that is implicated when they say, well,

09:32:18 2  you've produced a privilege log that shows all the things that

09:32:21 3  she works on, but you actually should produce the documents

09:32:25 4  themselves.  That's exactly what they requested in this case.

09:32:27 5  The reason the law is like this is to prevent that request from

09:32:32 6  being a proper discovery request.

09:32:33 7        And that avoids compelling us to prove the very

09:32:37 8  things that we seek to keep confidential because, if a lawyer

09:32:41 9  could attempt to prove that they don't recall the disclosure of

09:32:45 10 confidential information, which is exactly what they're

09:32:48 11 claiming here or that no confidential information was in fact

09:32:51 12 disclosed, that would defeat the purpose of keeping our secrets

09:32:55 13 confidential.

09:32:56 14       This law addresses specifically the arguments that

09:33:01 15 the plaintiff is relying on in opposition, and it would put us

09:33:06 16 into the anomalous position of having to show what confidences

09:33:12 17 Ms. Rutherford was entrusted with in order to prevent those

09:33:16 18 confidences from being revealed.  That's why the law so clear

09:33:19 19 and strong on this.

09:33:19 20       The substantial relationship test cannot be reduced

09:33:23 21 to a confidentiality rule.  If you've given advice in a

09:33:26 22 substantially related matter, you've got to be disqualified

09:33:29 23 whether you've gain confidences or not.  That's the black

09:33:32 24 letter law if you have a lawyer who personally represented on

09:33:36 25 the substantially related matter.

| | | |
|---|---|---|
| 09:33:38 | 1 | And, in fact, the case goes on to say, Your Honor, |
| 09:33:41 | 2 | the reason we know this is true is because here's a case where |
| 09:33:45 | 3 | a person was disqualified even though, factually, there was no |
| 09:33:48 | 4 | chance that the confidential information could be used.  This |
| 09:33:51 | 5 | is the controlling Fifth Circuit law for the scenario we're |
| 09:33:55 | 6 | facing. |
| 09:33:55 | 7 | All right.  There is no exception -- by the way, |
| 09:33:59 | 8 | Your Honor, there's no exception if the prior representation |
| 09:34:05 | 9 | which the attorney's advice was based on was based on public |
| 09:34:08 | 10 | information.  So the fact that the information subsequently or |
| 09:34:11 | 11 | was public at the time is irrelevant.  Again, it's because the |
| 09:34:14 | 12 | test has nothing to do with confidentiality and everything to |
| 09:34:17 | 13 | do with loyalty. |
| 09:34:19 | 14 | So some of what we're going to talk about, |
| 09:34:21 | 15 | Your Honor, when I get to the facts is the Petrel 2005 version. |
| 09:34:27 | 16 | Ms. Rutherford managed copyright litigation on this very |
| 09:34:30 | 17 | version of the accused product.  Ms. Rutherford led an IP -- |
| 09:34:35 | 18 | internal IP analysis that I'll talk more about on this very |
| 09:34:39 | 19 | version of software.  This very version of software is prior |
| 09:34:47 | 20 | art to the '319 patent, and this very version of software was |
| 09:34:51 | 21 | used in the tech tutorial last week to demonstrate the patented |
| 09:34:54 | 22 | feature to the Court. |
| 09:34:55 | 23 | So the fact that this software version is public is |
| 09:35:01 | 24 | of no moment.  And, you know, this is part of an argument that |
| 09:35:04 | 25 | opposing counsel made to Magistrate Judge Lane when we were |

| | | |
|---|---|---|
| 09:35:07 | 1 | dealing with the motions to quash.  And what he said was well, |
| 09:35:10 | 2 | prior art is a matter of public record.  And unless there's |
| 09:35:13 | 3 | some kind of secret, there's nothing that's relevant here. |
| 09:35:17 | 4 | That flies directly in the face of the Fifth Circuit's law on |
| 09:35:21 | 5 | this issue. |
| 09:35:27 | 6 | Again, the duty of loyalty means the substantial |
| 09:35:31 | 7 | relationship is -- I'm on slide 21, Your Honor. |
| 09:35:34 | 8 | The duty of loyalty means that the substantial |
| 09:35:37 | 9 | relationship test is not solely concerned with the adverse use |
| 09:35:40 | 10 | of confidential information.  And the Fifth Circuit goes on to |
| 09:35:43 | 11 | say, we adhere to our precedence in refusing -- refusing to |
| 09:35:48 | 12 | reduce the concerns underlying the substantial relationship |
| 09:35:53 | 13 | test to that of preserving confidential information, because |
| 09:35:56 | 14 | the second fundamental concern that's protected by the test is |
| 09:36:00 | 15 | not the public interest in a lawyer -- is not the public |
| 09:36:04 | 16 | interest in lawyers avoiding even the appearance of |
| 09:36:08 | 17 | impropriety, but a client's interest in the loyalty of their |
| 09:36:12 | 18 | attorney.  It's a totally separate basis when the attorney's |
| 09:36:16 | 19 | personally involved. |
| 09:36:17 | 20 | All right.  Now, one of the things you asked at the |
| 09:36:21 | 21 | tutorial, Your Honor, was you inquired specifically about |
| 09:36:28 | 22 | whether there's taint and what are the specific evidence that |
| 09:36:33 | 23 | prejudices Schlumberger.  Here's what the Fifth Circuit says, |
| 09:36:36 | 24 | Your Honor.  A post hoc inquiry into whether a particular |
| 09:36:40 | 25 | attorney's involvement in a particular suit might taint the |

| 09:36:42 | 1 | case –– this is 22 –– in no way provides the breadth and |
| 09:36:47 | 2 | predictability of confidence that's central to the attorney. |
| 09:36:50 | 3 | So a post hoc inquiry as to whether Ms. Rutherford's |
| 09:36:55 | 4 | involvement in this lawsuit may taint the case in no way |
| 09:36:59 | 5 | provides the breadth and predictability of confidence that this |
| 09:37:03 | 6 | court and the public needs that's central to the role of an |
| 09:37:07 | 7 | attorney.  This directly addresses what we're talking about at |
| 09:37:11 | 8 | the hearing, Your Honor. |
| 09:37:12 | 9 | And, in fact, in the case it goes on to say that the |
| 09:37:16 | 10 | party opposing disqualification says, the rule barring |
| 09:37:21 | 11 | representation in substantially related matters is not violated |
| 09:37:25 | 12 | unless the cases are so similar that there is a genuine threat |
| 09:37:28 | 13 | of taint.  The Fifth Circuit said we reject this argument. |
| 09:37:38 | 14 | Okay.  Let's talk about the specifics and the facts |
| 09:37:40 | 15 | of the matter that the Court wanted to inquire into.  There are |
| 09:37:43 | 16 | four independent substantial relationships:  One, the patent |
| 09:37:50 | 17 | and IP protection for the Petrel features and functionality in |
| 09:37:54 | 18 | the accused product; second, the damages and economic value of |
| 09:37:59 | 19 | Petrel that 3D would be seeking in the context of this lawsuit; |
| 09:38:05 | 20 | three, pre-suit knowledge of the '319 patent prior to |
| 09:38:08 | 21 | Ms. Rutherford's departure from Schlumberger in May 2013; and, |
| 09:38:13 | 22 | four, prior art versions of Petrel that I briefly touched on. |
| 09:38:17 | 23 | The countervailing, identical, and certainly |
| 09:38:25 | 24 | substantially related relationship has to do with |
| 09:38:28 | 25 | Ms. Rutherford's representation of Acacia and 3D and their |

| | | |
|---|---|---|
| 09:38:31 | 1 | decision to acquire the '319 patent and sue Schlumberger for |
| 09:38:35 | 2 | infringement based on Petrel.  There is direct overlap in four |
| 09:38:40 | 3 | separate areas. |
| 09:38:41 | 4 | Let's talk about the first one, patent and IP |
| 09:38:44 | 5 | protection for the Petrel features and functionality.  Here are |
| 09:38:54 | 6 | some entries from our privilege log.  And what this shows, |
| 09:38:57 | 7 | Your Honor, is Ms. Rutherford involved in, having access to, |
| 09:39:01 | 8 | and participating in an IP analysis of Petrel.  What did that |
| 09:39:05 | 9 | IP analysis entail?  I'm on slide 25, Your Honor. |
| 09:39:08 | 10 | THE COURT:  I understand.  I'm following. |
| 09:39:10 | 11 | MR. GRANT:  Okay.  I just want to do what I can to |
| 09:39:12 | 12 | help. |
| 09:39:13 | 13 | THE COURT:  Well, see.  I've got all of these |
| 09:39:15 | 14 | screens, including one at the bench, and I have your book of |
| 09:39:19 | 15 | slides. |
| 09:39:20 | 16 | MR. GRANT:  Yes, sir. |
| 09:39:20 | 17 | THE COURT:  It's not hard for me to follow. |
| 09:39:22 | 18 | MR. GRANT:  I'm just trying to help.  I apologize, |
| 09:39:24 | 19 | Your Honor. |
| 09:39:24 | 20 | THE COURT:  I'm old, but I can still keep up. |
| 09:39:26 | 21 | MR. GRANT:  I'm starting to feel that way myself. |
| 09:39:29 | 22 | Analyzing the IP -- the patent portfolio, meaning the |
| 09:39:34 | 23 | patent portfolio responsible for covering Petrel; competitive |
| 09:39:38 | 24 | landscape, meaning what other competing products are out there; |
| 09:39:40 | 25 | the IP and business strategies of Petrel and Petrel's |

09:39:44  1   competitor products, including Austin GeoModeling's RECON

09:39:49  2   software product which was the basis for the patent technology

09:39:54  3   that's claimed in the '319 patent.  That's what Ms. Rutherford

09:39:57  4   was directly in charge of and working on while she was at

09:40:02  5   Schlumberger.

09:40:03  6          Next one.

09:40:03  7          Here's another entry, and these are just exemplary.

09:40:07  8   Ms. Rutherford attaching a chart reflecting the intellectual

09:40:10  9   property rights occupied by Petrel and Petrel's competitors.

09:40:15  10  In other words, where do we have patent protection, and where

09:40:18  11  does Austin GeoModeling or other competitors have patent

09:40:21  12  protection?

09:40:21  13         The next one.

09:40:23  14         A phase 2 analysis of the Petrel product in which

09:40:28  15  Ms. Rutherford attended four meetings that she led and was

09:40:32  16  responsible for because she led this project.  What are the

09:40:35  17  things that were discussed at those four meetings?  A strategy

09:40:39  18  session to define the map and prepare the filing of patent

09:40:42  19  applications for Petrel; finalization of the Petrel Goldstar

09:40:47  20  documents which have to do with analyzing the economic value of

09:40:50  21  that product; a review and revision of the Petrel patent

09:40:54  22  application, including specifically what features should be

09:40:58  23  covered and shouldn't be covered.

09:41:00  24         When she was deposed, we asked her about these

09:41:04  25  responsibilities.  And she said her responsibilities included

09:41:08   1  determining whether we needed, meaning Schlumberger, to file

09:41:15   2  more patents, less patents, whether we should license patents,

09:41:16   3  or whether we should strengthen our patent position.  She did

09:41:21   4  this work on the accused Petrel product and its predecessors.

09:41:25   5  When I say "the accused Petrel product," Your Honor, I mean the

09:41:28   6  ones that came before 2013, but which I will show you have the

09:41:32   7  same features and functionality.

09:41:34   8         Now, the Court may recall at the tutorial last week

09:41:38   9  there was one question that you asked.  You asked

09:41:40  10  Mr. Beardsell:  Does Schlumberger have its own patents on

09:41:45  11  Petrel?  That was a good question, a related question to the

09:41:48  12  issues in this case.  And the test, Your Honor, is only whether

09:41:54  13  something is related, whether it's akin in the way reasonable

09:41:57  14  persons would understand it as important.  I consider the Court

09:42:00  15  to be a reasonable person, and the Court considered this

09:42:03  16  question to be important to the issues involved in this case.

09:42:08  17         Well, the person who would have answered your

09:42:10  18  question and executed on that decision was

09:42:15  19  Charlotte Rutherford.  That 2005 version of Petrel that the

09:42:19  20  Court asked about, whether we have patent protection on,

09:42:23  21  Ms. Rutherford was responsible for determining what features

09:42:26  22  should be patented, what features should be protected by trade

09:42:29  23  secrets, which features should be covered by copyright.  That

09:42:33  24  was her decision.

09:42:35  25         There's no question, Your Honor, that Ms. Rutherford

| | | |
|---|---|---|
| 09:42:39 | 1 | was responsible for, participated on, and represented |
| 09:42:44 | 2 | Schlumberger on what patent and IP protection on Petrel |
| 09:42:48 | 3 | features, including features that are at issue in this case, |
| 09:42:52 | 4 | what should be covered.  That's established by the facts. |
| 09:42:58 | 5 | The next question and the next separate and |
| 09:43:00 | 6 | independent basis of relationship has to do with the economic |
| 09:43:04 | 7 | value of Petrel, which obviously is the whole reason we're |
| 09:43:07 | 8 | here, because these guys are in the business of licensing |
| 09:43:09 | 9 | patents.  So they're not here to get an injunction, Your Honor. |
| 09:43:13 | 10 | They're here to assess the economic value of Petrel and get a |
| 09:43:17 | 11 | license. |
| 09:43:18 | 12 | This is the declaration of the lawyer, the outside |
| 09:43:21 | 13 | counsel, that worked with Ms. Rutherford on that copyright |
| 09:43:25 | 14 | litigation on that 2005 version of Petrel.  He says, I spoke |
| 09:43:29 | 15 | with her.  It had to do with misuse of the proprietary Petrel |
| 09:43:35 | 16 | software by somebody else.  He then goes on to say part of what |
| 09:43:39 | 17 | she worked on was the nature of the damages Schlumberger would |
| 09:43:44 | 18 | suffer by the infringing activities. |
| 09:43:46 | 19 | Now, true.  That was copyright infringement and this |
| 09:43:50 | 20 | is patent infringement.  But we're talking about the economic |
| 09:43:53 | 21 | value of the Petrel software.  That's the same issue in both |
| 09:43:57 | 22 | cases.  Ms. Rutherford and others approved those claims. |
| 09:44:01 | 23 | Then Mr. Holloway goes on to say -- and his |
| 09:44:06 | 24 | declaration is un-rebutted.  Opposing counsel didn't want to |
| 09:44:09 | 25 | take his deposition -- Ms. Rutherford was active in the lead |

09:44:12   1   part of the Schlumberger team in explaining the value of the

09:44:16   2   Petrel software, including licenses rates and streams.  That's

09:44:20   3   exactly what the damages portion of this case will be about.

09:44:24   4          Next.

09:44:25   5          And there is more information in the privilege log --

09:44:30   6   and we'll provide these to the Court in camera if the Court

09:44:34   7   wants to see them -- this is an 11-page memo, Your Honor, that

09:44:37   8   Ms. Rutherford was responsible for that discusses the remedies

09:44:40   9   of the ongoing Petrel-related copyright litigation.  It's an

09:44:45  10   11-page damages assessment of the product that is largely at

09:44:54  11   issue here.

09:44:55  12          And Mr. Holloway confirmed during his conduct of the

09:44:59  13   Petrel infringement litigation on the 2005 product that was

09:45:04  14   demo-ed last week that he took his instructions from

09:45:06  15   Ms. Rutherford.  And on virtually every important matter,

09:45:10  16   Ms. Rutherford was directly and personally involved.  She

09:45:13  17   represented Schlumberger on this subject matter.  She was

09:45:16  18   copied on all the communications, and she was very involved in

09:45:21  19   assessing the strength of Schlumberger's case and in

09:45:24  20   formulating settlement goals and discussions.  Formulating

09:45:28  21   settlement goals and discussions means, what is the software

09:45:31  22   worth?  What is infringement of that software worth?

