FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS 2015 MAR 31 AM 11: 56
AUSTIN DIVISION

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
        DEPUTY

| | | |
|---|---|---|
| DYNAMIC 3D GEOSOLUTIONS, LLC, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO. A-14-CV-112-LY |
| | § | |
| SCHLUMBERGER LIMITED | § | |
| (SCHLUMBERGER N.V.); | § | |
| SCHLUMBERGER HOLDINGS | § | |
| CORPORATION; AND | § | |
| SCHLUMBERGER TECHNOLOGY | § | |
| CORPORATION, | § | |
| DEFENDANTS. | § | |

## ORDER

Before the court are Defendants' Motion to Disqualify Counsel and Dismiss without Prejudice filed August 15, 2014 (Doc. #48); Plaintiff's Response to Defendants' Motion to Disqualify and Dismiss filed September 5, 2014 (Doc. #61); Schlumberger's Reply Brief in Support of Defendants' Motion to Disqualify Counsel and Dismiss without Prejudice filed September 19, 2014 (Doc. #68); Schlumberger's Supplemental Submission in Support of its Motion to Disqualify Counsel and Dismiss without Prejudice filed November 19, 2014 (Doc. #105); Plaintiff's Notice of Supplemental Authority in Support of its Opposition to Defendants' Motion to Disqualify Counsel and Dismiss filed November 19, 2014 (Doc. #106); Non-Parties Gary Fischman and Acacia Research Group, LLC's Notice of Authority and Declarations filed November 19, 2014 (Doc. #110); and Schlumberger's Supplemental Submission of Newly Produced Evidence in Support of Defendants' Motion to Disqualify Counsel and to Dismiss without Prejudice filed November 26, 2014 (Doc. #114). A hearing on the motion was held before the court on November 20, 2014, at which counsel for all parties appeared for argument. Having considered the motion, response, reply,

supplemental authority, exhibits, and arguments of counsel, the court will grant the motion to disqualify counsel and dismiss the cause without prejudice for the reasons to follow.

***Background***

Plaintiff Dynamic 3D Geosolutions LLC ("Dynamic Geo") is a shell company of Acacia Research Group LLC ("Acacia"), a patent licensing and enforcement company, formed by Acacia for the purpose of filing lawsuits on U.S. Patent No. 7,986,319 ("the '319 patent") against companies in the energy market. Acacia acquired the '319 patent, entitled "Method and System for Dynamic Three-Dimensional Geological Interpretation and Modeling," from Austin Geomodeling, Inc. on November 18, 2013. Dynamic Geo was formed on December 6, 2013, and acquired the '319 patent from Acacia on December 9, 2013.

On February 4, 2014, Dynamic Geo brought this action against Defendants Schlumberger Limited (Schlumberger N.V.), Schlumberger Holdings Corporation, and Schlumberger Technology Corporation (collectively, "Schlumberger"), along with several parallel actions against other entities Dynamic Geo asserts directly infringe the '319 patent. Dynamic Geo's complaint alleges that Schlumberger's Petrel E&P Software Platform ("Petrel") infringes the '319 patent. Schlumberger acquired the Petrel software from a Norwegian company, Technoguide, in 2002. Petrel is a Microsoft Windows-based software application for 3D visualization, 3D mapping and 3D reservoir modeling.

On August 15, 2014, Schlumberger filed Defendants' Motion to Disqualify Counsel and Dismiss without Prejudice, seeking an order from this court disqualifying: (1) Charlotte H. Rutherford, Esq. ("Rutherford"), based on her prior representation of Schlumberger in matters that Schlumberger asserts are substantially related to this case; (2) all inhouse counsel of Acacia and its

subsidiaries, including Dynamic Geo, based on the imputation of Rutherford's conflict to her fellow Acacia attorneys; and (3) Dynamic Geo's outside counsel, Collins, Edmonds, Pogorzelski, Schlather & Tower PLLC ("Collins Edmonds"), based on its communications with Rutherford and other Acacia-affiliated attorneys subject to disqualification. Schlumberger also moves to dismiss this case without prejudice based on the conflicts of interest that Schlumberger asserts infected the inception of this case and seeks to recover attorney's fees and costs.

Schlumberger hired Rutherford in 2006 as an intellectual-property counsel. Rutherford served as Schlumberger's Senior Counsel, Licensing and Litigation, from 2006 until 2009. In 2009, Rutherford was promoted to Deputy General Counsel for Intellectual Property. In or about June of 2013, Rutherford left Schlumberger and joined Acacia as Senior Vice President and Associate General Counsel. Rutherford remains an employee of Acacia, a nonparty in this case. Rutherford is not employed or retained by Dynamic Geo and has not made an appearance in this case or any related case involving the '319 patent brought by Dynamic Geo.