09:45:34  23          This is the PowerPoint presentation that the

09:45:38  24   plaintiff prepared.  Hold on.  Go back one.

09:45:43  25          I want the Court to note this is the presentation

09:45:47   1   that was given and that Ms. Rutherford received.  This

09:45:50   2   presentation occurred less than five weeks -- five weeks after

09:45:55   3   she left Schlumberger in early July of 2013.

09:46:00   4         Okay.  I don't want to show you the whole

09:46:02   5   presentation, but there's only two companies in that

09:46:05   6   presentation for which there is financial data and information,

09:46:10   7   Schlumberger and Halliburton.  Those are the only two companies

09:46:14   8   in the presentation for which there is financial information

09:46:17   9   and that Acacia got from Austin GeoModeling.

09:46:20   10         Now, what do we know?  Just three weeks later,

09:46:25   11   Ms. Rutherford is CCed on a financial -- in-house financial

09:46:29   12   analysis at Acacia regarding the value of the '319 patent.

09:46:36   13   Based on that presentation, Your Honor, half the value of that

09:46:40   14   patent, half the revenue, half the information, is Schlumberger

09:46:44   15   information.

09:46:45   16         So here's the discussion.  Do you have time to

09:46:47   17   approve the financials?  This went to Mr. Fischman,

09:46:51   18   Ms. Rutherford's colleague.  What does he do?  He sends it to

09:46:55   19   CR, Charlotte Rutherford.  Are these financials okay with you?

09:47:00   20   These are the financials that estimate the value of the '319

09:47:03   21   patent, which is premised 50 percent at this point on

09:47:08   22   Schlumberger's Petrel product just five weeks after she

09:47:12   23   resigned responsibility for that product.  Charlotte Rutherford

09:47:19   24   approves it.  She approves the draft financial analysis of

09:47:25   25   Acacia that was premised on the financials that they got about

```
09:47:28   1   Schlumberger's Petrel product.
09:47:31   2          Then what happens?  Ms. Rutherford says, Make sure I
09:47:37   3   get the final version of this financial analysis of the
09:47:43   4   patent's value so I can have a copy in case Matt calls.  Matt
09:47:44   5   is Acacia's CEO.  Ms. Rutherford is involved in approving
09:47:48   6   changes and drafts of those financial analyses, and then she
09:47:51   7   gets the final version so that she can have a discussion about
09:47:54   8   the value of the '319 patent, which is premised at least
09:47:58   9   50 percent in part on Schlumberger's revenue, with Acacia's
09:48:03  10   CEO.
09:48:05  11          Now, part of what's interesting about this,
09:48:08  12   Your Honor, is they produced those three e-mails, but they
09:48:11  13   didn't produce the Excel spreadsheet that shows the analysis.
09:48:15  14   Instead, they listed e-mails and the Excel spreadsheet on a
09:48:19  15   privilege log.  Now, why is that?  Because the Excel
09:48:22  16   spreadsheet will show, I'm highly confident, that the value --
09:48:27  17   a significant portion of the value attributable to acquiring
09:48:31  18   the '319 patent and suing on it is attributable to
09:48:37  19   Schlumberger's Petrel product.
09:48:39  20          Now, we didn't have a copy of that, but here it's
09:48:41  21   talking about what it is.  It reflects the valuation and the
09:48:44  22   updated AGM financials.  Those updated AGM financials
09:48:49  23   Your Honor, there was only two pages.  One was Schlumberger,
09:48:51  24   and one was Halliburton.  And the revenue reflected in those
09:48:54  25   are split about equally.
```

```
09:48:56    1            And Ms. Rutherford is obviously all over these

09:48:59    2    e-mails.  So are these matters substantially related?  Well,

09:49:03    3    look at the privilege log, Your Honor.  It's the valuation of

09:49:05    4    the patent, the valuation and the cost of revenue.  Look at

09:49:09    5    what Mr. Holloway said Ms. Rutherford was responsible for in

09:49:14    6    the litigation -- the value of the Petrel software.  It's not a

09:49:18    7    substantially related matter, the value of Petrel software and

09:49:21    8    the assertion of the '319 patent, it's the same matter.

09:49:31    9            Now, one interesting question for the Court when the

09:49:33   10    Court evaluates credibility, because credibility is important

09:49:37   11    to what's going on here, is when I deposed Ms. Rutherford, I

09:49:40   12    asked her:  Were you involved in any valuation of the value of

09:49:43   13    the '319 patent at Acacia?  She gave an unequivocal "no"

09:49:49   14    answer.  Your Honor, these e-mail chains that show her

09:49:53   15    approving the draft Excel spreadsheet of the valuation of the

09:49:56   16    patent and then asking for a final version of it so she can

09:49:59   17    discuss it with Acacia's CEO established that this testimony is

09:50:04   18    not credible.  In fact, it refutes this testimony, and that's

09:50:08   19    something that the Court should consider when evaluating this

09:50:11   20    case.

09:50:11   21            So with regard to Petrel's damages and economic

09:50:14   22    value, Your Honor, I would submit it's not a substantially

09:50:18   23    related matter.  It's the same matter.

09:50:21   24            Let's go to the pre-suit knowledge of the '319

09:50:23   25    patent.  And this is particularly egregious, Your Honor.
```

09:50:30 1  Again, we have Ms. Rutherford's unequivocal testimony.  I asked

09:50:34 2  her:  What's the approximate date you first saw any version of

09:50:37 3  the complaint, meaning the Schlumberger complaint, in this

09:50:41 4  case?

09:50:42 5          She testified unequivocally -- and this was just

09:50:46 6  three months after this time frame.  She was deposed in May of

09:50:50 7  2014, and the patent -- or the complaint was filed in February.

09:50:54 8  So her memory would have been clear on events that occurred so

09:50:58 9  recently.  She testified unequivocally:  The first time I read

09:51:01 10  this complaint against Schlumberger by Dynamic 3D was after it

09:51:06 11  had been filed.

09:51:07 12          Hard to imagine somebody getting that wrong when the

09:51:10 13  whole purpose of the deposition was to ask questions just like

09:51:13 14  that one.  Well, let's see what the facts show, Your Honor, and

09:51:16 15  maybe we'll understand why those subpoenas were so hard fought.

09:51:21 16          Her's an e-mail from Mr. Collins to Mr. Fischman, the

09:51:24 17  3D representative and the Acacia vice president.  I want the

09:51:28 18  Court to note the time, 5:06 p.m.  It says:  Gary, attached

09:51:33 19  please find the latest drafts of the complaint for Schlumberger

09:51:37 20  and Halliburton.  These incorporate your comments and other

09:51:41 21  changes.  Let me know if you have any questions.  We're ready

09:51:44 22  to move forward when you give us the green light.  That's the

09:51:47 23  outside counsel speaking to Acacia.

09:51:50 24          On the next page, Your Honor, eight minutes later,

09:51:54 25  5:14.  Eight minutes later, Mr. Fischman forwards Mr. Collins'

09:52:01  1  e-mail to Ms. Rutherford saying, Charlotte, here is the current

09:52:06  2  version of the complaints.  Matt -- that's the CEO -- looked at

09:52:09  3  them when he was here and said he was fine.  I'll ask Debra to

09:52:13  4  send out a notice.

09:52:14  5         Your Honor, there has been some assertions that

09:52:16  6  Ms. Rutherford was screened in this case.  There's no screen.

09:52:19  7  There's a funnel.  A screen doesn't constitute Mr. Collins not

09:52:24  8  sending draft complaints directly to Ms. Rutherford but,

09:52:27  9  instead, sending it to the Acacia vice president that reports

09:52:30  10  to her and then him, eight minutes later, forwarding them to

09:52:35  11  her for substantive comment.  That's not a screen.  That's a

09:52:38  12  funnel.

09:52:39  13         So let's see what happened after Ms. Rutherford got

09:52:42  14  the copy of the draft complaint that she testified under oath

09:52:45  15  she never received.  She says, Thanks, Gary.  Good job.  Please

09:52:50  16  extend my thanks to CEPIP.  That's Mr. Collins and his law

09:52:57  17  firm.

09:52:58  18         Your Honor, she gets a draft of the complaint, she

09:53:02  19  reviews it, and she communicates, albeit indirectly, to outside

09:53:06  20  counsel, Good job.

09:53:10  21         Why is that important?  I'm going to show you.  Here

09:53:13  22  is why.  That complaint includes willfulness allegations and

09:53:19  23  indirect infringement allegations.  And it says:  Defendants

09:53:22  24  have taken no action to stop or lessen the extent of their own

09:53:26  25  direct infringements and they've acted in an objectively

| | | |
|---|---|---|
| 09:53:30 | 1 | reckless manner.  That's a paragraph that Ms. Rutherford |
| 09:53:35 | 2 | personally read and approved and communicated her approval |
| 09:53:41 | 3 | indirectly back to the outside law firm. |
| 09:53:46 | 4 | Why does that matter?  Well, let's look at time |
| 09:53:49 | 5 | frame, Your Honor.  The '319 patent is filed in 2007.  Its |
| 09:53:54 | 6 | application would have been published, by the way, 18 months |
| 09:53:57 | 7 | later.  But it issued by July 2011.  No question about that. |
| 09:54:01 | 8 | Ms. Rutherford remains the chief IP counsel at Schlumberger for |
| 09:54:09 | 9 | almost two years.  There is a two-year period between issuance |
| 09:54:12 | 10 | of the patent and her departure to join Acacia.  During -- and |
| 09:54:18 | 11 | then they file the suit, obviously, six or eight months later |
| 09:54:22 | 12 | asserting willful infringement. |
| 09:54:25 | 13 | During that two-year period, approximately, what were |
| 09:54:27 | 14 | her responsibilities?  Well, let's look at her own words and |
| 09:54:32 | 15 | her own job description.  And this is slide 51, Your Honor. |
| 09:54:39 | 16 | She says it was her responsibility to advise the senior company |
| 09:54:44 | 17 | executives, meaning Schlumberger's CEO and other senior people, |
| 09:54:50 | 18 | to advise them regarding risk issues relating to IP and to |
| 09:54:53 | 19 | obtain legal opinions. |
| 09:54:54 | 20 | The question of willfulness for this '319 patent for |
| 09:54:59 | 21 | an almost two-year period was Charlotte Rutherford's |
| 09:55:07 | 22 | responsibility.  It was her job and the people working under |
| 09:55:09 | 23 | her were supposed to determine whether Austin GeoModeling or |
| 09:55:12 | 24 | any other competitors had patents that posed a risk to the |
| 09:55:16 | 25 | company.  And, if so, it was her responsibility to decide |

09:55:19  1  whether that risk was sufficient for them to obtain a legal

09:55:23  2  opinion to protect against willful infringement.  She reviewed

09:55:28  3  that paragraph.  She signed off on those willful infringement

09:55:32  4  allegations despite the fact that she was responsible.

09:55:35  5        Now, Your Honor, we can ask the technical question,

09:55:39  6  which under the Fifth Circuit law, shouldn't be asked:  Did she

09:55:42  7  actually communicate any confidential information?  Well, you

09:55:46  8  know, Your Honor, in analogous context, you don't need to be

09:55:51  9  express.  The disclosure of confidential information can be

09:55:54  10 implicit.

09:55:55  11        And if some CEO or CFO of a company comes to a friend

09:55:58  12 of his and says, We've got a big earnings announcement coming

09:56:02  13 out.  I can't tell you what's in it, but I would sure approve

09:56:06  14 it if you bought stock, I would concur in that recommendation.

09:56:10  15 That's insider trading.  And the law doesn't allow you to say,

09:56:14  16 Well, but he never actually said that the earnings were going

09:56:16  17 to be through the roof.

09:56:18  18        This is the same thing, Your Honor.  They said, We're

09:56:20  19 filing willful infringement allegations, and she said, I concur

09:56:23  20 in that decision.  I've reviewed the complaint.  Good job.

09:56:27  21 File it the way it is.

09:56:28  22        Next one.

09:56:31  23        And the law, of course, says that a competent opinion

09:56:34  24 of counsel would provide a basis for an alleged infringer to

09:56:38  25 proceed without engaging in objectively reckless behavior.

09:56:41 1 This was her responsibility.  She signed off on a complaint

09:56:46 2 saying she hadn't done her job.  Pre-suit knowledge of the '319

09:56:54 3 patent, Your Honor, it's not substantially related.  It's the

09:56:57 4 same matter.  It's not even close.

09:56:59 5         Next one.

09:57:00 6         Prior art versions of Petrel.  I'll go through this

09:57:02 7 quickly, Your Honor, because we've touched on it before.  The

09:57:04 8 Petrel 2005 version that the Court saw demonstrated last week

09:57:08 9 to demonstrate the patented features of the '319 patent is, in

09:57:13 10 terms of the patented functionality, indistinct from the

09:57:17 11 current one.  Her participation involves the same features and

09:57:23 12 functionality.  And if we look at the software as you saw from

09:57:26 13 the presentation last week, it's indistinct from the current

09:57:32 14 version.

09:57:33 15         So what do we know about the current version -- the

09:57:35 16 2005 version of Petrel that she was responsible for and which

09:57:38 17 she managed a variety of activities?  Well, the plaintiff says,

09:57:42 18 well, the overlap ends because the Canadian case involved

09:57:46 19 allegations of an earlier version of Petrel and that's not at

09:57:49 20 issue here.  Well, that's the version that was demonstrated to

09:57:52 21 you.

09:57:52 22         That's not true, Your Honor.  In fact, Mr. Beardsell

09:57:54 23 gave a sworn declaration.  That was the gentleman that provided

09:57:59 24 the demonstration last week, Your Honor.  He provided a sworn

09:58:02 25 declaration that the features and functionality that existed in

09:58:05  1  the earlier versions are the same as those that are being

09:58:08  2  accused of infringement.  There's no response to this other

09:58:12  3  than a lawyer argument saying it's no good.  That's nonsense.

09:58:20  4  He's the guy responsible for this product during this entire

09:58:23  5  time period.  He's given an un-rebutted sworn declaration that

09:58:23  6  the features and functionality are the same.

09:58:26  7          Next.

09:58:26  8          No surprise, Your Honor, we've asserted in our

09:58:31  9  validity contentions that the Petrel 2005 version is prior art.

09:58:34  10  We're not the only ones that think so.  That Halliburton IPR?

09:58:39  11  That's premised on Petrel 2005.

09:58:39  12          THE COURT:  Mr. Grant, I don't mean to interrupt you,

09:58:41  13  but you have 15 minutes left.  I don't know whether you intend

09:58:45  14  to reserve part of your time for rebuttal.

09:58:47  15          MR. GRANT:  Thank you for alerting me, Your Honor.

09:58:49  16          THE COURT:  But I wanted to tell you that.

09:58:51  17          MR. GRANT:  I'm only going to use two or three

09:58:52  18  minutes for rebuttal.

09:58:54  19          THE COURT:  You can take up your time, but I don't

09:58:54  20  want you to use the hour and then be surprised when I don't

09:58:56  21  give you any rebuttal time.

09:58:58  22          MR. GRANT:  I understand.  Next.

09:59:03  23          There's no exception, as we talked about, for public

09:59:06  24  information.  The petrel 2005 version was specifically

09:59:09  25  something she worked on.  The fact that it's public is of no

09:59:11  1  moment to the issues here.  The prior art versions of Petrel

09:59:15  2  aren't a substantially related matter.  They're the same matter

09:59:18  3  that are asserted in this case.