Schlumberger contends that during her seven years as an intellectual-property lawyer for Schlumberger, Rutherford personally represented Schlumberger in a variety of matters related to Dynamic Geo's patent-infringement claims. Schlumberger asserts that Rutherford was intimately involved in the rendering of legal advice about Petrel, the sole product accused of patent infringement in this case. Schlumberger alleges that in 2007, Rutherford led a twelve-person team responsible for performing a "Goldstar" assessment of Petrel for the dual purposes of assessing risk of lawsuits against it and of broadening Petrel's intellectual-property coverage .

Schlumberger asserts that within one month of her departure from Schlumberger, Rutherford began to participate in Acacia's decision to acquire and file suit against Schlumberger on the '319

patent. Schlumberger alleges that Rutherford participated in meetings regarding the '319 patent at which Schlumberger and Petrel were discussed and identified as a potential target for assertion of the patent. Schlumberger further alleges that Rutherford personally approved the decision to acquire and file lawsuits on the '319 patent, and that her "concurrence" recommendation was considered by Acacia's Chief Executive Officer before Acacia's decided to sue Schlumberger.

Rutherford denies having prepared of any of the GoldStar projects or reports or having immediate supervisory responsibility for any of the GoldStar projects. Rutherford testified that she sat in on a few GoldStar presentations that were provided to a broad audience of Schlumberger employees. One presentation, Rutherford recalls, concerned Petrel as it existed in 2007. Rutherford testified that she did not perform any substantive work on the GoldStar reports beyond providing general instructions on the procedure for creating a GoldStar presentation as used within Schlumberger. Rutherford further testified that around 2007 she managed outside counsel with general counsel for Schlumberger Information Solutions in litigation concerning copyright piracy involving an older version of Petrel. Thus, Dynamic Geo asserts that because the evidence clearly establishes that Rutherford had very limited involvement with Petrel, her limited involvement should not result in her disqualification, let alone the other attorneys who happen to work at Acacia due to her role as inhouse counsel of a nonparty corporation. Dynamic Geo further asserts that because Rutherford is not cocounsel with Collins Edmonds and has been walled off from any discussion of Schlumberger or its technology with anyone at Collins Edmonds, Schlumberger has failed to show that Rutherford disclosed any confidential information Collins Edmonds, so that any presumed conflict of interest cannot be imputed to Collins Edmonds.

***Legal Standard of Motion to Disqualify***

"When considering motions to disqualify, courts should first look to 'the local rules promulgated by the local court itself.'" *In re ProEducation Intern., Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (*quoting FDIC v. US. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995)). Pursuant to the Local Rules of the Western District of Texas, "[m]embers of the bar of this court and any attorney permitted to practice before this court must comply with the standards of professional conduct set out in the Texas Disciplinary Rules of Professional Conduct." Local Rule AT-7(a). However, Texas Rules "are not the sole authority governing a motion to disqualify." *ProEducation*, 587 F.3d at 299 (*quoting In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992)). "Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992) (*citing Woods v. Covington County. Bank*, 537 F.2d 804, 810 (5th Cir. 1976)).

Courts also "consider the motion governed by the ethical rules announced by the national profession in light of the public interest and the litigants' rights." *ProEducation*, 587 F.3d at 299 (*quoting American Airlines*, 972 F.2d at 610). "Precedents have applied the ethical canons contained in the ABA [American Bar Association] Model Code." *American Airlines*, 972 F.2d at 610 (*citing Dresser*, 972 F.2d at 943). The relevant ABA Model Rule, Rule 1.9(b) and Texas Rule 1.09 "produce the same result in application—they both require that a departing lawyer must have actually acquired confidential information about the former firm's client or personally represented the former client to remain under imputed disqualification." *ProEducation*, 587 F.3d at 301. *Compare* MODEL RULES OF PROF'L CONDUCT R. 1.9(b) (2006) *and* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A, art. 10, § 9 (Vernon 2005).

Courts review of motions to disqualify involving prior representations is governed by the "substantial relationship" test. *See American Airlines*, 972 F.2d at 614.

> A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations.