09:59:19  4        Now, let's talk briefly about Rutherford's

09:59:22  5  representation with Acacia on this case and the overlap.  Now,

09:59:27  6  it's asserted in their motion to dismiss which was filed just a

09:59:30  7  couple of months ago that her only recommendation was to

09:59:33  8  proceed in the litigation against Halliburton, not

09:59:36  9  Schlumberger.  I really don't understand how that could be

09:59:39  10 included in a brief in light of Ms. Rutherford's sworn

09:59:42  11 testimony.

09:59:43  12       So here's her sworn testimony.  What communications

09:59:47  13 did you have?  "My concurrence with the recommendation from

09:59:50  14 outside counsel and in-house counsel to acquire the '319 patent

09:59:55  15 and to sue Schlumberger ..."

09:59:57  16       Those are her words under oath.  And she didn't say

10:00:01  17 it once, Your Honor, she said it twice.  "My communication was

10:00:04  18 the concurrence to acquire and file the litigation against

10:00:07  19 Schlumberger ..."

10:00:08  20       And that's no surprise.  She had evaluated the

10:00:10  21 financials, she had seen a draft complaint that included the

10:00:14  22 willfulness allegations, and she concurred in the

10:00:16  23 recommendation that Mr. Collins' firm gave to Acacia's CEO.

10:00:23  24 Implicit in that communication is Acacia's CEO knowing, Look.

10:00:26  25 Everything she knows, she says this is a good lawsuit.  That's

| | | |
|---|---|---|
| 10:00:29 | 1 | just like the CFO saying, You're thinking about buying our |
| 10:00:33 | 2 | stock?  We got an earnings announcement coming out.  That would |
| 10:00:36 | 3 | be a good investment. |
| 10:00:40 | 4 | All right this concurrence implicates all four |
| 10:00:43 | 5 | separate areas of substantially related matters.  It involves |
| 10:00:48 | 6 | them knowing what the patent and IP protection was for Petrel |
| 10:00:53 | 7 | and where it's covered and where it's not; it involves the |
| 10:00:55 | 8 | economic value and damages that would be associated with the |
| 10:00:57 | 9 | case for Acacia to determine that it made economic sense to |
| 10:01:00 | 10 | file it; it involves her knowledge of the pre-suit willfulness |
| 10:01:04 | 11 | allegations; and it involves her awareness of the prior art |
| 10:01:08 | 12 | versions of Petrel.  The substantial relationship test, |
| 10:01:11 | 13 | Your Honor, isn't met once, isn't met twice, isn't met three |
| 10:01:15 | 14 | times.  It's met four separate independent times. |
| 10:01:19 | 15 | All right.  In this situation, the Court |
| 10:01:27 | 16 | respectfully, Your Honor, has no discretion.  Ms. Rutherford |
| 10:01:28 | 17 | must be disqualified.  There's nothing else to discuss if you |
| 10:01:32 | 18 | find that any one of those four matters are substantially |
| 10:01:34 | 19 | related. |
| 10:01:35 | 20 | Now, let's briefly talk about Acacia's in-house |
| 10:01:37 | 21 | counsel.  The test here, Your Honor, is that second |
| 10:01:41 | 22 | irrebuttable presumption, and that presumption obtains |
| 10:01:47 | 23 | whether -- that the lawyers shared confidences with the client |
| 10:01:50 | 24 | and members of the second firm.  That's a second irrebuttable |
| 10:01:56 | 25 | presumption, and it applies because Ms. Rutherford personal |

```
10:01:58   1   represented Schlumberger.  It's not the ProEducation case where
10:02:01   2   other people.  The ProEducation cases would apply, Your Honor,
10:02:04   3   if Ms. Rutherford had been a labor lawyer at Schlumberger, not
10:02:09   4   an IP lawyer responsible for Petrel.  Those cases don't apply.
10:02:13   5        And what does a "firm" mean?  Well, under both the
10:02:16   6   Texas and the ABA rules, a "firm" means an in-house legal
10:02:19   7   department.  And no surprise, Your Honor.  When you're a
10:02:24   8   corporation whose entire business is legal, obtaining patents,
10:02:27   9   and filing patent lawsuits, that in-house legal department and
10:02:31  10   that legal function goes pretty broadly.  And you don't have to
10:02:34  11   look any further than the assertions of privilege and
10:02:37  12   attorney-client work product and the discussions that
10:02:39  13   Ms. Rutherford, Mr. Fischman, and Mr. Vella had to know that
10:02:42  14   they concede that those are attorney roles.
10:02:44  15        So what does that mean?  We have Dynamic 3D
10:02:48  16   Geosolutions, which has no employees, was an LLC started
10:02:53  17   shortly before this lawsuit, and holds no assets other than the
10:02:56  18   patent.  It's wholly owned by Acacia Research Group, which is
10:03:00  19   where Ms. Rutherford and Mr. Fischman work.  And that's wholly
10:03:04  20   owned by Acacia Research Corporation, which is where the CEO
10:03:09  21   works.  All these people were working together on this lawsuit,
10:03:17  22   and they all obtained and are imputed with that second
10:03:20  23   irrebuttable presumption.
10:03:21  24        Now, in terms of who are the specific people, well, I
10:03:23  25   know what the head start is, Your Honor.  They actually
```

| | | |
|---|---|---|
| 10:03:25 | 1 | responded to a discovery request listing all the people.  It's |
| 10:03:28 | 2 | referenced in our brief, and I don't want to go through all the |
| 10:03:31 | 3 | names.  But there are pages and pages of names of the people |
| 10:03:34 | 4 | who are listed on the documents relevant to this case that have |
| 10:03:37 | 5 | been produced in the context of this disqualification motion |
| 10:03:40 | 6 | and that were listed in the privilege logs as being people who |
| 10:03:43 | 7 | received privileged or work product information.  That's a |
| 10:03:46 | 8 | listing that was provided by them.  It's a long listing, but |
| 10:03:49 | 9 | that's because of the nature of their business. |
| 10:03:52 | 10 | So now the second question is, that second |
| 10:04:01 | 11 | irrebuttable presumption is not a matter of discretion because |
| 10:04:02 | 12 | Ms. Rutherford personally represented Schlumberger. |
| 10:04:05 | 13 | Next. |
| 10:04:06 | 14 | Briefly on the outside counsel issue, Austin |
| 10:04:09 | 15 | GeoModeling and the Collins Edmonds firm were integrally |
| 10:04:14 | 16 | involved in this whole thing, but that's not the test.  The |
| 10:04:16 | 17 | test is a two-part -- not a two-part test, an either/or test, |
| 10:04:20 | 18 | Your Honor.  We need to show either contact or communication |
| 10:04:23 | 19 | between the Collins Edmonds firm and Rutherford or substantive |
| 10:04:27 | 20 | conversations or joint preparation for trial with the Acacia |
| 10:04:31 | 21 | attorneys. |
| 10:04:32 | 22 | Okay.  This is the law.  Once a party seeking |
| 10:04:36 | 23 | disqualification establishes there was contact or communication |
| 10:04:39 | 24 | between the attainted attorney and co-counsel, then the burden |
| 10:04:45 | 25 | shifts.  So we have to show that there's a contact or |

10:04:46  1   communication between Rutherford and the Collins firm.

10:04:52  2           Next.

10:04:52  3           Her own testimony establishes unequivocally there

10:04:55  4   was.  She concurred in the recommendation.  Who did she concur

10:05:00  5   with?  Whose recommendation?  Outside counsel.  That's

10:05:02  6   Mr. Collins and his firm.

10:05:03  7           You received recommendations from the Collins Edmonds

10:05:06  8   firm to acquire the patent?

10:05:07  9           Yes.

10:05:08  10          That's contact or communication with the Collins

10:05:10  11  Edmonds firm.

10:05:11  12          Did they make a presentation?  Did the Collins

10:05:14  13  Edmonds firm make a presentation?

10:05:16  14          Yeah.  It was about an hour long, and it referenced

10:05:19  15  Schlumberger.

10:05:19  16          That's a contact or communication directly between

10:05:23  17  Ms. Rutherford Collins Edmonds firm.

10:05:25  18          Any communications?

10:05:26  19          My concurrence with the recommendations of outside

10:05:28  20  counsel.

10:05:29  21          That's a contact or communication with the Collins

10:05:32  22  Edmonds firm.

10:05:33  23          Did you tell anybody outside of Acacia about your

10:05:36  24  decision to concur in the acquisition of the patent and to sue

10:05:39  25  Schlumberger?

10:05:40   1          I would say yes, but only outside counsel.

10:05:42   2          That's a contact or communication between Rutherford

10:05:45   3   Collins Edmonds firm.

10:05:47   4          Direct communications.  This is Mr. Vella, the CEO,

10:05:53   5   directing Ms. Rutherford:  It's a go if you think you can get

10:05:56   6   Collins to take the case.

10:05:57   7          She's the one in November who is being directly

10:06:01   8   directed by the CEO to see whether she can get Collins to take

10:06:05   9   the case.  That's a contact or communication between the two of

10:06:07  10   them.

10:06:08  11          Ms. Rutherford here sending an e-mail to a variety of

10:06:13  12   people, including Mr. Collins.  It says:  Once litigation is

10:06:18  13   filed, this is how we're going to handle the media inquiries.

10:06:21  14          That directly implicates the litigation strategy,

10:06:24  15   et cetera.  It's a contact or communication between Rutherford

10:06:26  16   and the Collins Edmonds firm.

10:06:28  17          Now, what's the -- the next part here?  There have

10:06:33  18   been numerous contacts and communications between Rutherford

10:06:36  19   and Collins -- I'm on slide 83, Your Honor -- and the Collins

10:06:39  20   Edmonds firm has failed to meet their burden now that we've

10:06:43  21   shown those contacts and communications to show two things, and

10:06:46  22   they need to show both of them -- that there was no reasonable

10:06:49  23   prospect that our information was disclosed and that it was not

10:06:52  24   in fact disclosed.  That's their burden, and they haven't met

10:06:55  25   it.

| | | |
|---|---|---|
| 10:06:56 | 1 | What's the second basis on which the Collins Edmonds |
| 10:06:59 | 2 | firm could be independently disqualified from the case? |
| 10:07:02 | 3 | Substantive conversations or joint preparation with Acacia |
| 10:07:05 | 4 | lawyers. Let's take a look at. That this is the second part |
| 10:07:08 | 5 | of the law, Your Honor. If Mr. Fischman communicates with |
| 10:07:13 | 6 | Collins, either joint preparation for trial or substantive |
| 10:07:18 | 7 | conversations. It's right out of the case. |
| 10:07:19 | 8 | Well, Mr. Fischman made this one easy. He put in a |
| 10:07:25 | 9 | declaration regarding those subpoenas and motions to quash. |
| 10:07:29 | 10 | And he says: In close collaboration with Mr. Collins and his |
| 10:07:33 | 11 | firm, I'm personally involved in the decision to sue and I |
| 10:07:36 | 12 | remain personally involved in helping formulate litigation |
| 10:07:41 | 13 | strategy. |
| 10:07:42 | 14 | We have both separate and independent prongs met |
| 10:07:45 | 15 | here. Numerous contacts and communications between |
| 10:07:48 | 16 | Ms. Rutherford and the Collins firm and, separately and |
| 10:07:51 | 17 | independently, joint preparation for trial and substantive |
| 10:07:54 | 18 | discussions between Mr. Fischman of Acacia and the Collins |
| 10:07:59 | 19 | Edmonds firm. |
| 10:08:00 | 20 | Similarly with Mr. Vella -- same thing, Your Honor -- |
| 10:08:03 | 21 | there are substantive conversations there. This is her |
| 10:08:07 | 22 | speaking on the phone to Mr. Vella: Was Schlumberger |
| 10:08:12 | 23 | mentioned? |
| 10:08:12 | 24 | Yes. |
| 10:08:12 | 25 | This was a call about the case acquiring the patent |

```
10:08:15   1  and filing the lawsuit in which Schlumberger was mentioned.
10:08:18   2  More communications or contacts.
10:08:21   3          Again, the decision belongs to the CEO and president,
10:08:25   4  Matt Vella.  The presentation was made by outside counsel to
10:08:28   5  the CEO.  Again, these are direct contacts and communications
10:08:32   6  between Mr. Vella and the Collins Edmonds firm involving the
10:08:37   7  case.
10:08:38   8          Now, what's their response to this?  Ms. Rutherford
10:08:41   9  has been screened and will continue to be screened from any
10:08:44  10  discussions involving Schlumberger.
10:08:46  11          Next.
10:08:47  12          That just didn't happen, Your Honor.  She concurred
10:08:48  13  in the decision of outside counsel.
10:08:51  14          Next.
10:08:51  15          She concurred twice, according to her testimony.  I
10:08:55  16  mean, she repeated that she concurred.  She concurred with the
10:08:58  17  recommendation of outside counsel.  She was working in
10:09:02  18  conjunction with the outside counsel and received
10:09:04  19  recommendations from the outside counsel's firm.  She received
10:09:08  20  an hour-long presentation by the outside counsel's firm.  She
10:09:12  21  told outside counsel about her decision to concur in the
10:09:16  22  acquisition and the filing of the suit.  There is no question,
10:09:22  23  given the number of contacts, that the Collins Edmonds firm has
10:09:26  24  to be excused.
10:09:27  25          The case should be dismissed, Your Honor.  I cite two
```

10:09:30  1  cases here that are exactly the same sort of situation where

10:09:33  2  the cas is dismissed.

10:09:34  3          Next.  Go back one.

10:09:36  4          And, Your Honor, in addition to dismissal, the Court

10:09:39  5  enjoined those people from participating or collaborating in

10:09:43  6  any further lawsuits.  And that's what the Court should do here

10:09:46  7  as well.  It should dismiss the case without prejudice and then

10:09:50  8  enjoin Ms. Rutherford or Acacia or Collins Edmonds from

10:09:55  9  participating in any further efforts to bring a suit on the

10:09:57  10  '319 patent.

10:09:58  11          All these elements are established, and, in this

10:10:01  12  issue, the Court has no discretion.  Ms. Rutherford, the Acacia

10:10:06  13  people must be disqualified.  And on these facts, the Collins

10:10:11  14  Edmonds firm should be disqualified.  Thank you, Your Honor.

10:10:14  15          THE COURT:  Thank you.  We'll take about a

10:10:17  16  five-minute recess to allow the other side to set up.

10:10:20  17      (Recess)

10:17:49  18          THE COURT:  Mr. Collins, are you ready to proceed?

10:17:51  19          MR. COLLINS:  Yes, Your Honor.  Thank you.  I'm

10:17:55  20  aware -- acutely aware that the Court wants us to focus on the

10:17:58  21  facts, and I assure that the vast majority of my presentation

10:18:01  22  is going to do just that.

10:18:04  23          But I think it helps the Court to take a step back in

10:18:07  24  the beginning and look at the breadth of the relief that

10:18:13  25  Schlumberger seeks here.  It's extraordinary and unprecedented.

10:18:17  1  They want to disqualify not only Ms. Rutherford but, by

10:18:22  2  imputation, every lawyer at Acacia and its subsidiaries.  They

10:18:24  3  want to use a creative double-imputation theory to disqualify

10:18:28  4  my firm and, likely, every firm that Acacia might hire to

10:18:31  5  either enforce this patent or any patent against Schlumberger.