*Id.* (*citing Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1569 (5th Cir. 1989); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1341, 1345 (5th Cir. 1981); *Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1028 (5th Cir. 1981)). The party seeking disqualification bears the burden of proving the present and prior representations are substantially related. *See id.*(*citing Duncan*, 646 F,2d at 1028; *Corrugated Container*, 659 F.2d at 1347).

"Once it is established that the prior matters are substantially related to the present case, 'the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation." *Id.* (*quoting Duncan*, 646 F.2d at 1027–28). Although the test is categorical in requiring disqualification upon satisfaction of the substantial-relationship standard, it is not to be applied "in a mechanical way that might 'prevent[] an attorney from ever representing an interest adverse to that of a former client.'" *Id.* (*quoting Duncan*, 646 F.2d 1027–28). "Rather, a substantial relationship may be found only after 'the moving party delineates with specificity the subject matters, issues and causes of action' common to prior and current representations and the court engages in a 'painstaking analysis of the facts and precise application of precedent." *Id.* (*citing Duncan*, 646 F.2d at 1029) (internal quotation omitted)).

If the court determines that relevant confidential information was disclosed during the former period of representation, a second presumption attaches. This presumption is that a lawyer in

possession of client confidences shares those confidences with other lawyers at her firm. *See, e.g., Corrugated Container*, 658 F.3d at 1346–47. In *American Airlines*, the Fifth Circuit mentions this second presumption but finds that it is not at issue in the case. 972 F.2d at 614 n. 1 (*citing Corrugated Container*, 659 F.2d at 1346). *See also ProEducation*, 587 F.3d at 303.

In *Corrugated Container*, the circuit addressed "a question not decided before this circuit, to wit, whether the presumptions that arise under the substantial relationship test are rebuttable." 659 F.2d at 1346. The circuit noted that "this circuit has exhibited reluctance to apply the latter presumption repeatedly to disqualify new partners of an attorney vicariously disqualified by virtue of his former partners' representing certain clients." *Id.* (*citing American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1129 (5th Cir. 1971)).

In *ProEducation*, the circuit went further, indicating that the decision in *American Airlines* has been altered by the addition of Comment 7 to the Texas Disciplinary Rules of Professional Conduct in 1990. *See ProEducation*, 587 F.3d at 304. The court further noted that with respect to the second presumption referenced in *American Airlines*, "that confidences obtained by an individual lawyer will be shared with other members of the firm," "[i]t is unclear whether a rebuttable presumption replaces the *American Airlines* irrebuttable presumption, or whether no presumption remains." *Id.* at 303, 304 n. 7. Thus, under Fifth Circuit precedent, no second irrebuttable presumption has been established. To the extent that the presumption that a lawyer shares client confidences he possesses with other lawyers in his firm exists after *ProEducation*, that presumption is rebuttable.

*Analysis*

*Rutherford*

The parties do not dispute that an actual attorney-client relationship existed between Rutherford and Schlumberger during her term of employment; therefore, the issue for the court to determine is whether Rutherford's former representation of Schlumberger is substantially related to Rutherford's present representation of Acacia. *See Johnston*, 869 F.2d at 1569; *Corrugated Container*, 659 F.2d at 1345; *Duncan*, 646 F.2d at 1028. Dynamic Geo argues that there are no legal or factual issues common to Rutherford's prior representation at Schlumberger and current representation at Acacia other than her general exposure to earlier versions of Petrel. Because the primary factual issues in this litigation regarding the '319 patent deal solely with the current version of Petrel, Dynamic Geo argues, Rutherford's representation of Schlumberger is irrelevant to the subject matter of this case.

However, Schlumberger has produced documents indicating that the allegedly infringing features of Petrel existed in its older versions. In addition, Schlumberger has produced evidence that Rutherford was involved in efforts to license the Petrel product during her representation of Schlumberger. This evidence establishes that Rutherford worked on matters that are more than tangentially related to the issues in Dynamic Geo's present action against Schlumberger. "[T]he subject matter 'does not need to be 'relevant' in the evidentiary sense to be 'substantially related.' It need only be akin to the present action in a way reasonable persons would understand as important to the issues involved." *American Airlines*, 972 F.2d at 619, 623 (*quoting Corrugated Container*, 659 F.2d at 1346). Therefore, the court concludes that Schlumberger has satisfied the substantial-

relationship test and, following *American Airlines*, irrebuttably presumes Rutherford acquired confidential information requiring that she be disqualified.