10:18:39  6        Now, what Schlumberger is really trying to contrive

10:18:42  7  here is a broad injunction that prevents Acacia or any of its

10:18:46  8  subsidiaries from ever suing Schlumberger on any intellectual

10:18:51  9  matter or from ever engaging any law firm to do so.

10:18:55  10        None of this is possible, Your Honor, as this court

10:19:03  11  has correctly recognized, unless Schlumberger can get past the

10:19:06  12  threshold test:  Is something that Ms. Rutherford worked on

10:19:09  13  while she was at Schlumberger substantially related to the

10:19:15  14  specific issues in this patent case?

10:19:21  15        Now, we were prepared to discuss the allegations in

10:19:25  16  the state court litigation because they are relevant here.  And

10:19:28  17  I don't want to belabor this because I know the Court has

10:19:31  18  copies of the state court petition.  It can compare the

10:19:34  19  paragraphs 11, 12, 25, 26, 27, 28, and 29.

10:19:39  20        But if you put the state court petition side by side

10:19:45  21  against the motion to disqualify counsel, the Court will see

10:19:51  22  that the conclusory allegations in there are the same ones that

10:19:56  23  they allege here, the same allegations that Judge Sandill

10:20:00  24  dismissed when he dismissed every cause of action they alleged

10:20:04  25  against Ms. Rutherford in state court except for Schlumberger's

10:20:08  1   breach of contract claims.  And not only did he dismiss their

10:20:12  2   causes of action.  He sanctioned Schlumberger and awarded

10:20:16  3   attorneys' fees to the tune of $600,000.

10:20:22  4          Schlumberger was able to depose Ms. Rutherford twice,

10:20:26  5   once with Judge Sandill in attendance.  And that's important

10:20:29  6   because Schlumberger in the state court case was never able to

10:20:34  7   identify a single piece of confidential Schlumberger

10:20:38  8   information that had been taken or was known by Ms. Rutherford.

10:20:44  9   Undeterred, Schlumberger now comes to this court with the same

10:20:49  10  discredited allegations and the guise of a motion the

10:20:53  11  disqualify everybody associated with her.

10:20:56  12         Now, the test, as the Court is aware, is a simple

10:21:04  13  one.  Does -- is there something about Ms. Rutherford's past

10:21:09  14  work at Schlumberger that's substantially related to her

10:21:14  15  alleged work in the patent case?  Here Schlumberger has failed

10:21:20  16  to identify, just as it did in the state court case, any

10:21:25  17  specific piece of confidential information that Ms. Rutherford

10:21:31  18  learned while at Schlumberger that is related to the current

10:21:35  19  patent case.  And that should be the end of the inquiry.

10:21:41  20         Now, Mr. Grant spent quite a bit of time this morning

10:21:47  21  discussing the law.  And I'm prepared to do that, but I don't

10:21:50  22  want to belabor it because I do want to get on to the facts.

10:21:54  23  At the outset, I note that Schlumberger only cites to the

10:21:59  24  Fifth Circuit's articulation of the substantial relationship

10:22:05  25  test, the *American Airlines* case.  And that's the only law they

| | | |
|---|---|---|
| 10:22:08 | 1 | discuss. |
| 10:22:09 | 2 | But if you read our briefing, you'll know that it's |
| 10:22:13 | 3 | Ms. Rutherford's position and Dynamic 3D's position that Texas |
| 10:22:18 | 4 | law should govern, that Ms. Rutherford was a Texas lawyer |
| 10:22:22 | 5 | working in Texas on a transactional matter when she was |
| 10:22:29 | 6 | deciding whether to -- whether she was participating in the |
| 10:22:33 | 7 | decision as to whether to acquire the '319 patent. |
| 10:22:39 | 8 | And to the extent she can be said to be practicing |
| 10:22:42 | 9 | law in her current job at Acacia, it doesn't involve |
| 10:22:46 | 10 | representing Acacia in any federal court.  She's not on the |
| 10:22:49 | 11 | pleadings in this case.  She hasn't been admitted *pro hac vice*. |
| 10:22:54 | 12 | She's not even admitted to practice in the Western District of |
| 10:22:56 | 13 | Texas. |
| 10:22:57 | 14 | But let's look at Fifth Circuit law.  Assume that it |
| 10:23:03 | 15 | does apply.  The *American Airlines* case is very clear, and it |
| 10:23:11 | 16 | has nothing to do with presumptions.  What it says is that a |
| 10:23:15 | 17 | substantial relationship may be found only after Schlumberger |
| 10:23:24 | 18 | delineates with specifity -- with specifity the subject |
| 10:23:27 | 19 | matters, issues, and causes of action common to the current and |
| 10:23:29 | 20 | prior representations.  And then the Court has to engage in a |
| 10:23:32 | 21 | painstaking analysis of the facts and a precise application of |
| 10:23:38 | 22 | precedent. |
| 10:23:39 | 23 | THE COURT:  Believe me, it's already been painful. |
| 10:23:42 | 24 | We'll get to the staking part. |
| 10:23:44 | 25 | MR. COLLINS:  I have no doubt, because it was painful |

10:23:46  1  even writing the briefs, Your Honor.

10:23:49  2          Now, this is what Schlumberger has to prove.  This is

10:23:52  3  their burden of proof.  The *American Airlines* case has nothing

10:23:56  4  to do with imputation of Ms. Rutherford's conflict, if she has

10:24:00  5  one, to other lawyers at Acacia or anyone in my firm.  That's

10:24:07  6  what Judge Sparks was discussing in the *NOV v. Omron* case, and

10:24:12  7  we'll get to that in a moment.

10:24:19  8          As the Court has recognized, there is a difference

10:24:22  9  between disqualification in a standard commercial case and

10:24:28  10  disqualification in the context of patent litigation.  The

10:24:32  11  Federal Circuit is going to be guided, if it comes to that, by

10:24:38  12  the cases that deal specifically with disqualification in the

10:24:42  13  patent context.

10:24:45  14          And the cases that we've cited in our briefing show

10:24:47  15  the painstaking analysis of facts and the legal issues that the

10:24:51  16  courts undertake when determining disqualification in the

10:24:56  17  context of patent litigation.  For example, the *Biax* case in

10:25:03  18  the Eastern District of Texas, the court found that two patent

10:25:06  19  infringement representations involving server technology and

10:25:08  20  server architecture were not substantially related because the

10:25:13  21  purported link between the technologies was too broad.

10:25:15  22          In the *Power MOSFET* case in the Eastern District of

10:25:19  23  Texas, the court found that two patent infringement

10:25:22  24  representations involving the same type of semiconductor device

10:25:25  25  were not substantially related.  The court did a survey of the

10:25:29  1  case law of the substantial relationship test in the patent

10:25:34  2  context and found that the relevant factors that courts

10:25:37  3  consider are whether there are factual similarities between the

10:25:41  4  two representations, whether the legal questions posed are

10:25:45  5  similar, and the nature and extent of the attorney's

10:25:49  6  involvement in the former representation.

10:25:53  7          So that gets us to the question the court has to

10:25:56  8  answer.  Is something that Ms. Rutherford did at Schlumberger

10:26:02  9  substantially related to the work she has allegedly performed

10:26:04  10 in connection with Dynamic 3D's patent case against

10:26:08  11 Schlumberger?  The answer is no.

10:26:11  12         And at the outset, the Court should take note that

10:26:15  13 Schlumberger has never been able to identify with any

10:26:18  14 specificity any confidential information that Ms. Rutherford

10:26:23  15 learned at Schlumberger.  They failed to establish that

10:26:28  16 Ms. Rutherford had ever heard of the '319 patent when she was

10:26:32  17 at Schlumberger.  Certainly that would be relevant to the

10:26:36  18 substantial relationship analysis.  They failed to show that

10:26:39  19 Ms. Rutherford had any confidential information relating to

10:26:43  20 Schlumberger's product, Petrel that could have been used in the

10:26:47  21 '319 litigation.  And Schlumberger's own actions in this court

10:26:53  22 demonstrate that all of the technology relevant to infringement

10:26:56  23 is publicly available.  And contrary to what Schlumberger says,

10:27:00  24 that does make a difference.

10:27:03  25         Now, Schlumberger explained -- failed to explain in

| | | |
|---|---|---|
| 10:27:07 | 1 | state court why any information that she might have learned at |
| 10:27:11 | 2 | Schlumberger is legally or factually connected to the issues |
| 10:27:15 | 3 | presented in this litigation.  The best that Schlumberger could |
| 10:27:20 | 4 | muster is that Ms. Rutherford was exposed to Petrel when she |
| 10:27:25 | 5 | was at Schlumberger.  But that's not enough to infect her with |
| 10:27:28 | 6 | any confidential information that would implicate the |
| 10:27:30 | 7 | substantial relationship test. |
| 10:27:33 | 8 | Recall that last week Mr. Beardsell, in this court, |
| 10:27:37 | 9 | demonstrated the critical technical features of the '319 patent |
| 10:27:44 | 10 | but he used Petrel to do it.  He showed all of those patented |
| 10:27:47 | 11 | features using a version of Petrel in open court and in front |
| 10:27:51 | 12 | of five of Schlumberger's competitors. |
| 10:27:55 | 13 | THE COURT:  Well, here is what I need you to address. |
| 10:27:58 | 14 | Everything you say is fine and good, but *American Airlines* |
| 10:28:02 | 15 | appears to say -- and I'm aware that I'm in the Fifth Circuit, |
| 10:28:08 | 16 | so I can't dismiss a Fifth Circuit case as readily as you argue |
| 10:28:13 | 17 | me to do so.  *American Airlines* appears not to focus or even |
| 10:28:21 | 18 | care about what was actually known.  It just creates |
| 10:28:26 | 19 | rebuttable -- irrebuttable presumptions.  And if it's an |
| 10:28:31 | 20 | irrebuttable presumption and I find that *American Airlines* |
| 10:28:34 | 21 | controls in this case, then tell me how I get to any of these |
| 10:28:39 | 22 | actual knowledge facts that you're saying that she didn't have. |
| 10:28:45 | 23 | MR. COLLINS:  Because the whole theory underlying the |
| 10:28:50 | 24 | substantial relationship test is preserving the client's |
| 10:28:54 | 25 | confidences.  And if there's nothing confidential in the prior |

```
10:28:58   1   relationship, it doesn't matter.
10:29:00   2           THE COURT:  Well, tell me what either Fifth Circuit
10:29:03   3   case or Federal Circuit case says that.  Because whether I
10:29:11   4   apply American Airlines or not, I have to pay careful attention
10:29:15   5   to it and at least distinguish it.  So if I'm not to -- if I
10:29:21   6   accept your argument and I do not apply American Airlines as
10:29:28   7   written, what do I apply that is Circuit precedent of some
10:29:32   8   kind?
10:29:33   9           MR. COLLINS:  Your Honor, maybe I misled the Court.
10:29:37  10   I'm not arguing that --
10:29:38  11           THE COURT:  You didn't mislead me.  But you're
10:29:41  12   arguing that I get to what she knew and what she did.  And the
10:29:47  13   way I read American Airlines, that's not relevant.  Once I find
10:29:54  14   based on evidence in the record that is not specific to what
10:30:01  15   she actually did, I apply an irrebuttable presumption.
10:30:06  16           Now, what I want to hear from you is what law is
10:30:10  17   there that tells me not to do that.  What's your best case?
10:30:15  18           MR. COLLINS:  Your Honor, I don't have a case.  I'm
10:30:19  19   not going to tell the Court that I do because -- I could go do
10:30:24  20   some research, but I don't have it.
10:30:26  21           THE COURT:  Well, you've had plenty of months to do
10:30:28  22   the research.  I don't think there's anything here that the two
10:30:32  23   sides haven't thought of.  As I remarked earlier, I've got way
10:30:36  24   too much from you already.  I hope your clients are happy with
10:30:41  25   the bills on this and that it works out because I didn't need
```

10:30:45  1   what I got, but I'm not going to send you out to do

10:30:49  2   additionally search on it.

10:30:51  3          MR. COLLINS:  Well, Your Honor, if I may, I'd like to

10:30:54  4   focus on the substantial relationship test and the evidence

10:30:57  5   that Schlumberger has brought forward and maybe, more

10:31:01  6   tellingly, the evidence that Schlumberger doesn't have.  Now --

10:31:06  7          THE COURT:  Well, don't lose sight of *American*

10:31:08  8   *Airlines*, because I think *American Airlines* is a boulder out

10:31:12  9   there in your path that you need to go around some way.

10:31:17  10         MR. COLLINS:  We can do that, Your Honor.  The

10:31:22  11  *American Airlines* case, as you point out, does set out the

10:31:25  12  substantial relationship test.  Now, it also says that

10:31:29  13  Schlumberger has the burden of proof on disqualification.  So

10:31:32  14  let's look at their evidence.

10:31:34  15         Most of the evidence of what Ms. Rutherford did at

10:31:38  16  Schlumberger comes from their privilege log, but it's telling

10:31:43  17  that there's nothing here in this privilege log regarding the

10:31:47  18  '319 patent.  There's nothing about the 2011 version of Petrel

10:31:52  19  which is the one accused of infringement.  It's all about older

10:31:57  20  versions of Petrel.  There's nothing here in this privilege log

10:32:02  21  that shows she's been exposed to a reasonable royalty damage

10:32:08  22  analysis with respect to the '319 patent or Petrel.

10:32:12  23         So let's look at the privilege log, because I think

10:32:19  24  the Court is going to rightly focus on that.  Schlumberger

10:32:23  25  alleges through its privilege log that she participated in this

| | | |
|---|---|---|
| 10:32:28 | 1 | Goldstar project from January to August of 2007, but that was |
| 10:32:32 | 2 | seven years ago.  And that Gold -- in that privilege log, |
| 10:32:37 | 3 | there's no mention of the '319 patent because that report was |
| 10:32:43 | 4 | prepared years before the '319 patent issue. |
| 10:32:45 | 5 | The version of Petrel in existence at that time |
| 10:32:50 | 6 | isn't -- is not accused of infringement now.  It would be years |
| 10:32:54 | 7 | before she -- Schlumberger introduced the 2011 version of |
| 10:32:58 | 8 | Petrel.  There is no showing that that report discussed any |
| 10:33:03 | 9 | particular features of Petrel. |
| 10:33:07 | 10 | The privilege log shows that the Goldstar was |
| 10:33:12 | 11 | concerned with surveying the competitive landscape for the |
| 10:33:15 | 12 | Petrel product, determining where additional patent protection |
| 10:33:18 | 13 | might be warranted or available, and planning for filing patent |
| 10:33:23 | 14 | applications on Petrel. |
| 10:33:27 | 15 | As Ms. Rutherford testified, Jenny Salazar, another |
| 10:33:31 | 16 | lawyer, was the author of the Goldstar project.  Ms. Rutherford |
| 10:33:34 | 17 | testified that all she did was set out some high-level |
| 10:33:38 | 18 | guidelines at a very general level.  There's no evidence to |
| 10:33:41 | 19 | suggest that Ms. Rutherford was involved in -- in any kind of |
| 10:33:47 | 20 | work related to the preparation of the Goldstar reports. |
| 10:33:51 | 21 | Now, while there apparently is a reference in one of |
| 10:33:55 | 22 | these documents to Austin Geo's RECON software, along with |
| 10:33:58 | 23 | numerous others, it's important to remember that the Goldstar |
| 10:34:02 | 24 | predates the issuance of the patent at issue here by four |
| 10:34:06 | 25 | years.  It predated Ms. Rutherford's employment at Acacia by |

| | | |
|---|---|---|
| 10:34:11 | 1 | six years.  And as we've seen under the model rules, the |
| 10:34:15 | 2 | passage of time is a strong factor mitigating against a finding |
| 10:34:19 | 3 | of a substantial relationship based on Goldstar. |
| 10:34:23 | 4 | There's no evidence -- and this is very important -- |
| 10:34:26 | 5 | that anything in the Goldstar project was concerned with the |
| 10:34:30 | 6 | issue of whether Schlumberger -- whether Patrel Schlumberger -- |
| 10:34:34 | 7 | Schlumberger's Petrel product infringed anyone else's patent. |
| 10:34:39 | 8 | There's no evidence that Petrel was compared to any patent, |
| 10:34:43 | 9 | much less the '319 patent, to determine whether it might |
| 10:34:47 | 10 | infringe.  What else is in the privilege log? |
| 10:34:50 | 11 | Well, there's Ms. Rutherford's alleged participation |
| 10:34:54 | 12 | in the Canadian copyright suit involving Patrel in 2006 and |
| 10:35:00 | 13 | 2007, but that was a software piracy case.  Schlumberger was |
| 10:35:06 | 14 | seeking a temporary restraining order for unauthorized copying |
| 10:35:10 | 15 | of the software and selling it to others. |
| 10:35:12 | 16 | There is no commonality of legal and factual issues |
| 10:35:16 | 17 | between a copyright infringement suit where Schlumberger's |
| 10:35:21 | 18 | alleging copyright infringement and a patent infringement suit |
| 10:35:25 | 19 | where a Schlumberger product, like Petrel, is accused of patent |
| 10:35:30 | 20 | infringement. |
| 10:35:32 | 21 | In a software case someone had made an unauthorized |
| 10:35:34 | 22 | copy.  Schlumberger wanted to be paid.  The issues are fairly |
| 10:35:39 | 23 | simple.  Did the defendant make an authorized copy of the |
| 10:35:40 | 24 | software?  How many copies were made?  What was the unit price |
| 10:35:45 | 25 | of software because, for damages, the plaintiff gets to recover |

10:35:47  1   the value of a lost sale.