Having determined that Rutherford is disqualified, the court must next address whether Rutherford's acquisition of confidential information should be imputed to the lawyers at Acacia and Collins Edmonds. Schlumberger asks the court to apply a second irrebuttable presumption that Rutherford shared Schlumberger's confidential information with the lawyers at Acacia and Collins Edmonds. As previously discussed, however, the court, following *ProEducation* and *Corrugated Container*, must determine whether Dynamic Geo can rebut any presumption that Rutherford shared the confidential information she acquired at Schlumberger based on the factual record before the court.

*Acacia*

Dynamic Geo asserts that Rutherford has been screened and will continue to be screened from any discussion involving Schlumberger since her arrival at Acacia. Further, Dynamic Geo argues that because Rutherford's role as inhouse counsel at Acacia differs from that of an attorney serving as outside counsel, federal law on the issue of attorney disqualification should not be applied to a nonpracticing nonparty such as Acacia due to that fact that it employs numerous patent lawyers who work in a variety of capacities.

Rutherford serves as Senior Vice President and Associate General Counsel at Acacia. Rutherford has testified that she is responsible for the energy practice at Acacia, and that she performs various legal tasks in her position as Associate General Counsel. The Texas and ABA Model Rules each apply to attorneys within a "firm," which is defined to include attorneys in a corporate legal department. *See* Restatement (Third) of Law Governing Lawyers § 123 cmt. d(I)

(2000) ("[L]awyers in corporate legal offices will often have access to confidential information in the possession of other lawyers in the same office. The possibility of misuse of information in such situations can be as great as in private law firms. The lawyer-employees are to that extent comparable to partners and associates in a private law firm.").[1]

Moreover, the fact that Plaintiff Dynamic Geo is technically a separate corporation from nonparty Acacia does not shield Acacia's inhouse counsel from disqualification. Dynamic Geo is a wholly-owned Acacia subsidiary and a client of Acacia's inhouse legal department. Dynamic Geo has no employees and depends entirely on Acacia's inhouse legal department for its strategy and conduct in this litigation. Therefore, the court concludes that federal law regarding attorney disqualification applies to Rutherford and the other attorneys at Acacia for purposes of Dynamic Geo's cause of action against Schlumberger.

Dynamic Geo has submitted the declarations of Mr. Matthew Vella, President and CEO of Acacia and Mr. Gary Fischman, Vice President, Licensing, of Acacia, both of whom assert that Rutherford has not provided confidential or proprietary information of Schlumberger or any of its products and technology, including Petrel, to anyone at Acacia or its affiliates. However, evidence regarding Rutherford's involvement in the acquisition of the '319 patent, the decision to sue Schlumberger, and the hiring of Collins Edmonds demonstrate otherwise. Dynamic Geo argues that such evidence is conclusory at best. The court disagrees.

---

[1] The Texas Supreme Court has acknowledged favorably the language in Restatement (Third) of Law Governing Lawyers. *See In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819, 825 (Tex. 2010) (discussing Section 123). *See also In re America Home Products Corp.*, 985 S.W.2d 68, 80 (Tex, 1998) (discussing proposed Section 204). This court also finds the language in the Restatement useful and will apply the definition of firm found in the Restatement.

Rutherford testified that shortly after she began working for Acacia, she participated in two meetings with the named inventors of the '319 patent for the purpose of assessing whether Acacia should acquire the patent for possible assertion against companies in the energy market. Other members of Acacia's legal and engineering departments were present, including Fischman, who participated in the second meeting. Rutherford further testified that she was acting as a lawyer for Acacia at both meetings and that Schlumberger's Petrel product was discussed and identified as a potential target for assertion of the '319 patent. Rutherford confirmed that she did not excuse herself from either meeting even though Schlumberger and Petrel were discussed.

Rutherford also testified that she reviewed the '319 patent in anticipation of litigation, and that she and Fischman made the decision to retain Collins Edmonds as Dynamic Geo's counsel of record in all of the '319 patent litigation. Rutherford received recommendations from Fischman and Mr. Michael Collins of Collins Edmonds that Acacia acquire and file suit against Schlumberger on the '319 patent. Rutherford stated that she was presented with a PowerPoint presentation by Collins discussing Schlumberger, after which Rutherford approved the recommendations to acquire the '319 patent and to sue several companies, including Schlumberger. Rutherford admits that she was acting as Acacia's lawyer when she reviewed and approved those recommendations.[2] Having reviewed the factual record before the court, including Rutherford's deposition testimony, the court finds that Dynamic Geo has failed to rebut the presumption that Rutherford shared the confidential information she acquired from Schlumberger with Acacia's legal team. Therefore, the court will disqualify all inhouse counsel for Acacia and its subsidiaries, which includes Dynamic Geo.