10:35:49  2           The issues in this patent case are completely

10:35:57  3   different.  The threshold issue is what do the claims of

10:36:01  4   Dynamic 3D's '319 patent mean.  Does Petrel infringe the '319

10:36:06  5   patent?  The version of Petrel involved in the copyright suit

10:36:11  6   is not accused of infringement here.  Is the '319 patent valid

10:36:15  7   and enforceable?  What would be a reasonable royalty for the

10:36:19  8   use of the '319 patent?

10:36:22  9           And it's important to note here that there aren't any

10:36:24  10  similarities between the remedies and the distinct areas of law

10:36:29  11  in copyright and patent.  In patent cases, as the Court's

10:36:33  12  aware, a reasonable royalty -- royalty analysis is performed by

10:36:41  13  the trier of fact.  They look at the Georgia-Pacific factors

10:36:44  14  with the aid of expert testimony and determine how a

10:36:47  15  hypothetical negotiation between a willing licensee and a

10:36:50  16  willing licensor might come out.  The reasonable royalty value

10:36:54  17  of damages has to be tied to the value of the patented

10:36:59  18  features, not the price of the infringing product.

10:37:01  19          So the damages analysis in a patent case is

10:37:05  20  completely different from the damages analysis in a copyright

10:37:09  21  case.  Other than the word "Petrel," Schlumberger's Canadian

10:37:15  22  software piracy case and the patent litigation before this

10:37:18  23  Court have nothing in common.

10:37:20  24          Now, there's no evidence that Ms. Rutherford learned

10:37:25  25  any technical details about how the early version of Petrel

10:37:29  1  worked or had any exposure to the source code.  The source code

10:37:34  2  is not even an issue here.  And the version of Petrel that is

10:37:44  3  accused in this suit is not the older non-infringing version

10:37:47  4  that was at issue in the copyright case.

10:37:50  5          The *Power MOSFET* case out of the Eastern District of

10:37:54  6  Texas is very instructive here.  The court found two successive

10:37:58  7  patent litigation cases on the same time of semiconductor

10:38:04  8  device were not related.  So how is a case in which

10:38:09  9  Schlumberger is asserting software piracy even remotely related

10:38:13  10  to a case six years later where Schlumberger accused of

10:38:17  11  infringing a patent that did not exist at the time of the

10:38:20  12  earlier representation?

10:38:24  13          Now, Ms. Rutherford was also allegedly copied on

10:38:27  14  three e-mails discussing the possibility of filing an

10:38:32  15  intellectual property suit related to Petrel.  But, again, that

10:38:38  16  was an older infringing version of Petrel that's irrelevant to

10:38:41  17  this suit.  There's no evidence Ms. Rutherford was given any

10:38:44  18  confidential information related to the issues here.  There's

10:38:46  19  no evidence that the potential suit was related to a patent.

10:38:50  20  There's no evidence the suit was filed or that she participated

10:38:52  21  in a lawsuit in any way.  Schlumberger was considering filing a

10:38:58  22  suit, not defending one.

10:39:00  23          According to the privilege log, she added some

10:39:04  24  comments to a draft settlement agreement in July of 2008.

10:39:07  25  Well, what was the draft settlement agreement related to?  Was

10:39:13   1   it related to a patent case?  Was it related to a commercial

10:39:16   2   litigation case?  There's no evidence that it involved a patent

10:39:19   3   or that it involved Petrel.  She saved a document related to IP

10:39:26   4   protection for Petrel in August of 2008.  Well, what kind of

10:39:29   5   protection?  Was it copyright protection? trade secret

10:39:33   6   protection? trademark protection?  And intellectual property

10:39:36   7   protection of a product involves completely different legal

10:39:40   8   issues than those involved in defending the product against

10:39:45   9   claims that it infringes someone else's patent.

10:39:47  10        She participated in three discussions in 2009

10:39:50  11   according to the privilege log about the opportunity to license

10:39:54  12   Petrel to other parties.  But that was an older non-infringing

10:40:01  13   version of Petrel that isn't accused of infringement in this

10:40:05  14   case.  There's no showing that that presentation contained any

10:40:08  15   confidential information -- or any information that's relevant

10:40:12  16   to this litigation or even remotely related.

10:40:17  17        There's no allegation that the potential licensing

10:40:20  18   has any connection to any litigation.  There's no allegation

10:40:25  19   that the licensing involved patent licensing.  It could have

10:40:28  20   been a completely different type of license.  It appears to

10:40:32  21   involve out-licensing as opposed to Schlumberger licensing

10:40:37  22   somebody else's technology.  It has no relevance to what a

10:40:42  23   reasonable royalty would be for the '319 patent because, as

10:40:45  24   we've explained, that's a completely different analysis than

10:40:50  25   licensing in other contexts.

| | | |
|---|---|---|
| 10:40:54 | 1 | Any royalty analysis that would be relevant to the |
| 10:40:56 | 2 | '319 patent would have to focus on the specific features |
| 10:40:59 | 3 | patented.  Apparently she provided some drafts -- some edits to |
| 10:41:05 | 4 | a draft settlement agreement in January of 2009.  But a draft |
| 10:41:10 | 5 | settlement agreement related to what kind of case?  Was it a |
| 10:41:15 | 6 | patent case?  Did it involve Petrel?  There's no indication |
| 10:41:22 | 7 | that it did. |
| 10:41:22 | 8 | Allegedly she sent an e-mail attaching slides which |
| 10:41:25 | 9 | summarized a Schlumberger monetization program in December of |
| 10:41:29 | 10 | 2009.  But that's related to the offensive use of |
| 10:41:34 | 11 | Schlumberger's IP.  It doesn't particularly or appear to relate |
| 10:41:39 | 12 | to Petrel.  And there's no relationship.  It has no |
| 10:41:44 | 13 | relationship to how Schlumberger would defend a patent |
| 10:41:47 | 14 | infringement suit against it. |
| 10:41:49 | 15 | And what company that owns patents doesn't try to |
| 10:41:51 | 16 | monetize them.  Is Schlumberger saying you can never work on |
| 10:41:56 | 17 | monetization of a patent?  If you've done that as a lawyer |
| 10:41:58 | 18 | there, that you can't ever represent another client in |
| 10:42:04 | 19 | monetization? |
| 10:42:04 | 20 | Apparently, Ms. Rutherford authored some slides in |
| 10:42:07 | 21 | January of 2011 discussing Schlumberger's IP strategy, but |
| 10:42:11 | 22 | there's no evidence it involved Petrel or even patents.  No |
| 10:42:16 | 23 | evidence it involved any analysis of whether any Schlumberger |
| 10:42:19 | 24 | product, including Petrel, might infringe someone else's |
| 10:42:22 | 25 | patents. |

```
10:42:23   1              And under the ABA model rule, comment 1.9 and comment
10:42:29   2    3, which we cite in our brief:  General knowledge of the
10:42:33   3    client's policies and practices -- in this case, Schlumberger's
10:42:38   4    general IP strategy -- ordinarily would not preclude a
10:42:41   5    subsequent representation.
10:42:44   6              Ms. Rutherford was allegedly copied on an e-mail
10:42:47   7    which attaches a slide containing a reference to results of a
10:42:50   8    Petrel IP analysis and designating Petrel for continued
10:42:55   9    monitoring in December of 2012, but there's no evidence she
10:42:58  10    performed any analysis or there's no evidence that there was
10:43:03  11    any kind of patent -- related analysis.
10:43:07  12              No mention of Austin GeoModeling.  No mention of the
10:43:11  13    '319 patent.  According to the privilege log, she was copied on
10:43:16  14    an e-mail attaching Patrel-related patent memoranda and an
10:43:21  15    invention disclosure in December of 2012.  But there's no
10:43:25  16    evidence she had anything to do with the invention disclosure
10:43:28  17    or did anything with it.
10:43:31  18              This e-mail pertains to the possibility of obtaining
10:43:34  19    protection for Petrel, and there's no evidence that this
10:43:41  20    undisclosed aspect of Petrel that they were trying to patent or
10:43:45  21    thought about patenting had anything to do with the specific
10:43:48  22    features that are at issue in the '319 patent litigation.
10:43:54  23              Finally, the privilege log shows that Ms. Rutherford
10:43:57  24    allegedly responded to an e-mail request from her boss,
10:44:02  25    Alex Juden, to discuss the filing of an intellectual property
```

| | | |
|---|---|---|
| 10:44:07 | 1 | lawsuit in January of 2013.  But what kind of intellectual |
| 10:44:13 | 2 | property lawsuit?  Was it a patent lawsuit?  They would have |
| 10:44:16 | 3 | said so if it was.  Did it have anything do with Petrel?  No |
| 10:44:20 | 4 | indication of that.  How can this be substantially related to |
| 10:44:26 | 5 | the issues in the present lawsuit? |
| 10:44:29 | 6 | What is telling here, Your Honor, is what is missing |
| 10:44:33 | 7 | from Schlumberger's evidence.  What would allow them to perhaps |
| 10:44:36 | 8 | carry the day on the substantial relationship test?  There's no |
| 10:44:40 | 9 | evidence that Charlotte Rutherford was ever aware of the '319 |
| 10:44:45 | 10 | patent during her tenure at Schlumberger. |
| 10:44:48 | 11 | There's no evidence that she ever performed any kind |
| 10:44:51 | 12 | of analysis of whether the '319 patent was infringed, whether |
| 10:44:56 | 13 | it was valid, whether it was enforceable, or what a reasonable |
| 10:45:00 | 14 | royalty would be for the use of the patent.  There's no |
| 10:45:05 | 15 | evidence that she ever participated in defending any patent |
| 10:45:08 | 16 | infringement suit related to Petrel while she was at |
| 10:45:13 | 17 | Schlumberger. |
| 10:45:16 | 18 | In short, there's no evidence of any kind that would |
| 10:45:19 | 19 | establish a substantial relationship between the work |
| 10:45:22 | 20 | Ms. Rutherford did at Schlumberger and the issues in this |
| 10:45:28 | 21 | patent infringement lawsuit. |
| 10:45:33 | 22 | What is very telling here, Your Honor, is that they |
| 10:45:35 | 23 | submit no declarations of any kind from anyone at Schlumberger |
| 10:45:43 | 24 | detailing what confidential information Ms. Rutherford has that |
| 10:45:46 | 25 | would be relevant to the patent case. |

| | | |
|---|---|---|
| 10:45:48 | 1 | THE COURT:  But if the Court is compelled to apply |
| 10:45:51 | 2 | *American Airlines*, isn't that exactly what *American Airlines* |
| 10:45:54 | 3 | says need not be produced in a removal of counsel argument? |
| 10:46:01 | 4 | MR. COLLINS:  It doesn't have to be produced, but |
| 10:46:04 | 5 | they do have to delineate with specificity, Your Honor, what |
| 10:46:10 | 6 | she worked on at Schlumberger and how that is specifically |
| 10:46:17 | 7 | relevant to the issues in the patent case.  And that's what |
| 10:46:21 | 8 | they failed to do. |
| 10:46:22 | 9 | Your Honor, Schlumberger's analysis also fails to |
| 10:46:37 | 10 | take into account Ms. Rutherford's duties in Schlumberger's |
| 10:46:42 | 11 | legal department.  They were managerial and supervisory.  And |
| 10:46:47 | 12 | under the ABA formal opinion 99415, which we cite in our brief, |
| 10:46:53 | 13 | a general knowledge of Schlumberger's strategies and policies |
| 10:46:57 | 14 | and personnel wouldn't be enough to establish a substantial |
| 10:47:00 | 15 | relationship between the current patent case and the work she |
| 10:47:03 | 16 | performed in Schlumberger's legal department.  General |
| 10:47:08 | 17 | supervisory responsibility would not be enough to establish |
| 10:47:10 | 18 | that Ms. Rutherford represented Schlumberger in a particular |
| 10:47:13 | 19 | matter even if it was the same as or substantially related to |
| 10:47:18 | 20 | the patent case. |
| 10:47:22 | 21 | So, in summary, there aren't any legal issues that |
| 10:47:26 | 22 | are common in Ms. Rutherford's work at Schlumberger and the |
| 10:47:30 | 23 | present patent litigation, and the only factual similarity |
| 10:47:33 | 24 | begins and ends with the word "Petrel." |
| 10:47:37 | 25 | Under Texas law Schlumberger has failed to show that |

10:47:41  1  the factual matters involved in Ms. Rutherford's work at

10:47:44  2  Schlumberger are so related to the facts in the pending patent

10:47:49  3  litigation that it creates a genuine threat that confidences

10:47:55  4  revealed to Ms. Rutherford would be divulged.  And under the

10:47:59  5  Fifth Circuit standard, the *American Airlines* standard,

10:48:03  6  Schlumberger has failed to meet its burden of delineating with

10:48:08  7  specificity the subject matters, issues, and causes of action

10:48:12  8  common to the prior and current representation.

10:48:15  9      The Court doesn't even need to reach the issue of

10:48:18  10  whether to disqualify Mr. Fischman and the other lawyers at

10:48:24  11  Acacia or the lawyers in my firm.

10:48:28  12      Now, even if the Court were to disqualify

10:48:31  13  Ms. Rutherford, that conflict shouldn't be irrebuttably imputed

10:48:36  14  to every lawyer that works for Acacia or one of its

10:48:39  15  subsidiaries.  That's not the law in the Fifth Circuit case,

10:48:43  16  and that's what Judge Sparks was setting forth in the *NOV v.*

10:48:48  17  *Omron* case.

10:48:50  18      At the outset I'd like to note that Schlumberger

10:48:54  19  ignores the special role that is played by in-house counsel,

10:48:58  20  particularly at a large company like Acacia.  It's got over a

10:49:02  21  billion of capitalization.  Acacia's business is acquiring and

10:49:07  22  licensing patents.  It naturally employs a large number of

10:49:11  23  patent lawyers in a variety of capacities.  Some of the

10:49:13  24  capacities are business; some of them are legal.  Most of it's

10:49:17  25  licensing executives, like Mr. Fischman, are lawyers.

| | | |
|---|---|---|
| 10:49:21 | 1 | Mr. Fischman is responsible for managing the Austin GeoModeling |
| 10:49:26 | 2 | patent portfolio that's now owned by Dynamic 3D Geo. |
| 10:49:31 | 3 | Other licensing executives have other |
| 10:49:33 | 4 | responsibilities.  They're responsible for other portfolios |
| 10:49:37 | 5 | that are completely unrelated.  They're owned by other |
| 10:49:40 | 6 | subsidiaries of Acacia.  There's no evidence that any of them |
| 10:49:43 | 7 | have any involvement with Dynamic 3D and the '319 patent. |
| 10:49:47 | 8 | Like many in-house lawyers, the lawyers who work at |
| 10:49:51 | 9 | Acacia, as I said before, perform dual functions.  Many of them |
| 10:49:57 | 10 | are strictly business lawyers.  Should they be disqualified as |
| 10:50:01 | 11 | well?  Are they part of this one big law firm concept that |
| 10:50:07 | 12 | Schlumberger advocates? |
| 10:50:08 | 13 | Now, Schlumberger's disqualification theory relies on |
| 10:50:13 | 14 | this conclusory allegation that Acacia functions as one big law |
| 10:50:19 | 15 | firm, but Schlumberger's offered no evidence whatsoever that |
| 10:50:22 | 16 | Acacia even has a corporate legal department, much less one |
| 10:50:25 | 17 | that operates as a single law firm.  The patent portfolios and |
| 10:50:31 | 18 | the subsidiaries to which they are assigned are separate profit |
| 10:50:36 | 19 | centers. |
| 10:50:37 | 20 | And the relief that Schlumberger is requesting here |
| 10:50:41 | 21 | is literally without precedent.  They're trying to disqualify |
| 10:50:44 | 22 | every lawyer employee at Acacia, and Schlumberger doesn't cite |
| 10:50:47 | 23 | a single case in the briefing where a court has imputed a |
| 10:50:50 | 24 | conflict among in-house lawyers employed by a corporation.  And |
| 10:50:55 | 25 | Mr. Burton when he testified couldn't cite any case.  The |

10:50:59  1   *Honeywell* case which is cited by Schlumberger is

10:51:03  2   distinguishable on the facts because it doesn't even deal with

10:51:07  3   the disqualification of in-house counsel at all.

10:51:11  4          Now, Judge Sparks got it right.  The *NOV* case doesn't

10:51:20  5   have anything to do with whether Ms. Rutherford should be

10:51:26  6   disqualified.  It deals with whether the conflict that a lawyer

10:51:32  7   has should be irrebuttably presumed to have been shared --

10:51:38  8   well, here's what -- here's what Judge Sparks said.  Let me

10:51:43  9   back up.  Under Fifth Circuit precedent, there is no

10:51:51  10  established irrebuttable presumption that a lawyer shares

10:51:55  11  client confidences he possesses with other lawyers at his law

10:51:59  12  firm.

10:51:59  13         And after a close examination of the facts and

10:52:04  14  circumstances of the case, along with the equitable

10:52:06  15  consideration, the court determined that disqualification would

10:52:10  16  be too severe a remedy to impose on NOV, disqualification of

10:52:16  17  other lawyers within the firm, especially in view of the fact

10:52:19  18  that Omron couldn't identify any prejudice it would suffer if

10:52:25  19  the other lawyers remained on the case.  And this is highly

10:52:28  20  relevant to the issue of whether the other lawyers at Acacia,

10:52:31  21  including Mr. Fischman, should be disqualified.

10:52:36  22         Dynamic 3D would suffer great harm if every lawyer in

10:52:40  23  Acacia were disqualified, if it were deprived of all of its

10:52:45  24  legal counsel.  Schlumberger hasn't identified any harm that

10:52:51  25  its going to suffer if other lawyers in Acacia are not

| | | |
|---|---|---|
| 10:52:54 | 1 | disqualified. |
| 10:52:56 | 2 | Schlumberger also ignores the very limited role that |
| 10:52:59 | 3 | Ms. Rutherford has played in the decision to acquire and |
| 10:53:02 | 4 | enforce the '319 patent.  She never denied that she played a |
| 10:53:06 | 5 | role.  She did participate in two meetings with Austin Geo and |
| 10:53:13 | 6 | the conference call where her testimony is somewhat |
| 10:53:16 | 7 | misremembered.  And we'll get to that in a minute. |
| 10:53:19 | 8 | Schlumberger -- Ms. Rutherford testified that she |
| 10:53:22 | 9 | hasn't discussed the present patent infringement case against |
| 10:53:25 | 10 | Schlumberger with anyone at Acacia and testified she's not |
| 10:53:29 | 11 | allowed to discuss such matters.  She hasn't discussed Petrel |
| 10:53:33 | 12 | with anyone at Acacia or -- or with the plaintiff.  She's |
| 10:53:38 | 13 | identified two meetings with Austin Geo and the conference call |
| 10:53:43 | 14 | where there was a PowerPoint presentation as the only two |
| 10:53:48 | 15 | meetings she's had in connection with the process of acquiring |
| 10:53:52 | 16 | the '319 patent.  At both meetings with Austin Geo, when |
| 10:53:58 | 17 | Schlumberger was mentioned, Ms. Rutherford told the |
| 10:54:01 | 18 | participants that she used to work for Schlumberger and |
| 10:54:03 | 19 | couldn't talk about Schlumberger. |
| 10:54:07 | 20 | Now, Schlumberger talks about the presentation that |
| 10:54:13 | 21 | was given in the Austin Geo meeting, and let's look at that for |
| 10:54:20 | 22 | just a moment.  Hopefully this will work.  Here we go.  This is |
| 10:54:32 | 23 | the executive summary prepared for Acacia at that meeting.  It |
| 10:54:35 | 24 | was prepared by Robin Dommisse and Tron Isaksen, the two |
| 10:54:42 | 25 | inventors, the two co-founders of Austin GeoModeling. |

10:54:46  1  Ms. Rutherford didn't prepare this, and no one at Acacia

10:54:48  2  prepared this.

10:54:49  3       Let's look.  There is a slide that deals with

10:54:51  4  Schlumberger market size.  This didn't come from

10:54:54  5  Ms. Rutherford.  It didn't come from anybody at Acacia.  This

10:54:58  6  was Austin GeoModeling's work.  They were trying to sell Acacia

10:55:06  7  on the idea of acquiring the patent.

10:55:09  8       The Schlumberger revenue, this is not something that

10:55:13  9  Ms. Rutherford came up with.  It's not something she provided.

10:55:17  10  She sat in a presentation.  And when she saw this slide come

10:55:20  11  up, this -- this was Austin GeoModeling's work.  When she saw

10:55:27  12  this slide come up, what did she do?  She told the

10:55:31  13  participants, I used to work for Schlumberger, and I can't talk

10:55:35  14  about Schlumberger.  And that was the end of the conversation

10:55:38  15  about Schlumberger.  There was no further conversation about

10:55:41  16  Schlumberger at either meeting.  Her deposition testimony is

10:55:44  17  unequivocal on that.

10:55:47  18       Now, at the conference call, where the presentation

10:55:53  19  recommending acquisition of the '319 patent was made to

10:55:57  20  Mr. Vella, before Schlumberger was to be discussed, she dropped

10:56:02  21  from the conference call and didn't rejoin it.  She wasn't

10:56:05  22  involved in any due diligence related to the validity of the

10:56:09  23  '319 patent.  She wasn't involved in negotiation or approval of

10:56:14  24  the terms of the deal acquiring the '319 patent, and she didn't

10:56:18  25  have any knowledge of the financial arrangements of that deal.

10:56:23  1        Now, Schlumberger also ignores the un-controverted

10:56:27  2  evidence that Ms. Rutherford played no role in the decision to

10:56:32  3  sue Schlumberger.  There's not a shred of evidence that she

10:56:35  4  participated in that decision other than the concurrence, other

10:56:39  5  than saying, I concur with the recommendation made by others.

10:56:43  6  That's it.  And there's no evidence that Ms. Rutherford plays

10:56:49  7  any kind of meaningful role in the ongoing patent litigation

10:56:53  8  against Schlumberger.

10:57:14  9        Now, Schlumberger put up this e-mail, and they say

10:57:16  10  this evidence that she was heavily involved in the decision to

10:57:19  11  sue Schlumberger and heavily involved in the process of

10:57:24  12  deciding whether to acquire the '319 patent.  We're not

10:57:28  13  debating that she had some involvement in the process of

10:57:34  14  evaluating the '319 patent.

10:57:36  15        But look at this e-mail.  Ms. Rutherford is the

10:57:42  16  recipient of draft versions of the complaints against

10:57:48  17  Schlumberger and Halliburton on January 29th.  What does she

10:57:52  18  say in response?  "Thanks, Gary.  Good job.  Please extend my

10:57:56  19  thanks."  Does this indicate she approved the complaint?  No,

10:58:01  20  there's nothing in the record.  Did she review it?  Nothing in

10:58:04  21  the record there.  She testified she didn't.  Did she make any

10:58:08  22  change to it?  No.  This draft complaint is identical to the

10:58:12  23  one that was actually filed a few days later.

10:58:27  24        Another e-mail, November 15th.  After the decision

10:58:33  25  had been made to acquire the '319 patent, Mr. Vella confirmed

10:58:38  1   it in an e-mail that Ms. Rutherford was copied on.  Is this a

10:58:42  2   communication with Collins Edmonds?  Is it a substantive

10:58:47  3   communication of any kind?  She doesn't say anything here.

10:58:52  4   She's just copied.  It doesn't evidence any participation.

10:58:58  5   It's more of an FYI kind of thing.

10:59:06  6           The Rutherford privilege log.  Schlumberger claims

10:59:09  7   that Ms. Rutherford's privilege log shows she was heavily

10:59:15  8   involved in Acacia's pre-suit assessment of potential damages.

10:59:20  9   The Privilege log entries show, at most, she was copied on work

10:59:24  10  product estimating the potential damages that might be

10:59:28  11  recoverable.  There's no entry that shows she performed any of

10:59:31  12  this analysis or contributed anything to the analysis.  It

10:59:39  13  shows that she was copied on correspondence that mention a

10:59:41  14  number of things related to damages.  That's all.  These were

10:59:43  15  bundled together for a number of potential defendants.  And

10:59:48  16  it's telling that no communication ever comes back from her.

10:59:54  17          Schlumberger says that Mr. Fischman routinely

10:59:57  18  forwarded e-mails that he received from my firm.  One that we

11:00:02  19  just saw forwards the draft complaints.  Another one forwards a

11:00:07  20  filed Haliburton complaint.  Another forwards the Schlumberger

11:00:10  21  complaint after it was filed.  And the most she ever has to say

11:00:16  22  is the "thank you" and the "good job."

11:00:18  23          The privilege log lists two more e-mails from my firm

11:00:22  24  that were forwarded by Gary Fischman to Ms. Rutherford.  One

11:00:27  25  was a comment about the assignment of the case to the court.

11:00:32  1  The other was a request from Mr. Wingard for an extension of
11:00:35  2  time to respond to the complaint.  There's no evidence that she
11:00:40  3  ever responded to either of these, and five e-mails hardly
11:00:44  4  establish a routine of Mr. Fischman forwarding correspondence
11:00:48  5  to Ms. Rutherford.  They don't establish any meaningful
11:00:55  6  participation by Ms. Rutherford in this litigation.  At best,
11:00:59  7  they're FYI communications.
11:01:03  8          As we said at the outset, the relief sought by
11:01:06  9  Schlumberger, which is disqualification of every lawyer
11:01:09  10  employee of Acacia is unwarranted and it's extreme.  It results
11:01:12  11  in extreme prejudice to Dynamic 3D because it's going to
11:01:15  12  deprive Dynamic 3D of all in-house counsel that could help it
11:01:22  13  prosecute any lawsuit against Schlumberger.  That result is not
11:01:30  14  supported by any case law, and this Court should resist
11:01:33  15  Schlumberger's invitation to order it.
11:01:37  16          Now, with respect to disqualification of outside
11:01:40  17  counsel, Schlumberger realizes it doesn't have any evidence
11:01:45  18  that Ms. Rutherford has communicated any confidential
11:01:49  19  information of Schlumberger to my firm.  Schlumberger has no
11:01:55  20  choice but to come up with this creative double-imputation
11:01:58  21  theory that is completely contrary to the black letter law of
11:02:01  22  the Fifth Circuit and is based on a creativeness interpretation
11:02:05  23  of Texas state law.
11:02:08  24          The threshold issue is whether Ms. Rutherford is even
11:02:11  25  cocounsel with my firm.  And on the facts, the answer is no.

| | | |
|---|---|---|
| 11:02:17 | 1 | She doesn't appear on any of the pleadings.  She hasn't entered |
| 11:02:20 | 2 | an appearance in this case.  She hasn't meaningfully |
| 11:02:24 | 3 | participated in Dynamic 3D's patent case against Schlumberger. |
| 11:02:28 | 4 | Her un-controverted testimony is that all communications |
| 11:02:32 | 5 | between Schlumberger -- I mean, between Dynamic 3D and my firm |
| 11:02:36 | 6 | are handled by Gary Fischman.  He's the only person at Acacia |
| 11:02:41 | 7 | who interacts with my firm on all of the '319 patent cases, |
| 11:02:46 | 8 | including the one against Schlumberger. |
| 11:02:50 | 9 |         Now, assuming for the sake of argument that the Court |
| 11:02:52 | 10 | somehow does find -- |
| 11:02:54 | 11 |         THE COURT:  Well, stop right there for a minute. |
| 11:02:56 | 12 | Isn't there some evidence of interaction with your firm in the |
| 11:02:59 | 13 | e-mails about having reviewed the complaint and having been |
| 11:03:02 | 14 | involved with checking the complaint out and commenting on the |
| 11:03:05 | 15 | complaint?  That's some involvement in this case. |
| 11:03:09 | 16 |         MR. COLLINS:  But it's not directly with me, |
| 11:03:11 | 17 | Your Honor.  That's the point.  She forwarded something -- I |
| 11:03:13 | 18 | forwarded draft complaints to Mr. Fischman.  Unbeknownst to me, |
| 11:03:18 | 19 | Mr. Fischman forwarded them to Ms. Rutherford, but nothing ever |
| 11:03:21 | 20 | came back from her.  She didn't revise the complaints, and she |
| 11:03:25 | 21 | never said anything to anybody except to Mr. Fischman.  She |
| 11:03:29 | 22 | says "thank you" and "good job." |
| 11:03:31 | 23 |         THE COURT:  Well, we kind of come back to whether |
| 11:03:34 | 24 | *American Airlines* applies and there are irrebuttable |
| 11:03:38 | 25 | presumptions that the court must engage in.  And it seems to me |

| | | |
|---|---|---|
| 11:03:42 | 1 | in *American Airlines*, if it applies, what the Fifth Circuit was |
| 11:03:47 | 2 | referring to was the issue of you don't have to get into that. |
| 11:03:54 | 3 | The Court -- the trial Court in observing this is forced to |
| 11:04:01 | 4 | follow these irrebuttable presumptions if there is a |
| 11:04:06 | 5 | substantial relationship. |
| 11:04:08 | 6 | MR. COLLINS:  Well, *American Airlines* doesn't apply |
| 11:04:12 | 7 | to the cocounsel -- the specific cocounsel disqualification |
| 11:04:17 | 8 | issue. |
| 11:04:19 | 9 | THE COURT:  I understand. |
| 11:04:19 | 10 | MR. COLLINS:  That's the *Brennan's* case. |
| 11:04:21 | 11 | THE COURT:  Yeah. |
| 11:04:22 | 12 | MR. COLLINS:  And that is binding Fifth Circuit |
| 11:04:27 | 13 | precedent that's never been overruled and never been |
| 11:04:30 | 14 | criticized, and I'm going to quote from it.  "When cocounsel |
| 11:04:35 | 15 | has not had an attorney-client relationship," distinguishing it |
| 11:04:38 | 16 | from the *American Airlines* situation. |
| 11:04:40 | 17 | THE COURT:  And give me your page number and case |
| 11:04:43 | 18 | again. |
| 11:04:44 | 19 | MR. COLLINS:  Yes, sir.  It's *Brennan's, Inc. v.* |
| 11:04:48 | 20 | *Brennan's Restaurants, Inc.* |
| 11:04:50 | 21 | THE COURT:  Right.  And what's your page cite, and |
| 11:04:52 | 22 | then give me the quote. |
| 11:04:53 | 23 | MR. COLLINS:  Yes, sir.  It's -- it's 590 F.2d 168. |
| 11:04:59 | 24 | And I think if you go to page 174, you will find what -- |
| 11:05:04 | 25 | THE COURT:  All right. |

| | | |
|---|---|---|
| 11:05:05 | 1 | MR. COLLINS:  -- what you're looking for. |
| 11:05:07 | 2 | THE COURT:  Go ahead. |
| 11:05:12 | 3 | MR. COLLINS:  Okay.  When cocounsel had not had an |
| 11:05:15 | 4 | attorney-client relationship with the disqualified lawyer's |
| 11:05:18 | 5 | former client, a different rule applies.  Disqualification is |
| 11:05:22 | 6 | warranted only when actual disclosure -- the words "actual |
| 11:05:25 | 7 | disclosure" are in there -- of the former client's confidential |
| 11:05:29 | 8 | information to cocounsel is shown.  They have to show actual |
| 11:05:33 | 9 | disclosure.  A presumption of disclosures or confidences is |
| 11:05:40 | 10 | inappropriate.  As I said, it's never been overruled, never |
| 11:05:46 | 11 | criticized. |
| 11:05:47 | 12 | There are two reasons why this case law presents a |
| 11:05:50 | 13 | huge obstacle to Schlumberger.  Schlumberger under this test |
| 11:05:56 | 14 | has to come forward with evidence that Ms. Rutherford has |
| 11:06:03 | 15 | actually shared Schlumberger's confidential information with my |
| 11:06:07 | 16 | firm, and it has to be information that would be relevant to |
| 11:06:10 | 17 | the current patent litigation.  And Schlumberger has another |
| 11:06:16 | 18 | problem.  It doesn't have any evidence that Ms. Rutherford |
| 11:06:19 | 19 | actually communicated any confidential information of |
| 11:06:22 | 20 | Schlumberger to anyone at my firm. |
| 11:06:26 | 21 | So what does Schlumberger do?  Well, they come up |
| 11:06:28 | 22 | with this double-imputation theory which they base on a |
| 11:06:32 | 23 | misinterpretation of state law.  They cite the American -- |
| 11:06:37 | 24 | *In Re American Home Products* test which provides for a |
| 11:06:40 | 25 | burden-shifting approach to determining whether actual |

11:06:44  1  disclosure has occurred.  But all it does is shift the burden.

11:06:51  2  At the end of the day, the court still has to find -- still has

11:06:58  3  to find that confidential information was disclosed.

11:07:04  4        Schlumberger argues that the Fifth Circuit would

11:07:06  5  adopt the state law approach now because a couple of federal

11:07:09  6  district courts in this state have done so.  They cite the

11:07:15  7  *Ledwig* case out of Western District of Texas, and I can give

11:07:18  8  you cites if Your Honor wants them.

11:07:20  9        THE COURT:  Go ahead.

11:07:21  10        MR. COLLINS:  Okay.  And the *Vinewood Capital* case

11:07:25  11  out of the Northern District of Texas.  But neither of these

11:07:28  12  cases, even though they use the state law approach, presume a

11:07:33  13  disclosure of the former client's confidences to cocounsel.

11:07:37  14  They clearly follow and they cite with direct quotes the

11:07:44  15  *Brennan's* case, the Fifth Circuit case, and state that a

11:07:46  16  presumption of disclosure of confidences is inappropriate.

11:07:52  17        Now, to help the Court understand what Schlumberger

11:07:57  18  is trying to do here and the competing disqualification

11:08:00  19  theories as to cocounsel, I've prepared a graphic that I hope

11:08:04  20  will be somewhat helpful.  This is the law of cocounsel

11:08:10  21  disqualification under both Texas law and the *Brennan's* case in

11:08:15  22  the Fifth Circuit.

11:08:16  23        You have Acacia management, Ms. Rutherford.  You have

11:08:21  24  Dynamic 3D Geo, where Mr. Fischman is the responsible licensing

11:08:26  25  executive.  And, finally, you have my firm, outside counsel for

| | | |
|---|---|---|
| 11:08:30 | 1 | Dynamic 3D Geo.  My firm can only be disqualified on cocounsel |
| 11:08:36 | 2 | disqualification theory if the Court finds at the end of the |
| 11:08:41 | 3 | day that there's been actual communication of Schlumberger's |
| 11:08:44 | 4 | confidential information. |
| 11:08:46 | 5 | THE COURT:  Now, what's your strongest case on that? |
| 11:08:49 | 6 | MR. COLLINS:  My strongest case, Your Honor, is |
| 11:08:52 | 7 | clearly the *Brennan's* case out of the Fifth Circuit, and it |
| 11:08:57 | 8 | quotes several other cases which you'll see in a string cite in |
| 11:09:03 | 9 | there.  And in our briefing we cite to *Brennan's*.  We also cite |
| 11:09:10 | 10 | to the *Ledwig* and *Vinewood Capital* cases, because if the Court |
| 11:09:13 | 11 | does decide to adopt the Texas state law approach but |
| 11:09:19 | 12 | interprets it correctly, the outcome is the same. |
| 11:09:22 | 13 | This is what Schlumberger's is trying to do.  This is |
| 11:09:28 | 14 | their creative cocounsel disqualification theory.  According to |
| 11:09:33 | 15 | them, Rutherford's conflict is irrebuttably imputed to |
| 11:09:41 | 16 | Mr. Fischman.  No communication is required of any of |
| 11:09:45 | 17 | Schlumberger's confidential information if its an irrebuttable |
| 11:09:50 | 18 | presumption. |
| 11:09:50 | 19 | But then they turn the law on its head and say, Well, |
| 11:09:53 | 20 | the direct communication between Ms. Rutherford and CEP doesn't |
| 11:09:57 | 21 | have to exist and we're going to impute a second |
| 11:10:01 | 22 | disqualification from Fischman to my firm, again, without any |
| 11:10:07 | 23 | communication of confidential information.  Well, that flies |
| 11:10:11 | 24 | completely in the face of what *Brennan's* says, that actual |
| 11:10:14 | 25 | disclosure of confidential information must be found. |

| | | |
|---|---|---|
| 11:10:17 | 1 | So even if this court were to adopt a state law |
| 11:10:33 | 2 | burden shifting approach, Schlumberger's theories fail.  Under |
| 11:10:36 | 3 | *Ledwig*, Schlumberger has the burden of demonstrating that there |
| 11:10:37 | 4 | were substantive conversations between Ms. Rutherford and my |
| 11:10:41 | 5 | firm.  If they could be successful in doing that -- or I'm |
| 11:10:45 | 6 | sorry -- and joint preparation for trial by this counsel or the |
| 11:10:49 | 7 | apparent receipt by my firm of Schlumberger's confidential |
| 11:10:54 | 8 | information. |
| 11:10:55 | 9 | Only if they could prove that would there -- would |
| 11:10:58 | 10 | the rebuttable presumption arise that Ms. Rutherford shared |
| 11:11:01 | 11 | confidential information with my firm.  But then Dynamic 3D is |
| 11:11:07 | 12 | afforded the opportunity to rebut this presumption by providing |
| 11:11:11 | 13 | probative and material evidence that confidential information |
| 11:11:14 | 14 | was not disclosed to us. |
| 11:11:16 | 15 | So what does the evidence show?  Well, there's no |
| 11:11:18 | 16 | evidence that Ms. Rutherford has prepared for the trial of this |
| 11:11:22 | 17 | case with my firm, and there's no apparent receipt of |
| 11:11:28 | 18 | Schlumberger's confidential information by my firm.  They can't |
| 11:11:32 | 19 | identify one piece of confidential technical information of |
| 11:11:36 | 20 | Schlumberger that I have ever received or that anyone at my |
| 11:11:39 | 21 | firm has ever received.  So they are left to argue that |
| 11:11:41 | 22 | Ms. Rutherford had substantive communications with my firm |
| 11:11:46 | 23 | about the patent infringement litigation. |
| 11:11:48 | 24 | Well, they're grasping at straws, Your Honor.  These |
| 11:11:52 | 25 | are the alleged substantive communications:  Her participation |

| | | |
|---|---|---|
| 11:11:54 | 1 | in the presentation regarding acquisition of the '319 patent |
| 11:11:58 | 2 | despite the fact that she removed herself from the call and |
| 11:12:02 | 3 | despite the fact that we weren't even there, as you'll see in a |
| 11:12:06 | 4 | minute; her alleged receipt of a recommendation to sue from my |
| 11:12:11 | 5 | firm despite the fact that that never happened, as you'll see |
| 11:12:15 | 6 | in a moment; her agreement with the decision to sue |
| 11:12:19 | 7 | Schlumberger.  They're saying that her concurrence is somehow a |
| 11:12:24 | 8 | communication.  But there's nothing in the -- in the record |
| 11:12:28 | 9 | that any specific substantive communications about Schlumberger |
| 11:12:32 | 10 | took place during that presentation, much less any |
| 11:12:34 | 11 | communication that took place before she excused herself from |
| 11:12:38 | 12 | the meeting. |
| 11:12:41 | 13 | They have no explanation for why her participation in |
| 11:12:44 | 14 | the decision to hire my firm was a substantive -- was a |
| 11:12:48 | 15 | substantive communication with my firm.  So they're left to |
| 11:12:52 | 16 | argue that her concurrence in the decision to acquire the '319 |
| 11:12:57 | 17 | patent and to sue Schlumberger is somehow an implied |
| 11:13:01 | 18 | communication of Schlumberger's confidential information |
| 11:13:07 | 19 | directly to my firm.  It's a novel and creative theory, but it |
| 11:13:13 | 20 | doesn't have any support in the case law. |
| 11:13:16 | 21 | And even if the Court did believe that there was a |
| 11:13:18 | 22 | substantive communication between Ms. Rutherford and my firm, |
| 11:13:21 | 23 | we've come forward with more than sufficient evidence, |
| 11:13:25 | 24 | probative and material evidence, that confidential information |
| 11:13:28 | 25 | could not have been disclosed to CEP by Ms. Rutherford. |

| | | |
|---|---|---|
| 11:13:34 | 1 | The time line established by the declarations of |
| 11:13:39 | 2 | Gary Fischman and I establish that neither I nor anyone at CEP |
| 11:13:44 | 3 | could have been involved in that hour-long presentation that |
| 11:13:47 | 4 | she talks about in her deposition that led to the decision to |
| 11:13:50 | 5 | acquire the '319 patent. |
| 11:13:53 | 6 | Unfortunately, Ms. Rutherford simply mis-recalled the |
| 11:13:57 | 7 | details of that presentation and who was present.  That's |
| 11:14:00 | 8 | understandable because she thought she was being deposed in a |
| 11:14:03 | 9 | state court trade secret case, and it turned out that the |
| 11:14:07 | 10 | deposition that was just conducted by Mr. Grant was all about |
| 11:14:10 | 11 | the patent case.  She didn't have any documents in front of her |
| 11:14:14 | 12 | to refresh her recollection. |
| 11:14:16 | 13 | So what do the -- what do the declarations of |
| 11:14:20 | 14 | Mr. Fischman and Mr. Collins establish?  And they're in the |
| 11:14:24 | 15 | record.  They're attached to our briefing.  Well, Acacia |
| 11:14:31 | 16 | research entered into an agreement with Austin Geo to acquire |
| 11:14:34 | 17 | the '319 patent on August 20th, 2013.  On November 7th |
| 11:14:39 | 18 | Mr. Fischman made the PowerPoint presentation during a |
| 11:14:43 | 19 | telephone call with Matt Vella.  He recommended that Acacia |
| 11:14:48 | 20 | acquire the '319 patent.  Charlotte Rutherford testified that |
| 11:14:54 | 21 | she participated in the telephone call with Mr. Vella.  She |
| 11:14:59 | 22 | excused herself, though, before there was any discussion |
| 11:15:03 | 23 | related to Schlumberger.  No outside counsel participated.  My |
| 11:15:09 | 24 | declaration and Mr. Fischman's declaration are in complete |
| 11:15:14 | 25 | agreement and they're unequivocal.  And, as Mr. Fischman |

| 11:15:19 | 1 | testified, the decision to acquire and enforce the '319 patent |

11:15:19  1  testified, the decision to acquire and enforce the '319 patent

11:15:22  2  was made at the conclusion of the call by Mr. Vella.

11:15:26  3       And this is important because the declarations of

11:15:30  4  Mr. Fischman and I establish that Mr. Fischman didn't even

11:15:34  5  approach me about representing Acacia and the enforcement of

11:15:38  6  the '319 patent until November 12th, five days later, after he

11:15:44  7  made the PowerPoint presentation to Mr. Vella and after the

11:15:47  8  decision was made to acquire the '319 patent.

11:15:52  9       And my declaration confirms under oath what I've told

11:15:57 10  the Court all along, and I take these responsibilities very

11:16:00 11  seriously.  I haven't misled the Court about anything in

11:16:03 12  connection with this motion.  No one at my firm prepared or

11:16:06 13  presented any kind of PowerPoint presentation to anyone at

11:16:10 14  Acacia, including Charlotte Rutherford, that made any

11:16:13 15  recommendation regarding whether to acquire the '319 patent.

11:16:19 16  No one prepared or participated in a PowerPoint presentation

11:16:24 17  that contained a recommendation as to whether to sue

11:16:27 18  Schlumberger.  No one at my firm has provided any kind of

11:16:30 19  recommendation to Ms. Rutherford as to whether Dynamic 3D

11:16:36 20  should or should not sue Schlumberger.

11:16:38 21       And with respect to the implied communication alleged

11:16:42 22  by Schlumberger, Ms. Rutherford has never told anyone at my

11:16:47 23  firm that she concurred in the decision to file the patent

11:16:50 24  lawsuit against Schlumberger.  Under these facts, there's no

11:16:54 25  basis to disqualify my firm under either Fifth Circuit

| | | |
|---|---|---|
| 11:16:58 | 1 | precedent, which is binding, or the state law approach. |
| 11:17:03 | 2 | Now, in conclusion, Your Honor, Schlumberger -- the |
| 11:17:09 | 3 | relief sought by Schlumberger is brazen.  It's unsupported by |
| 11:17:13 | 4 | either the law or the evidence.  The Court warned Schlumberger |
| 11:17:17 | 5 | in the initial pretrial conference about overreaching, but |
| 11:17:20 | 6 | Schlumberger has failed to heed that warning.  Schlumberger has |
| 11:17:27 | 7 | persisted, even after being sanctioned in state court, for its |
| 11:17:29 | 8 | relentless and baseless pursuit of Charlotte Rutherford. |
| 11:17:34 | 9 | If Schlumberger has its way, Charlotte Rutherford |
| 11:17:37 | 10 | would be prohibited from participating in any patent |
| 11:17:42 | 11 | infringement suit or likely any suit against Schlumberger.  All |
| 11:17:45 | 12 | attorney employees of Acacia and its subsidiaries would be |
| 11:17:49 | 13 | disqualified from participating in any patent infringement suit |
| 11:17:53 | 14 | against Schlumberger.  Any outside counsel hired by Acacia to |
| 11:17:58 | 15 | sue Schlumberger would also be disqualified under |
| 11:18:00 | 16 | Schlumberger's double-imputation theory.  Any patent |
| 11:18:03 | 17 | infringement suit filed by Acacia against Schlumberger would |
| 11:18:07 | 18 | have to be dismissed. |
| 11:18:09 | 19 | So what Schlumberger is really seeking here by way of |
| 11:18:12 | 20 | its disqualification motion is a broad immunity that would |
| 11:18:15 | 21 | allow it to violate Acacia's intellectual property rights with |
| 11:18:20 | 22 | impunity, and there's ample evidence from Schlumberger that |
| 11:18:24 | 23 | this course is going to continue. |
| 11:18:30 | 24 | When questioned by this Court at the pretrial hearing |
| 11:18:33 | 25 | about the breadth of the relief sought by Schlumberger, |

11:18:35  1  Mr. Grant wouldn't limit the potential scope to this case.  In

11:18:39  2  settlement negotiations, Ms. Ralston assured by client that

11:18:43  3  Schlumberger would file disqualification motions in every

11:18:45  4  patent infringement suit ever filed against Schlumberger by an

11:18:51  5  Acacia entity.

11:18:52  6          And Schlumberger has been true to its word.  Another

11:18:54  7  Acacia subsidiary, Parallel Separation Innovations, recently

11:18:59  8  filed a patent suit in the Eastern District of Texas.  The same

11:19:02  9  thing is happening.  King & Spalding, Schlumberger's outside

11:19:07  10 counsel in that case, has already sent a letter to my

11:19:11  11 colleague, Henry Pogorzelski.  And it's a cut and paste of the

11:19:14  12 letter that Schlumberger sent to this Court last April.

11:19:18  13 They're threatening disqualification.  They're already served

11:19:22  14 subpoenas that are virtually identical to the subpoenas served

11:19:25  15 in this case.  And those have been served on Charlotte

11:19:28  16 Rutherford, Gary Fischman, and Acacia.  Apparently, because

11:19:33  17 Judge Lane quashed the subpoenas to my firm, they are not

11:19:36  18 serving us, at least at this time.  They're raising the same

11:19:42  19 arguments that Schlumberger raises here today in this letter.

11:19:46  20         So in closing, Your Honor, I note that Schlumberger's

11:19:49  21 motion also seeks dismissal.  Now, that's an extreme remedy.

11:19:56  22 It's not supported in the case law, and there's nothing in the

11:19:59  23 case law for the proposition that the attorney disqualification

11:20:02  24 rules somehow apply to disqualify the client.

11:20:05  25         Now, Schlumberger argues that dismissal is

| | | |
|---|---|---|
| 11:20:08 | 1 | appropriate because the case has been tainted by the disclosure |
| 11:20:11 | 2 | of its confidential information from the beginning.  The fatal |
| 11:20:16 | 3 | flaw in this argument is the same one that underlies all of |
| 11:20:19 | 4 | Schlumberger's argument.  It can't identify any confidential |
| 11:20:23 | 5 | information by -- possessed by Ms. Rutherford that is related |
| 11:20:28 | 6 | to this patent litigation or that's been communicated to anyone |
| 11:20:33 | 7 | at Acacia or my firm. |
| 11:20:35 | 8 | Thank you, Your Honor. |
| 11:20:42 | 9 | MR. GRANT:  Very briefly, Your Honor? |
| 11:20:44 | 10 | THE COURT:  Mr. Collins, ran over three minutes.  You |
| 11:20:46 | 11 | had two minutes left, so I will give you the equal time he had. |
| 11:20:49 | 12 | So you have five minutes. |
| 11:20:50 | 13 | MR. GRANT:  Thank you, sir.  I'll try to do it in |
| 11:20:52 | 14 | less.  Let me just make sure I've got the screen for the Court |
| 11:20:55 | 15 | since we're going to move quickly. |
| 11:20:57 | 16 | All right.  Your Honor, you asked about whether the |
| 11:21:00 | 17 | Federal Circuit applies the right law.  This is from footnote 7 |
| 11:21:05 | 18 | of page 7 of our reply brief.  Both sides' experts agree that |
| 11:21:10 | 19 | the Federal Circuit has held that ethical issues are not unique |
| 11:21:13 | 20 | to patent law and has applied the law of the proper regional |
| 11:21:17 | 21 | circuit.  That's both sides' experts.  And that, by the way, is |
| 11:21:20 | 22 | a statement from their expert's treatise and our expert agrees. |
| 11:21:23 | 23 | Let's go to page -- slide 50. |
| 11:21:26 | 24 | Your Honor, there was a lot of talk about the fact |
| 11:21:28 | 25 | that Ms. Rutherford's work was way back in 2007.  2007, when |

11:21:35  1  she was analyzing that competitive landscape, that's what the

11:21:39  2  Austin GeoModeling RECON product was being analyzed by

11:21:43  3  Schlumberger that led to the patented features in the filing

11:21:46  4  that was made in 2007.  It's exactly the same subject matter.

11:21:51  5            Let's go to 16, please.

11:21:54  6            "A party seeking to disqualify counsel under the

11:21:57  7  substantial relationship test need not prove that the past and

11:22:00  8  present matters are so similar that the lawyer's continued

11:22:03  9  involvement threatens to taint the trial."  That's all

11:22:06  10 Mr. Collins talked about.  All we have to show is they're

11:22:09  11 substantially related.

11:22:11  12           Let's go to 66.

11:22:14  13           Your Honor, I believe we've shown in spades that

11:22:18  14 these matters are substantially related, not once, not twice,

11:22:22  15 not three times, four times, all on these specific issues.  And

11:22:25  16 I would suggest to the Court that under that test which says

11:22:30  17 what substantial relationship is, which is 16 -- I'll show that

11:22:34  18 to you -- there's no question that this test is met.

11:22:37  19           Sixteen.  Next one.  Next one.  Next slide.

11:22:49  20           Okay.  This is 18, Your Honor.  "The substantial

11:22:51  21 relationship test cannot be reduced to a confidentiality rule."

11:22:55  22 That's because the test is concerned with confidentiality and

11:22:58  23 the duty of loyalty.  That's what matters here, the duty of

11:23:04  24 loyalty, and that's precisely what the case law says.

11:23:08  25           Next, 75.

| 11:23:08 | 1 | Mr. Collins said that I need to show that |
| 11:23:11 | 2 | Ms. Rutherford gave his firm confidential information.  That's |
| 11:23:14 | 3 | not the law under *Ledwig* and *America Home Products*.  I need to |
| 11:23:19 | 4 | show either that she had contact or communications with his |
| 11:23:24 | 5 | firm or that the imputed lawyers had substantive conversations |
| 11:23:29 | 6 | or joint preparation.  And you saw that in our slide deck, |
| 11:23:32 | 7 | Your Honor.  It's set forth in detail. |
| 11:23:34 | 8 | Let's go to 102. |
| 11:23:36 | 9 | Your Honor, you asked repeatedly about *America Home* |
| 11:23:40 | 10 | *Products*, and I don't think what you said is any different from |
| 11:23:43 | 11 | what I've got up here which is this Court is obligated to |
| 11:23:46 | 12 | follow that binding precedent.  Here's what I would say, |
| 11:23:50 | 13 | Your Honor.  When I was a young Marine NCO, my gunnery sergeant |
| 11:23:54 | 14 | had a plaque hanging in the team hut, and that plaque said:  To |
| 11:24:00 | 15 | err is human and to forgive is divine , but neither are Marine |
| 11:24:04 | 16 | Corps policy. |
| 11:24:07 | 17 | You know, Mr. Collins I don't think is a bad man.  I |
| 11:24:10 | 18 | don't think he intentionally did what's happened here.  But he |
| 11:24:14 | 19 | erred, Ms. Rutherford erred, and Acacia erred, and there's no |
| 11:24:18 | 20 | getting around that. |
| 11:24:20 | 21 | With regards to forgiveness, Your Honor, I can see |
| 11:24:24 | 22 | the Court struggling with this issue, and I understand it.  I |
| 11:24:27 | 23 | see the importance and understand the importance of aggrieved |
| 11:24:30 | 24 | parties having the ability to petition a court.  I'm not some |
| 11:24:35 | 25 | East Coast defense lawyers.  The last seven trials I've done |

| | | |
|---|---|---|
| 11:24:39 | 1 | have been plaintiffs trials.  This is the first time I've ever |
| 11:24:41 | 2 | represented Schlumberger as a defendant.  But even though |
| 11:24:43 | 3 | forgiveness is divine and the Court has a strong preference |
| 11:24:47 | 4 | finding a fair, equitable remedy, it's not permitted under the |
| 11:24:50 | 5 | Fifth Circuit law.  So just like was the case in the Marine |
| 11:24:54 | 6 | Corps, the err cannot be forgiven in this case. |
| 11:24:57 | 7 | And this case is not tainted, as Mr. Collins wrongly |
| 11:25:01 | 8 | suggests, by the disclosure of confidential information.  It's |
| 11:25:06 | 9 | tainted by Ms. Rutherford's violation of her duty of loyalty to |
| 11:25:10 | 10 | her client.  And that duty of loyalty, because of her direct |
| 11:25:14 | 11 | representation of Schlumberger, is what requires her |
| 11:25:17 | 12 | disqualification which requires that second irrebuttable |
| 11:25:21 | 13 | presumption be applied to all the lawyers at Acacia and that |
| 11:25:24 | 14 | they each and every one be disqualified.  And, under the facts |
| 11:25:28 | 15 | of this case, given those contacts and communications, that |
| 11:25:31 | 16 | Mr. Collins' firm be disqualified as well.  It's the violation |
| 11:25:36 | 17 | of her duty of loyalty and the Fifth Circuit's controlling law |
| 11:25:40 | 18 | that requires it. |
| 11:25:41 | 19 | Thank you, sir. |
| 11:25:42 | 20 | THE COURT:  Thank you. |
| 11:25:45 | 21 | MR. CONNOR:  Your Honor, if I may? |
| 11:25:46 | 22 | THE COURT:  No.  You don't get to respond again. |
| 11:25:49 | 23 | MR. CONNOR:  We're on behalf of nonparty Acacia |
| 11:25:52 | 24 | Research Group. |
| 11:25:53 | 25 | THE COURT:  I understand.  But I gave each side an |

11:25:55  1    hour, and we've used an hour and five minutes on each side.  I

11:25:59  2    didn't give each party on one side --

11:26:01  3              MR. CONNOR:  We're a nonparty, Your Honor.

11:26:03  4              THE COURT:  I understand.  But I've heard from who

11:26:05  5    I'm going to hear from today.  I don't need to hear anything

11:26:08  6    else.

11:26:09  7              MR. CONNOR:  Very well Your Honor.

11:26:09  8              THE COURT:  Couple of housekeeping matters.  I have,

11:26:13  9    against my better judgment, granted the defendant's opposed

11:26:16  10   motion to exceed page limit on the most recent filing.  I have

11:26:21  11   granted the motion of Mr. Brennan to appear *pro hac*.

11:26:29  12             I also have pending before me the plaintiff's

11:26:36  13   objections to Schlumberger's initial exhibit list.  I will

11:26:42  14   overrule those objections.  My order in this case will fully

11:26:47  15   reflect what I have considered in this case in reaching my

11:26:52  16   decision.  I will distinguish between things I thought were

11:26:59  17   admissible and inadmissible, but the plaintiff has its record

11:27:06  18   protected in preserving those objections which I've overruled

11:27:10  19   in case I consider anything, in my opinion, that the plaintiff

11:27:15  20   continues to think is objectionable.

11:27:17  21             While I have you here together, anything else we need

11:27:23  22   to take up in this case?

11:27:26  23             MR. GRANT:  The only thing I would note, Your Honor,

11:27:28  24   with the flurry of paper flying this week was that supplemental

11:27:32  25   authority on the 101 motion which pertained to main case that

| | | |
|---|---|---|
| 11:27:35 | 1 | they relied on and cited 25 times which is now not just |
| 11:27:38 | 2 | vacated, but has been expressly overruled. |
| 11:27:40 | 3 | THE COURT:  All right.  Anything from the plaintiff? |
| 11:27:44 | 4 | MR. COLLINS:  Nothing, Your Honor. |
| 11:27:45 | 5 | THE COURT:  All right.  I want to thank both sides |
| 11:27:49 | 6 | for what I considered to be very good arguments.  I will tell |
| 11:27:54 | 7 | you both, again, that your briefs and your exhibits were far |
| 11:28:01 | 8 | too long and in further proceedings in the case, whoever may be |
| 11:28:09 | 9 | involved if the case survives the request to dismiss, be a lot |
| 11:28:14 | 10 | more sparing in what you present to the Court and you will get |
| 11:28:18 | 11 | farther.  You brought everything back into focus with your |
| 11:28:22 | 12 | arguments that I thought were very good arguments, and it just |
| 11:28:27 | 13 | reinforced my position that you didn't need to be as wordy as |
| 11:28:33 | 14 | you were. |
| 11:28:33 | 15 | All district courts, and particularly those in the |
| 11:28:38 | 16 | Western District of Texas, in general, and the Austin Division, |
| 11:28:41 | 17 | in particular, do not have enough time to get to all of their |
| 11:28:45 | 18 | work.  And you really help the Court and you help yourselves if |
| 11:28:50 | 19 | you fight off the temptation to file everything you can file. |
| 11:28:58 | 20 | Less is truly best. |
| 11:28:59 | 21 | So, again, with the thanks of the Court, the motion |
| 11:29:05 | 22 | to disqualify is under advisement and we will get out an |
| 11:29:09 | 23 | opinion as quickly as we can.  The Court's in recess. |
| 11:29:12 | 24 | (End of transcript) |
| | 25 | |

1  **UNITED STATES DISTRICT COURT      )**

2  **WESTERN DISTRICT OF TEXAS          )**

3        I, Arlinda Rodriguez, Official Court Reporter, United

4  States District Court, Western District of Texas, do certify

5  that the foregoing is a correct transcript from the record of

6  proceedings in the above-entitled matter.

7        I certify that the transcript fees and format comply with

8  those prescribed by the Court and Judicial Conference of the

9  United States.

10       WITNESS MY OFFICIAL HAND this the 1st day of

11  December 2014.

12

13                                    /S/ Arlinda Rodriguez
                                     Arlinda Rodriguez, Texas CSR 7753
14                                    Expiration Date:  12/31/2014
                                     Official Court Reporter
15                                    United States District Court
                                     Austin Division
16                                    501 West 5th Street, Suite 4152
                                     Austin, Texas 78701
17                                    (512) 391-8791

18

19

20

21

22

23

24

25