---

[1] After receiving Rutherford's recommendation, Fischman and Collins made the same presentation to Vella and another member of Acacia's inhouse legal department, after which Vella authorized acquiring the '319 patent and filing suit against Schlumberger and others.

*Collins Edmonds*

Dynamic Geo argues that because the attorneys at Collins Edmonds have not had an attorney-client relationship with Schlumberger, disqualification is warranted only if actual disclosure of Rutherford's confidential information to Collins Edmonds is shown. *See Brennan's Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 174 (5th Cir. 1979). The court agrees; however, following *ProEducation* and *Corrugated Container*, the court must next determine whether Dynamic Geo can rebut any presumption that Rutherford shared the confidential information she acquired at Schlumberger based on the factual record before the court. Only after the party seeking disqualification has "first demonstrate[d] that there were substantive conversations between disqualified counsel and co-counsel, joint preparation for trial by those counsel, or the apparent receipt by co-counsel of confidential information" does the burden shift to co-counsel to prove non-disclosure. *In re American Home Products Corp.*, 985 S.W.2d 68, 81 (Tex.1998). *See also Vinewood Capital, LLC v. Sheppard Mullin Richter & Hampton, LLP*, 735 F. Supp. 2d 503, 524 (N.D. Tex. 2010); *Ledwig v. Cuprum S.A.*, Cause No. SA-03-CA-542-RF, 2004 WL 573650 at *3-4 (W.D. Tex. Jan. 28, 2004).

Dynamic Geo asserts that Schlumberger has failed to offer any proof that Rutherford has communicated Schlumberger's confidential information to Collins Edmonds. The court disagrees. The court's review of the facts reveal that multiple communications and conversations occurred between Rutherford, Fischman, and other inhouse Acacia attorneys and Michael Collins of Collins Edmonds during the preparation to file suit against Schlumberger and other energy companies. Those communications included: Rutherford's direct contact with Collins leading up to Rutherford's approval of the recommendation that Acacia acquire the '319 patent for the purpose of filing patent

infringement litigation against Schlumberger and other energy companies; Rutherford and Fischman decision to retain Collins Edmonds; and Fischman's continued direct communication and work with Collins Edmonds on the prosecution of Dynamic Geo's claims against Schlumberger. Further, Rutherford testified that she continues to work with Collins Edmonds in the five related '319 patent cases, all of which involve the same issue of patent validity asserted against Schlumberger. Finally, Fischman continues to forward information about the instant suit against Schlumberger to Rutherford. These direct contacts and communications between Rutherford, Fischman, and Collins, coupled with the fact that Fischman, who reports to Rutherford and is as a result also disqualified, continues to actively work with Collins Edmonds in prosecuting the suit against Schlumberger, requires the court to disqualify Michael Collins and the other attorneys at Collins Edmonds.

### *Conclusion*

Having determined that Rutherford, inhouse counsel at Acacia and its subsidiaries, and Collins Edmonds must be disqualified in this case, and noting that Dynamic Geo's pleadings were drafted by lawyers who are presumed to possess Schlumberger's confidential information, the court concludes that dismissal of this action without prejudice is warranted. Although a harsh result, the court finds that Schlumberger will face significant prejudice if Dynamic Geo is permitted to continue to pursue its claims against Schlumberger in this case.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Disqualify Counsel and Dismiss without Prejudice filed August 15, 2014 (Doc. #48) is **GRANTED AS FOLLOWS**:

1. Charlotte H. Rutherford is disqualified from representing Plaintiff Dynamic 3D Geosolutions LLC in this cause;

2. all inhouse counsel for Acacia Research Corporation and its subsidiaries, including Plaintiff Dynamic 3D Geosolutions LLC, are disqualified from representing Plaintiff Dynamic 3D Geosolutions LLC in this cause; and

3. Collins, Edmonds, Pogorzelski, Schlather & Tower, PLLC and all lawyers in the firm are disqualified from representing Plaintiff Dynamic 3D Geosolutions LLC in this cause.

In all other respects, the motion is denied.

**IT IS FURTHER ORDERED** that all claims and causes of action asserted by Plaintiff Dynamic 3D Geosolutions LLC against Defendants Schlumberger Limited, Schlumberger Holdings Corporation, and Schlumberger Technology Corporation are **DISMISSED WITHOUT PREJUDICE**.

SIGNED this **31st** day of March, 2015.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE